UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BLACK LIVES MATTER D.C., *et al.,*

                Plaintiffs,

        v.

DONALD J. TRUMP, *et al.*

                Defendants.

No. 1:20-cv-01469-DLF

**MOTION FOR LEAVE TO CONDUCT LIMITED EARLY DISCOVERY FOR THE
PURPOSE OF IDENTIFYING UNNAMED DEFENDANTS AND TO STAY
DEFENDANTS' RESPONSE DEADLINE
AND
RESPONSE TO UNITED STATES' MOTION FOR AN EXTENSION OF TIME**

Plaintiffs hereby request, per Fed. R. Civ. P. 26(d)(1), leave to conduct limited early

discovery from Defendants William P. Barr, Mark Esper, Gregory T. Monahan, James M. Murray,

William Walker, and Michael Carvajal, from putative Defendant Peter Newsham,[1] and from third-

party Arlington County (pursuant to a Rule 45 subpoena that will be served if the court authorizes

early discovery), to identify the Defendants who are listed in the Second Amended Complaint as

"John Doe" and other similar fictitious names because their identities are unknown.

Three categories of such officers are named in the complaint. The first, Defendants "John

Does," are officers of the various federal agencies led by the Defendants against whom discovery

is now sought. The second, Defendants "John Poes," are officers of the Arlington County Police

Department and other non-federal law enforcement officials from jurisdictions other than the

---

[1] D.C. Police Chief Peter Newsham is named as a defendant in Plaintiffs' proposed Second
Amended Complaint, as to which a motion for leave to file is pending. ECF 20. No party has
opposed that motion.

District of Columbia. The third, Defendants "John Roes," are officers of the D.C. Metropolitan Police Department (MPD). The proposed discovery would consist of a targeted set of four interrogatories and five requests for production of documents necessary to identifying and serving these unnamed officers. The text of these requests is attached as Exhibit A. The proposed third-party subpoena to Arlington County (with attachment) is attached as Exhibit B.

The named Defendants oppose this motion.

This early discovery is justified because Plaintiffs need this information in order to amend their complaint by naming the currently-unknown Defendants, serve those Defendants, and prosecute this action. This type of discovery is both necessary to the effective litigation of this action and commonplace in this Court. Discovery is particularly important here because most of Plaintiffs' damages claims are asserted entirely or almost entirely against unnamed Defendants, and one of Plaintiffs' claims has a one-year statute of limitations that could run if early discovery is not permitted.

The Court should also stay Defendants' deadline to respond to the complaint pending the completion of this early discovery and the amendment of Plaintiffs' complaint to add the true names of the unknown Defendants. Enabling Plaintiffs to identify the Defendants now as opposed to later in the case, and staying the briefing on dispositive motions until that discovery has been provided and the complaint amended as necessary, will create efficiencies for the parties and the Court, obviate the need for multiple rounds of briefing by different parties, and enable the parties to be heard all at once on all of Plaintiffs' claims.

The Court should therefore grant this motion and deny Defendants' motion for an extension, ECF 23, as moot.

**FACTS**

As alleged in the proposed Second Amended Complaint ("SAC"), ECF 20-2,[2] the Plaintiffs were demonstrating peaceably in Lafayette Square on June 1, 2020, to protest law enforcement officials' treatment of Black people in the United States. SAC ¶ 44. Plaintiffs Toni Sanders, J.N.C., Kishon McDonald, Garrett Bond, Keara Scallan, Lia Poteet, Dustin Foley, and E.X.F. all came to Lafayette Square to exercise their constitutional rights to assemble, speak, and petition the government. SAC ¶¶ 86, 94, 102, 111, 121, 134. The remaining Plaintiff, Black Lives Matter D.C. ("BLMDC") is a limited liability corporation and the local chapter of the nationwide "Black Lives Matter" movement. SAC ¶ 9.  Members of BLMDC were demonstrating in Lafayette Square on June 1, 2020. SAC ¶ 9.

Law enforcement officers from federal law enforcement agencies and the military (the "John Doe" Defendants) and from non-federal, non-D.C. law enforcement agencies, including at least the Arlington County Police (the "John Poe" Defendants), surrounded Plaintiffs and other civil rights activists assembled in Lafayette Square. SAC ¶ 45. The Doe and Poe Defendants, suddenly and without audible warning, charged the protestors assembled at Lafayette Square, SAC ¶¶ 52, 58, and used various weapons against them, SAC ¶¶ 55–57. These events all occurred prior to the 7:00 PM curfew, SAC ¶ 61, while Plaintiffs were exercising their rights to speak, assemble and petition the government. The Doe and Poe Defendants forcibly ejected the peaceful protestors from the Square. SAC ¶ 58. Doe and Poe Defendants charged at Plaintiffs McDonald, SAC ¶ 98, and Scallan, SAC ¶ 114, forcing them from the Square. Plaintiff Poteet left the Square with the assistance of another protester after a Doe or Poe Defendant brutally beat her. SAC ¶¶ 128–29.

---

[2] Plaintiffs cite to the proposed Second Amended Complaint, which seeks to add two additional plaintiffs who assert claims against additional defendants affiliated with the D.C. Metropolitan Police Department (as well as claims against the existing defendants).

Doe and Poe Defendants drove Plaintiff Bond from the Square, charging at him with batons and shields while he attempted to administer medical aid to another protester. SAC ¶ 106. Plaintiffs Sanders and J.N.C., a minor, fled from Doe and Poe Defendants when they deployed tear gas. SAC ¶¶ 90–91. Plaintiffs Foley and E.X.F., a minor, were driven by the actions of Doe and Poe Defendants from the northwest corner of Lafayette Square one block west to the intersection of H and 17th Streets NW, where they were tear-gassed by the "John Roe" Defendants (members of the Metropolitan Police Department). SAC ¶¶ 140, 144–49.

The Doe, Poe, and Roe Defendants officers used various weapons against Plaintiffs and members of the putative Plaintiff class. Multiple Doe or Poe officers repeatedly struck Plaintiff McDonald with their shields, leaving bruises on his body. SAC ¶ 96. The officers continued to strike Mr. McDonald even after he started to leave the demonstration site. SAC ¶ 96. While being pushed from the Square, Plaintiff Scallan was hit with rubber bullets, which bruised her arm and cut her lips and face, making it painful to use her arm and jaw for days. SAC ¶¶ 115, 119. An unnamed Doe or Poe officer charged Plaintiff Poteet, pushing her to the ground, beating her, and knocking her phone from her hand. SAC ¶ 127. When Plaintiff Poteet tried to pick up her phone, the officer beat her again. SAC ¶ 128. The force left welts on her torso and bruises which lasted multiple days, including on her knee where she previously had ACL surgery. SAC ¶¶ 128, 130.

The Doe, Poe, and Roe officers also used chemical weapons against protestors. SAC ¶¶ 55–56. Plaintiffs McDonald and Scallan came into contact with tear gas, which affected their eyes and breathing. SAC ¶¶ 97, 117. Plaintiff Sanders also felt the effects of the chemical irritants. SAC ¶ 90. Multiple flash bangs exploded at Plaintiff Poteet's feet, which made it impossible for her to breathe without coughing. SAC ¶ 129. Roe Defendants fired tear gas canisters at fleeing protestors, including Plaintiffs Foley and E.X.F. SAC ¶ 148. Plaintiffs Foley and E.X.F. felt severe effects of

the tear gas, including burning eyes and difficulty breathing. SAC ¶ 149. Despite the fact that Plaintiff Foley alerted officers to E.X.F.'s medical distress, Defendant officers provided no assistance, yelling at Plaintiffs Foley and E.X.F. to move into a cloud of tear gas further down the street. SAC ¶¶ 151–53. The gas exacerbated their symptoms. SAC ¶ 153.

The Plaintiffs have sued the Doe, Poe, and Roe officers for damages for violating their First and Fourth Amendment rights and for conspiracy to deprive them of their civil rights under 42 U.S.C. § 1985(3) and failing to prevent harms under such a conspiracy under 42 U.S.C. § 1986. SAC ¶¶ 197–99, 202, 211–12. For two of Plaintiffs' damages claims, the only defendants they could name in the complaint were unknown officers because they did not have the opportunity to identify their assailants in the melee; for two other claims, Plaintiffs could name only one supervisory official individually (Defendant Barr) in addition to the unknown officers. SAC ¶¶ 176, 180–81, 183–85, 219, 223–24, 226–28 (Claims 1, 2, 7, and 8). Accordingly, claims against the Doe, Poe, and Roe officers are at the heart of Plaintiffs' attempt to seek damages for their injuries and the violent suppression of their speech.

Plaintiffs filed their initial complaint against the federal and Arlington County defendants on June 4, 2020, ECF 1, and amended it as of right on June 9 to add one additional Plaintiff, one additional Defendant, and class action allegations, ECF 11. After new information came to light showing that D.C. police were also involved in tear-gassing Lafayette Square demonstrators, Plaintiffs moved on July 8 to amend again to add two more Plaintiffs and the D.C. defendants. ECF 20. The existing Defendants took no position on that motion, which remains pending.

## ARGUMENT

**I. The Court Should Grant Limited Early Discovery To Identify Unnamed Defendants.**

A. _Early Discovery to Identify "Doe" Defendants Is Regularly Allowed._

Fed. R. Civ. P. 26(d)(1) permits early discovery by court order. "It is well established that plaintiffs are permitted to proceed against John Doe Defendants so long as discovery can be expected to uncover the defendant's identity." *Strike 3 Holdings, LLC v. Doe*, ___ F.3d ___, No. 18-7188, 2020 WL 3967836, \*5 (D.C. Cir. July 14, 2020). Discovery identifying unnamed Defendants must occur early in the case, because the Defendants must be identified and served for the lawsuit to proceed against them. Accordingly, this Court regularly grants early discovery to identify "Doe" defendants. Just last month, the D.C. Circuit reversed the denial of the plaintiff's Rule 26(d)(1) motion for early Doe discovery and resultant dismissal of the case. *Id.* at \*8. As Judge Kollar-Kotelly explained earlier in *Laface Records LLC v. John Does 1-51*, No. 08-cv-1569 (CKK), 2008 WL 4517178, at \*1 (D.D.C. Oct. 6, 2008), "good cause exists for Plaintiffs' discovery because Defendants must be identified before this suit can progress further." *Accord Warner Bros. Records v. Does 1-6*, 527 F. Supp. 2d 1, 2 (D.D.C. 2007) ("The Court finds that plaintiffs have made a showing of good cause for the discovery they seek, as the information is not only relevant but crucial to the prosecution of plaintiffs' claims. This litigation cannot go forward without the true identities of the defendants.").

This Court, when evaluating early discovery requests, applies a standard of "good cause" or "reasonableness," *see, e.g., Dunlap v. Pres. Advisory Comm'n on Election Integrity*, 319 F. Supp. 3d 70, 104 (D.D.C. 2018); *Garnett v. Zeilinger*, No. 17-CV-1757 (CRC), 2017 WL 8944640, at \*1 (D.D.C. Dec. 15, 2017); *Attkisson v. Holder*, 113 F. Supp. 3d 156, 162 (D.D.C. 2015) (equating "reasonableness" and "good cause" in this context), which includes consideration of the

following non-exclusive factors: whether a preliminary injunction is pending; the breadth of the discovery; the purpose for the discovery; the burden on the defendants to comply; and how far in advance of regular discovery the request was made. *See, e.g., Dunlap*, 319 F. Supp. 3d at 104; *Legal Tech. Grp., Inc. v. Mukerji*, No. CV 17-631 (RBW), 2017 WL 7279398, at *3 (D.D.C. June 5, 2017); *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 98 (D.D.C. 2014). Here, "the first factor is inapplicable because a motion for a preliminary injunction is not pending." *Attkisson*, 113 F. Supp. 3d at 162.

The D.C. Circuit recently identified one consideration that is *not* properly part of the analysis: an assessment of the merits of Plaintiffs' claims. In *Strike 3 Holdings*, this Court had denied a motion for early discovery in part because it "believed [the plaintiff] would have no prospect of surviving a Rule 12(b)(6) motion even if it learned the [defendant's] identity"; the D.C. Circuit reversed, criticizing that reasoning as "flawed" and admonishing, "At this stage, the court is not asked to pass judgment on the strength of the plaintiff's allegations against the defendant, but to determine whether the plaintiff should have the opportunity to name that defendant in the first place." 2020 WL 3967836, at *5. Thus, to the extent Defendants' opposition to this motion stems from their position on the merits, that is not an appropriate factor weighing against early discovery to identify defendants.

B. *Plaintiffs Satisfy The Good Cause Standard Here.*

The facts pleaded in Plaintiffs' complaint demonstrate good cause for expedited discovery. First, the information is essential to prosecuting Plaintiff's claims. Second, the requested discovery is narrowly tailored to the purpose of identifying the unknown Defendants. Third, the requested information is likely to be found and cannot be obtained through alternative means. Fourth, the requested discovery will not be unduly burdensome.

**1.** The Plaintiffs seek discovery—the names and other identifying information of the officers—that is essential to prosecuting their damages claims. Of Plaintiffs' six claims for damages, four—Claims 1, 2, 7, and 8—are pleaded against either Doe, Poe, and/or Roe Defendants only (Claims 7 and 8), or these unnamed Defendants plus just one other Defendant (Claims 1 and 2). Accordingly, the bulk of Plaintiffs' damages claims require the naming of the Doe, Poe, and Roe Defendants. Not only are Plaintiffs unable to proceed against most of their Defendants without this discovery, but if the unnamed Defendants are identified later, they will have been unable to participate in the initial dispositive-motion briefing—possibly missing the chance to weigh in on issues of law relevant to their defenses and further generating a new round of briefing from these Defendants that could be avoided if they were added at the outset.

There is, additionally, a significant risk that without early discovery Plaintiffs will lose one of their claims to a statute of limitations. Although a three-year limitation period applies to Plaintiffs' claims under 42 U.S.C. § 1983, *see Earle v. District of Columbia*, 707 F.3d 299, 305 (D.C. Cir. 2012), and *Bivens* claims, *see Jones v. Kirchner*, 835 F.3d 74, 82 n.7 (D.C. Cir. 2016), claims under 42 U.S.C. § 1986 must be, by the terms of that statute, "commenced within one year after the cause of action has accrued." Plaintiffs' § 1986 claim runs against all Defendants, including the Doe, Roe, and Poe Defendants. SAC ¶¶ 211–12. Because the incident in Lafayette Square occurred on June 1, 2020, Plaintiffs must name the individual Defendants in an amended complaint by June 1, 2021. Plaintiffs understand that Defendants intend to move to dismiss, and given the weighty issues raised by this case, it is quite possible that by the time briefing, argument, and decision on a motion to dismiss are completed, an answer filed, and the Rule 26 schedule conference held and the Rule 16 scheduling order filed to kick off discovery, the one-year period would have run. Hence, there is a serious risk that naming the Defendant officers will not be

possible before the statute of limitations on the § 1986 claim runs. Both the centrality of the desired information to Plaintiffs' claims and the risk of losing one of their claims to the statute of limitations support a finding of good cause.

**2.** The requested discovery is narrowly tailored to its legitimate purpose. This Court has described circumstances where "a plaintiff alleging civil-rights violations by law-enforcement officers may be unable to identify the officers precisely, but may use other specific information known about the officers to tailor discovery requests to uncovering their full identity" as a "common situation" where expedited discovery may be granted since the Plaintiff has "knowledge of certain unique characteristics [of an unnamed Defendant]" such as "the fact that they were working a particular shift in a particular location[.]" *Attkisson*, 113 F. Supp. 3d at 162–63. Because the Plaintiffs have already alleged specific, unlawful actions taken by the Defendants, the requested expedited discovery is narrowly tailored to identifying the unnamed persons who took such action.

To identify the Defendants who were present in Lafayette Square or otherwise conspired to deprive Plaintiffs of their rights, Plaintiffs have drafted four narrow interrogatories and five limited requests for production of documents. The interrogatories seek (1) the names of all law enforcement or military agencies with officers present during the incident, (2) identifying information for each officer who was present and on duty during the incident, (3) whether each officer was equipped with and used or discharged a weapon, and (4) the name and current work address of every other person who was involved in the removal or use of force against demonstrators during the Lafayette Square incident on June 1, 2020. The requests for document production similarly seek information identifying the unnamed Defendants. They request lists of (1) officers present during the incident, (2) the names of the units or groups to which such officers

were assigned, (3) persons who oversaw, managed, or coordinated the actions taken by the officers, (4) officers who were equipped with certain weapons during the incident, and (5) officers who used or discharged such weapons during the incident.

This information is essential to identifying the Doe, Poe, and Roe Defendants. The names, badge numbers, and ranks of the officers will allow their identification from photographs or videos of the events or the recollection of plaintiffs or witnesses. The current work addresses of officers will enable service of process. Although the requested lists will include many officers, that breadth is necessary because many officers participated in the attack on the Plaintiffs and the members of the putative Plaintiff class, and many officers used or discharged weapons on them or at them. The Plaintiffs assert conspiracy and constitutional claims against the Defendants who cleared them from the Square. Plaintiffs also assert claims against the officers and those supervisors who participated in and ordered the use of force, including rubber bullets, tear gas, smoke bombs, or other chemical irritants against them. Identifying which officers were issued which weapons and whether they used or deployed such weapons would narrow the group of officers who could have used such weapons against Plaintiffs and class members. Similarly, the name or number of any unit to which the officer was assigned during the incident is critical to identifying which supervisors were responsible for which conduct. The names of supervisors or other individuals who coordinated the officers' actions are necessary to the Plaintiffs' conspiracy claims, since all the individuals who coordinated to deprive Plaintiffs of their rights are implicated in the alleged conspiracy. In sum, each of these pieces of information will allow the Plaintiffs to identify the unknown Defendants, to ascertain which claims are relevant against which officers, and to name all currently-unknown parties without confronting statute-of-limitations issues.

Photographs of the officers are also essential to identify the Doe, Roe, and Poe Defendants. Plaintiffs will use the photographs to identify the specific officers who allegedly violated their rights by comparing the photographs to their memories of the events and to available images of the events. It is hard to imagine how Plaintiff Poteet, for instance, who was repeatedly beaten by a specific officer, would be able to identify that officer without access to his photograph. Plaintiffs have access to some photographic evidence of the events in Lafayette Square, and comparing officers' photographs to that evidence would allow identification of the officers involved. Officer photographs, in conjunction with badge numbers and officer names, can help identify officers in photographic evidence containing only blurred or partial facial features along with partial badge numbers or partial names. Finally, Plaintiffs have been investigating the facts and have identified witnesses (and putative class members) who were present in the same places and subjected to the same treatment as Plaintiffs; these witnesses may be able to identify Defendant officers using the photographs.

**3.** The desired information—the identity of the individual Defendants—is likely to be found because the law enforcement agencies that the named defendants head are likely to be in possession of records showing which of their officers were present in Lafayette Square on June 1, 2020, and the other requested information. The Park Police's use of force guidelines, for instance, require that "all incidents involving the use of force and the display of weapons must be reported." *Law Enforcement Reference Manual*, Nat'l Park Serv. at 1, 111, https://www.nps.gov/policy/ Redacted_RM-9.pdf (last visited Aug. 4, 2020). The Metropolitan Police Department Guidelines also require reporting use of force incidents, including the use of "less lethal" weapons such as rubber bullets. *Use of Force (GO-RAR-901.07)*, Metro. Police Dep't, at 1, 2, 4, 14 (Nov. 3, 2017), https://go.mpdconline.com/GO/GO_901_07.pdf (last visited Aug. 4, 2020). Similarly, MPD is

required to keep records of the officers to whom pepper-spray munitions are issued and by whom they are used. *See* ECF 21, Judgment, *Kaddoura v. District of Columbia*, No. 1:06-cv-00099-ESH (D.D.C. June 29, 2007). The desired information should already be part of the Defendants' routine recordkeeping, available within their internal files. This information cannot be obtained through alternative means, since the agencies themselves would be the only organizations retaining use-of-force reports and lists of officers who were present at the incident, how they were equipped, and who coordinated their actions. The existence of this identifying information weighs in favor of granting the Plaintiffs' motion.

    4. The requested discovery will not unreasonably burden any of the law enforcement agencies, as the requested information is maintained in their business records. The scope of the request, tailored to identifying and effecting service on the unnamed Defendants, is reasonable. It is not a request seeking information "that would go to the heart of this case" or address substantive merits issues. *Guttenberg*, 26 F.Supp.3d at 98. In contrast to the slight burden on Defendants if the discovery is allowed, the Plaintiffs stand to lose their claims if they cannot identify the individuals who violated their rights. Denying Plaintiffs' motion, then, would impose a great burden on them, and save Defendants comparatively little.

    The limited expedited discovery requested in this motion will advance the progress of the case by allowing Plaintiffs to amend their complaint in a timely manner to include the true names and identities of the officers who violated Plaintiffs' rights on June 1, 2020. As in *Strike 3 Holdings*, Plaintiffs have demonstrated the requisite good cause "because [their] lawsuit cannot proceed without the requested discovery and because it would be improper for the court to dismiss the[ir] claims before [they have] the opportunity to engage in discovery to learn the defendant[s'] identity." 2020 WL 3967836, at *2.

**II.  The Court Should Stay Defendants' Response Deadlines.**

The requested discovery is of most use to Plaintiffs at the beginning of the case. Moreover, an important purpose of naming the Doe, Poe, and Roe officers is allowing those Defendants to participate in the case as early as possible, which will be to the benefit of all parties—including themselves—and to the Court. Thus, to enable that participation and prevent duplicative briefing, the Court should stay Defendants' deadlines to respond to the complaint, give Plaintiffs 45 days to amend after Defendants produce the discovery Plaintiffs request, and give Defendants a further 45 days to respond to the amended complaint. That amount of time will enable the Plaintiffs to use the discovery, together with the information they already have, to identify the unnamed Defendants and file the appropriate amended complaint.

**CONCLUSION**

For the foregoing reasons, Plaintiffs' motion should be granted and Defendants' extension motion (ECF 23) should be denied as moot. A proposed order is filed herewith.

August 5, 2020                                  Respectfully submitted,

/s/ Scott Michelman
Scott Michelman (D.C. Bar No. 1006945)
Arthur B. Spitzer (D.C. Bar No. 235960)
Michael Perloff (D.C. Bar No. 1601047)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
OF THE DISTRICT OF COLUMBIA
915 15th Street NW, Second Floor
Washington, D.C. 20005
(202) 457-0800
smichelman@acludc.org
aspitzer@acludc.org
mperloff@acludc.org

Kaitlin Banner (D.C. Bar No. 1000436)
Tristin Brown (D.C. Bar No. 1671642)
Dennis Corkery (D.C. Bar No. 1016991)
Hannah Lieberman (D.C. Bar No. 336776)
Jonathan Smith (D.C. Bar No. 396578)

WASHINGTON LAWYERS'
COMMITTEE FOR CIVIL RIGHTS AND
URBAN AFFAIRS
700 14th Street, NW, Suite 400
Washington, D.C. 20005
(202) 319-1000
kaitlin_banner@washlaw.org
tristin_brown@washlaw.org
dennis_corkery@washlaw.org
hannah_lieberman@washlaw.org
jonathan_smith@washlaw.org

Jon Greenbaum (D.C. Bar No. 489887)
Arthur Ago (D.C. Bar No. 463681)[3]
David Brody (D.C. Bar No. 1021476)
Arusha Gordon (D.C. Bar No. 1035129)
Noah Baron (D.C. Bar No. 1048319)
LAWYERS' COMMITTEE FOR CIVIL RIGHTS
UNDER LAW
1500 K Street N.W., Suite 900
Washington, D.C. 20005
(202) 662-8600
jgreenbaum@lawyerscommittee.org
aago@lawyerscommittee.org
dspence@lawyerscommittee.org
dbrody@lawyerscommittee.org
agordon@lawyerscommittee.org
nbaron@lawyerscommittee.org

John A. Freedman (D.C. Bar No. 453075)
David E. Kouba (D.C. Bar No. 483145)
Thomas D. McSorley (D.C. Bar No. 1001890)
Sonia Tabriz (D.C. Bar No. 1025020)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, N.W.
Washington, D.C. 20004
(202) 942-5000
John.Freedman@arnoldporter.com
David.Kouba@arnoldporter.com
Tom.McSorley@arnoldporter.com
Sonia.Tabriz@arnoldporter.com

*Counsel for Plaintiffs*[4]

---

[3] Admission to this Court pending.
[4] Counsel wish to acknowledge the assistance of Harvard Law School student Mayze Teitler in the preparation of this motion.