**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BLACK LIVES MATTER D.C., et al.,<br><br>                **Plaintiffs,**<br>    v.<br><br>DONALD J. TRUMP, et al.,<br><br>                **Defendants**. | Case No: 1:20-cv-01469-DLF |

**OPPOSITION OF ATTORNEY GENERAL WILLIAM P. BARR, IN HIS INDIVIDUAL CAPACITY, TO PLAINTIFFS' MOTION FOR EARLY DISCOVERY AND TO STAY DEFENDANTS' RESPONSE DEADLINE**

Following days of unrest in the nation's capital, on June 1, 2020, law enforcement officers dispersed a large crowd that had gathered in Lafayette Square across from the White House. In their complaint, plaintiffs allege that the Attorney General gave the order to clear the park, which plaintiffs claim violated their constitutional and statutory rights. Plaintiffs sue the Attorney General personally for money damages under *Bivens v. Six Unknown Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), as well as 42 U.S.C. §§ 1985(3) and 1986. The Attorney General maintains that the claims against him are not viable and, as is his right, is preparing to file a motion to dismiss that will assert several threshold defenses from suit, including qualified immunity.

In addition to suing the Attorney General personally for damages, plaintiffs sue the President, the Attorney General, and other high-ranking government officers in their official capacities, challenging the constitutionality of the government's actions in clearing the park and demanding injunctive relief. Plaintiffs also purport to sue approximately 150 unnamed "John Doe" federal and state officers in their individual capacities, asserting a variety of claims under *Bivens*, 42 U.S.C §§ 1983, 1985(3), and 1986.

1

Pursuant to Rule 26(d) of the Federal Rules of Civil Procedure, plaintiffs now move to obtain early discovery from the United States,[1] broadly seeking identifying information for every federal employee in Lafayette Square on June 1. *See* Motion, ECF No. 27 (Pls. Disc. Mot.). Plaintiffs also move to stay the named defendants' responses to the complaint—and thus to defer a ruling on their defenses to suit—until after plaintiffs acquire the requested information. *Id.*

Plaintiffs fail to demonstrate that they are entitled to a stay of the Attorney General's forthcoming motion to dismiss the individual capacity claims against him. Even if plaintiffs obtain early discovery and decide who they might want to sue, that would ultimately make no difference to the resolution of the Attorney General's dismissal motion, which will depend solely on his *own* alleged conduct and not the identity, or conduct, of any other person. There is simply no justification for holding the Attorney General's entitlement to a swift resolution of the individual capacity claims against him hostage to the outcome of a dispute over discovery matters immaterial to his motion to dismiss. Indeed, the primary grounds for dismissal the Attorney General will rely on—qualified immunity and the absence of a *Bivens* cause of action—are threshold barriers to suit that must be decided at the earliest possible stage of litigation, prior to any discovery. Simply put, plaintiffs have it backward: where qualified immunity and the recognition of a *Bivens* cause of action are at issue, it is discovery—not the resolution of those threshold issues—that should be stayed. Plaintiffs' motion should be denied.

---

[1] While plaintiffs nominally seek discovery from the named defendants in their official capacity, their discovery demands, like their official capacity claims, in reality are directed toward the United States government, which is the real party in interest on the official capacity claims. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

## BACKGROUND

On June 4, 2020, plaintiffs filed this lawsuit against the above-mentioned named defendants as well as unidentified federal and state law enforcement officers. In the complaint, plaintiffs allege that the Attorney General issued an order to clear Lafayette Square. *See* Second Amended Complaint, ECF No. 20-2 (Am. Compl.) ¶¶ 5, 17, 49. Plaintiffs also allege (with few identifying details) that unidentified law enforcement officers were on the scene and that some of those officers forcibly removed them from the park. *See* Am. Compl. ¶¶ 105-07, 115-18, 126-29.

In their motion, plaintiffs seek early discovery from the United States, demanding that it answer interrogatories and disclose a broadly defined range of documents and information about the federal officers in the park on June 1 who allegedly worked for six different federal agencies. Pls. Disc. Mot. at 1-2; *Id*. at Exhibit A. They also seek documents from the District of Columbia and Arlington County, Virginia, identifying the unnamed state and local defendants. *Id*. Plaintiffs further move to stay defendants' response deadline and briefing on dispositive motions, which would forestall a decision on the viability of plaintiffs' claims against the named defendants until after discovery of the "Doe" defendants' identities. Pls. Disc. Mot. at 2. Plaintiffs argue that they need early discovery to name the "Doe" defendants before the one-year limitations period on their § 1986 claims expires. *See* Pls. Disc. Mot. at 2, 8. Plaintiffs contend that the Court should stay dispositive motions because consideration of the named defendants' motions in the usual course, as provided by the Federal and Local Rules, would "possibly" deprive the unnamed defendants of an early chance to "weigh in" on issues of law relevant to their defense. As explained below, plaintiffs' motion should be denied.[2]

---

[2] The Attorney General agreed to accept personal service of the complaint on August 3, 2020, and his motion to dismiss is therefore due on or before October 2, 2020. The parties had originally agreed to a briefing schedule before plaintiffs decided to seek this stay.

## ARGUMENT

I. **The Court Should Decline to Stay Consideration of the Attorney General's Forthcoming Dismissal Motion Because Plaintiffs' Proposed Early Discovery Has No Bearing on His Threshold Defenses.**

A stay of a named defendant's dispositive motion pending the discovery of "John Doe" defendants' identities is nearly unheard-of, as plaintiffs' own motion reveals. Plaintiffs do not cite a single case granting this type of stay, and we have found none. Indeed, the more typical course for pretrial proceedings is the opposite approach: a stay of discovery pending the resolution of the defendant's dispositive motion. *See Chavous v. D.C. Fin. Responsibility & Mgmt. Assistance Auth.*, 201 F.R.D. 1, 2 (D.D.C. 2001) ("A stay of discovery pending the determination of a dispositive motion is an eminently logical means to prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial resources."). That is not only the norm—but effectively required—where an individual government defendant asserts his entitlement to qualified immunity. *Loumiet v. United States*, 315 F. Supp. 3d 349, 351-52 (D.D.C. 2018) (staying discovery against the United States pending resolution of qualified-immunity appeal); *see also Sai v. Dep't of Homeland Sec.*, 99 F. Supp. 3d 50, 58 (D.D.C. 2015).

Here, plaintiffs' proposed stay would prejudice the Attorney General by delaying a decision on the threshold issue of his qualified immunity from suit. "[Q]ualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). It is "an *immunity from suit* rather than a mere defense to liability," which means it is "effectively lost" if a case moves forward prematurely. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The Supreme Court has repeatedly warned that qualified immunity should be resolved "at the earliest possible stage in litigation,"

*Hunter v. Bryant*, 502 U.S. 224, 227 (1991), and "[u]ntil this threshold immunity question is resolved, discovery should not be allowed." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

The Supreme Court has also repeatedly cautioned that discovery should not occur prior to a determination of qualified immunity because participation in discovery is one of the primary burdens which qualified immunity is meant to avoid. *See Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009); *Harlow*, 457 U.S. at 818; *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998); *Loumiet*, 315 F. Supp. 3d at 351-52. As the Supreme Court has explained:

> The basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including avoidance of disruptive discovery. There are serious and legitimate reasons for this. If a Government official is to devote time to his or her duties, and to the formulation of sound and responsible policies, it is counterproductive to require the substantial diversion that is attendant to participating in litigation and making informed decisions as to how it should proceed. Litigation, though necessary to ensure that officials comply with the law, exacts heavy costs in terms of efficiency and expenditure of valuable time and resources that might otherwise be directed to the proper execution of the work of the Government.

*Iqbal*, 556 U.S. at 685 (internal quotation marks and citation omitted). Indeed, the defense of qualified immunity is effectively lost if officials must participate in discovery bearing on the merits of claims that fail, in the first instance, to allege a violation of clearly established law. *Mitchell*, 472 U.S. at 526 ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."); *Watkins v. Arlington Cty.*, No. 96-5120, 1997 WL 404878, at *1 (D.C. Cir. June 6, 1997) ("[A]ppellant was not entitled to the discovery he sought until after appellees' qualified immunity claims had been adjudicated."); *Zweibon v. Mitchell*, 720 F.2d 162, 171 (D.C. Cir. 1983) ("[D]iscovery should not be allowed until the threshold immunity question is resolved.") (internal quotation marks and citation omitted); *Chagnon v. Bell*, 642 F.2d

1248, 1266 (D.C. Cir. 1980) (affirming order granting stay of discovery pending outcome of qualified immunity motion).[3]

Here, plaintiffs' proposed stay clearly prejudices the Attorney General's interest in a quick resolution of the qualified immunity question. The stay would keep him entangled in this litigation until some yet-to-be determined time at which early discovery is completed, denying him the certainty of an early determination of his legal rights at the dismissal stage and demanding that he divert his attention from his vital responsibilities as the nation's chief law enforcement officer. Given this prejudice and plaintiffs' failure to offer legitimate grounds for a stay (or a single case supporting one), the Court should deny plaintiffs' request for a stay.[4]

Instead of considering the clear prejudice to the Attorney General—the one individual defendant that plaintiffs *name* in their lawsuit—plaintiffs instead speculate about prejudice to

---

[3] Moreover, with respect to plaintiffs' constitutional claims, before the qualified immunity issue can be addressed, the Supreme Court has held that courts must consider the "antecedent" question of whether a *Bivens* remedy is even available. *Hernandez v. Mesa*, 137 S. Ct. 2003, 2006 (2017); *cf. Wilkie v. Robbins*, 551 U.S. 537, 550 n.4 (2007) (the recognition of a *Bivens* action is "directly implicated by the defense of qualified immunity" and the "proper[]" subject of an "interlocutory appeal") (internal quotation marks and citation omitted). Thus, it would be inappropriate as a matter of law to move forward with discovery or any other pretrial matters prior to a ruling on the Attorney General's forthcoming Rule 12(b)(6) motion.

[4] In fact, the failure to decide the Attorney General's motion before allowing discovery might itself constitute an immediately appealable "constructive" denial of his qualified immunity from suit. *See, e.g., Wicks v. Miss. State Employment Servs.*, 41 F.3d 991, 994-95, 97 (5th Cir. 1995) (reversing district court's discovery order because "any discovery by [the plaintiff], even that limited in scope, is improper and immediately appealable as a denial of the benefits of the qualified immunity defense"); *X-Men Sec., Inc. v. Pataki*, 196 F.3d 56, 66 (2d Cir. 1999) (when the district court "bases its refusal to grant a qualified-immunity motion on the premise that the court is unable to, or prefers not to, determine the motion without discovery," it implicitly denies immunity, which is appealable as collateral order); *In re Montgomery Cty.*, 215 F.3d 367, 374 (3d Cir. 2000) ("join[ing] the other Circuit Courts of Appeals that have addressed this issue," to hold that an "implied denial" of qualified immunity is immediately appealable); *Smith v. Leis*, 407 F. App'x 918, 926 (6th Cir. 2011) (explaining that the district court's decision to permit further litigation prior to ruling on the immunity claims "directly contradicts this court's mandate that district courts may not avoid ruling on properly raised claims of immunity").

unnamed defendants who are not parties to this suit. Indeed, plaintiffs suggest that without a stay, the unnamed parties will lose the opportunity to "weigh in" on the issues briefed by the Attorney General, which would in turn prejudice their defenses if they are later added to the suit. Plaintiffs also argue that a stay will promote efficiency by preventing the unnamed defendants from engaging in duplicative briefing of the issues which the Attorney General raises in his motion to dismiss. Pls. Disc. Mot. at 13. But a stay is not necessary to ensure that unnamed defendants, assuming they are properly identified and named, will have an adequate opportunity to present all available defenses in a motion to dismiss or to otherwise avoid duplicative briefing.

If the case proceeds in the usual course, any later-named defendant will still have a full and fair opportunity to raise his or her own defenses, including qualified immunity. It is settled law that each individual defendant's entitlement to qualified immunity depends on each defendant's *individual* conduct, the nature of the particular claims against him, and his individual rank and duties. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1860 (2017); *Iqbal*, 556 U.S. at 676; *Pearson*, 555 U.S. at 231-32. Consequently, even if the Attorney General fails to obtain dismissal based on *his* alleged conduct and status, any later named defendants would remain free to seek dismissal on the ground that *their* own conduct and status entitles them to immunity.

This also might explain why plaintiffs fail to support their position for a stay with any authority. "Doe" discovery has nothing to do with the viability of a plaintiff's pleadings against a *particular* named government defendant. As a result, there is no reason to await the identification of unnamed defendants before deciding the threshold question of whether the plaintiff has pleaded facts that establish a valid claim against the specific named defendant. Here, because plaintiffs purport to request discovery only of the "Does'" identities, they do not seek any discovery relevant to the viability of their claims—as pled—against the Attorney General. Thus,

plaintiffs request for a stay of the Attorney General's dismissal motion should be denied because any "Doe" discovery is wholly unrelated to the resolution of *his* forthcoming motion.

Finally, a stay would also not solve the purported "duplicative briefing" problem. Once the stay is lifted, the Attorney General and each "Doe" would still be entitled to file separate motions to dismiss raising their own unique defenses. And each "Doe" could present those issues however he or she chooses. Hence a stay would not necessarily preclude duplication. Similarly, if the case proceeds in the usual course, any later named defendant can brief the issues in their motion to dismiss without significant duplication. For example, the "Does" could simply adopt or incorporate by reference any part of the Attorney General's previously filed dismissal motion which they wish to repeat, enabling them to efficiently address those previously briefed matters before moving on to arguments more specific to the particular claims against them.[5]

Ultimately, plaintiffs' purported need for a stay is a direct consequence of their own decision: They chose to sue and serve a sitting Attorney General in his personal capacity. If plaintiffs do not want the Court to timely adjudicate threshold defenses that he is entitled to raise and have resolved at the outset of the litigation, they can avoid this outcome by dismissing the Attorney General with prejudice.

---

[5] A ruling granting the Attorney General's motion might also streamline proceedings by demonstrating that certain types of claims brought by plaintiffs are not viable, in this context, against other federal officers. *Cf. Abbasi*, 137 S. Ct. at 1854-58; *Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203, 1210-11 (D.C. Cir. 2020) ("[I]f a plaintiff plainly has no 'realistic chance of successfully suing' the defendant, we will not allow the plaintiff to 'abuse[] the discovery process' by seeking irrelevant information.") (quoting *AF Holdings, LLC v. Does 1-1058*, 752 F.3d 990, 997 (D.C. Cir. 2014)).

**II.     The Court Should Reject Plaintiffs' Bid for Early Discovery Because There is No Good Cause for It, and Early Discovery Would Deprive the Attorney General of the Value of Qualified Immunity.**

For similar reasons, plaintiffs' motion for early discovery should be denied because any discovery—even sought from other parties—would frustrate a core purpose of qualified immunity and deprive the Attorney General of its benefits. A plaintiff seeking early discovery prior to a decision on a dismissal motion must show good cause for such discovery. *See* Fed. R. Civ. P. 26(d); *Sky Angel U.S., LLC v. Nat'l Cable Satellite Corp.*, 33 F. Supp. 3d 14, 22 (D.D.C. 2014). Thus, the plaintiff must show, at a minimum, that early discovery is justified by a balance of several factors, including: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *In re Fannie Mae Derivative Litig.*, 227 F.R.D. 142, 143 (D.D.C. 2005); *see Attkisson v. Holder*, 113 F. Supp. 3d 156, 162 (D.D.C. 2015).

In considering the burden on defendants, the need to preserve the value of an individual defendant's qualified immunity defense weighs heavily in favor of denying discovery prior to a ruling on the immunity issue. As discussed above, a central purpose of qualified immunity is to relieve the defendant of the burdens of discovery, and therefore immunity is effectively lost if discovery precedes the court's ruling on immunity.

Here, plaintiffs' demand for five categories of documents from at least six federal agencies (not to mention their demands to local officials) would trigger a significant volume of discovery prior to a ruling on qualified immunity and the availability of a *Bivens* remedy, in contravention of the Supreme Court's teachings. This infringement on the Attorney General's

9

defenses does not disappear simply because plaintiffs' discovery demands are addressed to the government rather than the Attorney General in his individual capacity:

> It is no answer to these concerns to say that discovery for petitioners can be deferred while pretrial proceedings continue for other defendants. It is quite likely that, when discovery as to the other parties proceeds, it would prove necessary for petitioners and their counsel to participate in the process to ensure the case does not develop in a misleading or slanted way that causes prejudice to their position. Even if petitioners are not yet themselves subject to discovery orders, then, they would not be free from the burdens of discovery.

*Iqbal*, 556 U.S. at 685-86; *see also Gilbert v. French*, 364 F. App'x 76, 84 (5th Cir. 2010) ("[I]n cases involving qualified immunity questions of this nature, the district court is correct to resolve the question of qualified immunity prior to permitting the plaintiff to proceed with discovery."); *Loumiet*, 315 F. Supp. 3d at 352-55 (staying all discovery, including that directed at the United States on FTCA claims, while individual defendants' qualified immunity was on appeal because discovery would prematurely involve "potentially immune individuals").[6]

---

[6] *See also, e.g.*, *Martin v. City of Albuquerque*, 219 F. Supp. 3d 1081, 1089-91 (D.N.M. 2015) (staying discovery for all parties based on one defendant's qualified immunity); *M.G. v. Metro. Interpreters & Translators, Inc.*, No. 12cv460-JM MDD, 2013 WL 690833, at *2 (S.D. Cal. Feb. 26, 2013) (staying all discovery even for parties without immunity); *Herrera v. Santa Fe Pub. Sch.*, No. CIV 11-0422 JB/KBM, 2012 WL 6846393, at *10 (D.N.M. Dec. 20, 2012) (halting discovery as to all parties—including those not raising immunity—pending resolution of immunity because "[t]he policy underlying a discovery stay [] not only protect[s] the public official from being personally subjected to the burdens of litigation, but it protects the public official from the attendant burdens"); *Collins v. Bauer*, No. 3:11-cv-887-B, 2011 WL 3874910, at *2 (N.D. Tex. Aug. 31, 2011) (explaining that because the motions to dismiss challenged the adequacy of the pleadings and the court had not yet ruled on them or determined whether limited discovery was necessary to resolve them, a complete stay of discovery including disclosures was warranted); *cf. Gaalla v. Citizens Med. Ctr.*, No. V-10-14, 2011 WL 23233, at *1 (S.D. Tex. Jan. 4, 2011) (observing that "this Court and others in this District have stayed entire actions even when only certain parties claim qualified immunity, particularly where the claims are closely related" and staying case pending interlocutory appeal of qualified immunity); *Ransaw v. United States*, No. 1:10 cv 01672, 2011 WL 1752160, at *2 (N.D. Ohio May 5, 2011) (staying all discovery against United States in FTCA case because defendants in related *Bivens* case had pending qualified immunity motion and allowing discovery as to the United States would allow plaintiffs to circumvent defendants' qualified immunity defenses).

Plaintiffs' hollow proclamation that they seek only the identities of the "Does" will not adequately protect the Attorney General from the burdens of discovery and the effective loss of qualified immunity because, among other things, their demands are not as limited as they claim. Plaintiffs wish to pose interrogatories demanding information about every officer in Lafayette Square on June 1, not just the officers who allegedly used force. *See* Pls. Disc. Mot., Exhibit A, Interrogatories 1-2. Plaintiffs propose to compel the production of documents, such as use-of-force reports and potentially any other document that happens to list the "Does'" names, which would likely contain information beyond the "Does'" identities and could include material bearing on the merits of plaintiffs' claims. *See* Pls. Disc. Mot. at 11-12. If such thinly veiled merits discovery were allowed, the Attorney General would be compelled to ensure that the information contained in those documents would not impact his defense, notwithstanding that plaintiffs do not seek the documents from him personally.[7] This burden, in turn, would deny him one of the fundamental benefits of qualified immunity and the other threshold defenses before the Court has an opportunity to rule. *See Loumiet*, 315 F. Supp. 3d at 353; *see also Attkisson*, 113 F. Supp. 3d at 160, 165 (D.D.C. 2015); *id*. at 164 (where plaintiff sought information about "any person" with knowledge or involvement of the relevant events, early discovery was denied; "[b]ecause plaintiffs are effectively asking the Court to allow them to conduct merits discovery—i.e. discovery that seeks to establish the truth of their allegations and to identify a broad range of individuals with knowledge not limited to the particular individuals plaintiffs

---

[7] While the Attorney General maintains that the claims against him are not viable, disclosure of government documents that may contain substantive information—and that might bear on the merits of the case—raises the possibility of some effect on his defense *if* the claims against him survive dismissal. Regardless of the scope of the proposed discovery or the parties from whom it is sought, if plaintiffs' request for early discovery is granted, the Attorney General effectively loses one of the significant protections afforded by the doctrine of qualified immunity.

11

intend to sue—the Court finds that the proposed discovery is not at all narrowly tailored to discovering the identity of Doe defendants.").

Plaintiffs allegedly fear that, if they do not receive early discovery, they will not be able to identify and name the "Does" in an amended complaint prior to the expiration of the one-year limitations period on their § 1986 claims. Pls. Disc. Mot. at 2, 8. But plaintiffs' exaggerated concern for the timeliness of just one of their many claims cannot justify early discovery.[8] At this juncture, plaintiffs improperly seek discovery far in advance of the normal timeframe for it, and the tenuous prospect that the limitations period for a single claim will pass without discovery of the "Does'" identities is not sufficient cause for early discovery. *See Attkisson*, 113 F. Supp. 3d at 162. Notably, plaintiffs fail to identify the particular steps they have taken to determine the "Does'" identities on their own. Because plaintiffs still have over nine months to learn the identities of the "Does," they still have a reasonable opportunity to identify them through their own efforts without burdensome early discovery which, as noted above, includes use-of-force reports and potentially any other document that happens to list the "Does'" names. Indeed, plaintiffs have adequate time to file a request for that information under the Freedom of Information Act and conduct further investigation based on news reports, public testimony, and photographs already in plaintiffs' possession. *See* Pls. Disc. Mot. at 11 ("Plaintiffs have access to some photographic evidence of the events in Lafayette Square . . ."); *cf. Mejia Banegas v. Doe*

---

[8] In addition to their § 1986 claims, plaintiffs assert claims under *Bivens*, § 1983 and § 1985(3), subject to additional defenses there. They may also choose to pursue damages claims under state law, including potentially against the United States under the Federal Tort Claims Act, 28 U.S.C. § 1346; *id.* §§ 2671-2680, subject to the government's sovereign immunity and other defenses. Thus, contrary to plaintiffs' assertion, this is not a case where their "'lawsuit cannot proceed without the requested discovery'" or where the Court would "'dismiss'" all of "'the[ir] claims before [they have] the opportunity to engage in discovery to learn the defendant[s'] identity.'" Pls. Disc. Mot. at 12 (quoting *Strike 3 Holdings, LLC*, 964 F.3d at 1206).

*#2*, No. 18-cv-02670-GPC-JLB, 2019 WL 1375577, at *3 (S.D. Cal. Mar. 26, 2019) (finding that "Plaintiff has not in good faith exhausted the traditional methods that could uncover the identities of the Doe Defendants" because he "fails to explain why he cannot submit a FOIA request online or via mail."); *Barrett v. City of Newburgh*, No. 13-cv-4118 (NSR), 2017 WL 1102672, at *6–7 (S.D.N.Y. Mar. 23, 2017) (noting that while discovery is one method of learning a "Doe's" identity, a plaintiff can also show diligence in identifying the "Doe" by filing a FOIA request or writing letters to government officials), *aff'd*, 720 F. App'x 29 (2d Cir. 2017); *20/20 Fin. Consulting, Inc. v. Does*, No. 10-cv-01006-CMA-KMT, 2010 WL 1904530, at *1 (D. Colo. May 11, 2010) (granting early discovery based in part on plaintiff's diligence in trying to learn defendants' identities via informal investigation). And the significant amount of news coverage and public testimony about the events underlying this case (some of which plaintiffs cite in their complaint) could provide another potential avenue for plaintiffs to acquire information without discovery. Given the early stage of the case and plaintiffs' failure to identify efforts taken to obtain the requested information on their own, their motion for early discovery should be denied.

*Strike 3 Holdings, LLC*, cited by plaintiffs, is inapposite. In that case, the plaintiff filed a copyright infringement suit against a single "John Doe" defendant, whose internet protocol (IP) address was known to the plaintiff, for allegedly distributing the plaintiff's adult films without permission. *Strike 3 Holdings, LLC*, 964 F.3d at 1205. The plaintiff hired a forensic investigator, who learned the defendant's internet protocol address. *See id*. at 1206. The plaintiff sought to subpoena the defendant's personal identifying information from his internet service provider in order to name the defendant in an amended complaint. *See id*. at 1206. The district court acknowledged that, despite the plaintiff's independent efforts to identify the defendant, the plaintiff's lawsuit could not proceed without the requested discovery. *See id*. at 1207. But the

13

district court denied the plaintiff permission to issue the subpoena, relying on the "salacious" nature of the plaintiff's films, the questionable nature of its litigation strategy, and the difficulty in determining that the Comcast subscriber who used the IP address, as opposed to someone else using his computer, had engaged in the infringement. *See id.* at 1206-07. The D.C. Circuit reversed, concluding that the district court abused its discretion in relying on the above improper considerations. *See id.* at 1205, 1208-14.

Significantly, in *Strike 3 Holdings*, unlike in this case, the plaintiff did not seek early discovery in a way that would threaten to impermissibly infringe on a federal official's qualified immunity. In addition, *Strike 3 Holdings* arose in the copyright infringement context, which requires uniquely swift action on discovery and resolution of the plaintiff's claims to provide any relief from the ongoing and fast-acting harm of the infringement. By contrast, those concerns are not implicated here. Furthermore, while the plaintiff in *Strike 3 Holdings* tried to identify the sole defendant through his IP address and demonstrated that its suit could not proceed at all without early discovery, plaintiffs here have not shown comparable efforts to identify the "Does" and cannot plausibly assert that they will lose their entire suit without early discovery. Accordingly, unlike in *Strike 3 Holdings*, this Court can and should deny plaintiffs' request for "Doe" discovery. *See Attkisson*, 113 F. Supp. 3d at 160, 165 (denying early discovery and observing that, unlike in other types of litigation, in "copyright-infringement lawsuits involving Doe Defendants, expedited discovery to learn the identity of the alleged copyright infringer often takes the form of narrow requests to the Internet Service Provider affiliated with the Internet Protocol address that did the alleged infringing.").

Finally, regarding any other relevant good cause factors, the Attorney General concurs in the United States' position that early discovery is not warranted for the reasons stated in the United States' filing in opposition to plaintiffs' motion.

## CONCLUSION

For these reasons, plaintiffs' motion for a stay and early discovery should be denied.

ETHAN P. DAVIS
Acting Assistant Attorney General
Civil Division

C. SALVATORE D'ALESSIO, JR.
Acting Director
Torts Branch, Civil Division


*/s/* John B. F. Martin
John B. F. Martin
Trial Attorney, Constitutional Torts Staff
Torts Branch, Civil Division
(Admitted to Practice as Government
Counsel in this Court under Local Rule
83.2(e))
U.S. Department of Justice
Ben Franklin Station, P.O. Box 7146
Washington, D.C. 20044
T: (202) 616-4492; F: (202) 616-4314
John.B.Martin@usdoj.gov


*/s/* David G. Cutler
David G. Cutler
Trial Attorney, Constitutional Torts Staff
Torts Branch, Civil Division
(Admitted to Practice as Government
Counsel in this Court under Local Rule
83.2(e))
U.S. Department of Justice
Ben Franklin Station, P.O. Box 7146
Washington, D.C. 20044
T: (202) 616-0674; F: (202) 616-4314
David.G.Cutler@usdoj.gov

*Attorneys for Attorney General William P. Barr in his individual capacity*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BLACK LIVES MATTER D.C., et al.,** )<br>)<br>**Plaintiffs,** )<br>**v.** )<br>)<br>**DONALD J. TRUMP, et al.,** )<br>)<br>**Defendants**. )<br>) | Case No: 1:20-cv-01469-DLF |

## [PROPOSED] ORDER

In light of plaintiffs' motion for early discovery and a stay of defendants' deadline to respond to the complaint (ECF No. 27), defendants' responses thereto, and the entire record herein, it is hereby **ORDERED** that the plaintiffs' motion for early discovery and a stay of defendants' deadline to respond to the complaint is denied in its entirety. The United States shall file its response to plaintiffs' second amended complaint by September 17, 2020. Attorney General William P. Barr shall file his response to plaintiffs' second amended complaint by October 2, 2020.

**SO ORDERED.**

_____     _____
Date                                                        Dabney L. Friedrich
                                                                   United States District Judge