UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BLACK LIVES MATTER D.C., *et al.*, <br><br> *Plaintiffs,* <br><br> v. <br><br> DONALD J. TRUMP, President of the United States of America, *et al.*, <br><br> *Defendants.* | Civil Action No. 20-1469 (DLF) |

**MEMORANDUM OF THE UNITED STATES IN OPPOSITION
TO PLAINTIFFS' MOTION FOR EARLY DISCOVERY**

The United States, by and through undersigned counsel, respectfully submits this memorandum in opposition to Plaintiffs' motion for early discovery, *see* ECF No. 27.  Plaintiffs seek early third-party discovery from the United States regarding the identities of, the possession and use of weapons by, and other information regarding the "John Doe" defendants named in their second amended complaint.  Mot. at 1-2.  As discussed below, Plaintiffs have failed to establish good cause for obtaining early discovery in this matter.  Accordingly, Plaintiffs' motion should be denied.

**BACKGROUND**

Plaintiffs in this lawsuit seek money damages and equitable relief from federal and state defendants for the roles they allegedly played in a demonstration held in Lafayette Park in Washington, D.C., to protest the killing of George Floyd by former officers of the Minnesota Police Department.  2d Am. Compl. (ECF No. 29) ¶¶ 2-3.  The demonstration occurred on and around June 1, 2020.  *Id.* ¶ 3.  Plaintiffs include 8 individuals who participated in the demonstration, *id.* ¶¶ 10-15, as well as the D.C. chapter of Black Lives Matter, which describes

itself as "a District of Columbia limited liability corporation" suing on behalf of its members, some of whom participated in the demonstration on June 1, 2020. *Id.* ¶ 9. The individual plaintiffs sue for themselves and purport to represent a class of "hundreds, perhaps thousands of people" who participated in the demonstration. *Id.* ¶ 166.

As relevant to the United States, Plaintiffs assert claims for injunctive and declaratory relief against the President, the Attorney General, the Secretary of Defense, the Acting Chief of the U.S. Park Police, the Director of the U.S. Secret Service, the Commanding General of the D.C. National Guard, and the Director of the Federal Bureau of Prisons—who are sued in their official capacities.[1] *Id.* ¶¶ 16-23. Plaintiffs claim that the alleged actions of federal law enforcement officers violated their rights of speech, assembly, and association and their rights to be free from unreasonable seizures under the First and Fourth Amendments to the U.S. Constitution. *Id.* ¶¶ 186-95. Plaintiffs also name "John Doe" defendants, described as "officers of the various federal agencies led by the Defendants[.]" Mot. at 1; *see* 2d Am. Compl. ¶¶ 24-26.[2]

On July 21, 2020, the parties met and conferred regarding the potential for early discovery aimed solely at identifying the John Doe officers and a briefing schedule in this action. The parties were able to reach an agreement regarding the briefing schedule, *see* Mot. for Extension of Time (ECF No. 23) at 1, n. 2, and undersigned counsel expressed to Plaintiffs'

---

[1]    Claims nominally pled against federal officials in their official capacities are actually claims against the United States. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *Gilbert v. DaGrossa*, 756 F.2d 1455, 1458 (9th Cir. 1985).

[2]    Plaintiffs also seek discovery regarding "John Poes," described by Plaintiffs as "officers of the Arlington County Police Department and other non-federal law enforcement officials from jurisdictions other than the District of Columbia," and "John Roes," officers of the D.C. Metropolitan Police Department ("MPD"). *See* Mot. at 1-2.

counsel the United States' general opposition to early discovery.[3]  Plaintiffs then proceeded to

file the instant motion, but did not provide the government with copies of their specific discovery

requests in advance.

Plaintiffs' early discovery motion does not pertain to their injunctive relief claims against

the United States.  Rather, Plaintiffs seek third-party discovery against the United States

regarding their damages claims against the John Doe defendants.[4]

Specifically, Plaintiffs request leave to propound four interrogatories.  *See* ECF No. 27-1.

First, Plaintiffs request identification of the "Law Enforcement or Military Entity" whose

officers were present during the incident.  Interrog. No. 1.  Plaintiffs also request the names,

rank, badge or identification number, unit, work address, and photograph of anyone who was

"present and on duty" during the incident.  Interrog. No. 2.  Next, Plaintiffs seek information

regarding the weapons each individual was equipped with, whether or not those weapons were

discharged or used.  Interrog. No. 3.  Finally, Plaintiffs also request the identities of each

individual "who authorized, planned, ordered, directed, advised, agreed upon, or participated in

the removal of or use of force against any demonstrators during the Incident."  Interrog. No. 4.

---

[3]     During the meeting, undersigned counsel expressed a willingness to respond to specific, potentially more limited requests for discovery sought by Plaintiffs, as required by Local Civil Rule 7(m).  Notably, Plaintiffs did not request any information beyond the identities of the John Doe defendants.  Because the discovery sought in Plaintiffs' motion involves information beyond these identities, Plaintiffs have not conferred with the United States regarding that request.  *See* LCvR 7(m).  This provides an independent reason to deny without prejudice discovery sought beyond the identities of the John Doe defendants.  *See Attkisson v. Holder*, 113 F. Supp. 3d 156, 161 n.3 (D.D.C. 2015) (noting that "Plaintiffs' apparent belief that because the defendants had previously expressed a position on the issue, they were somehow exempt from Local Civil Rule 7(m) is simply incorrect.  The meet-and-confer requirement serves not only to obtain the opposing party's potential consent to a motion, but also to provide an opportunity for the parties to narrow or clarify the scope of their dispute").

[4]     Plaintiffs also seek discovery from the MPD and Arlington County.  Mot. at 1.

In addition, Plaintiffs submit five requests for production of documents, encompassing "all Documents" "reflecting the name and/or badge number" of the federal officers; "name, unit number or other identifier" of any "Unit or Units of Officers," and "name and/or badge number" of "any Officer who oversaw, managed, or otherwise coordinated" the federal response.  *See* Requests for Production #1-3.  Plaintiffs also seek "all Documents" listing any officers equipped with weapons and those who "used or discharged" those weapons.  Reqs. for Produc. Nos. 4-5.

## PROCEDURAL HISTORY

On August 4, 2020, the United States sought an extension to respond to Plaintiffs' complaint based on a prior agreement between the parties regarding a briefing schedule.  *See* ECF No. 23.  The next day, Plaintiffs filed their motion for early discovery and sought to stay all Defendants' responses to the second amended complaint until after resolution of the request for expedited discovery.  Mot. at 2.  The Court denied the United States' extension motion and directed the United States to respond to Plaintiffs' early discovery motion.  *See* Minute Order dated August 5, 2020.

## LEGAL STANDARDS

"As a general rule, discovery proceedings take place only after the defendant has been served; however, in rare cases, courts have made exceptions, permitting limited discovery . . . to permit the plaintiff to learn the identifying facts necessary to permit service on the defendant." *Landwehr v. FDIC*, 282 F.R.D. 1, 3 (D.D.C. 2010) (quotation marks omitted).  Courts should deny motions for expedited discovery when it is "clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds."  *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980); *accord Newdow v. Roberts*, 603 F.3d 1002, 1010-11 (D.C. Cir. 2010) (denying motion for expedited discovery to identify Doe defendants when "[n]o amount of

discovery will uncover the identities of the unnamed defendants").  Therefore, "Plaintiffs lacking necessary information about unidentified defendants must seek such information through third-party subpoenas or other third-party discovery, rather than by naming the organizations who possess the desired documents as defendants themselves in an apparent attempt to compel disclosure."  *Butera & Andrews v. IBM Corp.*, 456 F. Supp. 2d 104, 114 (D.D.C. 2006).

In this district, courts typically employ a "good cause" standard for motions for expedited discovery.[5]  *See, e.g., Guttenberg v. Emery*, 26 F. Supp. 3d 88, 97-98 (D.D.C. 2014); *True the Vote, Inc. v. IRS*, Civ. A. No. 13-0734 (RBW), 2014 WL 4347197, at *7 (D.D.C. Aug. 7, 2014).  Courts typically consider five factors when evaluating a motion for expedited discovery under the good-cause standard: "'(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made.'"  *Guttenberg*, 26 F. Supp. 3d at 98 (quoting *In re Fannie Mae Derivative Litigation*, 227 F.R.D. 142, 142–43 (D.D.C. 2005)); *see Attkisson v. Holder*, 113 F. Supp. 3d 156, 162 (D.D.C. 2015).  Courts are not limited to these factors, but the factors provide "guidelines for the exercise of the Court's discretion."  *Id.*

---

[5]     Courts in this district have also adopted a different approach, referred to as the *Notaro* approach, which requires that the party seeking expedited discovery demonstrate "(1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted."  *In re Fannie Mae Derivative Litig.*, 227 F.R.D. 142, 142 (D.D.C. 2005) (quoting *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y.1982)).  Because Plaintiffs here do not meet the "more liberal" good-cause approach, *see Landwehr*, 282 F.R.D. at 3, they do not meet this higher standard either.

**ARGUMENT**

**I.   PLAINTIFFS HAVE NOT DEMONSTRATED GOOD CAUSE FOR EARLY
DISCOVERY.**

First, as undersigned counsel only represent the United States in this action and not the

individual "John Doe" defendants, the United States makes no representation of the merits of

Plaintiffs' claims against those defendants.  *See Strike 3 Holdings, LLC v. Doe*, No. 18-7188,

2020 WL 3967836, at *5 (D.C. Cir. July 14, 2020) ("At this stage, the court is not asked to pass

judgment on the strength of the plaintiff's allegations against the defendant[.]").

Nevertheless, Plaintiffs in this action have failed to establish good cause for the early

discovery they seek.  As an initial matter, there is no request for preliminary injunctive relief

pending before this Court, so the first factor clearly weighs against Plaintiffs.  *Guttenberg*, 26 F.

Supp. 3d at 98.   And, as discussed below, the remaining factors also militate against granting

Plaintiffs' motion because (1) Plaintiffs' discovery is overly broad; (2) Plaintiffs seek discovery

beyond the scope of identifying individual defendants; (3) the burden of responding to Plaintiffs'

request will be substantial for Defendants; and (4) Plaintiffs seek immediate discovery prior to

the Court ruling on, or the United States conceding, that they have stated a claim for relief.  *Id.*

**a.   Plaintiffs' Early Discovery Requests Are Overly Broad.**

"[A]n action may proceed against a party whose name is unknown if the complaint makes

allegations specific enough to permit the identity of the party to be ascertained after reasonable

discovery."  *Estate of Rosenberg ex rel. Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995);

*see also Landwehr v. FDIC*, Civ. No. 09-0716, 2010 WL 2572077, at *3 (D.D.C. June 28, 2010).

Here, Plaintiffs do not make any specific allegations against any particular "John Doe"

defendant.  *See generally* 2d Am. Compl.  The complaint describes these defendants as any

federal employee who "authorized, planned, or participated in the attack on peaceful protesters"

on June 1 in Lafayette Square.  *Id.* ¶ 24.  This type of "catch-all" pleading does not warrant the broad discovery sought here.  A court may allow a claim to proceed with a John Doe defendant as a placeholder "only when the identity of the alleged defendant is not known at the time the complaint is filed and the plaintiff is likely to be able to identify the defendant after further discovery."  *Chidi Njoku v. Unknown Special Unit Staff*, 217 F.3d 840 (4th Cir. 2000) (per curiam).  The designation is inappropriate where the John Doe defendant is used as a "catch-all provision, designed to encompass any individual with a potential connection to the harms suffered."  *Farmer v. Wilson*, Civ. A. No. 14-13256, 2014 WL 4629591, at *2 (S.D.W. Va. Sept. 15, 2014); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").  Here, Plaintiffs' apparent attempt to name any and all federal employees present at Lafayette Park during the allegations in question is a mere fishing expedition to attempt to identify people who may or may not have committed some wrong in some way related to Plaintiffs' claims.

Moreover, Plaintiffs' proposed discovery requests are not "narrowly tailored to discover the identity of Doe defendants[.]"  *Attkisson*, 113 F. Supp. 3d at 162.  As noted above, Plaintiffs seek information regarding the weapons with which each "John Doe" defendant was equipped and whether or not those weapons were discharged or used.  But nowhere in their operative complaint or motion do Plaintiffs purport to limit their individual capacity claims to individuals who possessed or used a weapon.  Such a broad request related to the possession and use of "weapons" touches on issues related to the merits—which also imposes a larger burden on the United States—and suggests that discovery is inappropriate at this stage.  *Cf. Guttenberg*, 26 F. Supp. 3d at 98.  Plaintiffs' proposed discovery requests are overly broad because Plaintiffs have

made no effort, for example, to tailor their requests based on the significant video footage of the events that captured certain (but far from all) interactions between law enforcement and civilians present at Lafayette Park on June 1. Further, Plaintiffs' sweeping request for documents "reflecting the name," "badge number" or "other identifier" would encompass hundreds, if not thousands, of irrelevant documents.

Additionally, requiring the disclosure of such sweeping information undoubtedly implicates serious concerns regarding the privacy and safety of the government employees who were in or near Lafayette Park on June 1. Therefore, even if the Court were to permit some early discovery in this action, a protective order would be necessary and appropriate.

### b.   The Purpose of Plaintiffs' Early Discovery Requests Does Not Relate To Their Claims Against the United States.

In considering whether good cause exists to grant a motion for expedited discovery, the Court also assesses the purpose of the motion. *Attkisson*, 113 F. Supp. 3d at 164. When a plaintiff will be irreparably harmed without expedited discovery, this factor weighs in favor of granting a motion for expedited discovery. *True the Vote*, 2014 WL 4347197, at *8. In addition, this factor supports a motion for expedited discovery when a plaintiff seeks to "gain evidence to get the court to preserve the status quo." *Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, 234 F.R.D. 4, 7 (D.D.C. 2006). If there is no urgency in conducting discovery, however, this factor weighs against granting expedited discovery. *Guttenberg*, 26 F. Supp. 3d at 98.

Here, Plaintiffs argue that early discovery is "essential" because they need the requested information to amend their complaint to name and serve the "John Doe" defendants in this action. Mot. at 2, 8. Plaintiffs argue that discovery is necessary because their damages claims "are asserted entirely or almost entirely" against the unnamed Defendants in their personal

capacities, *id.* at 2, and that there is a "significant risk" that the one-year statute of limitations

regarding their 28 U.S.C. § 1986 claim will run, *id.* at 8.  None of these arguments are availing.

First, Plaintiffs' statute of limitations concerns are misplaced.  Plaintiffs have not slept on

their right to file a lawsuit—indeed, they filed their action within three days of the alleged

incidents in Lafayette Park.  *See* Compl. (ECF No. 1).  Plaintiffs therefore cannot claim that there

is any "urgency" caused by the very existence of a statute of limitations.  *See Guttenberg*, 26 F.

Supp. 3d at 98; *Attkisson*, 113 S. Supp. 3d at 165.  Plaintiffs speculate that there is a "serious

risk" that the statute of limitations will have run before initial proceedings regarding a motion

under Federal Rule of Civil Procedure ("Rule") 12, answer, and Rule 26(f) conference have

concluded.  Mot. at 8.  But, considering the early stage of the litigation, such speculation is

particularly unwarranted.  Therefore, Plaintiffs have failed to adequately support their argument

that there is a "significant risk" that they will "lose" this claim without obtaining discovery at

this juncture.  *See* Mot. at 8.

Plaintiffs' concerns about service of process also miss the mark.  Indeed, such concerns

are mitigated because this Court has discretion to extend the deadline for completing service of

process upon a showing of good cause.  *See Landwehr*, 282 F.R.D. at 5 (noting that "an action

may proceed against a party whose name is unknown if the complaint makes allegations specific

enough to permit the identity of the party to be ascertained after reasonable discovery," but that

the plaintiffs in that case failed timely to serve the defendants not because of "the absence of

discovery, but instead, [due to] the absence of any specific allegations of wrongdoing by any

such individuals"); Fed. R. Civ. P. 4(m).  Plaintiffs are therefore not without options as relevant

deadlines approach in this litigation.

Finally, Plaintiffs do not seek discovery to prosecute their official capacity claims against the United States.  Similar to the plaintiffs in *Attkisson*, Plaintiffs here allege harm caused by United States government agents but lack the information necessary to identify those agents.  As Judge Sullivan noted in that case, [t]he solution . . . is not to sue high-level officials and seek to take expedited discovery from their employers."  *Attkisson*, 113 F. Supp. 3d at 164 n. 4; *see Butera & Andrews v. IBM Corp.*, 456 F. Supp. 2d 104, 114 (D.D.C. 2006) ("Plaintiffs lacking necessary information about unidentified defendants must seek such information through third-party subpoenas or other third-party discovery, rather than by naming the organizations who possess the desired documents as defendants themselves in an apparent attempt to compel disclosure.").  That is precisely what Plaintiffs have done here.  Accordingly, Plaintiffs should not be permitted to file a complaint for injunctive relief against the United States to endeavor to develop a cause of action for damages against unspecified federal officials.  *Id.* ("[F]undamental fairness commands that '[c]ounsel should not be allowed to file a complaint first and thereafter endeavor to develop a cause of action.'") (quoting *Weil v. Markowitz*, 108 F.R.D. 113, 116 (D.D.C. 1985)); *accord Attkisson*, 113 F. Supp. 3d at 164 n. 4 ("To the extent that plaintiffs intend to use the presence of government officials in this case to obtain discovery directly from government agencies, they have proceeded in a similarly misguided manner.").  Thus, the Court should deny their motion.

### c.      Plaintiffs' Early Discovery Unreasonably Burdens The United States.

Although Plaintiffs couch their requests as "limited" and "reasonable," Mot. at 12, Plaintiff's early discovery would impose a "significant" burden on the Defendants by forcing early disclosure of information while their counsel are in the early stages of investigating the events of June 1, and developing and evaluating potential defenses.  *See Dunlap*, 319 F. Supp. 3d

at 105 (finding that "[t]he burden of compliance with this subpoena could be significant").  Such

early discovery burdens defense counsel and is disruptive to the defense.  Plaintiffs seek

responses to four interrogatories and documents from five requests for production.  Mot. at Ex.

A, 5-7.  The limited number of these requests camouflages the complexity and breadth of the

requests.  The first request for production seeks "all Documents reflecting the name and/or badge

number of any Officer or Officers who were present during the Incident and within its perimeters

(as defined above)."  Mot. at Ex. A, 6.  The only limiting factor in this request is the officer's

name and his or her presence at Lafayette Square on June 1, underscoring the breadth of this one

request.  Moreover, the definitions Plaintiffs provide for their requests are "boilerplate" and

"expansive."  *See* Mot. at 3-5; *Dunlap*, 319 F. Supp. 3d at 105 (noting that "Plaintiff's subpoena

would further burden [the Plaintiff] because its boilerplate definitions are expansive").  As an

example, the Plaintiffs define "documents" to include emails, text messages, and "all recorded

communications of any kind."  Mot. at Ex. A, 3.

    Based on the current posture of this case, it would be superfluous to require extensive

discovery of each John Doe allegedly involved.  Plaintiffs' early discovery serves as a blanket

request for "all Documents" pertaining to each officer in the vicinity of Lafayette Square on

June 1.  The sheer number of officers present could mean the review and disclosure of thousands

of documents, which "would require significant time and resources to address."  *See Attkisson*,

113 F. Supp. 3d at 162, 165 ("[B]ecause of the breadth of the discovery requests, the burden of

complying with them would be heavy.").

    Because the Plaintiffs' requests are neither "minimal" nor "limited" in any meaningful

way, it would be unjust to require Defendants to respond prior to ruling on a motion to dismiss.

*See Guttenberg*, 26 F. Supp. 3d at 99 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558

(2007)) ("[I]f the Court were to grant plaintiffs' discovery motion, and then grant defendants' motion to dismiss for failure to state a claim, defendants would have been forced to expend significant resources responding to discovery requests in a case where plaintiffs did not have a viable cause of action."); *cf. Legal Tech Grp. v. Rajiv Mukerji & HBR Consulting LLC*, Civ. A. No. 17-0631 (RBW), 2017 WL 7279398, at *14 (D.D.C. June 5, 2017) (finding that the "discovery request would not place a significant burden on either defendant because the number of requests are minimal and . . . limited"). Rather, "[a]t the very least, reasonableness dictates that the Court consider defendants' motion to dismiss before requiring extensive and expensive discovery." *Guttenberg*, 26 F. Supp. 3d at 99; *see Attkisson*, 113 F. Supp. 3d at 165-66 (noting that "the request for expedited discovery comes well in advance of typical discovery).

      **d.**    **The Timing of Plaintiffs' Early Discovery Request Counsels Against Granting Their Motion.**

Here, the timing of Plaintiffs' motion also counsels against permitting discovery at this stage. Because discovery typically occurs after the resolution of motions to dismiss, *True the Vote*, 2014 WL 4347197, at *8, presenting a motion for expedited discovery prior to rulings on motions to dismiss is often disfavored. *Guttenberg*, 26 F. Supp. 3d at 99 ("[M]ost important for the Court's reasonableness analysis is the pendency of the defendants' motion to dismiss."). Indeed, the Local Civil Rules expressly delay the parties' Rule 26(f) conference—which commences discovery under the Rules, *see* Fed. R. Civ. P. 26(d)(1)—until defendants have answered the complaint—i.e., after the Court resolves any threshold, pre-answer Rule 12(b) motions. *See* LCvR 16.3(b) (noting that cases exempted from the Rule 26(f) conference

requirement include "cases in which no answer has yet been filed and cases in which a significant number of named defendants have not yet answered").[6]

Here, the United States has not yet responded to the complaint nor has the government conceded that Plaintiffs have stated a claim for prospective injunctive relief.  Plaintiffs do not dispute that they will be able to discern the individual actions of federal employees if any of their claims are permitted to proceed into discovery.  Rather, Plaintiffs aver that there is a "serious risk" that the statute of limitations will have run before a Rule 26(f) conference in this matter. Mot. at 8.  As noted above, this argument is based on pure speculation.  And Plaintiffs have failed to support their conclusory assertion that the requested information "cannot be obtained through alternative means."  Mot. at 7.  In any event, Plaintiffs do not claim that they would not be entitled to the information they seek after the Rule 26(f) conference in this matter, should the Court deny the United States' motion to dismiss.

In sum, the expedited discovery sought by Plaintiffs is unwarranted, and in any event should not commence until the United States' anticipated dispositive motion is resolved.  Indeed, to conserve the resources of the parties and the Court, the anticipated discovery should be put off at least until the anticipated dispositive motion by the named individual defendants is resolved.

## II.     THE COURT SHOULD SET A REASONABLE BRIEFING SCHEDULE.

As stated in Defendants' extension motion, the parties had previously reached an agreement that set Defendants' dispositive motion due by September 17, 2020; Plaintiffs' opposition due by October 27, 2020; and Defendants' reply due by November 25, 2020.  If the Court were to deny Plaintiffs' early discovery motion, the United States respectfully requests that the Court enter this agreed-upon briefing schedule.

---

[6]     For this reason, even filing a motion for expedited discovery after briefing of motions to dismiss has concluded is "well in advance of typical discovery."  *Landwehr*, 282 F.R.D. at 4.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for early discovery and enter the briefing schedule previously agreed upon by the parties.

Dated August 12, 2020                Respectfully submitted,

                                     MICHAEL R. SHERWIN
                                     Acting United States Attorney

                                     DANIEL F. VAN HORN, D.C. Bar No. 924092
                                     Chief, Civil Division

                                     /s/   *Christopher C. Hair*
                                     CHRISTOPHER C. HAIR, PA Bar No. 306656
                                     Assistant United States Attorney
                                     555 Fourth Street, N.W.
                                     Washington, D.C. 20530
                                     (202) 252-2541
                                     Christopher.Hair@usdoj.gov

                                     SEAN MAHARD, CT Bar No. 436524
                                     Special Assistant United States Attorney
                                     555 Fourth Street, N.W.
                                     Washington, D.C. 20530
                                     (202) 252-2574
                                     Sean.Mahard@usdoj.gov

                                     *Counsel for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BLACK LIVES MATTER D.C., *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>DONALD J. TRUMP, President of the<br>United States of America, *et al.*,<br><br>*Defendants*. | Civil Action No. 20-1469 (DLF) |

**[PROPOSED] ORDER**

In light of Plaintiffs' motion for early discovery, the United States' opposition thereto, and the entire record herein, Plaintiffs' motion is **DENIED**.  It is hereby **ORDERED** that the United States shall file its response to Plaintiffs' second amended complaint by September 17, 2020.  If the United States files a dispositive motion on that date, Plaintiffs' opposition shall be due by October 27, 2020; and the United States' reply shall be due by November 25, 2020.

**SO ORDERED**.

_____
Date

_____
Dabney L. Friedrich
United States District Judge