UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BLACK LIVES MATTER D.C., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, *et al.*, <br><br> Defendants. | Civil Action No. 20-1469 (DLF) |

### DISTRICT OF COLUMBIA DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO CONDUCT LIMITED EARLY DISCOVERY FOR THE PURPOSE OF IDENTIFYING UNNAMED DEFENDANTS

## INTRODUCTION

This case was originally filed against several federal defendants, alleging that various federal law enforcement agencies and personnel violated the constitutional rights of protestors at Lafayette Square on the evening of June 1, 2020. On August 5, 2020, the Court granted plaintiffs' motion for leave to file a Second Amended Complaint which added new claims and allegations against District of Columbia (District) defendants based on alleged conduct by Metropolitan Police Department (MPD) officers at a different location and after Lafayette Square was cleared by the unnamed federal law enforcement officers.

Now, plaintiffs have moved for leave to conduct undifferentiated early discovery against all defendants, with the aim of identifying specific individual officers as defendants. As to the District, however, plaintiffs' discovery requests are

unreasonable, overbroad and disproportionate to the needs of the case, especially given that plaintiffs do not assert that any specific individual MPD officer allegedly violated their rights. But even if the Court is inclined to allow early discovery over the District's objection, the District should not be required to do more than identify MPD officers who were present at the intersection of 17th and H Streets, N.W. between 6:00 p.m. and 7:00 p.m. on June 1, 2020, including the officers' unit designation and the identity of their supervisors. Because that information is all that is necessary for plaintiffs' stated purpose of identifying individual MPD officers, the remainder of the discovery requests against the District should be denied as unreasonable, overbroad and disproportionate to the needs of the case.

## BACKGROUND

Plaintiffs propose the following interrogatories and requests for production of documents, to identify individual law enforcement officers who allegedly violated their constitutional rights during protests at Lafayette Square on the evening of June 1, 2020. *See* Pls.' First Set of Interrogatories and Requests for Production to Defs. (First Requests) [27-1].

I. <u>Interrogatories</u>

1. State the name of each Law Enforcement or Military Entity whose Officers were present during the Incident and within its perimeters.

2. Using the specific definition of "Identify" set out above, identify each Officer who was present and on duty during the Incident and within its perimeters.

3. For each individual identified in your answer to Interrogatory 2, state whether that individual was equipped with a Weapon or Weapons during the Incident, and, if so, identify the Weapon or Weapons with which that

individual was equipped, and state whether that individual used or discharged such Weapon or Weapons during the Incident.

4. Using the specific definition of "Identify" set out above, identify each person, not identified in your answer to Interrogatory 2, who authorized, planned, ordered, directed, advised, agreed upon, or participated in the removal of or use of force against any demonstrators during the Incident.

## II. Requests for Production of Documents

1. Produce all Documents reflecting the name and/or badge number of any Officer or Officers who were present during the Incident and within its perimeters.

2. Produce all Documents reflecting the name, unit number, or other identifier of any Unit or Units of Officers who were present during the Incident and within its perimeters.

3. Produce all Documents reflecting the name and/or badge number of any Officer who oversaw, managed, or otherwise coordinated the actions taken during the Incident by any Officers of any Law Enforcement or Military Entity, any Unit of any Law Enforcement or Military Entity, or any group consisting of Officers from multiple Law Enforcement or Military Entities.

4. Produce all Documents listing any Officer or Officers who were equipped with Weapons during the Incident.

5. Produce all Documents listing any Officer or Officers who used or discharged Weapons during the Incident.

Plaintiffs directed the above interrogatories and document requests to all defendants.

*See generally* First Requests.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 26(d), parties may not seek discovery until after a Rule 26(f) conference, except in a proceeding exempt from initial disclosures, "or when authorized by [the federal] rules, by stipulation, or by court order." Fed. R. Civ. P. 26(d)(1). Early discovery, as with all discovery, is limited by

3

Fed. R. Civ. P. 26(b)(1) to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering … the parties' relative access to relevant information, … the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1); *see also Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203, 1207 (D.C. Cir. 2020). When a discovery request is not relevant to the allegations in the complaint, "then the burden it imposes, however slight, is necessarily undue … ." *AF Holdings, LLC v. Does 1-1058*, 752 F.3d 990, 995 (D.C. Cir. 2014) (citing *Food Lion v. United Food & Commercial Workers Union*, 103 F.3d 1007, 1012 (D.C. Cir. 1997)).

## ARGUMENT

### I. Plaintiffs' Proposed Interrogatories Are Unreasonable Against the District.

Although the District recognizes plaintiffs' interest in obtaining the identity of any individual law enforcement officer who may have allegedly violated their constitutional rights, there are no allegations that any specific individual MPD officer did so. *See generally* Second Am. Compl. (SAC) [20-2]. Rather, the assertions against unnamed MPD officers are attributable collectively to the "line of law enforcement officers" "[a]t the intersection of 17th and H Streets NW" who "began firing tear gas canisters at the demonstrators." SAC ¶¶ 145, 148. In contrast, plaintiffs' allegations against federal law enforcement officers at Lafayette Square include alleged actions by individual officers distinct and apart from actions taken by that group of officers as a whole. *See* Pls.' Mot. for Leave to Conduct Limited Early Discovery for the

4

Purpose of Identifying Unnamed Defs. (Mot. for Early Discovery) [27] at 11 (referencing an individual federal officer alleged to have repeatedly beaten one of the plaintiffs); *see also* SAC ¶¶ 127–28. Plaintiffs' discovery requests against the District are therefore improper and should be denied.

In the alternative, if the Court is inclined to allow limited discovery at this stage, plaintiffs' motion overstates the breadth of the information required to identify the relevant unnamed MPD officers. *See* Mot. for Early Discovery at 9–11. Plaintiffs' interrogatories seek, generally, the identification of law enforcement entities, officers, munitions used and supervisors "present during the Incident and within its perimeters … ." First Requests at 5–6. Notably, plaintiffs made the same requests to each defendant, plaintiffs' definition of "identify" includes production of the officers' photographs and plaintiffs define the "Incident" perimeter to include:

- Lafayette Square, defined as the area bounded by the north side of the White House; H Street, N.W.; Madison Place, N.W.; Jefferson [*sic*] Place, N.W.
- H Street, N.W. between 15th and 17th Streets, N.W., including the intersections thereof
- Vermont Avenue, N.W. between H and I Streets, N.W., including the intersections thereof
- 16th Street, N.W. between H and I Streets, N.W., including the intersections thereof
- 17th Street, N.W. between H and G Streets, N.W., including the intersections thereof
- Connecticut Avenue, N.W. between H and I Streets, N.W., including the intersections thereof

*See* First Requests at 3–5.

Cumulatively, the proposed interrogatories seek from the District information far beyond what is necessary to identify the unnamed MPD officers, and appears to

5

seek information about federal agencies and officers which the District does not possess. If the Court permits discovery, the District should not be required to do more than provide relevant and tailored information to identify MPD officers present at the intersection of 17th and H Streets, N.W. between 6:00 p.m. and 7:00 p.m. on June 1, 2020, including their unit designation and the identity of their supervisors. In all other respects, the interrogatories should be denied as to the District.

### A. The Interrogatories Are Overbroad Because They Seek Information Unrelated to Plaintiffs' Identification of MPD Officers.

The central allegations in this lawsuit are brought by nine plaintiffs against seven named federal defendants, a set of unnamed federal law enforcement officers and a set of unnamed non-District, non-federal law enforcement officers. *See* SAC ¶¶ 72–143. The allegations include that, on the evening of June 1, 2020, federal officers stationed at Lafayette Square "rushed and attacked the assembled protestors without warning or provocation … ." *Id.* ¶ 52. As against the District defendants—MPD Chief Peter Newsham and a set of unnamed MPD officers—the allegations are different: plaintiffs contend that "[a]s some demonstrators attempted to flee west, a formation of MPD officers stationed one block west of the Square attacked these demonstrators … ." *Id.* ¶ 60. There are no allegations against MPD officers at Lafayette Square itself, nor anywhere else in the defined "Incident" perimeter, other than the intersection of 17th and H Streets, N.W. between 6:00 p.m. and 7:00 p.m. on June 1, 2020. *Id.* ¶ 46; *see also id.* ¶¶ 145–49. Thus, the only MPD officers for whom the requests for identification could be reasonable are those stationed at that particular intersection, and at that particular time, who may have deployed chemical irritants. *See, e.g.*,

6

*Hartley v. Officer Wilfert*, 931 F. Supp. 2d 230, 232 (D.D.C. 2013) (permitting discovery to identify a single "Doe" defendant where plaintiff alleged the unnamed defendant, a Secret Service officer, and an identified Secret Service officer, approached her in front of the White House, at a particular time and date); *see also Malibu Media, LLC v. Doe*, 177 F. Supp. 3d 554, 557–78 (D.D.C. 2016) (permitting a third party subpoena on an internet service provider seeking identity of an individual whose IP address was known); *Warner Bros. Records, Inc. v. Doe*, 527 F. Supp. 2d 1, 3 (D.D.C. 2007) (permitting a third party subpoena on an internet service provider seeking identity of six individuals whose IP addresses were known).

    Here, although plaintiffs seek a wide scope of information relating to their claims about federal law enforcement officers' clearing of Lafayette Square, they have no need for information from the District beyond any activity at the specific intersection of 17th and H Streets N.W. *See AF Holdings*, 752 F.3d at 995 (reversing grant of early discovery which sought information irrelevant to potentially valid claims); *see also Guttenberg v. Emery*, 26 F. Supp. 3d. 88, 98 (D.D.C. 2014) (request for early discovery must be "narrowly tailored to reveal information related to the [limited issue] as opposed to the case as a whole"). Plaintiffs point out that the merits of their claims are not a proper consideration for their discovery requests. *See* Mot. for Early Discovery at 7. But to the extent plaintiffs seek information from the District about the actions of non-District law enforcement officers, they lack standing to bring suit over those claims against the District, a more fundamental question than the merits of their claims. *See Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015)

7

(noting that standing requires that the alleged injury be "fairly traceable to the challenged action of the defendant"); *see also Strike 3 Holdings*, 964 F.3d at 1210–11 ("[I]f a plaintiff plainly has no realistic chance of successfully suing the defendant, we will not allow the plaintiff to abuse the discovery process by seeking irrelevant information.") (internal quotations omitted). The "reasonableness" factors of breadth and purpose favor denial of plaintiffs' overbroad requests to the District.

> B. **The Interrogatories Are Unduly Burdensome to the District Because They Seek Information Possessed by the Federal Government.**

It is unduly burdensome to seek discovery from a party when such information is possessed by another party. *See* Fed. R. Civ. P. 34(a)(1). Here, plaintiffs' interrogatories appear to seek information from the District about non-District law enforcement entities, officers and weapons deployed at Lafayette Square—a location that plaintiffs assert was occupied by non-District law enforcement personnel. SAC ¶¶ 45–46. To the extent plaintiffs seek responses from the District about law enforcement entities, officers and weapons beyond where MPD was deployed, those requests are inappropriate and unduly burdensome for the District. *See U.S. Int'l Trade Comm'n v. ASAT, Inc.*, 411 F.3d 245, 252–56 (D.C. Cir. 2005) (reversing determination that subsidiary corporation was required to produce documents solely possessed by its parent corporation); *see also Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150–155 (1980) (holding that under the Freedom of Information Act (FOIA) the government is not required to produce documents it does not possess). Here, the relevant entities possessing the information plaintiffs seek are already parties to the case and have been served with the same proposed

discovery requests. *See, e.g.*, *Dellums v. Powell*, 566 F.2d 167, 187 (D.C. Cir. 1977) (noting that discovery against absent class members may be appropriate "when the information is not available from the representative parties").

### C. The Interrogatories Are Unduly Burdensome Because They Seek Unnecessary Information That Threatens MPD Officer Privacy.

Plaintiffs' proposed interrogatories seek materials that are unnecessary to their stated aim of identifying unnamed MPD officers: namely, a request for photographs, when there is no allegation that a specific officer engaged in particular conduct. Despite being public-facing government employees, MPD officers have a right to privacy. *See, e.g.*, *District of Columbia v. Fraternal Order of Police, Metro. Police Dep't Labor Comm.*, 75 A.3d 259 (D.C. 2013) (finding that the personal privacy exemption protected names of MPD employees from disclosure under the District of Columbia FOIA equivalent); *see also Fed. Labor Relations Auth. v. U.S. Dep't of Treasury*, 884 F.2d 1446, 1452–53 (D.C. Cir. 1989) (finding privacy interest in federal employees' names under FOIA).

Here, given the tenuous allegations against the District and unnamed MPD officers, the disclosure of photographs would be inappropriate and unduly burdensome because the information is unnecessary for the stated purpose of plaintiffs' request for early discovery. Although plaintiffs assert that they "will use the photographs to identify the specific officers who allegedly violated their rights," Mot. for Early Discovery at 11, plaintiffs do not assert that any specific individual MPD officers out of the group stationed at 17th and H Streets, N.W. allegedly violated their rights. SAC ¶¶ 145, 148.

9

Because plaintiffs do not make allegations that require differentiating among the individual MPD officers at the specified intersection, and the District is prepared to provide relevant identifying information if ordered by the Court, photographs are unnecessary. The officers' interest in keeping their personal photographs private to avoid potential harassment based on their alleged deployment of chemical irritants against protestors outweighs the benefit to plaintiffs of the photographs when there is no purpose or need for disclosing photographs, especially at this stage in the case. *See Beck v. Dep't of Justice*, 997 F.2d 1489, 1494 (D.C. Cir. 1993) (noting that even a minimal privacy interest outweighs a nonexistent public interest for purposes of FOIA); *Showing Animals Respect and Kindness v. U.S. Dep't of Interior*, 730 F. Supp. 2d 180, 197–198 (D.D.C. 2010) (holding that individuals have a privacy right in photographs of themselves and that "[t]his Court is mindful that in the internet age, pictures and personal information can cascade through networks to millions of people based on a single disclosure"); *see also Pinson v. Dep't of Justice*, 177 F. Supp. 3d 56, 83–84 (D.D.C. 2016) (holding that privacy interest of government employees in not having personal information released that "could trigger hostility toward[s] [them]" or make them targets for harassment outweighed a public interest in the "general topics at issue"). Plaintiffs' requests for photographs of the unnamed MPD officers should be denied.

## II. Plaintiffs' Proposed Requests for Production of Documents Are Duplicative and Overly Burdensome.

Plaintiffs' proposed requests for production are duplicative and overly burdensome to the District. As plaintiffs acknowledge, the requests for production

10

serve the same purpose as the proposed interrogatories: to "similarly seek information identifying the unnamed Defendants." Mot. for Early Discovery at 9. Left unstated is why the document requests are so overbroad or even necessary when a narrowly tailored response to an interrogatory will fully enable plaintiffs to identify the MPD officers who were present at the intersection of 17th and H Streets, N.W. during the relevant time.

For example, "all documents" reflecting the name and badge number of MPD officers present during the "Incident," or "all documents" listing any officers who were equipped with a variety of weapons are simply not relevant to plaintiffs' claims against the District. *See* First Requests at 6-7. This is particularly true given plaintiffs' allegations that MPD officers only used tear gas; there is no need to analyze "which officers were issued which weapons and whether or not they used or deployed such weapons." Mot. for Early Discovery at 10; *see also* SAC ¶¶ 148–54. Plaintiffs' requests for production therefore amount to merits discovery that is unwarranted at this early phase of the litigation, and the requests for production should be denied in their entirety against the District.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion for Leave to Conduct Limited Early Discovery for the Purpose of Identifying Unnamed Defendants. In the alternative, if the Court permits early discovery against the District, it should be limited to providing the names, unit designations and

supervisors of MPD officers stationed at the intersection of 17th and H Streets, N.W. between 6:00 p.m. and 7:00 p.m. on June 1, 2020.

Dated: August 12, 2020.     Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

TONI MICHELLE JACKSON
Deputy Attorney General
Public Interest Division

/s/ Fernando Amarillas
FERNANDO AMARILLAS [974858]
Chief, Equity Section

/s/ Brendan Heath
BRENDAN HEATH [1619960]
Assistant Attorney General
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C. 20001
(202) 442-9880
brendan.heath@dc.gov

*Counsel for Defendants Chief Peter Newsham and John Roes 1–50*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BLACK LIVES MATTER D.C., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, *et al.*, <br><br> Defendants. | Civil Action No. 20-1469 (DLF) |

ORDER

Upon consideration of plaintiffs' Motion for Leave to Conduct Limited Early Discovery for the Purpose of Identifying Unnamed Defendants (Motion), defendants' opposition, and the entire record, it is:

**ORDERED** that plaintiffs' Motion is **DENIED**.

**SO ORDERED**.

Dated: _____   _____
THE HONORABLE DABNEY L. FRIEDRICH
Judge, United States District Court
for the District of Columbia

*Copies to:*

All counsel of record through CM/ECF