UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BLACK LIVES MATTER D.C., *et al.,*

Plaintiffs,

v.

DONALD J. TRUMP, *et al.*

Defendants.

No. 1:20-cv-01469-DLF

**REPLY IN SUPPORT OF MOTION FOR LEAVE TO CONDUCT LIMITED EARLY
DISCOVERY FOR THE PURPOSE OF IDENTIFYING UNNAMED DEFENDANTS
AND TO STAY DEFENDANTS' RESPONSE DEADLINE**

Defendants' objections to the proposed early discovery are not well-taken. First and most

centrally, Plaintiffs have demonstrated "good cause" as that concept has been repeatedly applied

by this Court. Defendants are wrong that this is a fishing expedition. Instead, Plaintiffs have alleged

in detail exactly what their allegations against the unnamed Defendants are, how they will use the

discovery to identify and name the proper individuals, and why that discovery is necessary.

Defendants make the internally contradictory argument that Plaintiffs' discovery is at once too

broad and too narrow; in fact, Plaintiffs have carefully tailored a set of discovery requests that,

viewed as a package, should minimize the burden on Defendants and at the same time yield a set

of information that will enable Plaintiffs to name the individuals they describe in the complaint as

wrongdoers and not extraneous ones. Defendant Barr attempts to hold Plaintiffs to a standard not

imposed in this Court's case law—that they have exhausted all other avenues for obtaining the

requested information. Such a requirement would be particularly inapt here, as the sluggish FOIA

process is no substitute for the discovery Plaintiffs need and the riot-gear-clad officers whom

Plaintiffs seek to name are not easily identifiable by public materials alone. And there was no

failure of consultation: Plaintiffs ascertained Defendants' position and reported it faithfully to the Court; Defendants' real complaint is actually that Plaintiffs refused to give ground in the face of Defendants' opposition to early discovery, which is why they resorted (as is their entitlement under the rules) to filing this motion.

One aspect of Defendants' opposition to the early discovery is well-taken: the District of Columbia's objection that the requests to the District are too broad in light of Plaintiffs' allegations. Plaintiffs therefore propose a substitute set of requests to D.C. along the lines the District proposes.

Plaintiffs also have no objection to a protective order, as the United States proposes.

Finally, Defendant Barr's opposition to staying the briefing to allow for early discovery asks this Court to significantly expand qualified immunity from the right not to be burdened with suit, including discovery, to an all-purpose trump card playable against any discovery against any party no matter the scope and no matter the effect on the potentially immune defendant. Tellingly, Defendant Barr cites no case recognizing such a right, and Defendant Barr is wrong that courts never permit early discovery to precede motions to dismiss on qualified immunity. The Court should reject Defendant Barr's novel position and should stay discovery to enable all Defendants to brief at the same time the many common arguments they will raise so that the Court can address these arguments together rather than piecemeal.

## ARGUMENT

Defendants do not dispute that early discovery to identify "John Doe" defendants is normally allowed—as Plaintiffs have demonstrated, ECF 27 ("Pls.' Mot."), at 6. Instead, the dispute centers on whether Plaintiffs' requests are too broad or otherwise inappropriate, and whether this limited discovery should precede dispositive motions.

## I.      Plaintiffs Have Shown Good Cause for Limited Early Discovery.

Many of the various Defendants' arguments against Plaintiffs' showing of "good cause" boil down to the claim that Plaintiffs are "going fishing." These arguments are based largely on misreadings of the complaint or of the proposed requests. Defendants' other major category of objection amounts to the claim that Plaintiffs do not really need the information they seek because they have not tried enough other means to obtain it, but this argument relies on cases applying tests other than the one this Court has adopted—one federal court applying state law and another that assesses totally different factors than this Court does.

### A.   *Plaintiffs' requests are appropriately tailored and timed.*

The official-capacity Defendants (hereafter collectively the "United States" or "the government") attack the Plaintiffs' request on the ground that they have not actually identified what the "John Doe" Defendants are alleged to have done wrong. ECF 39 ("U.S. Br."), at 6-7. This argument ignores detailed allegations in the Second Amended Complaint, ECF 29 ("SAC"), including that the unnamed defendants:

- rushed and attacked assembled protestors without warning or provocation before the curfew started, SAC ¶¶ 52, 61, 96, 106;

- used force to disrupt peaceful protest by firing flash-bangs, tear gas, pepper spray, other chemical irritants, and rubber bullets at protestors, SAC ¶¶ 55, 90, 97, 115, 116, 142, 148;

- hit, punched, and otherwise assaulted, ejected, and pursued demonstrators and journalists with fists, feet, batons, and shields, including those fleeing the area, SAC ¶¶ 57–59, 96, 127, 128; and

- ordered protestors, including a minor, to move into clouds of tear gas, SAC ¶ 152.

Thus, the government's objection that Plaintiffs fail to make "specific allegations," U.S. Br. 6, is entirely spurious.

Next, the United States challenges the requests as overly broad, because they ask for the identity of all officers present at Lafayette Square at the time of the attack on Plaintiffs, and for the identity of those officers who had and who used weapons. *See* U.S. Br. 6-8. In fact, Plaintiffs are doing precisely what they are supposed to do: imposing as little burden as possible on Defendants while obtaining the information they need to name the proper defendants. The goal of the requests is to determine who was present *and* who had and who used weapons so that Plaintiffs can allege who was responsible for what—such as who personally violated Plaintiffs' rights as opposed to who might be liable under §§ 1985 and/or 1986—and avoid naming the wrong people on the wrong claims. If Plaintiffs sought only the names of every officer on the scene without other information (such as weaponry) that could help limit the scope of the claims against particular defendants, the result would be to create more work for the government—not less—because Plaintiffs would be forced to name, and the government to defend, all the officers present on all claims.

The government mischaracterizes Plaintiffs' requests as going "beyond these [John Doe] identities," U.S. Br. 3 n.3; *see also* ECF 38 ("Barr Br."), at 11 (similar), but the language of Plaintiffs' requests refutes that charge. The requests make clear that Plaintiffs seek the *identities* of the law enforcement officers present (interrogatories 1 and 2 and document requests 1 and 2), the *identities* of the law enforcement officers who had weapons (interrogatory 3 and document request 4), the *identities* of the law enforcement officers who used weapons (interrogatory 3 and document request 5), and the *identities* of individuals who supervised or otherwise participated (interrogatory 4 and document request 3). Every answer Plaintiffs seek is just the name or other

identifying information (badge number, unit assignment, photograph) of a potential defendant. Every document Plaintiffs seek is a list of names and other identifying information. The government's attempt to cast Plaintiffs' narrow requests as a fishing expedition is untenable.[1]

Defendants' related objection that a request for documents "reflecting the name" or other identifier requires "hundreds, if not thousands" of documents, U.S. Br. 8, *see also* U.S. Br. 11, is even harder to take seriously. To be clear: Plaintiffs are not asking for any document of any kind that *happens* to contain the name of any officer who was there—they are asking for documents that "reflect," meaning to "make manifest or apparent," who was there.[2] Defendants' attempt to create overbreadth through strained construction should be rejected. If Defendants, in answering the discovery, truly think an ambiguity exists, the requests provide for a way to address it by instructing, "If you perceive any ambiguity in a question, instruction, or definition, the answer should identify the perceived ambiguity and the interpretation or understanding used in answering." (Instruction 5.)

Of course, Defendants might well have worked together with Plaintiffs to craft requests they would consider clearer or less burdensome than these, but they declined to do that. When Plaintiffs' counsel asked for the government's position and whether the government had any ideas to minimize the burden of responding to the requests, government counsel simply said the

---

[1] If the Defendants actually find in practice—rather than merely by *ex ante* supposition, *see* Barr Br. 11—that Plaintiffs' requests require production of documents that go to the merits rather than just to the identity of the parties, and the information Plaintiffs seek can be otherwise provided, then Defendants are free to seek a protective order or otherwise seek to limit the scope of the discovery if that becomes necessary to limit early discovery to its proper object. Alternatively, if all the names can be provided in the responses to the interrogatories and the documents do not provide identifying information beyond what the Interrogatories seek, Plaintiffs would be amenable to negotiation regarding whether the document requests could be narrowed or withdrawn.

[2] https://www.merriam-webster.com/dictionary/reflect

government's position was that any early discovery was inappropriate. That this conversation occurred, as the government acknowledges, U.S. Br. 3 n.3, satisfied the conferral requirement of Local Rule 7(m). Although government counsel was willing to look at "narrower" requests should Plaintiffs have been able to devise any, the rule requiring conferral does not require Plaintiffs to negotiate against themselves in the process of seeking consent. And indeed, Plaintiff's counsel sent a follow-up email to counsel for both the government and Defendant Barr stating that "we have not come up with a way to narrow it" and reiterating Plaintiffs' understanding that "the official defendants' position is opposed [to the motion]"; in responding to that email and in further exchanges regarding the various proposed motions, no attorney for any Defendant contradicted Plaintiffs' recitation of the government's position or suggested reopening the discussion on the ground that the parties had not fully conferred.

Defendants' more specific objection that they were never shown the discovery requests in advance is likewise unmoored from the requirements of Rule 7(m). The parties conferred and the Defendants said they opposed early discovery—they said so on the phone and they said so by email. The rule requires no more. Defendants' counsel never suggested that they required more information to determine their position. They cannot now sandbag Plaintiffs with a Rule 7(m) objection that they lacked information they never requested from Plaintiffs. And to the extent the government claims that Plaintiffs did not confer because the discovery requests proposed are different than what Defendants expected, that is so only because Defendants seem to misunderstand the scope of the requests (as explained above).

The government also suggests that no good cause is present because the official-capacity defendants were included merely as stalking horses for this discovery, as in *Butera & Andrews v. International Business Machines Corp.*, 456 F. Supp. 2d 104 (D.D.C. 2006), and *Attkisson v.*

*Holder*, 113 F. Supp. 3d 156 (D.D.C. 2015). *See* U.S. Br. 10. But those cases are nothing like this one. In *Butera*, the plaintiff law firm sought early discovery in order to obtain evidence of a claim it *admitted* it could not yet allege, and the Court admonished against "fil[ing] a complaint first and thereafter endeavor[ing] to develop a cause of action" or suing defendants solely to obtain discovery against an unknown potential party. *Butera*, 456 F. Supp. 2d 104. That is a far cry from this case, in which Plaintiffs make detailed and concrete allegations that identify fully-fledged causes of actions against all the named Defendants; what Plaintiffs are missing is just the names of the defendants for some of their claims rather than (as in *Butera*) a plausible basis to sue them in the first place. Further demonstrating that Plaintiffs have not pursued a blunderbuss approach to naming defendants is their treatment of Arlington County, against which Plaintiffs have properly sought third-party discovery (as *Butera* counsels, *id.* at 114) rather than joining the County as a defendant without a legal theory.

*Attkisson* is likewise far afield from this case. There, the plaintiff issued interrogatories with 53 subparts that addressed the merits of the claim and would have required the government to survey "all persons employed by any agency" for information regarding the case. 113 F. Supp. 3d. at 163. Obviously the four interrogatories Plaintiffs in this case have requested (setting aside Defendants' misunderstanding of their scope) are much more limited. And unlike in *Attkisson*, Plaintiffs do not "lack the information necessary to identify" the government agents who harmed them. *Id.* at 164 n.4. The Court there specifically distinguished cases in which plaintiffs had a "reasonable method" of determining the identity of the individuals—for example, knowing the "date and precise location of the incident" or "the fact that [the Does] were working a particular shift in a particular location," *id.* at 162-163 (citing *Valentin v. Dinkins*, 121 F.3d 72, 73–74 (2d

Cir. 1997) —which is just the sort of information on which Plaintiffs have based their requests in this case.

And to the extent the government is implicitly taking a position on the merits of some of Plaintiffs' claims, *see* U.S. Br. 5 n.5, the D.C. Circuit warned just last month that a merits assessment does not factor into determining whether Plaintiffs should be allowed to take discovery to name defendants. *Strike 3 Holdings, LLC v. Doe*, ___ F.3d ___, No. 18-7188, 2020 WL 3967836, *5 (D.C. Cir. July 14, 2020).

The government also objects to the timing of the requested discovery, arguing that it is too early "[b]ecause discovery typically occurs after the resolution of motions to dismiss." U.S. Br. 12. But this *specific* type of early discovery is regularly allowed, as in *Strike 3 Holdings:* "That is precisely what [Plaintiffs] seek[] here: the discovery necessary to reveal the defendant[s'] identity and to begin litigating [their] … claims." *Strike 3 Holdings*, 2020 WL 3967836, *5. Defendants have not explained why such limited discovery is too early in this case in light of the essential purposes it serves. Plaintiffs have amply explained why they need to discover the identities of the unnamed Defendants now, not later. *See* Pls.' Mot. 8-11. More generally, the government's citations to a fifteen-year-old case applying the *Notaro* standard, *see* U.S. Br. 5 n.5, are not useful, because in recent years this Court has "rejected entirely the *Notaro* test in favor of the good-cause standard." *Attkisson v. Holder*, 113 F. Supp. 3d 156, 162 (D.D.C. 2015) (citing cases); *accord Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 319 F. Supp. 3d 70, 103 (D.D.C. 2018) *see also* Pls.' Mot. 6-7 (citing recent "good cause" cases).

In sum, Defendants' objections to the scope and timing of the requested discovery are unfounded.

B. *Plaintiffs have shown they need the discovery.*

The government and Defendant Barr take different tacks in arguing that Plaintiffs' discovery request is not justified or bona fide. Neither is persuasive.

The government asserts that Plaintiffs' statute-of-limitations concern is "speculation," U.S. Br. 9, but never explains why that is so—for instance, why it is reasonable for the government expect that, with briefing to conclude (as they propose) in late November, *i.e.,* already halfway through the limitations period, a decision on the weighty issues before the Court (on which Defendant Barr has already threatened an interlocutory appeal, *see* Barr Br. 6 n.4) could be issued, an answer could be filed, discovery could be served and conducted, Plaintiffs could determine with the help of that discovery and other information whom to name as defendants, and an amended complaint filed, all by June 1, 2021.

Defendant Barr argues that Plaintiffs have failed to pursue all other avenues of investigation, including FOIA, before turning to early discovery. Barr Br. 12-13. This argument is based on a flawed legal premise, ignores the facts, and makes unrealistic assumptions about the efficacy of FOIA. First, the premise of the argument is that there is some type of exhaustion requirement inherent in the "good cause" standard. But none of the Defendants cite any rule or precedent of this Court for such a requirement. Instead, Defendant Barr cites a case discussing due diligence in identifying Doe defendants for purposes of relation-back of amendments under the requirements of a New York state statute inapplicable here, *Barrett v. City of Newburgh*, 2017 WL 1102672 at *5-*7 (S.D.N.Y. Mar. 23, 2018), and a case from a different district court that adopts an entirely different set of factors to establish "good cause" for early discovery than the test used in this Court. *Compare Mejia Banegas v. Doe #2*, 2019 WL 1375577, at *2 (S.D. Cal. Mar. 26, 2019) (adopting a "good cause" standard for early discovery that examines the specificity with

which plaintiff has identified the Doe defendant, the steps taken to identify the Doe, whether the action can withstand a motion to dismiss, and whether discovery is likely to produce identifying information), *with Attkisson v. Holder*, 113 F. Supp. 3d 156, 162 (D.D.C. 2015) (adopting a "good cause" standard that examines whether there is a preliminary injunction pending, the breadth of discovery requests, the purpose for requesting expedited discovery, the burden on defendants, and how early the request was made), *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 97–98 (D.D.C. 2014) (same), *and True the Vote, Inc. v. IRS*, 2014 WL 4347197, at *7 (D.D.C. Aug. 7, 2014) (same).

Second, Plaintiffs *have* been diligent in pursuing discovery of the unnamed defendants' identities. Defendant Barr ignores Plaintiffs' efforts—which include reviewing video evidence of the incident and speaking to demonstrators assaulted on June 1, *see* ECF 20 (motion to amend), at 3; obtaining and reviewing photo evidence with partial badge numbers or names; and interviewing witnesses and plaintiffs, Pls.' Mot. 11—along with the fact that the unnamed defendants were wearing riot gear so identifying them is difficult even with the photographic evidence that Plaintiffs have amassed, SAC at ¶¶ 51, 112, 125, 145. The course of proceedings so far, even at this early stage, further reflects Plaintiffs' diligence in investigating the facts. They have amended the complaint twice in response to new information gleaned through their investigation—including adding two sets of defendants and dropping another—in an effort to make their complaint as accurate and comprehensive as possible.

Third, FOIA is a red herring. That process is too slow to provide any realistic possibility of identifying defendants in time to avoid the one-year statute of limitations and to involve the defendants in the initial briefing on the important legal issues that are sure to be raised in Defendants' motions to dismiss. In 2019, the average "complex" FOIA request to the United States Secret Service took 369 days to resolve, and the average "complex" FOIA request to the National

Guard Bureau took 377 days to resolve.[3] Should Plaintiffs submit FOIA requests, the statute of

limitations on their claim under 42 U.S.C. § 1986 would likely expire before the FOIA request is

processed; this expected delay does not even account for new backlogs created by the COVID-19

crisis. *See generally* Cong. Res. Serv., *Freedom of Information Act Processing Changes Due to*

*COVID-19: In Brief* (March 27, 2020).[4]

> C. *The District of Columbia's scope objection is well-taken, and Plaintiffs do not object*
>    *to a protective order.*

Although most of Defendants' arguments are wrong, Plaintiffs agree with the District that

the discovery directed at Chief Newsham can be narrowed. The District's central point is that the

proposed discovery as to the District is too broad in light of the allegations about D.C. personnel

and should be narrowed to "identify MPD officers who were present at the intersection of 17th

and H Streets, N.W. between 6:00 p.m. and 7:00 p.m. on June 1, 2020, including the officers' unit

designation and the identity of their supervisors." ECF 42 ("D.C. Br."), at 2. Plaintiffs agree that

the geographic and temporal scope can be so narrowed.

Plaintiffs do, however, still need to discover which officers shot tear gas at Plaintiffs and

class members, SAC ¶ 148, and to identify the officers who ordered Plaintiffs Foley and E.X.F. to

expose themselves to more tear gas, SAC ¶¶ 152-53. Accordingly, Plaintiffs propose (and attach

---

[3] *See* FOIA.gov, https://www.foia.gov/data.html (last accessed Aug. 13, 2020) (On that web page, select Processing Time in column 1, select Department of Homeland Security and Department of Defense in column 2, click on Select Components under each department and select USSS under Department of Homeland Security and NGB under Department of Defense, select 2019 in column 3, and click Create Report in column 4.)

[4] One of undersigned counsel filed a very narrow FOIA request with the U.S. Secret Service on October 15, 2019, to which no response has yet been made, more than ten months later. *See American Civil Liberties Union of the District of Columbia v. U.S. Secret Service*, No. 20-cv-01497 (D.D.C. filed June 8, 2020).

as Exhibit C, to keep the lettering consecutive with the exhibits filed with their motion) a narrowed

set of requests as to the District only.

Various Defendants object that discovery is inappropriate on privacy grounds or without a

protective order. D.C. Br. 9-10; U.S. Br. 8. Plaintiffs do not object to a protective order to address

privacy concerns.

Plaintiffs therefore include a revised proposed order addressing the narrowing of the

request to the District and providing protections for the dissemination of information.

**II.    Defendant Barr's Opposition To a Stay of His Response Deadline Is Unprecedented and Unwarranted by Any Burden He Realistically Faces.**

According to Defendant Barr, his response deadline cannot be stayed pending early John-

Doe discovery because he plans to move for qualified immunity. Staying a response deadline is

not, of course, the same as prohibiting a filing; if Defendant Barr feels compelled to file his motion

early, he can do so. More fundamentally, Defendant's argument is a non sequitur.  Defendant Barr

admits, twice, that the discovery Plaintiffs seek runs not against Defendant Barr individually but

against the United States. *See* Barr Br. 2 n.1 ("While plaintiffs nominally seek discovery from the

named defendants in their official capacity, their discovery demands, like their official capacity

claims, in reality are directed toward the United States government[.]"); *id.* at 11 (acknowledging

that "plaintiffs do not seek the documents from him personally"). Yet he nonetheless argues that

because he personally should be spared the burdens of discovery until he has had the chance to

seek qualified immunity, even limited discovery narrowly drawn to identify the appropriate parties

to the case cannot go forward against *other* parties. That result—for which Defendant Barr cannot

muster a single example of any court having ever adopted—would be a significant expansion of

the reach of qualified immunity, would prejudice any plaintiff's ability to identify John Doe

defendants, and (as Defendant Barr admits, Barr Br. 6 n.4) would open the floodgates to

interlocutory appeals by any defendants whose chance to claim qualified immunity was delayed by any other aspect of litigation, regardless of its connection to the defendant claiming qualified immunity.

Defendant Barr begins with settled principles regarding the relationship between qualified immunity and discovery burdens on the *potentially immune defendant*, but then leaps to the conclusion that qualified immunity prevents discovery against other parties that does *not* impose a burden on the potentially immune defendant. Defendant's authorities, Barr Br. 4-6 & n.4, 10 & n.6 cannot bear the weight he places on them. Most stand merely for the proposition that the "immunity from suit" that a defendant asserts when claiming qualified immunity enables him to avoid discovery himself until his claim to immunity has been litigated. A few of Defendant Barr's authorities extend this principle to discovery against parties other than the one claiming immunity. But *none* of these authorities concern the limited type of discovery at issue here: discovery merely to identify "John Doe" defendants so they can be named in an amended complaint.

Indeed, in claiming that his argument is well-supported and Plaintiffs' proposal unheard of, Barr Br. 4, Defendant Barr gets it backward. Whereas Defendant Barr cites no case in which a defendant who wishes to claim qualified immunity has been entitled to block *limited discovery to identify defendants*, courts do permit discovery for this purpose prior to motions to dismiss based on qualified immunity. For instance, this Court permitted early discovery to identify Doe defendants in *Horse v. District of Columbia*, No. 17-cv-1216, ECF 22 (D.D.C. Sept. 18, 2017); as soon as the Doe defendants were identified in an amended complaint, the defendants (including a defendant named in his individual capacity in the original complaint) moved to dismiss based on qualified immunity (among other grounds), *see id.*, ECF 1, at 1 (Complaint, June 21, 2017) (naming Peter Newsham individually); ECF 38, at 1 (Motion to Dismiss, Mar. 30, 2018) (raising

qualified immunity, including on behalf of Defendant Newsham). Likewise, in *Galarza v. Szalczyk*, 2012 WL 627917 (E.D. Pa. Feb. 28, 2012), the district court granted the plaintiff's motion for expedited Doe discovery against an as-yet unidentified law enforcement officer even though the named defendant had filed a motion to dismiss claiming qualified immunity. *Id.* at *1.

Invoking qualify immunity to bar limited discovery of the type sought here would be a major expansion of the doctrine that outstrips the reason for staying discovery in the first place: the burden on the party seeking immunity. In the absence of such a burden—for instance, the need to interpose objections at depositions or otherwise help shape the development of the record on the merits to avoid prejudice to the potentially-immune party, *see Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009)—the justification for staying discovery evaporates. As one of Defendant Barr's own authorities notes, a blanket stay of discovery should not be automatic; rather, "the Court should consider the nature of the case and the extent to which proceeding with discovery as to other parties likely would prejudice the stayed defendants, the impact on other parties and the court." *M.G. v. Metro. Interpreters & Translators, Inc.*, 2013 WL 690833, at *2 (S.D. Cal. Feb. 26, 2013); *see also Feibush v. Johnson*, 280 F. Supp. 3d 663, 665 (E.D. Pa. 2017) (refusing to stay discovery as to immunity-claiming defendant and his codefendants where requests "do not unduly burden" the defendant claiming immunity). In fact, even were Defendant Barr not a party at all, he could still legitimately face the burdens of discovery under a third-party subpoena of the type Plaintiffs have proposed as to Arlington County because he is a witness as to claims against other defendants. *See, e.g., In re Flint Water Cases*, 960 F.3d 820, 826 (6th Cir. 2020); *Mendia v. Garcia*, 2016 WL 3249485, at *3 (N.D. Cal. June 14, 2016), *Martin v. Naval Criminal Investigative Serv.*, 2013 WL 2896879, at *11 (S.D. Cal. June 11, 2013). A right to immunity is not a right to be free "from litigation in general." *Behrens v. Pelletier*, 516 U.S. 299, 312 (1996). More generally, courts have

recognized that qualified immunity is not a talisman that shuts down all discovery of whatever

kind to whatever party. *See, e.g., Saenz v. City of El Paso*, 2015 WL 4590309, at *2 (W.D. Tex.

Jan. 26, 2015) (refusing to read *Iqbal* as "stand[ing] for the proposition that *all* discovery as to *all*

*defendants* must be stayed pending a court's resolution of an assertion of qualified immunity)

(emphasis in original); *accord Galarza*, 2012 WL 627917, at *2; *Seeds of Peace Collective v. City*

*of Pittsburgh*, 2010 WL 2990734, at *2 (W.D. Pa. July 28, 2010).

Here, given the importance of the Doe-identifying discovery to the Plaintiffs and the

absence of a burden on Defendant Barr—who, as noted, has conceded that the real respondent to

the discovery is the United States, not him personally—limited discovery to identify Does is

entirely appropriate and not defeated by the specter of Defendant Barr's qualified immunity

motion. Defendant Barr's only argument that he personally will be implicated by Doe-identifying

discovery in any way is the general assertion that "the Attorney General would be compelled to

ensure that the information contained in those documents [sought by Plaintiffs] would not impact

his defense." Barr Br. 11. This vague averment does not withstand scrutiny. The only thing

Plaintiffs are asking is for the United States government—which Defendant Barr rightly and

necessarily concedes is the real party to whom the discovery requests are directed—to respond to

limited discovery directed at the identities of the unnamed defendants. The identities of the officers

who were present and who used or discharged weapons are what they are; Defendant Barr cannot

change them, and he suggests no reason why disclosing those identities could in any way "impact

his defense."[5] This is not a case in which Defendant Barr's lawyers will be called upon to represent

his interests at a deposition by, for instance, objecting to certain questions and trying to influence

---

[5] If it would relieve some potential burden on Defendant Barr to stipulate that Defendants' responses to discovery can exclude any references to Defendant Barr, Plaintiffs have no objection to that proviso, as Defendant Barr has already been named; he is not a Doe defendant.

the course of the questions or the answers. It is certainly not a case like *Loumiet v. United States*, 315 F. Supp. 3d 349 (D.D.C. 2018), on which Defendant Barr relies, in which discovery was "far-reaching," seeking to divine race-based or retaliatory motivations based on the communications *with the potentially immune defendant himself. Id.* at 354. As to Plaintiffs' early discovery, Defendant Barr, individually, has no reason to lift a finger. *Cf. Feibush*, 280 F. Supp. 3d at 665 (discovery did not "unduly burden" potentially immune defendant where the plaintiff was not permitted to take that defendant's deposition or issue any further discovery requests as to him). The only difference that the grant or denial of Plaintiffs' discovery motion will make for Defendant Barr is whether he must file his motion to dismiss in September or can wait a couple more months until the Does are in the case.

As against that insubstantial interest, Plaintiffs have a strong interest in pursuing their case against the officers who personally harmed them, and in doing so within the statute of limitations. Pls.' Mot. 8-11. And Defendant Barr is just wrong that there are no efficiency gains from having all the individual Defendants joined and able to brief common issues at once. Barr Br. 8. Allowing all parties to brief simultaneously their arguments on *Bivens*, the constitutional merits, the scope of 42 U.S.C. §§ 1985 and 1986, and qualified immunity might not produce fewer briefs, but it will likely increase efficiency for the Court, which will be able to make a single decision addressing all the parties' arguments rather than render conclusions and a decision based on arguments raised by some of the parties and then revisit the issues based on new arguments that could be raised by later-joined parties with different interests or different roles in the events at issue. This very motion demonstrates how multiple parties can approach an issue with different perspectives: Defendant Barr's focus on the stay issue and the District's focus on the geographic scope of the proposed discovery are quite distinct from the arguments made by the United States. Had the Court required

16

the parties to brief this motion at different times, it would have had to issue seriatim decisions addressing different aspects of the issues.

Finally, accepting Defendant Barr's position that he cannot be compelled merely to wait passively for his chance to assert immunity while discovery proceeds against other parties without burdening him would have significant implications for other types of early motions that require limited discovery. Would jurisdictional discovery be permitted if the case involved a potentially immune defendant? What about discovery in support of preliminary injunctive relief? On the latter point, holding that the presence of a potentially immune defendant halts all discovery prior to the disposition of that motion could disrupt significantly the availability of preliminary injunctions if any factual disputes must be resolved via discovery, and would also put the Court into direct conflict with *Lugo v. Alvarado*, 819 F.2d 5, 7 (1st Cir. 1987), which refused to stay discovery on equitable relief pending the disposition of a qualified immunity defense. Indeed, such a rule would go far toward making preliminary injunctions impossible in any case in which damages against a government defendant are also sought.

In short, Defendant Barr asks this Court to adopt a rule that no other court has accepted, with potentially serious consequences for all kinds of early discovery, to protect him from burdens that he can barely identify. Plaintiffs' motion, by contrast, invokes a well-established practice of this Court that would allow them to preserve their claims while promoting judicial efficiency. Accordingly, staying Defendants' response deadlines pending the completion of limited discovery and amendment to name John Doe defendants is entirely appropriate.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for limited early discovery should be granted, in the manner reflected in the revised proposed order filed herewith.

August 17, 2020

Respectfully submitted,

/s/ *Arthur B. Spitzer*
Arthur B. Spitzer (D.C. Bar No. 235960)
Scott Michelman (D.C. Bar No. 1006945)
Michael Perloff (D.C. Bar No. 1601047)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
OF THE DISTRICT OF COLUMBIA
915 15th Street NW, Second Floor
Washington, D.C. 20005
(202) 457-0800
smichelman@acludc.org
aspitzer@acludc.org
mperloff@acludc.org

Kaitlin Banner (D.C. Bar No. 1000436)
Tristin Brown (D.C. Bar No. 1671642)
Dennis Corkery (D.C. Bar No. 1016991)
Hannah Lieberman (D.C. Bar No. 336776)
Jonathan Smith (D.C. Bar No. 396578)
WASHINGTON LAWYERS'
COMMITTEE FOR CIVIL RIGHTS AND
URBAN AFFAIRS
700 14th Street, NW, Suite 400
Washington, D.C. 20005
(202) 319-1000
kaitlin_banner@washlaw.org
tristin_brown@washlaw.org
dennis_corkery@washlaw.org
hannah_lieberman@washlaw.org
jonathan_smith@washlaw.org

Jon Greenbaum (D.C. Bar No. 489887)
Arthur Ago (D.C. Bar No. 463681)[*]
David Brody (D.C. Bar No. 1021476)
Arusha Gordon (D.C. Bar No. 1035129)
Noah Baron (D.C. Bar No. 1048319)
LAWYERS' COMMITTEE FOR CIVIL RIGHTS
UNDER LAW
1500 K Street N.W., Suite 900
Washington, D.C. 20005
(202) 662-8600
jgreenbaum@lawyerscommittee.org
aago@lawyerscommittee.org

---

[*] Admission to this Court pending.

18

dspence@lawyerscommittee.org
dbrody@lawyerscommittee.org
agordon@lawyerscommittee.org
nbaron@lawyerscommittee.org

John A. Freedman (D.C. Bar No. 453075)
David E. Kouba (D.C. Bar No. 483145)
Thomas D. McSorley (D.C. Bar No. 1001890)
Sonia Tabriz (D.C. Bar No. 1025020)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, N.W.
Washington, D.C. 20004
(202) 942-5000
John.Freedman@arnoldporter.com
David.Kouba@arnoldporter.com
Tom.McSorley@arnoldporter.com
Sonia.Tabriz@arnoldporter.com

*Counsel for Plaintiffs*[**]

---

[**] Counsel wish to acknowledge the assistance of Harvard Law School student Julianna Astarita in the preparation of this brief.