UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BLACK LIVES MATTER D.C., *et al.*,<br><br>                          *Plaintiffs,*<br><br>                  v.<br><br>DONALD J. TRUMP, President of the United States of America, *et al.*,<br><br>                          *Defendants*. | Civil Action No. 20-1469 (DLF) |

**MEMORANDUM OF THE UNITED STATES
IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS'
<u>OFFICIAL CAPACITY CLAIMS AGAINST FEDERAL DEFENDANTS</u>**

**TABLE OF CONTENTS**

<u>**Page**</u>

TABLE OF AUTHORITIES ...................................................................................................... iii

BACKGROUND .......................................................................................................................3

I.   Overview of Alleged Events. ............................................................................................3

II.  Plaintiffs and Their Alleged Injuries................................................................................4

PROCEDURAL HISTORY........................................................................................................5

LEGAL STANDARDS ..............................................................................................................7

I.   Dismissal Pursuant to Rule 12(b)(1) for Lack of Jurisdiction. .......................................7

II.  Dismissal Pursuant to Rule 12(b)(6) for Failure to State a Claim. .................................8

ARGUMENT..............................................................................................................................9

I.   Plaintiffs Lack Standing To Seek Prospective Injunctive Relief......................................9

     A.  Plaintiffs Seek Only To Enjoin Future Government Conduct. ........................................11

     B.  Plaintiffs' Intentions To Engage In Future Demonstrations Do Not Confer Standing......12

C.  Plaintiffs Do Not Sufficiently Allege Any Change to Longstanding Policy or Practice for Law Enforcement's Response to Demonstration Activities in Lafayette Square...............14

D.  Plaintiffs' Subjective Allegations of a Chilling Effect Do Not Confer Standing. ............17

E.  The Alleged Effects on BLMDC's Organizational Interests Are Insufficient to Confer Standing. .......................................................................................................................19

II. Plaintiffs' Official-Capacity Claims Under 42 U.S.C. §§ 1985(3) and 1986 Warrant Dismissal...........................................................................................................................22

A.  Sovereign Immunity Bars Plaintiffs' Claims Under Sections 1985(3) and 1986.............23

B.  Section 1985 Does Not Authorize Courts to Award Injunctive Relief.............................24

C.  Plaintiffs Have Failed to Plead a Sufficient Conspiracy Claim. ........................................24

CONCLUSION.....................................................................................................................27

## TABLE OF AUTHORITIES

**CASES**   **Page**

*Acorn v. City of Philadelphia*,
   Civ. A. No. 03-4312, 2004 WL 1012693 (E.D. Pa. May 6, 2004) ........................................... 16

*Aetna Life Ins. Co. v. Haworth*,
   300 U.S. 227 (1937) .................................................................................................................. 8

*Am. Legal Found. v. FCC*,
   808 F.2d 84 (D.C. Cir. 1987) ................................................................................................... 20

*Am. Soc'y for the Prevention of Cruelty to Animals v. Feld Entm't, Inc.*,
   659 F.3d 13 (D.C. Cir. 2011) ............................................................................................... 20-21

*Ams. for Safe Access v. DEA*,
   706 F.3d 438 (D.C. Cir. 2013) ................................................................................................. 21

*Arpaio v. Obama*,
   797 F.3d 11 (D.C. Cir. 2015) ................................................................................................... 11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................................... 9, 15, 26

*Atherton v. D.C. Office of Mayor*,
   567 F.3d 672 (D.C. Cir. 2009) ................................................................................................. 25

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ......................................................................................................... 8-9, 25-26

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,
   403 U.S. 388 (1971) .............................................................................................................. 2, 6

*Brady v. Livingood*,
   360 F. Supp. 2d 94 (D.D.C. 2004) ........................................................................................... 25

*Brown v. Sec'y of Army*,
   78 F.3d 645 (D.C. Cir. 1996) ................................................................................................... 23

*Bush v. Butler*,
   521 F. Supp. 2d 63 (D.D.C. 2007) ...................................................................................... 25-26

*Chang v. United States*,
   738 F. Supp. 2d 83 (D.D.C. 2010) ................................................................................... 10, 16-17

*Cigar Assoc. of Am. v. FDA*,
   323 F.R.D. 54 (D.D.C. 2017) ................................................................................................... 21

*City of Los Angeles v. Lyons,*
   461 U.S. 95 (1983) ................................................................................ 10-14, 22

*Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013) ..................................................................................... 22

*Ctr. for Law & Educ. v. Dep't of Educ.,*
   396 F.3d 1152 (D.C. Cir. 2005) ................................................................. 20

*Curley v. Village of Suffern,*
   268 F.3d 65 (2d Cir. 2001) ........................................................................ 19

*Curran v. Holder,*
   626 F. Supp. 2d 30 (D.D.C. 2009) .............................................................. 8

*Davis v. Dep't of Justice,*
   204 F.3d 723 (7th Cir. 2000) ..................................................................... 24

*Debrew v. Atwood,*
   792 F.3d 118 (D.C. Cir. 2015) ................................................................... 10

*Elend v. Basham,*
   471 F.3d 1199 (11th Cir. 2006) ................................................................. 16

*Estate of Phillips v. District of Columbia,*
   257 F. Supp. 2d 69 (D.D.C. 2003) ............................................................ 25

*Fair Emp. Council of Greater Wash., Inc. v. BMC Mktg. Corp.,*
   28 F.3d 1268 (D.C. Cir. 1994) .......................................................... 11, 19-20

*FDIC v. Meyer,*
   510 U.S. 471 (1994) ............................................................................. 10, 23

*Fletcher v. District of Columbia,*
   481 F. Supp. 2d 156 (D.D.C. 2007) .......................................................... 23

*Food & Water Watch, Inc. v. Vilsack,*
   808 F.3d 905 (D.C. Cir. 2015) ................................................................... 21

*Friends of the Earth, Inc. v. Laidlaw Env'l Servs.,*
   528 U.S. 167 (2000) ............................................................................. 11, 20

*Gilbert v. DaGrossa,*
   756 F.2d 1455 (9th Cir. 1985) ..................................................................... 2

*Grand Lodge of Fraternal Order of Police v. Ashcroft*,
185 F. Supp. 2d 9 (D.D.C. 2001) ................................................................ 8

*Hasse v. Sessions*,
835 F.2d 902 (D.C. Cir. 1987) ................................................................ 15

*Hatfill v. Ashcroft*,
404 F. Supp. 2d 104 (D.D.C. 2005) ........................................................ 19

*Havens Realty Corp. v. Coleman*,
455 U.S. 363 (1982) ................................................................................ 20

*Hohri v. United States*,
782 F.2d 227 (D.C. Cir. 1986) ................................................................ 24

*Hollingsworth v. Duff*,
444 F. Supp. 2d 61 (D.D.C. 2006) .......................................................... 8

*Hunt v. Washington State Apple Advertising Comm'n*,
432 U.S. 333 (1977) ................................................................................ 20

*Int'l Acad. of Oral Med. & Toxicology v. FDA*,
195 F. Supp. 3d 243 (D.D.C. 2016) ................................................... 21-22

*Islamic Am. Relief Agency v. Gonzales*,
477 F.3d 728 (D.C. Cir. 2007) ................................................................ 11

*Jackson v. Donovan*,
844 F. Supp. 2d 74 (D.D.C. 2012) .......................................................... 24

*Kentucky v. Graham*,
473 U.S. 159 (1985) ........................................................................... 2, 23

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994) ................................................................................ 8

*\*Laird v. Tatum*,
408 U.S. 1 (1972) .............................................................................. 17-18

*Lopez v. City of Rogers*,
Civ. A. No. 01-5061, 2003 U.S. Dist. LEXIS 14570 (W.D. Ark. Aug. 8, 2003) ..................... 15

*Loumiet v. United States*,
828 F.3d 935 (D.C. Cir. 2016) ................................................................ 10

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ........................................................................... 10

*Mayfield v. United States*,
  599 F.3d 964 (9th Cir. 2010)............................................................... 12

*Melton v. Dist. Of Columbia*,
  85 F. Supp. 3d 183 (D.D.C. 2015) ...................................................... 26

*Moss v. U.S. Secret Service*,
  Civ. A. No. 06-3045, 2007 WL 2915608 (D. Or. Oct. 7, 2007) ............ 16

*Nat'l Ass'n of Home Builders v. EPA*,
  786 F.3d 34 (D.C. Cir. 2015) .............................................................. 11

*Nat'l Congress for Puerto Rican Rights v. City of New York*,
  75 F. Supp. 2d 154 (S.D.N.Y. 1999).................................................... 15

*Nat. Res. Def. Council v. Pena*,
  147 F.3d 1012 (D.C. Cir. 1998) ..................................................... 19-20

*\*O'Shea v. Littleton*,
  414 U.S. 488 (1974) .......................................................... 10-11, 13, 17

*Public Citizen, Inc. v. Trump*,
  297 F. Supp. 3d 6 (D.D.C. 2018) ........................................................ 22

*Russello v. United States*,
  464 U.S. 16 (1983) .............................................................................. 25

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998).............................................................................. 20

*Thomas v. News World Commc'ns*,
  681 F. Supp. 55 (D.D.C. 1988) ........................................................... 27

*Toolasprashad v. Bureau of Prisons*,
  286 F.3d 576 (D.C. Cir. 2002) ............................................................ 19

*Trudeau v. FTC*,
  456 F.3d 178 (D.C. Cir. 2006) .............................................................. 9

*Tulare County v. Bush*,
  306 F.3d 1138 (D.C. Cir. 2002) .......................................................... 15

*United States ex rel. Digital Healthcare, Inc. v. Affiliated Computer*,
778 F. Supp. 2d 37 (D.D.C. 2011) ............................................................................. 8

*United States v. Mitchell*,
463 U.S. 206 (1983) ................................................................................................ 23

*United States v. Nordic Village, Inc.*,
503 U.S. 30 (1992) .................................................................................................. 23

*United States v. Timmons*,
672 F.2d 1373 (11th Cir. 1982) ............................................................................... 24

*United Transp. Union v. Interstate Commerce Comm'n*,
891 F.2d 908 (D.C. Cir.1989) .................................................................................. 13

*Warth v. Seldin*,
422 U.S. 490 (1975) ........................................................................................... 11, 17

*Whitmore v. Arkansas*,
495 U.S. 149 (1990) ................................................................................................ 11

*Zhu v. Gonzales*,
Civ. A. No. 04-1408 (RMC), 2006 WL 1274767 (D.D.C. May 8, 2006) .................... 24

## UNITED STATES CODE

42 U.S.C. § 1983 ................................................................................................. 7, 24

42 U.S.C. § 1985 ................................................................ 2, 7, 9, 23-24, 26-27

42 U.S.C. § 1986 ................................................................ 2, 7, 9, 23-24, 27

Plaintiffs in this lawsuit seek money damages, declaratory, and equitable relief from federal and state defendants for their alleged actions in and around Lafayette Square in Washington, D.C., on June 1, 2020, when demonstrators protested the killings of George Floyd and Breonna Taylor by officers of the Minneapolis Police Department and Louisville Police Department, respectively. *See* 3d Am. Compl. (ECF No. 52) ¶¶ 2-3.  Plaintiffs include eight individuals who participated in the demonstration, *id.* ¶¶ 10-15, as well as the D.C. chapter of Black Lives Matter, which describes itself as "a District of Columbia limited liability corporation" suing on behalf of its members, some of whom participated in the demonstration on June 1, 2020.  *Id.* ¶ 9.  The individual Plaintiffs sue for themselves and purport to represent a class of "hundreds, perhaps thousands of people" who participated in the demonstration.  *Id.* ¶ 211.

In addition to claims against federal officials sued in their individual capacities and claims against officials of the District of Columbia, Plaintiffs assert claims for injunctive and declaratory relief against a host of federal officials in their official capacities—namely, the President, Attorney General William P. Barr, Secretary of Defense Mark Esper, Acting Chief of the U.S. Park Police Gregory T. Monahan, Director of the U.S. Secret Service James M. Murray, Commanding General of the D.C. National Guard ("DC NG") William J. Walker, and Director of the Federal Bureau of Prisons Michael Carvajal (the "Official-Capacity Federal Defendants").  *Id.* ¶¶ 16-19, 31-33. These official capacity claims are, as a matter of law, essentially claims against the United States itself.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *Gilbert v. DaGrossa*, 756 F.2d 1455, 1458 (9th Cir. 1985).

Plaintiffs allege in their official capacity claims that the actions of federal law enforcement officers violated their rights of speech, assembly, and association, and their rights to be free from unreasonable seizures under the First and Fourth Amendments to the U.S. Constitution.  *Id.* ¶¶ 220-

62.  Although they allege no facts suggesting they will again be subjected to these past, allegedly unlawful, actions of the federal agencies named in their complaint, Plaintiffs seek a judgment declaring that the United States violated the Constitution and injunctive relief prohibiting the United States from "engaging in the unlawful acts" described in their complaint.  *Id.* ¶¶ 290-91 (Plaintiffs' Prayer for Relief).

Pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6), the federal defendants named in their official capacities move to dismiss these official capacity claims for equitable relief because they are not justiciable.  Plaintiffs do not face a realistic and imminent threat of again being subjected to the same alleged unlawful federal law enforcement actions they challenge, and, therefore, they lack standing under Article III of the Constitution to sue for prospective relief.  Additionally, Plaintiffs have failed to establish the requisite waiver of sovereign immunity for their claims against the United States for violations of 42 U.S.C. §§ 1985(3) and 1986, nor have they sufficiently pled any conspiracy by the United States to violate Plaintiffs' constitutional rights.  Therefore, the Court should dismiss Plaintiffs' claims against the Official-Capacity Federal Defendants.

## BACKGROUND

This lawsuit arises out of unusual events that occurred on Monday evening, June 1, 2020, when the operative complaint alleges that law enforcement cleared demonstrators from Lafayette Square—located just north of the White House—in conjunction with the installation of security fencing along the north side of Lafayette Square and in advance of the President's walk across the Square to St. John's Church.

## I.    <u>Overview of Alleged Events.[1]</u>

Specifically, on June 1, 2020, a large group of demonstrators—including the Plaintiffs in this lawsuit—were gathered in Lafayette Square to protest the deaths of George Floyd and Breonna Taylor, which were caused by the actions of police officers in Minneapolis and Louisville, respectively.  *See* 3d Am. Compl. (ECF No. 50-2) ¶ 3.  Demonstrations had begun in Lafayette Square on May 29, 2020, and the crowd gradually grew in size through May 31, 2020, which prompted multiple government agencies to respond to the area, including the U.S. Secret Service, U.S. Park Police, and D.C. Metropolitan Police.  *Id.* ¶¶ 51-52.

On June 1, 2020, Plaintiffs allege that President Trump directed Attorney General Barr to personally lead the government's response to the demonstrations in Lafayette Square.  *Id.* ¶ 60.  They allege that Attorney General Barr directed the Federal Bureau of Prisons, among other federal law enforcement agencies, to control the demonstrators.  *Id.*  On the same day, Plaintiffs engaged in demonstration activities in Lafayette Square.  Specifically, they allege that they "engag[ed] in political speech to address . . . the infection of overt and systemic racism in the American criminal justice system."  *Id.* ¶ 66.  During these activities, they also allege that local and federal law enforcement officers and the military surrounded "Plaintiffs and other civil rights activists" in Lafayette Square.  *Id.* ¶ 67.  The government response included officers from the U.S. Park Police, Arlington County Police Department, U.S. Secret Service, DC NG, and Federal Bureau of Prisons, whose actions were allegedly directed by the U.S. Park Police at the Joint Operations Command

---

[1]    This summary of Plaintiffs' allegations of fact is taken as true for purposes of the motion to dismiss, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (even allegations "doubtful in fact" must be taken as true on review of a motion to dismiss under Rule 12(b)(6), but the federal government would dispute many of the allegations were the case to proceed to the merits).

Center in Lafayette Square, *id.* ¶ 76, and in coordination with members of the United States military, *id.* ¶¶ 106-07.

Around 6:00 p.m. on June 1, 2020, Plaintiffs allege that the Attorney General entered Lafayette Square and ordered that it be cleared. *Id.* ¶¶ 78-79. Around the same time, White House staff notified the Secret Service that President Trump planned to walk to St. John's Church. *Id.* ¶ 80. The Secret Service, in turn, requested other law enforcement agencies to assist with clearing the Square. *Id.* Subsequently, law enforcement officers used force to disperse "Plaintiffs and other class members" from Lafayette Square, including Plaintiffs. *Id.* ¶ 88. Plaintiffs allege that officers used "flash-bang shells, tear gas, pepper spray, smoke canisters, pepper balls, rubber bullets" and other means of dispersing demonstrators from the Square. *Id.* Further, Plaintiffs allege several violent interactions between various law enforcement officers and individual class members. *Id.* ¶¶ 90-103.

After the park was secured, the President and his senior advisors—including the Attorney General, the Secretary of Defense, and the White House Chief of Staff—walked from the White House to St. John's Church, which had been damaged during the demonstrations held a day earlier, by way of Lafayette Square. *Id.* ¶ 203. The President made brief remarks outside of the church and paused for several photographs before returning to the White House. *Id.*

## II.     **Plaintiffs and Their Alleged Injuries.**

Plaintiffs allege various injuries resulting from the clearing of Lafayette Square. First, Plaintiff Black Lives Matter D.C. ("BLMDC"), which Plaintiffs describe as an organization whose "mission is to end systemic racism," *id.* ¶ 117, "provided snacks, masks, waters, and fliers that were disseminated at the Lafayette Square demonstration." *Id.* ¶ 119. The organization also "dispatched members to record any officer misconduct" and "had legal observers present." *Id.* BLMDC members "experienced Defendants' use of force and chemical irritants." *Id.* ¶ 120.

BLMDC further alleges that, in light of the June 1, 2020, events, it has voluntarily chosen to refrain from other demonstrations and has experienced a reduction in the number of people attending in-person demonstrations. *Id.* ¶¶ 124-25. Accordingly, BLMDC alleges that it has diverted resources to "assessing and planning for potential violence by police" and "enhance[d] efforts to educate members and supporters about the dangers of police violence[.]" *Id.* ¶ 126. BLMDC has also engaged in a "communications campaign" about the June 1st events, arranged for transportation for injured individuals, and "facilitate[d] medical care" for injured persons, which has allegedly reduced BLMDC's capacity for planning events and programming consistent with its mission. *Id.* ¶¶ 126-127.

The individual Plaintiffs were all present in Lafayette Square on June 1, 2020, and also allege various injuries resulting from their interaction with law enforcement officers. *See, e.g., id.* ¶¶ 135-37 (Plaintiffs Toni Sanders and J.N.C); ¶¶ 141-44 (Plaintiff Kishon McDonald); ¶¶ 159-62 (Plaintiff Keara Scallan); ¶¶ 172-74 (Plaintiff Lia Poteet); and ¶¶ 187-94 (Plaintiffs Dustin Foley and E.X.F.). Plaintiffs Sanders, Bond, Poteet, and Foley purport to represent a class seeking both injunctive relief and damages based on personal injuries. As relevant to the United States, Plaintiffs purport to represent all individuals present at Lafayette Square on June 1, 2020, around 6:30 p.m., "who may attend or attempt to attend protests at [Lafayette Square] in the future." *Id.* ¶ 206 (defining the so-called "Injunctive Relief Class"); *id.* ¶ 209 (identifying representative Plaintiffs).

## PROCEDURAL HISTORY

Plaintiffs filed the instant action within three days of the alleged incidents in Lafayette Square. *See* Compl. (ECF No. 1). Plaintiffs later submitted an amended complaint on June 9, 2020 (ECF No. 11), and a second amended complaint on July 8, 2020 (ECF No. 20-2). On August 5, 2020, Plaintiffs moved for expedited early discovery in this action, *see* ECF No. 27, which the

Court denied in an Order dated August 19, 2020 (ECF No. 46).  On August 20, 2020, Plaintiffs also moved for class certification, *see* ECF No. 47, which (at the request of all Defendants and with Plaintiffs' consent, *see* ECF No. 49) the Court deferred until 30 days after Defendants' motions to dismiss are decided.  *See* Minute Order dated September 3, 2020.

Plaintiffs submitted a third amended complaint on September 3, 2020, which contains a total of 10 claims:

- Plaintiffs' Claims 1 and 2 are brought pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), for violations of the First Amendment (3d Am. Compl. ¶¶ 227-30) and Fourth Amendment (*id.* ¶¶ 231-35), respectively.

- Claim 3 alleges that the Official-Capacity Federal Defendants' "practice of deploying physical force against demonstrators to remove them . . . [from] Lafayette Square on June 1, 2020, by their repeated threats to deploy violence against protesters demonstrating against racial injustice" violates their First Amendment rights to freedom of speech and assembly.  *Id.* ¶ 232.

- Claim 4 alleges that the Official-Capacity Federal Defendants' "practice of deploying physical force without provocation, warning, or legal grounds to do so" to remove them from the Square violates their Fourth Amendment Rights.  *Id.* ¶ 237.

- Claim 5 alleges violations of 42 U.S.C. § 1985(3) regarding all Defendants' conspiracy to interfere with Plaintiffs' "right to be free from unreasonable seizures under the Fourth Amendment," their right to use public accommodations, and right to be free from racial violence under the Thirteenth Amendment.  *Id.* ¶¶ 250-52.

- Claim 6 alleges a violation of 42 U.S.C. § 1986 for all Defendants "failing to meet their duty to prevent or aid in preventing conspiracies to deprive [Plaintiffs'] civil rights." *Id.* ¶ 256.

- Claim 7 alleges a violation of 42 U.S.C. § 1983 by the individual-capacity D.C. Defendants for deprivation of Plaintiffs' First Amendment rights to freedom of speech, freedom of assembly, and freedom to petition the government for a redress of grievances. *Id.* ¶ 264.

- Claim 8 alleges a violation of 42 U.S.C. § 1983 by the individual-capacity D.C. Defendants for violation of their Fourth Amendment right to be free from unreasonable seizures.

- Finally, Claims 9 and 10 are brought solely against the Chief of the Metropolitan Police Department, Peter Newsham, for violations of 42 U.S.C. § 1983 for violations of the First Amendment (*id.* ¶¶ 274-79) and Fourth Amendment (*id.* ¶¶ 280-85), respectively.

As a result of their claims, Plaintiffs seek a declaratory judgment that "the acts of Defendants . . . violate the First Amendment, the Fourth Amendment, 42 U.S.C. § 1983, 1985, and 1986." *Id.* ¶ 290.  Plaintiffs also seek an injunction against Defendants Barr, Esper, Monahan, Murray, Walker, Carvajal, and Newsham "to cease engaging in the unlawful acts described [in the complaint]." *Id.* ¶ 291.  Finally, Plaintiffs seek damages, attorneys' fees, and costs. *Id.* ¶¶ 292-93.

## LEGAL STANDARDS

### I.   Dismissal Pursuant to Rule 12(b)(1) for Lack of Jurisdiction.

A motion to dismiss under Rule 12(b)(1) "presents a threshold challenge to the Court's jurisdiction," and thus "the Court is obligated to determine whether it has subject-matter jurisdiction in the first instance." *Curran v. Holder*, 626 F. Supp. 2d 30, 32 (D.D.C. 2009) (internal citation and quotation marks omitted).  "[I]t is presumed that a cause lies outside [the federal

courts'] limited jurisdiction," *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), unless the plaintiff can establish by a preponderance of the evidence that the Court possesses jurisdiction. *See, e.g.*, *United States ex rel. Digital Healthcare, Inc. v. Affiliated Computer*, 778 F. Supp. 2d 37, 43 (D.D.C. 2011) (citing *Hollingsworth v. Duff*, 444 F. Supp. 2d 61, 63 (D.D.C. 2006)). Thus, the "'plaintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim.'" *Id.* (quoting *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13-14 (D.D.C. 2001) (internal citation and quotation marks omitted)). Plaintiffs' lack of constitutional standing deprives courts of jurisdiction. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937).

## II.    Dismissal Pursuant to Rule 12(b)(6) for Failure to State a Claim.

In order to survive a Rule 12(b)(6) motion, a plaintiff must present factual allegations that are sufficiently detailed "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). In satisfying this requirement that it "state a claim to relief that is plausible on its face," *id.* at 570, a complaint cannot survive a motion to dismiss through only "a formulaic recitation of the elements of a cause of action." *Id.* at 555. As with facial challenges to subject-matter jurisdiction under Rule 12(b)(1), a district court is required to deem the factual allegations in the complaint as true and consider those allegations in the light most favorable to the non-moving party when evaluating a motion to dismiss under Rule 12(b)(6). *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006). But where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." *Twombly*, 550 U.S. at 557. Accordingly, a "court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While

legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## ARGUMENT

The complaint should be dismissed against the Official-Capacity Federal Defendants for lack of subject-matter jurisdiction under Rule 12(b)(1) because Plaintiffs have failed to demonstrate Article III standing and failed to identify waivers of sovereign immunity for some of their claims.  Specifically, Plaintiffs allege that they have been injured because federal law enforcement officers cleared Lafayette Square through the use of force prior to the President's walk to St. John's Church.  However, as discussed below, Plaintiffs lack standing to seek declaratory prospective injunctive relief based on these alleged prior injuries.  Moreover, the United States has not waived its sovereign immunity to be sued under Sections 1985(3) or 1986 of Title 42.  Lastly, even were a Section 1985(3) claim actionable against the United States, Plaintiffs fail to plead sufficient facts to make a conspiracy claim plausible on its face, rendering that claim subject to dismissal under Rule 12(b)(6).

## I.  Plaintiffs Lack Standing To Seek Prospective Injunctive Relief.

Plaintiffs have not sought any preliminary injunctive relief in this action.  Rather, the sole relief sought (at least as it pertains to the United States)[2] is a declaratory judgment and an injunction prospectively prohibiting future government conduct.  But this Court lacks jurisdiction

---

[2]     Plaintiffs appear to have also sued the Official-Capacity Federal Defendants for money damages.  But "[f]ederal constitutional claims for damages are cognizable only under *Bivens*, which runs against individual government officials personally."  *Loumiet v. United States*, 828 F.3d 935, 945 (D.C. Cir. 2016) (citing *FDIC v. Meyer*, 510 U.S. 471, 482 (1994)).  Otherwise, "sovereign immunity shields the Federal Government and its agencies from suit."  *Debrew v. Atwood*, 792 F.3d 118, 124 (D.C. Cir. 2015).  The United States has not waived sovereign immunity for money damages for Plaintiffs' constitutional claims, therefore the sole relief Plaintiffs may obtain is equitable relief against the Official-Capacity Federal Defendants.

over Plaintiffs' claims because Plaintiffs have failed to allege that there is any imminent risk that any of the Plaintiffs or putative injunctive-relief class members will again be subject to any of the same extraordinary circumstances that they seek to enjoin here.  *See* 3d Am. Compl. ¶¶ 290-91 (Plaintiffs' Prayer for Relief).  Indeed, their Third Amended Complaint was filed September 3, 2020, more than three months after the event at issue took place, and they did not allege any further law enforcement action of the type that allegedly occurred on June 1, 2020.

To establish standing, a plaintiff must show: (1) an "injury in fact"; (2) a "causal connection between the injury" and the challenged action; and (3) a likelihood that the "injury will be redressed by a favorable decision."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Plaintiffs seeking injunctive relief, like those here, must establish a fourth element to have standing, *see Chang v. United States*, 738 F. Supp. 2d 83, 88 (D.D.C. 2010)—specifically, "[t]hey must show a 'real and immediate threat of repeated injury' demonstrated by more than 'past exposure to illegal conduct.'"  *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)).

In assessing a plaintiff's standing, although the Court may "accept the well-pleaded factual allegations as true and draw all reasonable inferences from those allegations in the plaintiff's favor," the Court need not "accept inferences that are unsupported by the facts set out in the complaint."  *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (internal quotation marks omitted) (quoting *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 732 (D.C. Cir. 2007)).  Standing is "always a case- and context-specific inquiry."  *Nat'l Ass'n of Home Builders v. E.P.A.*, 786 F.3d 34, 43 (D.C. Cir. 2015) (citation omitted).

A plaintiff has the burden of showing that it has standing for each form of relief sought. *Friends of the Earth, Inc. v. Laidlaw Env'l Servs.*, 528 U.S. 167, 185 (2000).  In a putative class

action such as this one, each of the named plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Warth v. Seldin*, 422 U.S. 490, 502 (1975); *see also O'Shea*, 414 U.S. at 494 (class representative must have standing before he can seek relief on behalf of himself and another member of putative class). A plaintiff must show more than a "possible future injury"; he must show that a threatened injury is "certainly impending." *See Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990).

In *Lyons*, the Supreme Court established that courts lack jurisdiction over claims for equitable relief absent a real and immediate danger that the plaintiff will be subject to the challenged conduct. *See* 461 U.S. at 101 (1983) (dismissing claim for equitable relief based on lack of real and immediate danger that the plaintiff would be subjected again to an alleged policy of illegal chokeholds by the Los Angeles Police Department); *Fair Emp. Council of Greater Wash., Inc. v. BMC Mktg. Corp.*, 28 F.3d 1268, 1273 (D.C. Cir. 1994) (holding that *Lyons* applies to requests for declaratory relief). Indeed, an "abstract injury is not enough" to establish standing. *Lyons*, 461 U.S. at 101. Rather, a plaintiff must show that she "is immediately in danger of sustaining some direct injury" as the result of the challenged official conduct and the injury or threat of injury must be both "real and immediate," not "conjectural" or "hypothetical." *Id.* "Past exposure to harmful or illegal conduct does not necessarily confer standing to seek injunctive relief if the plaintiff does not continue to suffer adverse effects." *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010) (citation omitted).

## A. Plaintiffs Seek Only To Enjoin Future Government Conduct.

As noted above, Plaintiffs do not seek preliminary injunctive relief to enjoin any ongoing or future "real and immediate" government conduct by federal law enforcement. Indeed, save for several alleged actions by the Metropolitan Police Department after June 1, 2020, *see id.* ¶ 114,

they do not allege any misconduct by federal law enforcement since the alleged incidents at Lafayette Square on June 1, 2020.  Rather, Plaintiffs allege that they are "threatened" with violations of their First and Fourth Amendment rights "when they carry out their stated intent to return to Lafayette Square[.]"  *See id.* ¶¶ 232, 237.  In support of these allegations, Plaintiffs rely solely on the President's social media posts and statements leading up to the events on June 1, 2020.  *See id.* ¶¶ 53-63.  But the posts and statements referenced by Plaintiffs do not speak to any future conduct by demonstrators or specific intentions by the government with respect to any such future conduct; rather, they reflect the President's views of perceived violence by demonstrators in Lafayette Square leading up to June 1st and the President's express desire for law enforcement to control the situation.  Such statements do not, as Plaintiffs contend, threaten any imminent *future* action based on any lawful demonstrations at Lafayette Square or elsewhere.  Accordingly, Plaintiffs' allegations are insufficient to confer standing here.

In light of the above, Plaintiffs' allegations regarding the President's statements made prior to June 1st are insufficient to establish a real and immediate threat of repeated injury to peaceful demonstrators in Lafayette Square.  *See Lyons*, 461 U.S. at 102; *O'Shea*, 414 U.S. at 495-96.

### B.   Plaintiffs' Intentions To Engage In Future Demonstrations Do Not Confer Standing.

Plaintiffs' intentions to return to Lafayette Square to engage in demonstrations are also insufficient to confer standing here.  Indeed, in the three months following the June 1st event, they fail to add additional incidents of demonstration activity in their September 3rd amended complaint.  Specifically, Plaintiff Sanders "intends to continue protesting at the White House every day that the demonstrations continue."  *Id.* ¶ 129.  Likewise, Plaintiff Bond "intends to continue participating in demonstrations in the future."  *Id.* ¶ 154.  Plaintiff Poteet "has returned to the area near Lafayette Square since June 1, 2020" but "only briefly."  *Id.* ¶ 176.  And Plaintiffs Foley and

E.X.F. "continue to protest the murder of George Floyd." *Id.* ¶ 201.  Such alleged intentions fail to establish a real and immediate threat of repeated injury because they depend on a series of speculative events. *See United Transp. Union v. Interstate Commerce Comm'n*, 891 F.2d 908, 912 (D.C. Cir. 1989) ("[W]hen considering any chain of allegations for standing purposes, we may reject as overly speculative those links which are predictions of future events (especially future actions to be taken by third parties) and those which predict a future injury that will result from present or ongoing actions[.]").

In *Lyons*, the plaintiff asserted that he had standing for injunctive relief because (1) he had been choked in the past; (2) city police regularly and routinely apply chokeholds with no provocation; (3) there had been at least 15 chokehold-related deaths; and (4) he therefore "justifiably fear[ed] that any contact he ha[d] with Los Angeles police officers may result in his being choked[.]" *Id.* at 98.  The Supreme Court held that this was not sufficient to establish standing for Mr. Lyons to seek injunctive relief.  In particular, the Court explained that the likelihood that the plaintiff would be subject to future chokeholds was conjectural because it rested on contingent events occurring at some time in the future; namely, that plaintiff himself would again be stopped by the police and would again be choked without any provocation or legal excuse. *Id.* at 106.  The Court noted that even if it was likely that the police would illegally use chokeholds in the future, it could not be assumed that Mr. Lyons himself would be subjected to that treatment. *Id.*

Here, Plaintiffs' allegations of possible future harm necessarily relies on a chain of contingencies at least as uncertain as those in *Lyons*, if not more so.  For any named Plaintiff to suffer a future similar injury, the following unlikely sequence of events must occur again: a large-scale demonstration would need to occur at Lafayette Square, and that Plaintiff would need to

attend the demonstration, and the demonstration would need to prompt a response by federal law enforcement to include the agencies named in this matter, and that response would need to implicate the President's personal safety and target federal property or federal officers; and federal officers would need to use orders to disperse and crowd control tactics, and individual federal officers would need to use that law enforcement response as cover to deliberately target non-violent peaceful demonstrators, and one of the named Plaintiffs would need to be so targeted. Plaintiffs have failed to adequately allege that any of these events, let alone the entire sequence, is sufficiently likely here.  That dooms their claim for prospective injunctive relief.

C.   **Plaintiffs Do Not Sufficiently Allege Any Change to Longstanding Policy or Practice for Law Enforcement's Response to Demonstration Activities in Lafayette Square.**

Plaintiffs have similarly failed to plausibly assert that the allegedly unlawful actions taken by law enforcement on June 1st were pursuant to any change in official government policy for managing demonstration activities and maintaining order in Lafayette Square rather than a response to particular conditions in the park on June 1, 2020.   Instead, Plaintiffs make the conclusory assertion that, on June 1st, the government engaged in a "practice of deploying physical force against demonstrators to remove them from places in which they have gathered with others to express their political opinions," without alleging that peaceful, law-abiding demonstrators were the only occupants of Lafayette Square.   Taking existing allegations as true does not require inferring from silence other factual allegations necessary to make out a plausible claim.  *See Iqbal*, 556 U.S. at 681-82; *see also Tulare County v. Bush*, 306 F.3d 1138 (D.C. Cir. 2002) (declining to accept as true plaintiffs' allegation that the President creating a national monument violated the Antiquities Act because it was a legal conclusion).   And Plaintiffs' "nebulous assertion" regarding the possible existence of an unlawful change to a policy or practice or creation of a new policy is

insufficient.  *Hasse v. Sessions*, 835 F.2d 902, 911 (D.C. Cir. 1987).  Plaintiffs here must "not only demonstrate its existence but also that they are likely to be subjected to the policy again."  *Id.*[3]

Indeed, even in cases involving alleged unlawful government policies or practices, courts have emphasized the importance of ensuring that the plaintiffs themselves face a real and immediate threat.  *See Lopez v. City of Rogers*, Civ. A. No. 01-5061, 2003 U.S. Dist. LEXIS 14570, *7-8 (W.D. Ark. Aug. 8, 2003) (emphasizing the importance of the fact that, unlike in this case, two plaintiffs had been subject to the challenged conduct more than once); *Nat'l Congress for Puerto Rican Rights v. City of New York*, 75 F. Supp. 2d 154, 161 (S.D.N.Y. 1999) (stating that in addition to the fact that the challenged practice had "allegedly affected tens of thousands of New York City residents," a "second distinguishing factor" in the case was that "at least three of the named individual plaintiffs claim that they have been victimed [sic] by these unconstitutional practices repeatedly").

Various courts have applied this principle to reject challenges to alleged protest policies because of the plaintiffs' inability to show a serious risk that they would be subject to the same policy in the immediate future.  *See Elend v. Basham*, 471 F.3d 1199 (11th Cir. 2006) (allegation of intent to express views at other presidential events in the future was insufficient to establish standing to challenge the Secret Service's alleged practice of confining First Amendment protesters to "protest zones"); *Acorn v. City of Philadelphia*, Civ. A. No. 03-4312, 2004 WL 1012693, *3 (E.D. Pa. May 6, 2004) (likelihood that at future events disputes will arise as to

---

[3]     Also significantly, to the extent Plaintiffs allege some change in policy or practice, they do not allege that the new policy either differentiates based on the viewpoints expressed by demonstrators or requires the use of excessive or unreasonable force, further undermining the plausibility of their claims of unconstitutional conduct.

whether the plaintiffs "are being improperly limited in their protest activities" was insufficient to establish that such a controversy was ripe).

*Moss v. U.S. Secret Service,* Civ. A. No. 06-3045, 2007 WL 2915608, at *1, *15 (D. Or. Oct. 7, 2007), further illustrates this point.  In *Moss* the plaintiffs alleged that they were involved in a protest on October 14, 2004, and that they regularly engaged in protests in the area as well as nationally.  *Id.*  They alleged that the Secret Service had a national pattern and practice of engaging in viewpoint discrimination and sought declaratory and injunctive relief prohibiting violations of their constitutional rights in the future.  *Id.*  The district court found that, although plaintiffs alleged a pattern and practice of conduct by the Secret Service, they had failed to allege that they have been injured either before or after the October 14 demonstration, or that they planned to demonstrate at any particular time or place in the future.  *Id.* at *16.

Moreover, in *Chang v. United States*, 738 F. Supp. 2d 83 (D.D.C. 2010), the Court rejected a constitutional challenge similar to those presented here.  In *Chang*, several students from George Washington University were among hundreds of demonstrators detained and arrested in September 2002 while protesting the policies of the World Bank and the International Monetary Fund in General John Pershing Park ("Pershing Park"), located on Pennsylvania Avenue, N.W., between 14th and 15th Streets, *id.* at 84-85.  The plaintiffs did not seek preliminary injunctive relief; rather (just like Plaintiffs here), they sought permanent injunctive relief, declaratory relief, and damages. The Court concluded that the four remaining plaintiffs failed to demonstrate that they were likely to suffer the same injury again.  Specifically, the Court found that, in the absence of evidence that the specific plaintiffs, personally, were likely to be subjected to that policy again, they lacked standing to seek prospective injunctive relief.  *Id.* at 88.

Additionally, while Judge Sullivan found that establishing repeated injury may be different for a class action than for individuals, *id.* at 92, there can be no dispute that Plaintiffs are required to allege "that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Warth*, 422 U.S. at 502. The representative injunctive-relief-class Plaintiffs in this case have failed to put forth any such allegations. Without these, the putative class representatives lack standing to seek relief on behalf of another member of the class. *O'Shea*, 414 U.S. at 494.

### D. Plaintiffs' Subjective Allegations of a Chilling Effect Do Not Confer Standing.

In addition to the above, it does not matter that some Plaintiffs have alleged a subjective chilling effect based on their experiences on June 1, 2020, in Lafayette Square. For the purpose of establishing Article III standing, the Supreme Court has held that "allegations of a subjective 'chill' upon the exercise of First Amendment rights are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 12-13 (1972).

Here, Plaintiffs allege that "BLMDC leaders and members fear that law enforcement will meet future protests with extreme violence." 3d Am. Compl. ¶ 123. Plaintiffs also allege that "BLMDC has chosen to refrain from participating in multiple demonstrations . . . to protect BLMDC members from feared harm at the hands of law enforcement." *Id.* ¶ 124. Similarly, Plaintiff McDonald "had planned to continue demonstrating" in D.C., but he has since been discouraged from doing so because he fears future harm from law enforcement. *Id.* ¶ 145. Plaintiff Poteet "no longer feels comfortable protesting if there is any sign of police movement near the protest and is therefore cautious about when and where she engages in such conduct." *Id.* ¶ 176.

In *Laird*, the Supreme Court rejected a very similar request for equitable relief that arose from President Johnson's deployment of federal troops to quell civil unrest in the aftermath of Dr. Martin Luther King's assassination. 408 U.S. at 2. Respondents were civilians who claimed that the Army's alleged surveillance of peaceful civilian protestors produced a constitutionally impermissible "chilling effect" upon the exercise of their First Amendment rights. *Id.* at 2-3. However, the Court held that the jurisdiction of a federal court may not be invoked by complainants who allege that their First Amendment rights have been chilled by the "mere existence, without more," of government conduct "that is alleged to be broader in scope than is reasonably necessary for the accomplishment of a valid governmental purpose." *Laird*, 408 U.S. at 10. "Allegations of a subjective 'chill'"—Chief Justice Burger wrote—"are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Id.* at 13. Similarly, Plaintiffs here may not establish standing, which is otherwise lacking, based on their subjective apprehension of future harm.

Significantly, several Plaintiffs have announced their specific intent to continue demonstrating. Specifically, Plaintiff Sanders "intends to continue protesting at the White House every day that the demonstrations continue." *Id.* ¶ 129. Plaintiff Bond "intends to continue participating in demonstrations in the future." *Id.* ¶ 154. And Plaintiffs Foley and E.X.F. "continue to protest the murder of George Floyd, but they are both scared of being subjected to further harm by law enforcement at future demonstrations." *Id.* ¶ 201. "The widely accepted standard for assessing whether 'harassment for exercising the right of free speech [is] . . . actionable . . . depends on whether the harassment is '[ ]likely to deter a person of ordinary firmness from that exercise.'" *Hatfill v. Ashcroft*, 404 F. Supp. 2d 104 (D.D.C. 2005) (quoting *Toolasprashad v. Bureau of Prisons*, 286 F.3d 576, 585 (D.C. Cir. 2002)) (citations omitted). And "[w]here a party can show

no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech." *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001).  In light of their allegations regarding continued demonstrations, Plaintiffs have failed to allege that they have actually been chilled from exercising their First Amendment rights.

**E.     The Alleged Effects on BLMDC's Organizational Interests Are Insufficient to Confer Standing.**

BLMDC's participation in this lawsuit as an organization does not change the standing analysis above.  As previously noted, BLMDC alleges that it has voluntarily diverted resources to "assessing and planning for potential violence by police" and "enhance[d] efforts to educate members and supporters about the dangers of police violence[.]"  *Id.* ¶ 126.  BLMDC has also engaged in a "communications campaign" about the June 1st events, arranged for transportation for injured individuals, and "facilitate[d] medical care" for injured persons, which has allegedly reduced BLMDC's capacity for planning events and programming consistent with its mission.  *Id.* ¶¶ 126-127.  These allegations are also insufficient to confer standing in this matter.

There are two ways for an organization to establish standing.  First, to have standing in its own right (sometimes called organizational standing), plaintiff organizations must satisfy the same standing requirements that apply to individuals: injury-in-fact, which is both fairly traceable to the challenged action and likely to be redressed by a favorable decision.  *See American Legal Found. v. FCC*, 808 F.2d 84, 89 (D.C. Cir. 1987) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982)).  But "[c]onflict between a defendant's conduct and an organization's mission is alone insufficient to establish Article III standing." *Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1161 (D.C. Cir. 2005) (citations and quotation marks omitted).  Second, to have representational standing, an organizational plaintiff must demonstrate that its "members would otherwise have standing to sue in their own right, [that] the interests at stake are germane to the

organization's purpose, and [that] neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *See Friends of the Earth, Inc. v. Laidlaw Envt'l Servs., Inc.*, 528 U.S. 167, 180-81 (2000). *Accord American Legal Found. v. FCC*, 808 F.2d 84, 89 (D.C. Cir. 1987) (quoting *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977)).

Here, to pursue an injunction or a declaratory judgment, BLMDC "must allege a likelihood of future *violations* of [its] rights . . . not simply future *effects* from past violations." *Fair Emp. Council*, 28 F.3d at 1274 (emphasis added); *Nat. Res. Def. Council v. Pena*, 147 F.3d 1012, 1022 (D.C. Cir. 1998) ("Because respondent alleges only past infractions of [the statute], and not a continuing violation or the likelihood of a future violation, injunctive relief will not redress its injury.") (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 118 (1998)). BLMDC's assertion that it voluntarily diverted resources says nothing of a likelihood of a future constitutional violation merely because the organization has decided that its money would be better spent on planning and education efforts rather than on demonstrations themselves. *Fair Emp. Council*, 28 F.3d at 1276-77. Besides, organizational standing cannot depend on such volitional acts. *See Am. Soc'y for the Prevention of Cruelty to Animals v. Feld Entm't, Inc.*, 659 F.3d 13, 25 (D.C. Cir. 2011); *see also Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 920 (D.C. Cir. 2015) (noting that a concrete injury cannot result from "expend[ing] resources to educate [the organization's] members and others unless doing so subjects the organization to operational costs beyond those normally expended"); *Cigar Assoc. of Am. v. FDA*, 323 F.R.D. 54, 63 (D.D.C. 2017) (statement in complaint that agency activities require organization to "expend more resources" is "not enough to establish injury"). Claims that an organization "cannot allocate issue advocacy expenses in the way it would prefer [are] insufficient to establish standing." *Ams. for Safe Access v. DEA*, 706

F.3d 438, 458 (D.C. Cir. 2013) (Henderson, J., dissenting).   Accordingly, BLMC's claim of organizational standing must fail.

BLMDC gains no greater traction with its allegation that it has suffered harm by expending resources educating the public about the potential for violent interactions with law enforcement.  This too speaks nothing about the likelihood of any future constitutional violation.  In any event, even assuming that BLMDC would no longer need to educate the public after the requested declaratory and injunctive relief were issued, the D.C. Circuit has rejected such "educational advocacy" harm as a basis for standing.  In *Food & Water Watch,* 808 F.3d at 905, the organizational plaintiff argued that due to USDA's regulatory actions (or lack thereof), the plaintiff was required to spend money educating the public about the consequences of the agency's inactivity.  Specifically, the plaintiff claimed that USDA poultry inspections were inadequate, causing it to spend money "to educate members of the public" about alternative measures the public should take to compensate for these regulatory failures.  *Id.* at 920.  The D.C. Circuit, however, held that such an injury was "no more than an abstract injury to [plaintiff's] interests."  *Id.*; *see also Int'l Acad. of Oral Med. & Toxicology v. FDA*, 195 F. Supp. 3d 243, 258-59 (D.D.C. 2016) (resources spent educating members about adverse consequences caused by lack of regulation are insufficient to constitute Article III injury).  The same is true here.

In addition to the infirmities addressed above, BLMDC has also failed to plausibly allege causation.  In *Clapper v. Amnesty International USA*, 568 U.S. 398, 415 (2013), the plaintiffs claimed that "the risk of surveillance" by the government "require[d] them to take costly and burdensome measures to protect the confidentiality of their communications" and that these expenditures were fairly traceable to the statute authorizing the surveillance of which they

complained. *Id.* at 415. The Supreme Court rejected this argument. Emphasizing that the threat of "potential future surveillance" was not "certainly impending," *id.* at 414, the Court concluded that plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not [imminent]," *id.* at 416.

Here, BLMDC's asserted underlying fear is indistinguishable from the fear of surveillance in *Clapper* and is speculative and subjective. *See Lyons*, 461 U.S. at 107 n.8 ("It is the reality of the threat of . . . injury that is relevant to the standing inquiry, not the plaintiff's subjective apprehensions."). The diversion of resources due to this purported fear is not actionable. Indeed, "plaintiffs may not turn an unduly speculative or hypothetical injury into a concrete injury by inflicting harm on themselves based on their fears of hypothetical future harm." *Public Citizen, Inc. v. Trump*, 297 F. Supp. 3d 6, 38-39 (D.D.C. 2018) (quoting *Clapper*, 568 U.S. at 416) (internal quotation marks omitted).

In light of the above, BLMDC's participation in this matter as an organization plaintiff fails to change the fact that Plaintiffs have otherwise failed to allege a realistic and imminent threat of experiencing a future constitutional violation. Indeed, BLMDC lacks organizational standing in its own right. Accordingly, Plaintiffs lack standing to bring their claims for prospective injunctive relief and the Court should dismiss their claims against the Official-Capacity Federal Defendants.

## II.    Plaintiffs' Official-Capacity Claims Under 42 U.S.C. §§ 1985(3) and 1986 Warrant Dismissal.

Plaintiffs' Claims 5 and 6 allege violations of 42 U.S.C. §§ 1985(3) and 1986 regarding the Official-Capacity Federal Defendants' alleged conspiracy to interfere with Plaintiffs' constitutional rights, as well as for failing to prevent or aid in preventing such a conspiracy. 3d Am. Compl. ¶¶ 250-52, 256. As explained below, these claims against the Official-Capacity Federal Defendants must fail.

**A.      Sovereign Immunity Bars Plaintiffs' Claims Under Sections 1985(3) and 1986.**

Under the doctrine of sovereign immunity, "the United States may not be sued without its consent and . . . the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983); *Brown v. Sec'y of Army*, 78 F.3d 645, 648 (D.C. Cir. 1996). Such consent may not be implied, but must be "unequivocally expressed." *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33-34 (1992). This immunity applies equally to a federal official sued in his official capacity. *See Graham*, 473 U.S. at 165-66 (1985); *Fletcher v. Dist. of Columbia*, 481 F. Supp. 2d 156, 161 (D.D.C. 2007) (noting that the doctrine "bars all suits against the United States, its agencies, and federal employees in their official capacities, except where there has been a statutory waiver of immunity").

Plaintiffs allege that the federal defendants engaged in a conspiracy to deprive them of their civil rights, in violation of 42 U.S.C. § 1985(3), and failed to prevent a conspiracy, in violation of 42 U.S.C. § 1986. But Plaintiffs have cited no authority that waives the government's immunity to such claims, nor does it contain any allegations that would support such a waiver. *See FDIC v. Meyer*, 510 U.S. 471, 478 (1994) ("[T]he United States simply has not rendered itself liable under [28 U.S.C.] § 1346(b) for constitutional tort claims."). Further, these civil rights statutes, "by their terms, do not apply to actions against the United States." *Hohri v. United States*, 782 F.2d 227, 245 n.43 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987); *see also Davis v. Dep't of Justice*, 204 F.3d 723, 726 (7th Cir. 2000) ("Sovereign immunity, however, bars §§ 1985(3) and 1986 suits brought against the United States and its officers acting in their official capacity."); *United States v. Timmons*, 672 F.2d 1373, 1380 (11th Cir. 1982) ("It is well established . . . that the United States has not waived its immunity to suit under the provisions of the [Civil Rights Act.]"); *Jackson v. Donovan*, 844 F. Supp. 2d 74, 76-77 (D.D.C. 2012) (dismissing official-capacity suit filed under Sections 1983, 1985, and 1986 against the Secretary of the U.S.

Department of Housing and Urban Development in his official capacity); *Zhu v. Gonzales*, Civ. A. No. 04-1408 (RMC), 2006 WL 1274767, at *5 (D.D.C. May 8, 2006) (dismissing lawsuit under Sections 1985 and 1986 against the Attorney General for lack of jurisdiction).  Accordingly, the Court must dismiss Claims 5 and 6 against the Official-Capacity Federal Defendants.

### B.      Section 1985 Does Not Authorize Courts to Award Injunctive Relief.

Plaintiffs' conspiracy claim also fails because Section 1985 only authorizes courts to award damages, not the injunctive relief Plaintiffs seek here.  By its terms, Section 1985(3) provides only that a plaintiff "may have an action *for the recovery of damages* . . . against any one or more of the conspirators." 42 U.S.C. § 1985(3) (emphasis added).  The statute says nothing about injunctive relief.  In contrast, Section 1985(3)'s companion provision authorizes "action[s] at law, *suit[s] in equity*, or other proper proceeding[s] for redress."  42 U.S.C. § 1983 (emphasis added).  As this comparison reveals, Congress both considered and authorized differing remedies under two statutory provisions of the same act: a violation of Section 1983 may incur damages or injunction relief, while a violation of Section 1985(3) can incur only damages.  And "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."  *Russello v. United States*, 464 U.S. 16, 23 (1983).  The Court should therefore conclude that the relief available under Section 1985 is limited to the recovery of damages and that, to the extent Plaintiffs only request injunctive relief, Plaintiffs' claim fails.

### C.      Plaintiffs Have Failed to Plead a Sufficient Conspiracy Claim.

Even if Plaintiffs could show that the United States has waived sovereign immunity for official capacity claims contained in Claims 5 and 6, and that equitable relief is available, Plaintiffs have failed also to plead sufficient facts to support an unlawful conspiracy claim.  In order to state a claim under Section 1985(3), a defendant must allege:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person
> or class of persons of the equal protection of the laws, . . . and (3) an act in furtherance of
> the conspiracy; (4) whereby a person is either injured in her person or property or deprived
> of any right or privilege of a citizen of the United States.

*Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 688 (D.C. Cir. 2009).  Plaintiffs fail in each of

these counts because they do not allege any "facts to support an agreement . . . between the federal

officials to violate [Plaintiffs'] rights."  *Bush v. Butler*, 521 F. Supp. 2d 63, 68 (D.D.C. 2007); *see*

*also Brady v. Livingood*, 360 F. Supp. 2d 94, 104 (D.D.C. 2004) (dismissing claim where plaintiff

merely alleged that his former employer "colluded" with the Department of Education to keep him

underemployed, without putting forth "any facts showing the existence or establishment of an

agreement"); *Estate of Phillips v. Dist. of Columbia*, 257 F. Supp. 2d 69, 83 (D.D.C. 2003), *rev'd*

*in part on other grounds*, 455 F.3d 397 (D.C. Cir. 2006) (dismissing conspiracy claim where

plaintiffs failed to specify how the defendants "acted in concert").

Here, to survive dismissal of their Section 1985 claim, Plaintiffs "must set forth more than

conclusory allegations of an agreement."  *Bush*, 521 F. Supp. 2d at 68; *cf. Twombly*, 550 U.S. at

557 ("[A] conclusory allegation of agreement at some unidentified point does not supply facts

adequate to show illegality.").  Although Plaintiffs generally allege conspiracy claims in Claims 5

and 6 under Section 1985(3), Plaintiffs offer only the conclusory allegation that defendants

"conspired to deprive" Plaintiffs' of their rights, 3d Am. Compl. ¶ 242, by "using violent force

against civil rights activists in and around Lafayette Square," *id.* ¶ 244.  Indeed, Plaintiffs' Count 5

amounts to nothing more than a cascading series of conclusory statements regarding the alleged

conspiracy based only upon their prior allegations that all Defendants were involved in temporarily

closing Lafayette Square on June 1, 2020, between 6:00 p.m. and 7:00 p.m.  *See id.* ¶¶ 243-52.

That Defendants secured Lafayette Square through the use of force prior to the President's

walk to St. John's Church would not allege any unlawful agreement between the Defendants to

deprive Plaintiffs or class members of any equal protection rights.  Indeed, rather than alleging any actual agreement motivated by class-based discriminatory animus, Plaintiffs only point to allegations that are "merely consistent with" a conspiracy.  *Twombly*, 550 U.S. at 557; *see Melton v. Dist. Of Columbia*, 85 F. Supp. 3d 183, 195-6 (D.D.C. 2015) (dismissing conspiracy claim for its "conclusory allegations" and "failure to articulate a racial or class-based animus behind the alleged conspiracy").  These allegations, however, "could just as well be" the result of "independent action," as opposed to any unlawful agreement between Defendants.  *Id.* Specifically, Plaintiffs fail to "allege the existence of any events, conversations, or documents indicating there was an agreement between the [D]efendants to violate [their] rights."  *Bush*, 521 F. Supp. 2d at 68.  This is particularly evident because of what is not (and likely cannot be) alleged by Plaintiffs: that all of the members of the public present in Lafayette Square shortly before law enforcement secured the area in advance of the President's walk across the park to the church on June 1, 2020, were a homogenous group of peaceful demonstrators.  *See Iqbal*, 556 U.S. at 681-82.

Because a colorable claim under Section 1985 is a prerequisite to stating an adequate claim for neglect under Section 1986, *see Thomas v. News World Commc'ns*, 681 F. Supp. 55, 72 (D.D.C. 1988), Plaintiffs have failed to state claims under either Section 1985(3) or Section 1986 against the Official-Capacity Federal Defendants.

\*       \*       \*

## <u>CONCLUSION</u>

For the reasons set forth above, the United States respectfully requests that the Court dismiss Plaintiffs' claims against the Official-Capacity Federal Defendants under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Dated October 1, 20            Respectfully submitted,

MICHAEL R. SHERWIN
Acting United States Attorney

DANIEL F. VAN HORN, D.C. Bar No. 924092
Chief, Civil Division

/s/   *Christopher C. Hair*
CHRISTOPHER C. HAIR, PA Bar No. 306656
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-2541
christopher.hair@usdoj.gov

/s/   *Sean P. Mahard*
SEAN P. MAHARD, CT Bar No. 436524
Special Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-2574
sean.mahard@usdoj.gov

*Counsel for the United States*