# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

BLACK LIVES MATTER D.C., et al.,

        *Plaintiffs*,

    v.

DONALD J. TRUMP, et al.

        *Defendants*.

No. 1:20-cv-01469-DLF

## PLAINTIFFS' OPPOSITION TO DEFENDANT VINCENT'S MOTION TO DISMISS

Jon Greenbaum (D.C. Bar No. 489887)
Arthur Ago (D.C. Bar No. 463681)
David Brody (D.C. Bar No. 1021476)
Arusha Gordon (D.C. Bar No. 1035129)
Noah Baron (D.C. Bar No. 1048319)
Lawyers' Committee for Civil Rights Under Law
1500 K Street N.W., Suite 900
Washington, D.C. 20005
(202) 662-8600
jgreenbaum@lawyerscommittee.org

John A. Freedman (D.C. Bar No. 453075)
David E. Kouba (D.C. Bar No. 483145)
Thomas D. McSorley (D.C. Bar No. 1001890)
Sonia Tabriz (D.C. Bar No. 1025020)
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue, N.W.
Washington, D.C. 20004
(202) 942-5000
John.Freedman@arnoldporter.com

*Not a D.C. Bar member; practicing under
supervision pursuant to D.C. App. R. 49(c)(8A)*

November 19, 2020

Scott Michelman (D.C. Bar No. 1006945)
Arthur B. Spitzer (D.C. Bar No. 235960)
Michael Perloff (D.C. Bar No. 1601047)
Kayla Scott*
Megan Yan*
American Civil Liberties Union Foundation
of the District of Columbia
915 15th Street NW, Second Floor
Washington, D.C. 0005
(202) 457-0800
smichelman@acludc.org

Kaitlin Banner (D.C. Bar No. 1000436)
Tristin Brown (D.C. Bar No. 1671642)
Dennis Corkery (D.C. Bar No. 1016991)
Hannah Lieberman (D.C. Bar No. 336776)
Jonathan Smith (D.C. Bar No. 396578)
Washington Lawyers' Committee for Civil
Rights and Urban Affairs
700 14th Street, NW, Suite 400
Washington, D.C. 20005
(202) 319-1000
kaitlin_banner@washlaw.org

*Counsel for Plaintiffs*

**INTRODUCTION**

On the evening of June 1, 2020, law enforcement officers at Lafayette Square near the White House charged, clubbed, tear-gassed, and violently dispersed civil rights demonstrators who were lawfully and peacefully protesting police brutality against Black people in the United States. Officers assaulted journalists and demonstrators alike and endangered children in the crowd. Officers repeatedly hit unarmed, unthreatening people with batons and shields, knocking them to the ground. Demonstrators struggled to breathe amidst the chemical attack. Those who attempted to flee westward were met with a second round of tear gas from local police stationed nearby. This was no routine, orderly clearing of a safety perimeter for the President's movements. Rather, it was an attack by government officers against their own people, of a degree unprecedented on U.S. soil for the past half-century, occurring suddenly and without warning in the heart of the nation's capital.

In this case, eight individual demonstrators, including two children, and the organization Black Lives Matter D.C. assert claims for constitutional and statutory violations against the officials of the United States, District of Columbia, and Arlington County who ordered and carried out the Lafayette Square attack. One of those officials, Defendant Wayne Vincent of the Arlington County Police Department, moves to dismiss for improper venue under Rule 12(b)(3) and for failure to state a claim under Rule 12(b)(6). ECF 83 ("Vincent MTD"). Plaintiffs here respond to that motion; their consolidated opposition brief to the separately-filed motions of Defendant Barr, the federal official-capacity Defendants, and the District of Columbia Defendants, ECF 76, 79, 80, was separately filed this same date. ECF 98. For the sake of efficiency, Plaintiffs incorporate by reference their full recitation of the facts there and cite specific facts in this brief as relevant to Defendant Vincent's arguments.

1

Venue is proper in this Court under the general venue statute, 28 U.S.C. 1291. Defendant Vincent's argument to the contrary relies on Arlington County's agreement with the U.S. Park Police to provide assistance, which he claims is governed by a federal statute that restricts venue. This argument fails for two independent reasons. *First*, under the plain terms of the agreement, that statute does not apply where, as here, the U.S. Park Police request the assistance of Arlington County law enforcement (rather than vice versa). *Second*, the statute does not apply to this agreement at all because the agreement does not satisfy the prerequisites for a valid agreement under the statute.

Defendant Vincent's merits arguments against the claims Plaintiff have asserted against him—for engaging in a conspiracy to deprive the Plaintiffs of their civil rights in violation of 42 U.S.C. § 1985(3) and for failing to prevent such a conspiracy in violation of 42 U.S.C. § 1986 (Claims 5 & 6 of the Third Amended Complaint (TAC))—are unavailing. In arguing that the § 1985 claim fails for lack of sufficient facts, Defendant Vincent ignores the well-pleaded and specific allegations against him in the complaint and misapplies the statutory elements. Defendant Vincent's arguments against the § 1986 claim fare no better: his argument based on the absence of a predicate § 1985 claim is wrong for the reasons just given, and his argument that he had no ability to "prevent or aid in preventing" the attacks is belied by the allegations of the complaint.

The motion to dismiss should be denied.

## LEGAL STANDARDS

A complaint need only provide "a short and plain statement … showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all facts plausibly pleaded in the complaint, drawing all reasonable inferences in plaintiffs' favor. *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017).

"Plausibility does not mean certainty," only that the claim "rises 'above the speculative level.'" *Sandvig v. Sessions*, 315 F. Supp. 3d 1, 11 (D.D.C. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To the extent inferences must be drawn to show that the defendant is liable, they must merely be reasonable, *Hurd*, 864 F.3d at 678, and need not be the only possible inferences. *Evangelou v. District of Columbia*, 901 F. Supp. 2d 159, 170 (D.D.C. 2012). Indeed, "[a] complaint survives a motion to dismiss even if there are two alternative explanations, one advanced by the defendant and the other advanced by the plaintiff, both of which are plausible." *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) (cleaned up).

Critically, "the Court cannot resolve factual disputes ... on a motion to dismiss" under Rule 12(b)(6), *Burnett v. Wash. Metro. Area Transit Auth.*, 58 F. Supp. 3d 104, 108-09 (D.D.C. 2014). Rather, "unresolved factual questions preclude dismissal" at this stage and must be adjudicated later. *Beyond Pesticides v. Monsanto Co.*, 311 F. Supp. 3d 82, 88 (D.D.C. 2018).

As to the Rule 12(b)(6) motion, Plaintiffs' allegations easily clear Rule 8's "low bar." *Holt v. Walsh Grp.*, 316 F. Supp. 3d 274, 282 (D.D.C. 2018).

In considering a Rule 12(b)(3) motion, courts likewise accept a plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor and resolves any factual conflicts in the plaintiff's favor. *James v. Verizon Servs. Corp.*, 639 F. Supp. 2d 9, 11 (D.D.C. 2009). "To prevail on a motion to dismiss for improper venue, the defendant must present facts that will defeat the plaintiff's assertion of venue." *Id.* Defendant Vincent has failed to do so.

**ARGUMENT**

**I.    Venue Is Proper As To Defendant Vincent.**

Venue is proper in the District of Columbia pursuant to 28 U.S.C. § 1391(e)(1) because all events giving rise to the claims took place in the District; Defendant Vincent was properly joined to this action under this provision. Defendant Vincent moves to dismiss for improper venue, claiming that venue is limited to courts in Virginia because his presence at the June 1, 2020 attack was pursuant to an agreement under Section 7302 of the Intelligence Reform and Terrorism Prevention Act of 2004 ("the Act"), 42 U.S.C. § 5196 Note, Pub. L. 108-458, Title VII, Subtitle C, § 7302, Dec. 17, 2004, 118 Stat. 340, as amended by Pub. L. 110-250, § 1, June 26, 2008, 122 Stat. 2318. However, Section 7302 of the Act is inapplicable here for two independent reasons. First, the Arlington County-U.S. Park Police agreement on which Defendant Vincent relies specifies that Section 7302 applies only when Arlington requests help from the Park Police, not— as occurred here—vice versa. Second, the Act does not apply to the agreement at all because the agreement does not satisfy the criteria of the Act in the first place.

**A. Under the interagency agreement at issue, the venue limitations invoked by Defendant Vincent do not apply to Park Police requests for Arlington County assistance.**

The terms of the interagency agreement ("Agreement") Defendant Vincent cites, ECF 83-2, reveal on their face that Section 7302 of the Act is not applicable to this case. The Agreement between the U.S. Park Police ("Park Police" or "USPP") and the Arlington County Police Department ("Arlington County" or "ACPD") for "law enforcement assistance" recognizes two distinct statutory provisions governing two different scenarios. When *Arlington County requests support from the Park Police*, it is pursuant to Section 7302 of the Act, but *when the Park Police requests support from Arlington County*, it is pursuant to a different statutory provision, 54 U.S.C.

4

§ 102701. During the events at issue, the Park Police had requested support from Arlington County, not the other way around. Therefore, the Act does not govern this case.

The text of the Agreement is conclusive on this point. The Agreement specifies:

This agreement is a "mutual aid agreement" for purposes of § 7302 of the National Intelligence Reform and Terrorism Prevention Act of 2004 ("Act"), *by which the USPP is requested by the ACPD* to provide police and other public safety services, assistance and support during emergencies or public service events, to which the liability provisions of § 7302(d) of the National Intelligence Reform Act of 2004 shall apply.

ECF 83-2 at 1 (emphasis added). The phrase "by which the USPP is requested by the ACPD to provide ... support" explicitly cabins the Act's application to requests *by* Arlington County for support *from* the Park Police.

By contrast, requests *by* the Park Police for support *from* Arlington County are governed by 54 U.S.C. § 102701. The Agreement recites that 54 U.S.C. § 102701(b) allows the National Park Service, of which the Park Police is a division, to "designate 'special policemen in areas of the National Park System,'" and that during "emergencies and public service events USPP may request the ACPD to provide law enforcement assistance on Federal parkland." ECF 83-2 at 1. When discussing Park Police requests for Arlington County assistance, the Agreement does not invoke Section 7302 of the Act. Instead, it states that "USPP requests the ACPD to provide police officers to assist the USPP on certain Federal parklands," ECF 83-2 at 2 (¶ 1), and that "USPP represents that its official requesting the ACPD personnel pursuant to this Agreement, has authority under 54 U.S.C. 102701(b) to do so." ECF 83-2 at 4 (¶ 12).

Defendant Vincent's involvement in the Lafayette Square attack was, of course, pursuant to a request *by* the Park Police for assistance *from* Arlington County, not the other way around— as his exhibits make clear. Defendant Vincent declares he was on assignment "to assist the United States Park Police," ECF 83-1 ¶ 3, and the Emergency or Public Service Event Law Enforcement

Support Review Form that Defendant Vincent submits states that "the following request *for Arlington County Police Department Level 1 CDU personnel* is made and agreed to." ECF 83-3 (emphasis added). Because a Park Police request for support from Arlington County under the Agreement is made under 54 U.S.C. § 102701, not Section 7302 of the Act, the venue-limiting provisions of the Act are not applicable here. No venue-limiting provisions appear in 54 U.S.C. § 102701. Thus, nothing precludes venue here pursuant to the general terms of 28 U.S.C. § 1391(e)(1). Defendant Vincent's venue agreement should be rejected on this ground alone.

**B. The Act is also inapplicable because the mutual aid agreement at issue does not satisfy the criteria for a valid agreement under Section 7302 of the Act.**

The Act's venue-limiting provision is inapplicable for an additional reason: one of the statutory criteria for an agreement under the Act was not met. Section 7302(b)(1) of the Act describes who may enter into mutual aid agreements with localities under that Act: specifically, "[t]he mayor of the District of Columbia, any authorized representative of the Federal Government, the Governor of the State of Maryland, the Governor of the Commonwealth of Virginia, or the chief operating officer of a locality, or their designees." 42 U.S.C. § 5196 Note. The Agreement here was signed by Robert MacLean, then-Chief of the Park Police, and M. Jay Farr, then-Chief of the Arlington County Police Department. ECF 83-2 at 4.

The Chief of the Park Police is not an "authorized representative of the Federal Government" as that term is defined in Section 7302. The term is statutorily defined under Section 7302(a)(1) of the Act as "any individual or individuals designated by the President with respect to the executive branch ... or their designees." 42 U.S.C. § 5196 Note. Plaintiffs have found no designation of the Chief of the Park Police, nor has Defendant Vincent provided one. The President has designated the Secretary of the Interior to enter into agreements under the Act "for lands administered by the Department of Interior in the National Capital Region." *Memorandum on*

*Designation of Authorized Representative*, 2 Pub. Papers 1823 (Nov. 28, 2012), https://www.govinfo.gov/content/pkg/PPP-2012-book2/pdf/PPP-2012-book2-doc-pg1823.pdf. But that Memorandum makes no similar designation of the Chief of the Park Police. Without a proper designation, the Chief of the Park Police is not an "authorized representative of the Federal Government." For this reason, Section 7302 of the Act, including its venue-limiting provision, is not applicable to the agreement under which Defendant Vincent acted, and therefore does not apply to this case.

### C. If the Court finds venue improper, it should transfer the claims against Defendant Vincent to the Eastern District of Virginia rather than dismiss.

Should this Court find that the Act does govern here, Plaintiffs request that the Court sever and transfer the claims against Defendant Vincent to the U.S. District Court for the Eastern District of Virginia, where venue would be proper if the Act applies.

Under 28 U.S.C. § 1406(a), transfer, rather than dismissal, is appropriate "in the interest of justice." Where, as here, "procedural obstacles 'impede an expeditious and orderly adjudication ... on the merits,'" the congressional purpose underlying Section 1406(a) "favor[s] the transfer of cases." *Sinclair v. Kleindienst*, 711 F.2d 291, 293-94 (D.C. Cir. 1983) (internal citation omitted); *see Nat'l Wildlife Fed'n v. Browner*, 237 F.3d 670, 674 (D.C. Cir. 2001) ("[T]he standard remedy for improper venue is to transfer the case to the proper court rather than dismissing it—thus preserving a petitioner's ability to obtain review."). Accordingly, this Court has frequently recognized that "the interest of justice generally requires transferring a case to the appropriate district in lieu of dismissal." *Parker v. Sebelius*, 51 F. Supp. 3d 173, 176 (D.D.C. 2014); *see, e.g., Fam v. Bank of Am.*, 236 F. Supp. 3d 397, 408 (D.D.C. 2017); *Freedman v. Suntrust Banks, Inc.*, 139 F. Supp. 3d 271, 276 (D.D.C. 2015); *Delta Sigma Theta Sorority Inc. v. Bivins*, 20 F. Supp. 3d 207, 218 (D.D.C. 2014).

Because venue is proper here with respect to the other Defendants, if venue is improper as to Defendant Vincent, the Court should sever the claims against him to a new civil action, and then transfer that action to the Eastern District of Virginia. *See* Fed. R. Civ. P. 21 ("The court may also sever any claim against a party."); *see., e.g.*, *Abuhouran v. Nicklin*, 764 F. Supp. 2d 130, 132 (D.D.C. 2011) ("[C]laims must first be severed into separate cases, so that one entire case may be transferred and the other entire case may remain."); *Wultz v. Islamic Republic of Iran*, 762 F. Supp. 2d 18, 32 (D.D.C. 2011) ("If the Court were to sever the claims against [one defendant] from those against the [other] defendants, those claims would then act as a parallel suit which the Court could transfer while retaining the claims against [the others].").

## II.   Plaintiffs Have Stated Claims Under 42 U.S.C. §§ 1985 & 1986 Against Defendant Vincent.

### A.   Plaintiffs adequately pleaded claims under 42 U.S.C. § 1985(3).

To plead a claim under 42 U.S.C. § 1985(3), a plaintiff must allege "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, … and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in her person or property or deprived of any right or privilege of a citizen of the United States." *Martin v. Malhoyt*, 830 F.2d 237, 258 (D.C. Cir. 1987) (citation omitted).

Defendant Vincent does not contest that Plaintiffs are a class or classes of persons protected by § 1985, that the conspiracy deprived civil rights with discriminatory intent, that the rights violated are rights protected by § 1985, that Plaintiffs pleaded acts in furtherance of the conspiracy, or that Plaintiffs pleaded injury. Instead, he contests the existence of the conspiracy and the sufficiency of the allegations that he was a member of it. Vincent MTD 6. These contentions reflect a misunderstanding of conspiracy law and ignore the well-pleaded allegations of the complaint.

8

1. **Plaintiffs have adequately pleaded the existence of an "agreement between two or more persons."**

A conspiracy depends on an "agreement between two or more persons." *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983); *see Barr v. Clinton*, 370 F.3d 1196, 1200 (D.C. Cir. 2004) (standard for establishing a conspiracy under § 1985(3) is the same as civil conspiracy). To establish a conspiracy, Plaintiffs "need not allege that an express or formal agreement was entered into." *United States v. Comput. Scis. Corp.*, 53 F. Supp. 3d 104, 134 (D.D.C. 2014); *accord Lagayan v. Odeh*, 199 F. Supp. 3d 21, 30 (D.D.C. 2016). Instead, "courts have to infer an agreement from indirect evidence in most civil conspiracy cases." *Halberstam*, 705 F.2d at 486. Plaintiffs therefore need only allege facts sufficient to allow an "infer[ence] from the circumstances that the [conspirators] had a 'meeting of the minds.'" *Adickes v. S.H. Kress & Co.*, 398 U.S.144, 157-158 (1970). "Factors like the relationship between the parties' acts, the time and place of their execution, and the duration of the joint activity" bear on whether an agreement was reached between the parties. *Halberstam*, 705 F.2d at 486.

Agreement can therefore be shown through circumstantial evidence, such as "the joint appearance of defendants at transactions and negotiations in furtherance of the conspiracy; the relationship among codefendants; mutual representations of defendants to third parties; and other evidence suggesting 'unity of purpose or common design and understanding' among conspirators to accomplish the objects of the conspiracy." *United States v. Wardell*, 591 F.3d 1279, 1287-88 (10th Cir. 2009) (cleaned up); *see also United States v. Wood*, 879 F.2d 927, 938 (D.C. Cir. 1989) (in criminal context, "[c]ircumstantial evidence, including inferences from a 'development and a collocation of circumstances,' suffices to prove participation in a conspiracy"). For instance, in *Lagayan*, this Court considered defenses to a civil conspiracy and § 1985 claim arising from an alleged conspiracy to traffic the plaintiff to the United States and enslave her. 199 F. Supp. 3d at

24, 30-32. The defendants asserted similar defenses to those raised here—namely, that the plaintiff had "set forth only conclusory allegations of an agreement between the ... Defendants and [had] failed to allege any particulars ... showing that there was an agreement." *Id.* at 30 (internal quotation marks omitted). The court rejected this argument, holding that a plaintiff is not required to allege "the existence of an event, conversation, or document" in which an agreement was reached and that even if such a requirement existed, the plaintiff had satisfied it. *Id*. at 31. The court inferred the existence of a conspiracy from the mere fact the defendants had "coordinated Plaintiff's international travel to Defendants' home in the United States." *Id*.

And the necessary agreement can be made in an instant. In *United States v. Scott*, 2020 WL 6494642 (2d Cir. Nov. 5, 2020), the Second Circuit affirmed convictions under § 1985's criminal analogue, 18 U.S.C. § 241, which provides criminal penalties for engaging in conspiracies to deprive civil rights. *See Griffin v. Breckenridge*, 403 U.S. 88, 98 (1971) (describing § 241 as "the closest remaining criminal analogue to § 1985(3)" and looking to its case law to interpret § 1985(3)). In *Scott*, corrections officers were charged under § 241 for a group beating of an inmate. They claimed that there was no "conspiracy" because "the assault was spontaneous" and "there was insufficient evidence of an agreement." *Scott*, 2020 WL 6494642, at *3. The Second Circuit rejected this position, noting that there is no requirement of "an extended period of meditation or a distinct verbal agreement" to find a conspiracy. *Id*. Although one officer's "initial punch may have been spontaneous," the conspiracy could be established by evidence showing that "the other officers acted in concert and purposefully joined the assault." *Id*.

Here, as in *Lagayan* and *Scott*, even the barest description of the June 1 attack on protesters at Lafayette Square and the various parties who effectuated that attack supports a reasonable inference that the Defendants, including Defendant Vincent, "acted in concert" and "purposefully

joined the assault." *Id.* There are additional allegations here establishing—or from which one can

reasonably infer—that the Defendants *also* engaged in an "extended period of meditation" or

reached a "distinct verbal agreement" prior to the assault. *Id.* For example, Plaintiffs have alleged

that the various defendants communicated and "coordinated" with each other, TAC ¶¶ 45, 76, 99,

107, and specifically that the federal and Arlington defendants had a "command center" from

which the attack was directed, TAC ¶¶ 45, 76, 99, 107. The coordinated nature of the attack is

further supported by the use of tear gas deployed ahead of officers advancing on foot and the fact

that federal, D.C., and Arlington officers used the same type of force against protesters throughout

the incident. TAC ¶¶ 141-143, 151, 160-163, 170-174, 186-190, 193.

Plaintiffs have amply alleged a conspiracy here.

**2. The complaint squarely places Defendant Vincent in the conspiracy.**

Defendant Vincent's claims that Plaintiffs "allege no specific facts against Captain

Vincent," and that they plead "no facts stating any acts by Captain Vincent in furtherance of a

conspiracy" or that "caused Plaintiffs injury," Vincent MTD 6, are easily refuted.

According to the complaint, federal law enforcement officers, together with ACPD

officers, "surrounded Plaintiffs and other civil rights activists assembled in Lafayette Square,"

TAC ¶ 67, and then these officers simultaneously donned gas masks in preparation for the

impending attack. TAC ¶ 77. ACPD officers participated in the assault on the peaceful racial

justice demonstrators alongside military and federal law enforcement officers. TAC ¶ 99.

Defendant Vincent was present at the Joint Operations Command Center and

"coordinat[ed] the actions of the ACPD officers present at the Square with the federal defendants."

TAC ¶ 76. His presence and the presence of ACPD officers on the line in Lafayette Square were

obviously not coincidences. And even if there were some other possible explanation for their

11

presence in the District or Defendant Vincent's role in the command center, all reasonable inferences at this stage must be drawn in favor of Plaintiffs. *Banneker Ventures*, 798 F.3d at 1129.

The complaint is thus clear and specific about Defendant Vincent's role: ACPD officers directly participated in the assault on Plaintiffs, and Defendant Vincent coordinated their actions.

Defendant Vincent's arguments against the § 1985 claim fail.

### B. Plaintiffs adequately pleaded claims under 42 U.S.C. § 1986.

For a 42 U.S.C. § 1986 claim, a plaintiff must show that (1) the defendant had actual knowledge of a § 1985 conspiracy; (2) the defendant had the power to prevent or aid in preventing the commission of a § 1985 violation; (3) the defendant neglected or refused to try to prevent a § 1985 violation; and (4) a § 1985 violation was committed. *Clark v. Clabaugh*, 20 F.3d 1290, 1295 (3d. Cir. 1994). For the third element, "negligence is sufficient to maintain a § 1986 claim." *Park v. City of Atlanta*, 120 F.3d 1157, 1160 (11th Cir. 1997); *accord Clark*, 20 F.3d at 1298. Defendant Vincent's willful or negligent failure to attempt to stop violence carried out in violation of § 1985 is a classic § 1986 violation. *See, e.g.*, *Park*, 120 F.3d at 1159-61 (alleging police did not adequately intervene to reduce or halt racially-motivated violence); *Clark*, 20 F.3d at 1296 (same); *Waller v. Butkovich*, 584 F. Supp. 909 (M.D.N.C. 1984) (same).

Defendant Vincent contests the § 1986 claim on two grounds. First, he argues that the § 1986 claim fails because the § 1985 claim fails. Vincent MTD 6. Because Plaintiffs have stated a § 1985 claim as explained above, Defendant Vincent's argument is meritless.

Second, Defendant Vincent argues that he did not have the ability to prevent or aid in preventing the attack on protesters because he lacks authority over the federal Defendants. But defendants are not excused from liability for failing to intervene merely because their intervention may not have *completely* stopped the conspiracy. The plain text of the statute imposes liability on

Case 1:20-cv-01469-DLF   Document 99   Filed 11/19/20   Page 14 of 15

those who had the "power to prevent *or aid in preventing*" wrongs pursuant to a § 1985 conspiracy. 42 U.S.C. § 1986 (emphasis added). That is, defendants are liable for failing to act as long as their actions could have reduced the likelihood of the conspiracy being carried out or the degree of harm inflicted by the conspiracy. Defendant Vincent cites no authority for the proposition that the phrase "aid in preventing" should be read out of the statute or that, despite its plain text, § 1986 liability attaches only where defendants could have *completely* prevented the conspiracy. To require that a defendant needs to be able to fully prevent a conspiracy to be liable under § 1986 puts all of the statute's weight on "to prevent" and renders the disjunctive clause "or aid in preventing" surplusage. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." (citation and quotation marks omitted)).

There are a number of actions Defendant Vincent *could* have taken to mitigate the harm from the conspiracy. For example, he could have (1) refused to participate in the conspiracy; (2) directed ACPD officers not to engage in violence against Plaintiffs; (3) directed ACPD officers to provide medical assistance and avenues of escape to Plaintiffs fleeing the other Defendants' attacks; or (4) order the ACPD officers under his command to protect the demonstrators. *See Symkowski v. Miller*, 294 F. Supp. 1214, 1217 (E.D. Wis. 1969) (§ 1986 claim could proceed where plaintiff claimed that two police officers failed to intervene to stop a beating by a third officer); *see also Bedford v. City of Hayward*, 2012 WL 4901434, at *15 (N.D. Cal. Oct. 15, 2012) (supervisors can be liable under § 1986 for § 1985 violation predicated on Fourth Amendment violation by inferior officers).

13

Thus, Plaintiffs have adequately pleaded that Defendant Vincent could have taken actions to prevent or aid in preventing the harms of the § 1985 conspiracy.

## CONCLUSION

Defendant Vincent's motion to dismiss should be denied.

November 19, 2020

Respectfully submitted,

/s/ Scott Michelman

Jon Greenbaum (D.C. Bar No. 489887)
Arthur Ago (D.C. Bar No. 463681)
David Brody (D.C. Bar No. 1021476)
Arusha Gordon (D.C. Bar No. 1035129)
Noah Baron (D.C. Bar No. 1048319)
Lawyers' Committee for Civil Rights Under Law
1500 K Street N.W., Suite 900
Washington, D.C. 20005
(202) 662-8600
jgreenbaum@lawyerscommittee.org

Scott Michelman (D.C. Bar No. 1006945)
Arthur B. Spitzer (D.C. Bar No. 235960)
Michael Perloff (D.C. Bar No. 1601047)
Kayla Scott*
Megan Yan*
American Civil Liberties Union Foundation
    of the District of Columbia
915 15th Street NW, Second Floor
Washington, D.C. 0005
(202) 457-0800
smichelman@acludc.org

John A. Freedman (D.C. Bar No. 453075)
David E. Kouba (D.C. Bar No. 483145)
Thomas D. McSorley (D.C. Bar No. 1001890)
Sonia Tabriz (D.C. Bar No. 1025020)
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue, N.W.
Washington, D.C. 20004
(202) 942-5000
John.Freedman@arnoldporter.com

Kaitlin Banner (D.C. Bar No. 1000436)
Tristin Brown (D.C. Bar No. 1671642)
Dennis Corkery (D.C. Bar No. 1016991)
Hannah Lieberman (D.C. Bar No. 336776)
Jonathan Smith (D.C. Bar No. 396578)
Washington Lawyers' Committee for Civil
    Rights and Urban Affairs
700 14th Street, NW, Suite 400
Washington, D.C. 20005
(202) 319-1000
kaitlin_banner@washlaw.org

*Not a D.C. Bar member; practicing under
supervision pursuant to D.C. App. R. 49(c)(8A)

 November 19, 2020

*Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BLACK LIVES MATTER D.C., et al.,

            *Plaintiffs*,

    v.

DONALD J. TRUMP, et al.

            *Defendants*.

Case No. 1:20-cv-01469-DLF

[PROPOSED] **ORDER**

       Upon consideration of Defendant Vincent's Motion to Dismiss Plaintiffs' Third Amended

Complaint, ECF 83, and all briefing thereon, it is hereby ORDERED that the motion is DENIED.

Date: _____

_____

Dabney L. Friedrich
United States District Judge