UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

BLACK LIVES MATTER D.C., *et al.*,

*Plaintiffs,*

v.

DONALD J. TRUMP, President of the United States of America, *et al.*,

*Defendants*.

Civil Action No. 20-1469 (DLF)

---

## UNITED STATES' REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' OFFICIAL CAPACITY CLAIMS AGAINST FEDERAL DEFENDANTS

### TABLE OF CONTENTS

Page

ARGUMENT ...................................................................................................................3

I.   PLAINTIFFS LACK STANDING TO SEEK PROSPECTIVE INJUNCTIVE RELIEF.........3

     A.  Plaintiffs Fail To Allege A Certainly Impending Or Ongoing Injury...................................4

     B.  BLMDC Lacks Organizational Standing.........................................................................11

II.  PLAINTIFFS' OFFICIAL-CAPACITY CLAIMS UNDER 42 U.S.C. §§ 1985(3) AND 1986 WARRANT DISMISSAL ...................................................................................................14

     A.  Section 1985 Does Not Authorize Courts To Award Injunctive Relief. ............................14

     B.  Plaintiffs' Section 1985(3) Claim Is Barred By Sovereign Immunity...............................16

     C.  Plaintiffs Fail To State A Claim Under § 1985(3) .................................................................17

CONCLUSION ...................................................................................................................20

## TABLE OF AUTHORITIES

**CASES**                                                               **Page**

*31 Foster Children v. Bush,*
   329 F.3d 1255 (11th Cir. 2003) ............................................................................. 7

*Arpaio v. Obama,*
   797 F.3d 11 (D.C. Cir. 2015) ................................................................................. 8

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ............................................................................................. 19

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ............................................................................................. 18

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,*
   403 U.S. 388 (1971) ............................................................................................... 3

*Bush v. Butler,*
   521 F. Supp. 2d 63 (D.D.C. 2007) ...................................................................... 17

*Carney v. Adams,*
   --- S. Ct. ---, 2020 WL 7250101 (Dec. 10, 2020) ................................................ 3

*Chang v. United States,*
   738 F. Supp. 2d 83 (D.D.C. 2010) ................................................................ 4, 6, 8

*City of Los Angeles v. Lyons,*
   461 U.S. 95 (1983) ........................................................................................ *passim*

*Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013) ......................................................................................... 6, 13

*Davis v. Dep't of Justice,*
   204 F.3d 723 (7th Cir. 2000) ............................................................................... 17

*Dep't of Commerce v. New York,*
   139 S. Ct. 2551 (2019) ........................................................................................... 6

*Elend v. Basham,*
   471 F.3d 1199 (11th Cir. 2006) ............................................................................. 5

*Food & Water Watch, Inc. v. Vilsack,*
   808 F.3d 905 (D.C. Cir. 2015) ........................................................................ 11-13

*Gilligan v. Morgan,*
   413 U.S. 1 (1973) ................................................................................................. 9

*Hernandez v. Cremer,*
   913 F.2d 230 (5th Cir. 1990)............................................................................. 9-10

*Hodgers-Durgin v. De La Vina,*
   199 F.3d 1037 (9th Cir. 1999)............................................................................... 9

*Hohri v. United States,*
   782 F.2d 227 (D.C. Cir. 1986) ............................................................................ 16

*Int'l Acad. of Oral Med. & Toxicology v. FDA,*
   195 F. Supp. 3d 243 (D.D.C. 2016) .................................................................... 14

*Islamic Am. Relief Agency v. Gonzales,*
   477 F.3d 728 (D.C. Cir. 2007) ............................................................................ 19

*Laird v. Tatum,*
   408 U.S. 1 (1972) .................................................................................................. 7

*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992) ........................................................................................... 5-6

*Melton v. Dist. Of Columbia,*
   85 F. Supp. 3d 183 (D.D.C. 2015) ...................................................................... 19

*O'Shea v. Littleton,*
   414 U.S. 488 (1974) ........................................................................................... 4, 9

*Russello v. United States,*
   464 U.S. 16 (1983) .............................................................................................. 15

*Thomas v. News World Commc'ns,*
   681 F. Supp. 55 (D.D.C. 1988) ........................................................................... 19

*Trudeau v. FTC,*
   456 F.3d 178 (D.C. Cir. 2006) ............................................................................ 16

*United States v. Timmons*,
   672 F.2d 1373 (11th Cir. 1982) ................................................................................. 16

*Whitmore v. Arkansas*,
   495 U.S. 149 (1990) ..................................................................................................... 2

**UNITED STATES CODE**

42 U.S.C. § 1983 ............................................................................................................. 2, 15

42 U.S.C. § 1985 ............................................................................................. 2-3, 14-17, 19-20

42 U.S.C. § 1986 .............................................................................................. 2, 14, 16-17, 19-20

This case arises out of law enforcement actions taken during a large-scale demonstration held in Washington D.C. on June 1, 2020, in Lafayette Square.  Plaintiffs include eight individuals who participated in the demonstration, 3d Am. Compl. (ECF No. 52) ¶¶ 10-15, as well as the D.C. chapter of Black Lives Matter ("BLMDC"), suing on behalf of its members, some of whom participated in the demonstration on June 1st.  *Id.* ¶ 9.  The individual Plaintiffs also purport to represent a class of similarly situated individuals who also participated in the demonstration.  *Id.* ¶ 211.  Plaintiffs allege that, prior to the President's walk through Lafayette Square to St. John's Church, federal and state law enforcement officers, including members of the U.S. Park Police, U.S. Secret Service, U.S. Bureau of Prisons, and the D.C. National Guard, violently dispersed peaceful demonstrators at Lafayette Square on June 1st in violation of their First and Fourth Amendment rights.  Plaintiffs filed this action three days later seeking damages, declaratory, and equitable relief against federal, state, and municipal defendants for the roles they allegedly played in that incident.

In addition to their claims against federal and state defendants sued in their individual capacities, Plaintiffs sued President Donald J. Trump, Attorney General William P. Barr, then-Secretary of Defense Mark Esper,[1] Acting Chief of the U.S. Park Police Gregory T. Monahan, Director of the U.S. Secret Service James M. Murray, Commanding General of the D.C. National Guard Major General William J. Walker, and Director of the Federal Bureau of Prisons Michael Carvajal (the "Official-Capacity Federal Defendants"), each in their official capacities.  Plaintiffs seek a judgment declaring that the United States violated the Constitution and injunctive relief

---

[1]     The current Acting Secretary of Defense, Christopher C. Miller, is automatically substituted as a defendant in this action.  *See* Fed. R. Civ. P. 25(d)(1)

prohibiting the United States from "engaging in the unlawful acts" described in their complaint. *Id.* ¶¶ 290-91 (Plaintiffs' Prayer for Relief).

The United States moved to dismiss all claims against the Official-Capacity Federal Defendants under Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6). *See* United States' Motion to Dismiss (ECF No. 79), and Memorandum (ECF No. 79-1). As explained in the United States' motion, Plaintiffs lack standing under Article III of the Constitution to sue for broad prospective injunctive and programmatic relief because they have failed to show they personally face "a real and immediate threat" of future injury. Mem. at 9 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). Plaintiffs' opposition brief (ECF No. 98) confirms that, at most, Plaintiffs face an unsubstantiated "possible future injury," *see Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)), but that is not enough. "A threatened injury must be 'certainly impending' to constitute injury in fact," *id.*, and Plaintiffs do not meet that standard. Moreover, Plaintiffs claims against the United States for violations of 42 U.S.C. §§ 1985(3) and 1986 must fail because the United States has not waived its sovereign immunity for such claims, injunctive relief is unavailable under section 1985(3), and Plaintiffs have pled insufficient facts to show any conspiracy by the Official-Capacity Federal Defendants to violate their constitutional rights. *See* Mem. at 22.

Plaintiffs' opposition (ECF No. 98) offers no persuasive rebuttal to any of these points. Thus, for the reasons explained in the United States' motion and in the discussion below, Plaintiffs' claims against the Official-Capacity Federal Defendants should be dismissed—whether on standing or failure to state a claim grounds—under Rules 12(b)(1) and 12(b)(6).

**ARGUMENT**

## I.    PLAINTIFFS LACK STANDING TO SEEK PROSPECTIVE INJUNCTIVE RELIEF.

As relevant to the Official-Capacity Federal Defendants, Plaintiffs seek an order prohibiting the United States from "engaging in the unlawful acts" described in their complaint. 3d Am. Compl. ¶¶ 291.[2]  The Constitution grants Article III courts the power to decide "Cases" or "Controversies."  Art. III, § 2.  The Supreme Court has "long understood that constitutional phrase to require that a case embody a genuine, live dispute between adverse parties, thereby preventing the federal courts from issuing advisory opinions."  *Carney v. Adams*, --- S. Ct. ---, 2020 WL 7250101, at *3 (Dec. 10, 2020) (citation omitted).  Plaintiffs do not dispute that, in order to obtain their requested relief, they bear the burden to demonstrate Article III standing and, therefore, must allege an "injury in fact."  *See* Opp'n at 60; Mem. at 9.  Moreover, as explained in the United States' motion, *see* Mem. at 9, Plaintiffs seeking equitable relief must also establish a "'real and immediate threat of repeated injury' demonstrated by more than 'past exposure to illegal conduct.'"  *Lyons*, 461 U.S. at 102 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)); *see Chang v. United States*, 738 F. Supp. 2d 83, 88 (D.D.C. 2010) (referring to this requirement as the "fourth element" of standing).  Plaintiffs have failed to meet their burden here.

As discussed in the United States' motion, *Lyons* controls where, as here, a plaintiff seeks equitable relief regarding the possibility of future conduct.  *See* Mem. at 9-11.  Indeed, in *Lyons* the Supreme Court established that courts lack jurisdiction over claims for equitable relief absent a real and immediate danger that the plaintiff will be subject to the challenged conduct.  *See* 461

---

[2]     Plaintiffs also seek money damages against other defendants in their individual capacities pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  Those defendants have separately moved to dismiss those claims, or have yet to respond to Plaintiffs' complaint.

U.S. at 101 (dismissing claim for equitable relief based on lack of real and immediate danger that the plaintiff would be subjected again to an alleged policy of illegal chokeholds by the Los Angeles Police Department). "Abstract injury is not enough." *Id.* at 101. Rather, a plaintiff must show that she "has sustained or is immediately in danger of sustaining some direct injury" as the result of the challenged official conduct and the injury or threat of injury must be both "real and immediate," not "conjectural" or "hypothetical." *Id.*

### A.  Plaintiffs Fail To Allege A Certainly Impending Or Ongoing Injury.

As explained in the United States' motion, in order to show they personally face a "certainly impending" future injury attributable to the Official-Capacity Federal Defendants, and similar to the injury they allegedly suffered on June 1, 2020, Plaintiffs would have to show that a series of events, each requiring a substantial amount of both factual predicate and government coordination, are likely to occur again. *See* Mem. at 12-13. To do so, Plaintiffs must establish they have concrete plans to demonstrate in the foreseeable future at a specific event in Lafayette Square; that federal law enforcement, including the agencies named in this action, would respond to the demonstration; that the response would be necessary to protect the President's personal safety during a previously unscheduled or unannounced public visit by the President to Lafayette Square; that federal officers would use orders to disperse and crowd control tactics; that individual federal officers would use that law enforcement response as a pretext to inflict physical injuries on peaceful demonstrators, and that one of the named Plaintiffs would likely be so targeted. *Id.* Neither Plaintiffs' allegations nor their opposition makes any of these showings.[3]  *See Lyons*, 461 U.S. at 105-06.

---

[3]      Plaintiffs' opposition attempts to cast the "central issue at stake" in this matter is "whether anyone can be held accountable for [the alleged] actions." Opp'n at 1. As discussed herein,

Here, Plaintiffs fail to identify a comparable single future event at which they will be demonstrating when the President or other Official-Capacity Federal Defendants will direct demonstrators and other members of the public to be removed from Lafayette Square.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 n.2 (1992) (a plaintiff must show "he will soon expose himself to the injury," and "there is certainly no reason in principle . . . [for] presuming that the plaintiff himself will do so").  As noted, any such assertion would rely on a chain of contingencies that are at least as uncertain and speculative as those in *Lyons*, if not more so.  On this point, Plaintiffs argue that they "need not allege the specifics" of any future potential interaction with the Official-Capacity Federal Defendants, *see* Opp'n at 66.  They merely argue that they intend to continue demonstrating, *see* 3d Am. Compl. ¶¶ 176, 201, including at the White House, *id.* ¶ 129. These allegations are insufficient, especially because thousands of people have protested in Lafayette Square when no similar law enforcement operation took place.

As the Eleventh Circuit pointed out in *Elend v. Basham*, "even assuming that [a future] protest will take place—the unspecified details of where, at what type of event, with what number of people, and posing what kind of security risk," counseled against finding a "live case or controversy."  471 F.3d 1196, 1206-07 (11th Cir. 2006) (noting that doing so would be "the judicial equivalent of shooting blanks in the night").  Here, the extensive coordination required by the agencies named in Plaintiffs' Third Amended Complaint to even interact with Plaintiffs—let alone violently or unlawfully—counsels against a finding of standing.  While their future demonstrations may possibly put them into contact with the U.S Park Police (who are primarily responsible for routinely policing Lafayette Square), this says nothing of whether such future interactions with

Plaintiffs cannot meet the requirement of showing any real or immediate threat that plaintiffs will be wronged again.  In addition, Plaintiffs assert a claim for damages, and, therefore, have an adequate remedy at law, subject to available defenses.  *Lyons*, 461 U.S. at 109, 113.

any of the federal agencies named in their complaint will turn violent or otherwise deprive them of any constitutional rights.

Plaintiffs attempt to lower the bar by arguing that they need only demonstrate a "substantial risk" of future harm here. *See* Opp'n at 65 (citing *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2565 (2019)). But this is a distinction without a difference. To be sure, the Supreme Court noted in *Clapper v. Amnesty International USA* that a plaintiff need not allege "that it is literally certain" future harms will occur. 568 U.S. 398, 414, n.5 (2013) (finding that "to the extent that the 'substantial risk' standard is . . . distinct from the 'clearly impending' requirement, respondents fall short of even that standard, in light of the attenuated chain of inferences necessary to find harm here"). While the imminence question in standing inquiries can be "somewhat elastic," *Lujan*, 504 U.S. at 564 n.2, there is no dispute that, in order to obtain a permanent injunction, Plaintiffs must establish that they are sufficiently likely to face the same alleged unlawful conduct again. *Lyons*, 461 U.S. at 106. Under any permutation of that standard, Plaintiffs fail to make that required showing.

In this case, Plaintiffs have failed to plausibly assert that the allegedly unlawful actions taken by law enforcement on June 1st were pursuant to any change in official government policy for managing demonstration activities and maintaining order in Lafayette Square rather than a response to particular conditions in the Square on June 1, 2020. *See* Mem. at 14-17. Plaintiffs' opposition fails to respond to this point or distinguish any of the cases cited by the United States regarding the likelihood of a future injury based on any alleged unlawful policy. *Id.* This is significant because courts generally agree that, "when the threatened acts that will cause injury are authorized or part of a policy, it is significantly more likely that the injury will occur again," and it is consequently more likely that plaintiffs have standing to pursue equitable relief. *31 Foster*

*Children v. Bush*, 329 F.3d 1255, 1265-66 (11th Cir. 2003).  Nothing in Plaintiffs' Third Amended Complaint or opposition indicates why they "might be realistically threatened by [the Official-Capacity Federal Defendants] who acted within the strictures of the [government's] policy." *Lyons*, 461 U.S. at 106.  Indeed, Plaintiffs concede that they "do not challenge a large-scale policy—or any policy at all."  Opp'n at 51.  Rather, plaintiffs merely challenge the alleged exercise of law enforcement policy prerogatives to protect the President during a specific appearance.  While the protection measures on June 1st affected a potentially large number of demonstrators day and raised policy concerns about presidential security, they did not establish a generally applicable prospective policy for dealing with all future protests in the Square.  And while plaintiffs challenge "the implied threat to take similar actions in the future at the President's whim[,]" *id.*,[4] as discussed below, Plaintiffs' reliance on the President's future intentions based on his prior statements regarding the June 1st incident falls short of establishing standing.

To establish that they are likely to be subject to future constitutional violations, Plaintiffs point to the President's statements leading up to and immediately after the June 1st incident, primarily on social media.  *See* Opp'n at 66.  But, as noted in the United States' motion, *see* Mem. at 12, these statements say nothing of any future demonstrations or any specific future intentions of the Official-Capacity Federal Defendants, and the upcoming change in political Administrations further reduces the speculative chance of an alleged "Presidential whim" like the one on June 1st to practically zero.  Contrary to Plaintiffs' assertion otherwise, the President's alleged "gloating"

---

[4]      Plaintiffs also disclaim any reliance on a "chilling effect" alone to establish standing in an attempt to distinguish *Laird v. Tatum*, 408 U.S. 1, 12-13 (1972) (finding that "allegations of a subjective 'chill' upon the exercise of First Amendment rights are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm").  *See* Opp'n at 66, n.8.  As explained in the United States' motion, Plaintiffs may not establish standing based on such allegations.  *See* Mem. at 17-19.

on social media fails to establish any change in government policy pertaining to the use of force or otherwise provided any authorization or "entitlement" for federal law enforcement to use any unlawful force or violence against any future peaceful demonstrations or demonstrators.  *See* Opp'n at 66.  Indeed, as discussed above, Plaintiffs expressly disclaim any challenge to such a potential policy or practice of treating demonstrators with unlawful force or violence.  At most, Plaintiffs' allegations establish that the President supported the removal of individuals he perceived to be engaged in unlawful behavior from the White House complex based on the President's expressed concerns of such behavior leading up to June 1st.  Such statements do not, as Plaintiffs contend, threaten any imminent *future* action based on any lawful demonstrations at Lafayette Square or elsewhere. Accordingly, Plaintiffs' allegations are insufficient to confer standing here.  *See Arpaio v. Obama*, 797 F.3d 11, 21 (2015) (noting that "allegations that are really predictions" of future conduct are subject to a more rigorous inquiry).

In light of Plaintiffs' failure to allege any prospective government policy for dealing with future demonstrations in the park, there simply is no reason beyond speculation to support Plaintiffs' assertion that they will soon engage in activity that will again bring them into potentially injurious contact with law enforcement at the direction of the Official-Capacity Federal Defendants.  Plaintiffs fail to identify a single instance, either before or since the events of June 1st, in which federal law enforcement cleared Lafayette Square of the public after direction from the President and issuing inadequately amplified warnings to leave the area before deploying more physically aggressive tactics to disperse and control the crowd.  This cuts against any claim that Plaintiffs face a certain or impending threat of future injury by the Official-Capacity Federal Defendants.  *See Lyons*, 461 U.S. at 105, 108 (stating the fact that the plaintiff "may have been illegally choked by the police on October 6, 1976, while presumably affording [him] standing to

8

claim damages . . ., does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part," and noting "that five months elapsed between October 6, 1976, and the filing of the complaint, yet there was no allegation of further unfortunate encounters between [the plaintiff] and the police"); *O'Shea*, 414 U.S. at 495-96 ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."); *Gilligan v. Morgan*, 413 U.S. 1, 13-14 (1973) (Blackmun, J., joined by Powell, J., concurring) ("A complaint based on a single past incident, containing allegations of unspecified, speculative threats of uncertain harm that might occur at some indefinite time in the future, cannot support respondents' standing to maintain this action.").

Finally, Plaintiffs attempt to distinguish *Lyons* by arguing that "no unlawful conduct by Plaintiffs is necessary here for them to be once again subject to [] violence." Opp'n at 67 (citing *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1041 (9th Cir. 1999)). However, the Ninth Circuit in *Hodgers-Durgin* merely assumed that *Lyons* did not preclude standing for the plaintiffs in that case—it rendered no holding on the point—and affirmed the dismissal of the injunctive-relief claim based on the plaintiffs' failure to show "irreparable injury." 199 F.3d at 1042 n.3, 1044. And in *Hernandez v. Cremer*, which Plaintiffs also rely on, the Fifth Circuit noted that courts are "reluctant" to assume a Plaintiff will again engage in misconduct when "assessing the likelihood that a defendant will re-inflict a given injury[.]" 913 F.2d 230, 234 (5th Cir. 1990). However, the Court in *Hernandez* proceeded to analyze whether the plaintiff had successfully established a "reasonable expectation" that he would again be subject to a constitutional violation. *Id.* at 235. The Court here must conduct the same analysis based on Plaintiffs' well-pled allegations.

9

Further, it is of no significance for purposes of evaluating potential future harm that Plaintiffs may be assumed to avoid unlawful conduct because the Supreme Court has not interpreted *Lyons* to be inapplicable in situations involving only lawful conduct. *See* Opp'n at 86. For example, in *Adarand Constructors, Inc. v. Pena*, the plaintiff claimed its bid for a subcontract on a federal highway project was rejected by the prime contractor on account of a federal program favoring disadvantaged businesses. 515 U.S. 200, 204-05 (1995). In discussing whether the plaintiff had standing to seek declaratory and injunctive relief against the policy, the Court explained that the plaintiff's loss of the subcontract gave it standing to seek damages but that, under *Lyons*, "the fact of past injury, 'while presumably affording [the plaintiff] standing to claim damages . . ., does nothing to establish a real and immediate threat that he would again' suffer similar injury in the future." *Id.* at 210-11. The Court went on to consider whether the plaintiff "made an adequate showing" that it would be harmed by the policy "in the relatively near future," and it held that the plaintiff "satisfied this requirement" and, thus, had standing to seek equitable relief. *Id.* at 211-12. Nowhere in *Adarand Constructors* did the Court suggest the plaintiff was relieved of its obligation to show a real and immediate threat of future harm simply because its conduct in the matter was "legal."

Likewise, in *Defenders of Wildlife*, 504 U.S. at 563-64 & n.2, the Court applied *Lyons* in holding that the plaintiffs failed to show an imminent future injury, even though the asserted injury was premised on the plaintiffs engaging in perfectly legal activity (*i.e.*, observing endangered species abroad). Thus, the Supreme Court, as well as the Ninth Circuit and other federal courts, have routinely rejected standing where plaintiffs—engaged in "entirely innocent conduct," *Hodgers-Durgin*, 199 F.3d at 1041—could not show how such conduct exposed them to a real and immediate threat of future injury by the defendant.

10

**B.  BLMDC Lacks Organizational Standing.**

As established in the United States' motion, *see* Mem. at 19-22, BLMDC's participation in this lawsuit as an organization does not establish standing where it is otherwise lacking.  To satisfy the injury-in-fact requirement of Article III standing, an organization "must allege more than a frustration of its purpose."  *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015).  The D.C. Circuit "has distinguished between organizations that allege that their activities have been impeded"—which might have suffered an injury-in-fact—and "those that merely allege that their mission has been compromised"—which have not.  *Id.*  Thus, for BLMDC to establish organizational standing, "it must have 'suffered a concrete and demonstrable injury to its activities.'"  *Id.* (quoting *People for the Ethical Treatment of Animals* ("*PETA*") *v. U.S. Dep't of Agriculture*, 797 F.3d 1087, 1093 (D.C. Cir. 2015)) (alterations adopted).

This determination turns on "a two-part inquiry—'we ask, first, whether the agency's action or omission to act injured the organization's interest and, second, whether the organization used its resources to counteract that harm.'"  *Id.* (quoting *PETA*, 797 F.3d at 1094) (alterations adopted); *accord Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371 (D.C. Cir. 2017).  The first step tests whether "the defendant's conduct perceptibly impaired the organization's ability to provide services."  *Turlock Irrigation Dist. v. FERC*, 786 F.3d 18, 24 (D.C. Cir. 2015) (internal quotation marks omitted).  And although the D.C. Circuit "has expressed this test in various ways, . . . 'they all focus on the same point: the organization's tasks must be impeded' by the agency's action or omission."  *Weingarten v. Devos*, 468 F. Supp. 3d 322, 333 (D.D.C. 2020) (quoting *Ctr. for Responsible Sci. v. Gottlieb*, 346 F. Supp. 3d 29, 37 (D.D.C. 2018)).

BLMDC fails to establish the first prong of organizational standing.  BLMDC states that it is an organization engaged in advocacy "against systemic racism . . . through protests, public accountability campaigns, coalition-building, and other programming."  3d Am. Compl. ¶ 9.  On June 1, 2020, BLMDC "provided snacks, masks, waters, and fliers" during the Lafayette Square demonstration.  *Id.* ¶ 119.  Plaintiffs try to establish the first prong of organization standing by alleging that its mission has been injured because some BLMDC members fear "that future demonstrations will be met with government violence," *id.* ¶ 123, causing a "drop in organizational activity."  Opp'n at 61.  But "an organization must allege that the defendant's conduct 'perceptibly impaired' the organization's ability to provide services in order to establish injury in fact."  *Turlock Irrigation Dist.*, 786 F.3d at 25 (quoting *Equal Rights Center v. Post Properties, Inc.*, 633 F.3d 1136, 1138-39 (D.C. Cir. 2011).  Here, BLMDC does not allege a decline in membership or that it has been unable to demonstrate or provide snacks and other supplies at demonstrations.  It merely alleges that it has experienced a decline in attendance for its advocacy activities due to its members' subjective fear of future violence.  However, the D.C. Circuit has been "clear that an organization's use of resources for . . . advocacy is not sufficient to give rise to an Article III injury."  *Food & Water Watch*, 808 F.3d at 919.

Tellingly, neither Plaintiffs' operative complaint nor their opposition explain how this alleged decline in attendance actually impairs their ability to demonstrate.  *Id*.; *see PETA*, 797 F.3d at 1094 ("An organization's ability to provide services has been perceptibly impaired only when the defendant's conduct causes an "inhibition of [the organization's] daily operation.").  Moreover, as noted in the United States' motion, *see* Mem. at 22, the alleged fear of BLMDC's members is subjective and depends on a speculative series of events and therefore may not form the foundation of Plaintiffs' injury in fact.  *See Lyons*, 461 U.S. at 107 n.8 ("It is the reality of the threat of . . .

injury that is relevant to the standing inquiry, not the plaintiff's subjective apprehensions."); *Pub.*

*Citizen, Inc. v. Trump*, 297 F. Supp. 3d 6, 38-39 (D.D.C. 2018) ("[P]laintiffs may not turn an

unduly speculative or hypothetical injury into a concrete injury by inflicting harm on themselves

based on their fears of hypothetical future harm.") (quoting *Clapper*, 568 U.S. at 416) (internal

quotation marks omitted).  The gravamen of BLMDC's alleged harm is that the government's prior

alleged conduct is frustrating its organizational objectives by thinning attendance at its advocacy

events, but "[f]rustration of an organization's objectives is the type of abstract concern that does

not impart standing."  *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 14323, 1429 (D.C.

Cir. 1996) (internal quotation omitted).  Thus, BLMDC lacks organizational standing.

    BLMDC also fails to establish the second prong of organization standing.  BLMDC claims

that, because of the June 1st incident, it has diverted resources to "assess and plan for potential

violence by police," Opp'n at 61 (alterations adopted), arrange for transportation of injured

persons, and to purchase medical supplies to "counteract the effects of chemical agents."  *Id.*; *see*

3d Am. Compl. ¶¶ 126a-e.  Also, BLMDC alleges that they have engaged in a communications

campaign to educate its members regarding what do to if faced with a similar incident to June 1st

in Lafayette Square.  *Id.* ¶ 126b-c; Opp'n at 62.  As an initial matter, Plaintiffs do not allege or

argue that the resources spent educating the public or the organization subjected BLMDC to

"operational costs beyond those normally expended."  *Food & Water Watch*, 808 F.3d at 920

(quotation omitted).   Further, Plaintiffs fail to allege any facts to suggest that BLMDC's

communications efforts, purchase of medical supplies, and transportation expenses were made in

response to the effects of the challenged conduct here, *i.e.*, the alleged drop in attendance at

demonstrations.  *See Equal Rights Ctr.*, 633 F.3d at 1140.  And Plaintiffs' allegations regarding

the expenditure of resources do not, in and of themselves, support an injury to the organization

itself.  *See Int'l Acad. of Oral Med. & Toxicology v. FDA*, 195 F. Supp. 3d 243, 258-59 (D.D.C. 2016) (resources spent educating members about adverse consequences caused by lack of regulation are insufficient to constitute Article III injury).  Therefore, Plaintiffs have failed to establish the second prong of organizational standing for BLMDC.

## II. PLAINTIFFS' OFFICIAL-CAPACITY CLAIMS UNDER 42 U.S.C. §§ 1985(3) AND 1986 WARRANT DISMISSAL.

Even were Plaintiffs to overcome their lack of standing, Plaintiffs' official-capacity claims under sections 1985(3) and 1986 should be dismissed for additional reasons.

### A.  Section 1985 Does Not Authorize Courts To Award Injunctive Relief.

The United States' motion explained that Plaintiffs' claims under 42 U.S.C. §§ 1985(3) and 1986—which Plaintiffs now clarify only seeks only injunctive relief as to the Official-Capacity Federal Defendants, *see* Opp'n at 89—should be dismissed because injunctive relief is not available under § 1985(3).  *See* Mem. at 24.  Neither the Supreme Court nor the D.C. Circuit have decided whether section 1985(3) authorizes injunctive relief.  *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 285 n.16 (1993).  Plaintiffs respond by pointing out that two other circuits have indicated that injunctive relief is available under section 1985(3).  *See* Opp'n at 88 (citing *Action v. Gannon,* 450 F.2d 1227, 1237-38 (8th Cir. 1971) (en banc); *Mizell v. N. Broward Hosp. Dist.*, 427 F.2d 468, 473 (5th Cir. 1970)).  However, none of the cases cited by Plaintiffs is persuasive.  *Action* simply relied on *Mizell*.  And *Mizell* relied on dicta in *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 414 (1968), and on *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 238-40 (1969), both of which interpreted a statute (42 U.S.C. § 1982) that—unlike § 1985(3)—confers substantive rights without specifying a remedy.  By contrast, section 1985(3) is solely remedial, *see United Bhd. of Carpenters & Joiners of Am. v. Scott*, 463 U.S. 825, 833 (1983), and that remedy is limited to damages.

14

As the United States' motion explained, both laws were enacted as part of the Ku Klux Klan Act of 1871.  That said, section 1985(3) provides only "for the recovery of damages" while section 1983 authorizes "action[s] at law, suit[s] in equity, or other proper proceeding[s] for redress[.]"  *See* Mem. at 24.  This was not an accident.  "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983); *see Cyan, Inc. v. Beaver Cty. Emps. Ret. Fund*, 138 S. Ct. 1061, 1078 (2018) ("[T]his Court has no license to 'disregard clear language' based on an intuition that 'Congress must have intended something broader.'"); *Dean v. United States*, 556 U.S. 568, 572 (2009) ("[W]e ordinarily resist reading words or elements into a statute that do not appear on its face.").  Thus, the "inescapable inference" is that injunctive relief is not available under section 1985(3).  *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946) ("Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied."); *see Karahalios v. Nat'l Fed'n of Fed. Emps.*, 489 U.S. 527, 533 (1989) (stating that it is "an 'elemental canon' of statutory construction that . . . courts must be especially reluctant to provide additional remedies." (citations omitted)); *Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 15 (1981) ("In the absence of strong indicia of a contrary congressional intent, we are compelled to conclude that Congress provided precisely the remedies it considered appropriate.").  Accordingly, this Court should conclude that the statutory relief available under section 1985(3) is limited to the recovery of damages, and that Plaintiffs' claim fails because they request only injunctive relief.  *See* Mem. at 38.

**B.  Plaintiffs' Section 1985(3) Claim Is Barred By Sovereign Immunity.**

The United States also previously explained that Plaintiffs' section 1985(3) claim is barred by sovereign immunity.  *See* Mem. at 23-24.  Plaintiffs respond by noting that the D.C. Circuit has interpreted the Administrative Procedure Act's ("APA") waiver of sovereign immunity "to apply to nonstatutory actions, and thus not only to actions under the APA," *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 186 (D.C. Cir. 2006).[5]  However, for official-capacity suits like this one, Congress "has not waived the United States' immunity with respect to tort claims arising under the Constitution."  *See Boling v. U.S. Parole Comm'n*, 290 F. Supp. 3d 37, 46 (D.D.C. 2017); *Roum v. Bush*, 461 F. Supp. 2d 40, 46 (D.D.C. 2006) (citing *United States v. Timmons*, 672 F.2d 1373, 1380 (11th Cir. 1982) (other citation omitted)).  The D.C. Circuit has concluded as much. *See In re Rodriguez*, No. 05-5130, 2005 WL 3843612, at *3 (D.C. Cir. Oct. 14, 2005) (holding that Congress did not "waive the United States's sovereign immunity with respect to [plaintiff's] . . . statutory civil rights claims" under 42 U.S.C. §§ 1985(3) and 1986) (citing *Hohri v. United States*, 782 F.2d 227, 245 (D.C. Cir. 1986)).  And multiple other circuits have also held that sovereign immunity bars section 1985(3) suits against federal officers in their official capacities. *See Davis v. Dep't of Justice*, 204 F.3d 723, 726 (7th Cir. 2000); *Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 286 (5th Cir. 1999); *Unimex, Inc. v. Dep't of Hous. &*

---

[5]     Plaintiffs also rely on *Ex Parte Young*, 209 U.S. 123 (1908) for a waiver of sovereign immunity, *see* Opp'n at 89, which held that the Eleventh Amendment does not bar courts from enjoining state officers and relied on "the fiction that the suit [goes] against the officer and not the State, thereby avoiding sovereign immunity's bar." *Vann v. Kempthorne*, 534 F.3d 741, 749 (D.C. Cir. 2008).  However, Plaintiffs cite to only one case involving a *federal* defendant, *i.e.*, *Phila. Co. v. Stimson*, where the Supreme Court noted that (unlike here) the action was "*not* a suit against the United States."  223 U.S. 605, 620 (1912) (emphasis added).

*Urban Dev.*, 594 F.2d 1060, 1061 (5th Cir. 1979).  Therefore, Plaintiffs' claims under sections 1985(3) and 1986 should be dismissed.

### C.  Plaintiffs Fail To State A Claim Under § 1985(3).

Even if Plaintiffs could show that the United States has waived sovereign immunity for their official capacity claims, and that equitable relief is available, Plaintiffs have nonetheless failed to plead sufficient facts to support a plausible claim of unlawful conspiracy.  As discussed in the United States' motion, Plaintiffs' conspiracy claims fail because they do not allege any "facts to support an agreement between the federal officials to violate [Plaintiffs'] rights."  *See* Mem. at 25 (citing *Bush v. Butler*, 521 F. Supp. 2d 63, 68 (D.D.C. 2007)).  Indeed, "[b]ecause of the high threshold that a Plaintiff must meet to establish a prima facie case under section 1985, courts often grant motions of dismissal."  *Davis v. Hudgins*, 896 F. Supp. 561, 571 (E.D. Va. 1995), *aff'd*, 87 F.3d 1308 (4th Cir. 1996).  This case should be no different.

Plaintiffs ask this court to infer a conspiracy based on their circumstantial allegations.  *See* Opp'n at 75-76.  But Plaintiffs only allege in a conclusory fashion that the Official-Capacity Federal Defendants "conspired to deprive" Plaintiffs' of their rights, 3d Am. Compl. ¶ 242, by "using violent force against civil rights activists in and around Lafayette Square," *id.* ¶ 244.  In their opposition, they point to even more conclusory allegations that the various defendants had "coordinated" with each other regarding the June 1st incident, *see* Opp'n at 78 (citing 3d Am. Compl. ¶¶ 45, 76, 99 107).  They further contend that "even the barest description" of the June 1st incident supports an inference of conspiracy.  *Id.* at 77.  But that federal law enforcement coordinated to secure Lafayette Square does not support such an inference.  Indeed, although it did not decide the issue, the Supreme Court has suggested that government officials "do not conspire when they speak to one another and work together in their official capacities[,]" in light of the

potential for chilling open discussion among federal officers and the orderly conduct of governmental affairs. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1868 (2017). Moreover, as established in the United States' motion, Plaintiffs fail to "allege the existence of any events, conversations, or documents indicating there was an agreement between the defendants to violate [their] rights." *Bush*, 521 F. Supp. 2d at 68.

Rather, Plaintiffs merely allege that the President directed Attorney General Barr to "personally lead the response to the unrest," 3d Am. Compl. ¶ 60, and also that then-Secretary of Defense Esper and the Attorney General walked with the President to St. John's Church after the Square was secured. *Id.* ¶ 203. They allege no facts regarding any communications, agreements, or events relating to the other Official-Capacity Federal Defendants (*i.e.*, Monahan, Murray, Walker, and Carvajal). Against this backdrop, Plaintiffs offer a cascading series of conclusory allegations, *see id.* ¶¶ 242-52, to include that "President Trump, Defendant Barr, and Defendant Esper directed the conspiracy to take these actions because of their adverse effects upon an identifiable group—namely, Black activists and their supporters." *Id.* ¶ 246. Critically, these allegations include "no facts suggesting 'unity of purpose' or a 'meeting of the minds' among the defendants, a necessary element of a conspiracy." *Rodriguez v. Editor in Chief*, 285 Fed. App'x 756, 759 (D.C. Cir. 2008) (citing *Kreuzer v. Am. Acad. of Periodontology*, 735 F.2d 1479, 1487 (D.C. Cir. 1984) (quotation omitted)).

To state a viable conspiracy claim, Plaintiffs were required to allege more than "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiffs have not done so here. That federal and state law enforcement officers secured Lafayette Square through the use of force prior to the President's walk to St. John's Church does not show—circumstantially or otherwise—that any unlawful agreement existed between the

Official-Capacity Federal Defendants to deprive Plaintiffs of their constitutional rights. As noted in the United States' motion, *see* Mem. at 26, this is particularly evident because of what is not alleged by Plaintiffs: that all of the members of the public present in Lafayette Square shortly before law enforcement secured the area were a homogenous group of peaceful demonstrators. *See Ashcroft v. Iqbal*, 556 U.S. 662, 681-82 (2009); *Islamic Am. Relief Agency v. Gonzalez*, 477 F.3d 728, 732 (D.C. Cir. 2007) ("This Court need not . . . accept inferences that are unsupported by the facts set out in the complaint.").

Moreover, as noted above, Plaintiffs have not pled sufficient facts to establish any preceding agreement, let alone one based on any racial animus. *See Melton v. Dist. Of Columbia*, 85 F. Supp. 3d 183, 195-6 (D.D.C. 2015) (dismissing conspiracy claim for its "conclusory allegations" and "failure to articulate a racial or class-based animus behind the alleged conspiracy"). To demonstrate discriminatory motivation, Plaintiffs rely solely on their conclusory allegation that the President "repeatedly advocated the use of force against Black demonstrators," 3d Am. Compl. ¶ 53, without explaining which specific statements expressly did so (except, perhaps, to characterize as "racist" the President's statement that "when the looting starts, the shooting starts," *id.* ¶ 54). Because these allegations are plainly inadequate to show that there was "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action," *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971), the conspiracy claim under section 1985(3) must be dismissed.

Finally, because a colorable claim under section 1985 is a prerequisite to stating an adequate claim for neglect under section 1986, *see Thomas v. News World Commc'ns*, 681 F. Supp. 55, 72 (D.D.C. 1988), Plaintiffs have failed to state claims under either sections 1985(3) or 1986 against the Official-Capacity Federal Defendants.

19

## **<u>CONCLUSION</u>**

For the reasons set forth in its motion, and as discussed above, the United States respectfully requests that the Court dismiss Plaintiffs' claims against the Official-Capacity Federal Defendants under Rules 12(b)(1) and 12(b)(6).

Dated December 17, 2020        Respectfully submitted,

MICHAEL R. SHERWIN
Acting United States Attorney

DANIEL F. VAN HORN, D.C. Bar No. 924092
Chief, Civil Division

/s/   *Christopher C. Hair*
CHRISTOPHER C. HAIR, PA Bar No. 306656
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-2541
christopher.hair@usdoj.gov

/s/   *Sean P. Mahard*
SEAN P. MAHARD, CT Bar No. 436524
Special Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-2574
sean.mahard@usdoj.gov

*Counsel for the United States*