## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
| --- | --- |
| BLACK LIVES MATTER D.C., et al., | No. 1:20-cv-01469-DLF |
|  | Judge: Dabney L. Freidrich |
| *Plaintiffs,* |  |
| v. |  |
| DONALD J. TRUMP, et al. |  |
| *Defendants.* |  |

## OFFICER KELLENBERGER MOTION TO DISMISS ALL INDIVIDUAL-CAPACITY CLAIMS

Pursuant to Federal Rule of Civil Procedure 7(b), 12(b)(6), 17(a) and 19(a), U.S. Park Police Officer Sean Kellenberger, as sued in his individual capacity, moves this court to dismiss the claims filed against him in the third-amended complaint.   Plaintiffs fail to state a claim because they lack standing, have no legal authority for a remedy of damages for following orders, and Officer. Kellenberger has qualified immunity from all constitutional and statutory claims.

1

The grounds for this motion are set forth herewith in a memorandum of law; with

an attached proposed order.

Dated January 22, 2021

Respectfully submitted,
/s/Christopher A. Zampogna
CHRISTOPHER A. ZAMPOGNA
Zampogna, P.C.
1776 K St. NW Ste 700
Washington, DC 20006
202-223-6635
caz@zampognalaw.com
DC Bar No.: 449845

Counsel for Officer Kellenberger in his individual capacity

**TABLE OF CONTENTS**

INTRODUCTION AND FACTS ...............................................................6

Arguments by Kellenberger....................................................................8

1.  Standard of Review for Motion to Dismiss Based on Failure to State a

    Claim is met by Defendant, Officer Kellenberger

    a.  Standard of Review..........................................................8

    b.  Plaintiff fails to meet heightened pleading standard for Motion to
        Dismiss pursuant to 12(b)6 and the claim must be
        dismissed...................................................................9

2.  Plaintiff Lacks Standing to Bring any claim against Officer Kellenberger
    and claim should be dismissed due to failure to have a real party of
    interest and in alternative failure to join a necessary party (Fed R. Civ. P.
    17(a) or Fed R. Civ. P. 12(b)7 and 19(a))........................................10

    a.  The correspondent who was allegedly "beaten" by Kellenberger is not a protester
        nor representative of the listed plaintiffs and not covered by the damage
        allegations of the alleged Class Action............................................13

3.  Plaintiffs *Bivens* claim should be dismissed because Officer Kellenberger made his
    decisions based on protecting the President's safety or White House security in
    response to civil unrest...........................................................15

4.  Plaintiffs claim must be dismissed because Officer Kellenberger has qualified
    immunity due to failure of plaintiffs to allege that he was involved in violating their
    clearly established constitutional or statutory rights................................17

5.  Plaintiffs' have not established First Amendment violation.

    a.  Relevant First Amendment principles.........................................18
    b.  Officer Kellenberger alleged contact with the correspondent does not violate her
        established First Amendment rights............................................19

6.  *Wood v. Moss* and other precedents support dismissal.....................22
7.  There is no clearly established Fourth Amendment violation..............25

8.  Officer Kellenberger has qualified immunity from the statutory claims.27

**9.** Conclusion ……………………………………………………………..30

TABLE OF AUTHORITY

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)………………………………………..… 8

*Avon Cosmetics (FEBO) Ltd. v. New Hampton, Inc.*, 1991 WL 90808 at *4 (S.D.N.Y. 1991)…13

*Barber v. D.C. Gov't*, 394 F. Supd 49 (D.D.C. 2019)……………………………………..25

*Berg v. Kelly*, 897 F.3d 99 (2d Cir. 2018)…………………………………………………25

*Bernini v. City of St. Paul*, 665 F.3d 997 (8th Cir. 2012)…………………………………25,26

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

……………………………………………………………………………7,9,14, 15

*Black v. District of Columbia*, 466 F. Supd 177 (D.D.C. 2006)……………………………27

*Bush v. Lucas*, 462 U.S. 367 (1983)………………………………………………………....16

*Branch v. Tunnell,* 937 F.2d 1382, 1386 (9th Cir.1991) (Branch I)……………………11

*Buckey v. County of Los Angeles*, 968 F.2d 791, 794 (9th Cir.1992)………………………11

*Carlson v. Green*, 446 U.S. 14 (1980)……………………………………………………16

*Carr v. District of Columbia*, 587 F.3d 401 (D.C. Cir. 2009)………………………………25

*Citizens for Peace in Space v. City of Colo. Springs*, 477 F.3d 1212 (10th Cir. 2007)………17

*Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288 (1984)……………………………16

*Davis v. Passman*, 442 U.S. 228 (1979)……………………………………………………16

*Doe v. Rumsfeld*, 683 F.3d 390 (D.C. Cir. 2012)……………………………………………16

*Dionne v. Bowley*, 757 F.2d 1344 ……………………………………………………………17

*Dundon v. Kirchmeier*,No. 1:16-cv-406, 2017 WL 5894552 (D.N.D. Feb. 7, 2017)………...26

*Felarca v. Birgeneau*, 891 F.3d 809 (9th Cir. 2018)………………………………………26

*Ford v. Donovan*,891 F. Supd 60 (D.D.C. 2012)……………………………………………27

*General Tel. Co. v. Falcon*, 457 U.S. 147 (1982) …………………………………………...17

*Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99 (1979)……………………12

*Golden v. Zwickler*, 394 U.S. 103, 109-10 (1969)…………………………………………13

*Graham v. Connor*,490 U.S. 386 (1989)……………………………………………………24

*Harris v. Roderick*, 126 F.3d 1189 (9th Cir. 1997)………………………………………12

*Hernandez v. Mesa*,137 S. Ct. 2003 (2017)…………………………………………………16

*Hernandez v. Mesa*, S. Ct. 735 (2020) ……………………………………………………16

*Hernandez v. Mesa*, 885 F.3d 811 (5th Cir. 2018)…………………………………………16

*Hill v. Colorado*,530 U.S. 703 (2000)……………………………………………………18

*Hoai v. Vo*,935 F.2d 308 (D.C. Cir. 1991)…………………………………………………27

*Hobson v. Wilson*,737 F.2d 1 (D.C. Cir. 1984)……………………………………………26

*In re Sealed Case*,148 F.3d 1073 (D.C. Cir. 1998)………………………………………20

*K.O. v. U.S. Immigr. & Customs Enf't*,

No. CV 20-309 (RC), 2020 WL 3429697 (D.D.C. June 23, 2020)………………………28

*Kurd v. Republic of Turkey*, 374 F. Supd 37 (D.D.C. 2019)……………………………26

*Lash v. Lemke*, 786 F.3d 1 (D.C. Cir. 2015)………………………………………………21

*Lucas v. United States*,443 F. Sup (D.D.C. 1977)…………………………………………25

*Lyall v. City of Los Angeles*, 807 F.3d 1178 (9th Cir. 2015)………………………………25

Makuc v. American Honda Co., 835 F.389, 394 (1ˢᵗ Cir. 1987) …………………………...18

*Marcavage v. City of New York*, 689 F.3d 98 (2d Cir. 2012)……………………………..21

*McManus v. District of Columbia*, 530 F. Supd 46 (D.D.C. 2007)……………………….....27

*Menotti v. City of Seattle*,409 F.3d 1113 (9th Cir. 2005)………………………………...…..23

*Moore v. Castro*, 192 F. Supd 18 (D.D.C. 2016)……………………………………………29

*O'Shea v. Littleton*, 414 U.S. 488, 497 (1974)……………………………………….12, 13

*Pearson v. Callahan*, 555 U.S. 223 (2009)……………………………………………….17

*Reichle er Action Grp. v. Morton*, ("*QAG IV*") 516 F.2d 717 (D.C. Cir. 1975)……………..16

*Rose v. Simms*, 1995 WL 702307, at *6 (S.D.N.Y. Nov. 29, 1995); …………………………15

*Saucier v. Katz*,533 U.S. 194 (2001)……………………………………………….……..25

*Sevy v. Barach*, 815 F. App'x 58 (6th Cir. 2020)………………………………………….21

*Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 37 (1976)..12

*Smith v. Kessner*, 183 F.R.D. 373, 375 (S.D.N.Y. 1998)………………………………15

Smilow v. Southwestern Bell Mobile Systems, 323 F. 3d. 32 (1ˢᵗ Cir. 2003)…………….......17

*Stigile v. Clinton*, F.3d 801 (D.C. Cir. 1997)……………………………………………16

*Tabb v. District of Columbia*, 477 F. Supd 185 (D.D.C. 2007)………………………..….28, 29

*Tennessee v. Garner*, 471 U.S. 1 (1985)………………………………………………24

*Time Warner Entm't Co., L.P. v. FCC*, 93 F.3d 957 (D.C. Cir. 1996)………………………18

*United Bhd. of Carpenters & Joiners of Am., Local 610,AFL-CIO v.Scott*, 463 U.S.825(1983)..26

*United States v. Caputo*,201 F. Supd 65 (D.D.C. 2016)………………………………………18

*Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982); ………………………………………………………12

*Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 37 (1976)

*Tabb v. District of Columbia* 477 F. Supp 2d. 185 (D.D.C. 2007)…………………28

*Walsh v. JPMorgan Chase Bank, NA,*75 F. Supp. 2d 256 (D.D.C. 2014)……………………29

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989)……………………………………......18

*Watts v. United States*, 394 U.S. 705 (1969)……………………………………15, 22

*Westfahl v. District of Columbia*, 75 F. Supd 365 (D.D.C. 2014)…………………………26

*Whitacre v. Davey*, 890 F.2d 1168, 1171 (D.C.Cir.1989)……………………………11

*White House Vigil for ERA Comm. v. Clark*, 746 F.2d 1518 (D.C. Cir. 1984)………...…..18, 23

*White House Vigil for ERA Comm. v. Watt*, 717 F.2d 568 (D.C. Cir. 1983)………….…..18, 23

*White v. Jackson*,865 F.3d 1064 (8th Cir. 2017)…………………………………………26

*Wilson v. Layne*,526 U.S. 603 (1999)……………………………………………………20

*Wood v. Moss*, 572 U.S. 744 (2014)…………………………………………15, 21, 22, 23

*Young v. Akal*, 985 F. Supd 785 (W.D. La. 2013)……………………………………..……26

**Ziglar v. Abbasi*,137 S. Ct. 1843 (2017) ...................................................15, 16, 27

## Statutes, Session Laws, & Regulations

Fed. R. Civ. P. 12(b)6……………………………………………………10, 12

Fed. R. Civ. P. 17(a) ……………………………………………………………10, 12

Fed. R. Civ. P 12(b)7 …………………………………………………………10, 12, 15

Fed. R. Civ. P 19 (a) …………………………………………………………10, 12, 15

18 U.S.C. § 111(a)(1)………………………………………………………………24

42 U.S.C. § 1985(3)……………………………………………………9, 27, 28
42 U.S.C. § 1986……………………………………………….…9, 27, 29

**Other Authorities**

Mayor's Order 2020-68……………………………………………….20, 23
Mayor's Order 2020-069……………………………………………….20

MEMORANDUM AND POINTS OF AUTHORITY OF KELLENBERGER

## Introduction and Facts

Plaintiffs ask to bring a claim against a defendant, Officer Kellenberger, who in no way had contact with or even saw these defendants at the event in question. According to the complaint, Officer Kellenberger (Arm Patch SK 10) allegedly "beat Australian news correspondent Amelia Brace in the back"(paragraph 97 of third amended complaint).  He is not alleged to have participated in any other matter, and against any of the specific plaintiffs listed as plaintiffs in the complaint.  He is merely lumped without stated facts into a defendant that when plaintiffs' allege cause of action 1,2 and 5,6.

Plaintiffs' claims fail for three reasons.   First, there is no standing to bring a case against Kellenberger because the complaint only alleges contact between Kellenberger and Correspondent Amelia Brace a non-party to this action.  Brace is not named a plaintiff and the other plaintiffs make no specific claims related to Officer Kellenberger's actions on that date.

Second, neither Congress nor the Courts has authorized damages under the constitution for, as alleged by the plaintiffs, in implementing and executing a plan to protect the President of the United States.  Finally, Officer Kellenberger has qualified immunity because he followed all established constitutional or statutory rights.

8

Plaintiffs allege that law-enforcement officers, with military personnel, surrounded them and other activities and began dispersing them from Lafayette Square (complaint pp67,82).

According to the complaint, US Secret Service, DC National Guard, and Federal Bureau of Prisons personnel, Arlington County Police Department, used allegedly a variety of munitions to dismiss the crowd.  At no point, except in the aforementioned paragraph above, had Officer Kellenberger been mentioned specifically except in the alleged contact with the news correspondent, a necessary party, who is NOT a named plaintiff.

Plaintiffs seek implied damages against Officer Kellenberger for matters not related to them, but use the *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S., 388 (1971).  They allege Officer Kellenberger violated their First and Fourth amendment's rights, without alleging any specific facts against the named plaintiffs, by executing a dispersal order. See Claims 1-2. And liable under 42 U.S.C. Sections 1985(3) and 1986 for conspiring to target Black people or failing to prevent a conspiracy without alleging any actions by Kellenberger related to these plaintiffs. See Claims 5-6.

Plaintiffs request class certification under Rule 23, both for their injunctive relief and personal injury claims (none of which make claims against Officer Kellenberger).  A motion to certify is pending. ECF No. 47.

Kellenberger was served this third amended complaint on November 17, 2020 and filed for a briefing schedule then made a request to modify this schedule.

**Arguments by Kellenberger**

1. **Standard of Review for Motion to Dismiss Based on Failure to State a Claim is met by Defendant, Officer Kellenberger**

   a. **Standard of Review**

Any party may move the Court to dismiss counterclaims for failure to state a claim for which relief can be granted. (Federal Rules of Civil Procedure 12(b)(6)). The Court must dismiss any pleading that fails to plead sufficient factual matters to show a plausible claim for relief upon the face of the pleadings. *Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009). A claim is plausible when the litigant "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged". *Id*. When reviewing whether a claim survives dismissal, the Court accepts all factual claims as true, but cannot presume all legal conclusions and allegations as true. *Id*. Claims supported by "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss. *Id*. Legal conclusions must be sufficiently supported by factual matters, and only when the factual matters are plead to sufficiently require that the Court infer that the allegations of misconduct in the pleading are plausible has the litigant demonstrated an entitlement to relief. *See id*.

Any party also files support to this dismissal due to a failure to sue a real party of interest and in alternative to join a necessary party to the lawsuit (see Fed.

R. Civ. P. 17(a) and in alternative Fed R. Civ. P 12(b)7 and 19 (a)) . Finally,

Kellenberger's complainant is not a representative of the class and cannot be joined

in it, and has shown no damages as being an alleged reporter.  For these reasons,

the complaint must be dismissed.

> **b.  Plaintiff fails to meet heightened pleading standard for Motion to Dismiss pursuant to 12(b)6 and the claim must be dismissed.**

Defendant, Officer Kellenberger, first argues that plaintiff's complaint fails to

meet the heightened pleading standard required for *Bivens* conspiracy claims.

Here, the complaint alleges the officers acted in concert to alleged damage the

named plaintiffs. *Branch v. Tunnell,* 937 F.2d 1382, 1386 (9th Cir.1991) (Branch I);

see also *Buckey v. County of Los Angeles*, 968 F.2d 791, 794 (9th Cir.1992)

(requiring conspiracy complaint to "allege specific facts to support the existence of a

conspiracy among the defendants"). The heightened pleading standard must be met

in cases in which the subjective intent of the defendant is an element of the claim.

Branch I, 937 F.2d at 1386.

In order to survive a motion to dismiss, plaintiffs alleging a conspiracy to

deprive them of their constitutional rights must "include in their complaint

nonconclusory allegations containing evidence of unlawful intent or face dismissal

prior to the taking of discovery." Id. These allegations may be supported by either

direct or circumstantial evidence. Id. at 1387. This standard is not intended to be

difficult to meet as "[i]t serves the limited purpose of enabling the district court to

dismiss 'insubstantial' suits prior to discovery and allowing the defendant to

prepare an appropriate response, and where appropriate, a motion for summary judgment based on qualified immunity." Id. at 1387 (quoting *Whitacre v. Davey*, 890 F.2d 1168, 1171 (D.C.Cir.1989)). It is for the latter reason that "heightened pleading" is relevant for purposes of a qualified immunity appeal. *Harris v. Roderick*, 126 F.3d 1189 (9th Cir. 1997)   Here**,** plaintiffs' counsel only specifically alleges that the correspondent was struck with a baton by Kellenberger (see pp97).

2. **Plaintiff Lacks Standing to Bring any claim against Officer Kellenberger and their claims should be dismissed due to failure have named a real party of interest and in alternative failure to join a necessary party (Fed R. Civ. P. 17(a) or Fed R. Civ. P. 12(b)7 and 19(a))**

Officer Kellenberger, an officer with the US Park Police for 10 1/2 years, followed orders to disperse the crowd, and, therefore, plaintiff's claims must be dismissed. *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982); *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99 (1979); *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 37 (1976)

The "case or controversy" clause of Article III of the Constitution imposes a minimal constitutional standing requirement on all litigants attempting to bring suit in federal court. In order to invoke the court's jurisdiction, the plaintiff must demonstrate, at an "irreducible minimum," that: (1) he/she has suffered a distinct and palpable injury as a result of the putatively illegal conduct of the defendant; (2) the injury is fairly traceable to the challenged conduct; and (3) it is likely to be

redressed if the requested relief is granted. See *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982); *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99 (1979); *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 37 (1976). In addition to the constitutional requirements of Article III, courts have developed a set of prudential considerations to limit standing in federal court to prevent a plaintiff "from adjudicating 'abstract questions of wide public significance' which amount to 'generalized grievances' pervasively shared and most appropriately addressed in the representative branches." See *Valley Forge*, 454 U.S. at 474-75, quoting *Warth v. Seldin*, 422 U.S. 490, 499-500 (1975).

Speculative claims that a proposed governmental action may result in injury to a plaintiff are insufficient to confer standing. See *O'Shea v. Littleton*, 414 U.S. 488, 497 (1974). The required injury must be both real and immediate, not conjectural or hypothetical. See *Golden v. Zwickler*, 394 U.S. 103, 109-10 (1969).

Here there is only one alleged specific instance of Kellenberger's actions, that allegedly are subject to the causes of action; contact he had with a correspondent from Australia, discussed in one sentence (Complaint paragraph 97).

The "gist of the question of standing" is whether the party seeking relief has "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the

court so largely depends for illumination of difficult constitutional questions." This practical conception of standing has now given way to a primary emphasis upon separation of powers as the guide. "[T]he 'case or controversy' requirement defines with respect to the Judicial Branch the idea of separation of powers on which the Federal Government is founded. The several doctrines that have grown up to elaborate that requirement are 'founded in concern about the proper—and properly limited— role of the courts in a democratic society.'"

Plaintiffs have failed to allege specific facts naming the proper party, which in addition to having no standing, prejudices the defendant, Officer Kellenberger in his defense due to him not being able to respond to the party alleging the matter of misconduct. The real party of interest, Amelia Brace, must be present in the cause of action to have a just result to this litigation because she is the real party in interest as the litigation relates to Kellenberger.

In the alternative, plaintiff's failure to join a necessary party to the matter, and the complaint should likewise be dismissed under F.R.C.P. 12(b)(7) because plaintiffs have failed to join Amelia Brace to the litigation.   This failure subjects Kellenberger to the substantial risk of incurring incomplete relief as well as risk exposing him to double or multiple obligations, a concern of F.R.C.P. 19(a)(2)(ii). If the nine named members of the protesters are allowed to prosecute this action, there is no protection for Officer Kellenberger, as well as any other persons

similarly situated, that would prevent him from later being sued for alleged violations.

The fact that Amelia Grace would be able to bring separate and independent claims based upon the same facts and allegations asserted in the present action, seeking essentially the same damages that are being sought in this action, means that if the action proceeds without her and current plaintiffs were successful, Kellenberger would remain subject to multiple obligations on the same claim. See *Smith v. Kessner*, 183 F.R.D. 373, 375 (S.D.N.Y. 1998), *Rose v. Simms*, 1995 WL 702307, at *6 (S.D.N.Y. Nov. 29, 1995); *Avon Cosmetics (FEBO) Ltd. v. New Hampton, Inc.*, 1991 WL 90808 at *4 (S.D.N.Y. 1991). She has not been joined nor has indicated she might join in any potential class action. Further, as argued below, she is not representative of the class members alleged.

### a. The correspondent who was allegedly "beaten" by Kellenberger is not a protester  nor representative of the listed plaintiffs and not covered by the damage allegations of the alleged Class Action

According to the complaint (PP 206 to 219), it claims that the individuals named represent the Sanders, Bond, Poteet, and Foley, do not represent correspondents or reporters present at the event. They are described protesters, not correspondents or reporters. Therefore, any attempt to link them to the correspondent, fail. Thus, any claim related to their damages does not apply to the correspondent, and her claims should be dismissed for failure to allege any damages.

Class certification is a matter committed to the discretion of the district court. *Dionne v. Bouley*, 757 F.2d 1344, 1355 (1st Cir. 1985). However, the court must undertake a "rigorous analysis" to assure that the requirements of the rule are met. General Tel. Co. v. Falcon, 457 U.S. 147, 161 (1982); *Smilow v. Southwestern Bell Mobile Sys., Inc*., 323 F.3d 32, 38 (1st Cir. 2003). The burden is on the plaintiffs to establish that class certification is appropriate. *Falcon*, 457 U.S. at 157-58. It remains the plaintiffs' burden to show that all of the prerequisites for class certification have been met, *Makuc v. American Honda Motor Co*., 835 F.2d 389, 394 (1st Cir. 1987). To obtain class certification, the plaintiffs must establish the four elements of Rule 23(a) and one of the several elements of Rule 23(b). *Smilow*, 323 F.3d at 38; see subsection (a) of Rule 23 are 1. numerosity, 2. commonality, 3. typicality and 4. adequacy of representation. While not to be decided in this motion, the correspondent is not a party or represented by the class members described in the complaint and the case must be dismissed due to failure to name a necessary party.

3. **Plaintiffs *Bivens* claim should be dismissed because Officer Kellenberger made his decisions based on protecting the President's safety or White House security in response to civil unrest.**

America's "interest" in protecting the safety and welfare of its President and in allowing him to perform his duties without interference from threats of physical violence is "overwhelming." *Watts v United States*, 394 U.S. 705, 707 (1967)(per curiam)(citing H.R. REP. NO. 652, 64th Cong., 1st Sess (1916)). This interest is vital to our national security.

Plaintiffs allegation directly puts the safety of the President of the United States at stake by seeking to hold a line officer, Kellenberger, liable for his role in furthering his superior's, Major

Adamchik's  orders, to clear the Lafayette Square before the President's visit, and challenge the safety of the executive.

Kellenberger's implementation of the order to disperse demonstrators who were not screened and within weapons range of the President does not subject him to personal liability *Woods v. Moss*, 572 U.S. 744, 763 (granting qualified immunity but reserved on question *Bivens* availability to presidential security).  *Bivens* has not been recognized as a remedy against the Attorney General and FBI Director and must therefore not be recognized against a line officer implementing their directives *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1861 (2017).   Moreover, the Supreme court has never recognized a *Bivens* remedy in a case involving the military, national security, or intelligence. *Doe v. Rumsfeld*, 683 F.3d 390, 394 (D.C. Cir. 2012).

Furthermore, in 1971 the Supreme Court only created a private right of action under the 4th Amendment without Congressional Approval and disfavors its extension to the current actions taken by Officer Kellenberger implementing a matter to protect national security of the President of the United States.  In fact it has only been expanded twice since 1971 and only after noting absence of special factors. See *Davis v. Passman*, 442 U.S. 228, 245 (1975); *Carlson v. Green*, 446 U.S. 14, 18-19 (1980).  And, the Supreme Court has been consistent in its rebuff to any request to add to the three claims allowed under *Bivens*. *Hernandez v. Mesa*, 140 S. Ct. at 743 (2020).  It has recently even opined that *Bivens* might be overturned (see Concurrence in *Hernandez v. Mesa*, 140 S.Ct. 735; 206 L.Ed.2d 29 (2020).

Plaintiffs allege that Officer Kellenberger beat a correspondent with a baton, alleging no injury, and this is not a situation to expand Bivens claims from employment actions, illegal

searches and withholding medical attention to an inmate.   Specifically, no expansion to first amendment actions as alleged in the first cause of action. See *Moss*, 572 U.S. at 757; *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012); *Bush v. Lucas*, 462 U.S. 462 U.S. 367, 368 (1983).

Further, the fourth amendment (Claim 2), presents a new context to *Bivens*.   Unlike the 4th Amendment context, the Plaintiff without standing to sue Kellenberger, attempts to expand the damages from a narrow search-and-seizure context in a narcotics bust without a warrant to protection of the President of the United States. 137 S.Ct. at 1856, 1860.  In *Bivens*, it relates to a line level officer, entering a home, not here where Kellenberger executed orders to protect the president.  *Abbasi*, 137 S. Ct. at 1860.

Further, plaintiff's lawsuit raises a risk of disruptive intrusion of Judiciary into the functioning of other branches, as is here, protection of the president is the utmost importance *Stigile v. Clinton*, 110 F. 3d 801, 803 (D.C. Cir. 1997).  Establishing a new cause of action related to protection of the president creates a significant separation of powers concerns and is disfavored remedy. *Hernandez v. Mesa*, 885 F.3d 811, 818 (5th Cir. 2018), aff'd, 140 S. Ct. 735 (2020).

In sum, this case features multiple factors, that should prevent any extension of *Bivens*, due to a respect for a separation of powers. *Hernandez* 140 S. Ct. 749 (citing *Abbasi*, 137 S. Ct. at 1857-58).  Because, when it comes to the safety of POTUS, Congress not the courts should pass a law to create a new area of litigation. *Wilikie*, 551 U.S. at 562.  The Court must not impose judicially imposed damages in an area where Congress has resisted for a century to do so.   Since

there are reasons that Congress might not wish to impose such a new remedy against Officer

Kellenberger, this Court must "refrain from creating the remedy." *Abbasi*, 137 S. Ct. at 1858.

> **4. Plaintiffs claim must be dismissed because Officer Kellenberger has qualified immunity due to failure of plaintiffs to allege that he was involved in violating their clearly established constitutional or statutory rights.**

Officer Kellenberger has qualified immunity because plaintiffs have not alleged that he

violated their constitutional rights since they have only identified a non-party to the litigation.

Even if this correspondent is covered by this lawsuit, Kellenberger's conduct did not violate

clearly established law or constitutional rights which a reasonable person would know. *Pearson*

*v. Callahan*, 555 U.S. 223, 231 (2009).

Kellenberger neither violated the rights of the correspondent, nor a right clearly

established at the time of alleged misconduct.  According to the complaint, paragraph 97,

Kellenberger "beat Australian news correspondent Amelia Brace in the back with a baton."  No

allegation of damages or injury, only a bold face conclusory statement, which do not allege any

misconduct nor any violation of the order because he lawfully executed an order to clear the area

in question.

> 5. **Plaintiffs' have not established First Amendment violation**.

Plaintiffs' claim against Officer Kellenberger independently fails because

plaintiffs have not alleged the violation of any clearly established constitutional right.

> a. **Relevant First Amendment principles**.

Under the First Amendment, the government may establish reasonable restrictions on the

time, place, and manner of protected speech. *See Hill v. Colorado*, 530 U.S. 703, 719-20 (2000).

As the Supreme Court explained in *Ward v. Rock Against Racism*, 491 U.S. 781 (1989), time, place, and manner restrictions are valid provided that they are "'justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.'" *Id*. at 791 (quoting *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984)); *see A.N.S.W.E.R. Coal. (Act Now to Stop War & End Racism) v. Basham*, 845 F.3d 1199, 1208 (D.C. Cir. 2017). A restriction is content neutral if it "serves purposes unrelated to the content" of the speech regardless of whether "it has an incidental effect on some speakers or messages but not others." *Ward*, 491 U.S. at 791 (citation omitted).

Under *Ward's* narrow tailoring/significant interest prong, "the significance of the government interest bears an inverse relationship to the rigor of the narrowly tailored analysis." *Citizens for Peace in Space v. City of Colo. Springs*, 477 F.3d 1212, 1221 (10th Cir. 2007). A restriction is narrowly tailored if it does not "burden[ ] substantially more speech than is necessary to further the government's legitimate interests." *Ward*, 491 U.S. at 799; *see Time Warner Entm't Co., L.P. v. FCC*, 93 F.3d 957, 978-79 (D.C. Cir. 1996). But the regulation "need not be the least restrictive or least intrusive means." *Ward*, 491 U.S. at 798.

"[T]he safety of the President [i]s a 'paramount interest,'" *White House Vigil for ERA Comm.*, 746 F.2d at 1532-33 (citations omitted), justifying substantial limitations on the manner of expression. *See Moss*, 572 U.S. at 748, 758-59, 761; *Watts*, 394 U.S. at 707-08. The government also has a related, and additional, strong interest in protecting the White House and its occupants. *See QAG IV*, 516 F.2d at 726-27, 729. Both of these interests have previously

justified substantial limitations on the manner of expressive activity in Lafayette Square, which abuts the White House grounds, and in other areas in and around the White House. *See White House Vigil for ERA Comm.*, 746 F.2d at 1532-41;*QAG IV*, 516 F.2d at 1516-19, *Caputo*, 201, F. Supp. 3d at 71-72.

### b. Officer Kellenberger alleged contact with the correspondent does not violate her established First Amendment rights.

Kellenberger carrying out Major Adamchik's alleged order to federal law enforcement officers regarding the clearing of Lafayette Square did not violate any clearly-established First Amendment right. Shorn of bare allegations, the complaint alleges only that he ordered some unspecified action with respect to the crowd, consistent with the planned one-block extension of the security perimeter around the White House, a step that logically furthered White House security and the President's protection before he appeared in Lafayette Square. *See* TAC ¶¶ 5, 20, 78-80, 203-04.

No Supreme Court decision, D.C. Circuit decision, or consensus of persuasive authority, *Wilson v. Layne*, 526 U.S. 603, 617 (1999); *Lash v. Lemke*, 786 F.3d 1, 7 (D.C. Cir. 2015), clearly established that Kellenberger following Major Adamchik's order could not issue an on-the-spot crowd clearing order covering a one-block area to protect the President and the White House in the face of a large crowd of unscreened protesters. In fact, there appears to be no reported decision at all evaluating the constitutionality of a line officers of Park Police on-the-spot clearing order near the White House, much less in this particular situation. Thus, plaintiffs' First Amendment claim should be dismissed on qualified-immunity grounds.

Furthermore, against the legal backdrop of the *Ward* framework Officer Kellenberger could have reasonably believed that his alleged conduct implicated none of the speech concerns plaintiffs raise here.  Execution of an alleged order to clear the park and extend the perimeter in some way was content neutral on its face because its implementation excluded all people from the park, regardless of what views they expressed. *See Hill*, 530 U.S. at 719; *Clark*, 468 U.S. at 295-96; *Basham*, 845 F.3d at 1208-09.

Plaintiffs imply otherwise by citing *the President's* statements addressing violent unrest to speculate that the President disapproved of the protests. But they do not point to any statement or action of Kellenberger showing that he wished to suppress speech but rather just to follow the justified order to clear the area. TAC ¶¶ 54-55, 63-64; *see Moss*, 572 U.S. at 763-64; *cf. Iqbal*, 556 U.S. at 682-83.

Plaintiffs' own allegations also establish the significance of the governmental interests served by removing everyone from the park. The complaint asserts that the Attorney General directed that the park be cleared allegedly to enable the President to walk to St. John's Church to deliver a speech, and it suggests that Officer Kellenberger followed an "immediate order" to further that goal. *See* TAC ¶¶ 4, 20, 203-04.

In this the complaint reflects at least two compelling governmental interests served Kellenberger following the legally alleged order: (1) protecting the President as he walked to the church and delivered remarks; and (2) protecting the White House in response to disorder in the area. *See* TAC ¶¶ 4, 51-52, 203; Mayor's Order 2020-069.  The government's interest in

22

presidential protection was especially acute. The President was about to appear in public, where he faced "the greatest danger . . . ."*In re Sealed Case*, 148 F.3d 1073, 1078 (D.C. Cir. 1998).

While there had been peaceful protests in the days immediately before June 1, 2020, there had also been looting, rioting, and vandalism in what the Mayor described as a "glorification of violence" that was "not representative of peaceful protest or individuals exercising their lawful First Amendment rights." Mayor's Order 2020-68 § I ¶ 4. Indeed, to prevent further rioting, the Mayor ordered a 7:00 p.m. curfew on June 1 because an 11:00 p.m. curfew had proven ineffective the night before. *See* Mayor's Order 2020-69 § II ¶ 1; Mayor's Order 2020-68 § II ¶ 1.

The recent unrest attending the protests heightened the possible danger to the President in entering the park, and the government had an especially strong interest in his safety. Similarly, given the unrest near the White House, the government had a substantial interest in protecting the White House, with its vital occupants and operations, from the potential danger posed by infiltrators within the unscreened crowd of thousands.

Kellenberger by following his "immediate order," which plaintiffs suggest was a directive to carry out a high-level operation to clear the park in some unspecified way, directly advanced the above interests by preventing the protesters from entering within weapons distance of the President or endangering security officers and physical barriers protecting the White House. *See generally Moss*, 572 U.S. at 760-62; *Marcavage v. City of New York*, 689 F.3d 98, 105-07 (2d Cir. 2012). It also did not substantially burden more speech than necessary. It permitted

protesters to say whatever they wanted, by whatever lawful means they wanted, in whatever place they wanted except Lafayette Square and a short distance around it. *See* TAC ¶¶ 106, 116.

Conclusory use of force allegations do not alone transform an otherwise neutral restriction on speech into impermissible retaliation or viewpoint discrimination. *See Sevy v. Barach*, 815 F. App'x 58, 64 (6th Cir. 2020); *see also Lash*, 786 F.3d at 10 ("A plaintiff pressing a First Amendment retaliatory force claim must show, among other things, that the officer who used force against him had 'retaliatory animus.'") (citations omitted). And as already explained, plaintiffs have not plausibly alleged that Officer Kellenberger directed the force in the manner described above. Nor does the complaint allege specific facts showing that the officers had a retaliatory motive for using force. *See Lash*, 786 F.3d at 9-10.[2]

6.                    ***Wood v. Moss* and other precedents support dismissal.**

Officer Kellenberger has qualified immunity from plaintiffs' First Amendment claim. *Woods v. Moss* 572 U.S. 744 (2014). Protesters sued Secret Service agents for moving their protest away from a restaurant after then-President Bush made a last-minute decision to stop there for dinner. They claimed the agents violated the First Amendment by moving them farther from the President than his supporters. *See id.* at 754. In Justice Ginsburg's opinion for a unanimous Supreme Court, the Court approved dismissal on qualified immunity grounds "[b]ecause no 'clearly established law' so controlled the agents' response to the motorcade's detour" as to eliminate immunity. *Id.* at 748-49. No clearly established precedent required the agents to ensure that the plaintiffs and the President's supporters had equal access or were "at comparable locations at all times." *Id.* at 759-60 (internal quotation marks and citation omitted).

24

The security perimeter also did not violate clearly established law because it furthered the government's "'valid, even overwhelming, interest in protecting the safety of its Chief Executive.'" *Id*. at 758 (quoting *Watts*, 394 U.S. at 707) (internal alteration omitted); *see id*. at 760. And no precedent compelled the agents to take alternative separation measures. *See id*. at 760-61. Because removing the protesters directly furthered the government's interest in protecting the President, it was not clearly established that the agents violated the First Amendment by failing to take the plaintiffs' proposed alternative steps. *See id*. While the plaintiffs argued that the Secret Service's alleged past practice of shielding President Bush from disfavored political speech showed that the officers' security concerns were pretextual, the Court held that the alleged practice of other Secret Service employees could not be imputed to the defendant agents. *See id*. at 761-64.

Given this case's parallels to *Moss*, qualified immunity also bars the claims here. In this case and in *Moss*, the President decided to enter a publicly accessible place near a crowd of protesters, and federal officials allegedly issued orders to protect him during that public appearance. *See Moss*, 572 U.S. at 750-51; TAC ¶¶ 202-04.

Here, as in *Moss*, the alleged order supporting removal of protesters to a block away from the President's location was facially neutral and did not constitute viewpoint discrimination under clearly established law. *See Moss*, 572 U.S. at 759-60; TAC ¶¶ 5, 17, 79, 202. Officer Kellenberger's execution of the alleged order here served the interest in presidential security just as directly, if not more so, than the removal order in *Moss*: here the order responded both to the inherent risk in the protesters' proximity to the President and to the possibility of violence similar

to recent days' unrest. Indeed, plaintiffs' own news reports suggest the crowd was throwing projectiles. *See supra* note 20. In *Moss*, the removal order responded *only* to allegedly peaceful protesters' proximity to the President. *See Moss*, 572 U.S. at 750-51; Mayor's Order 2020-69; TAC ¶¶ 51 n.15, 90 n.20, 104, 150, 204. And here, as in *Moss*, it does not matter whether Kellenberger could have relied on supposedly less restrictive alternatives to the removal of the protesters to protect the President, for there is no clearly established precedent requiring such alternatives. *See Moss*, 572 U.S. at 760-61.

In fact, just as the agents in *Moss* did not have to try to convince the President not to appear at the restaurant near the crowd in order to avoid danger, Officer Kellenberger as a line officer did not have to try to convince President Trump not to appear in Lafayette Square. *See id*. at 761. Therefore, here, as in *Moss*, Officer Kellenberger is entitled to qualified immunity. Indeed, courts have relied on presidential security and White House protection to permit enforcement of similarly substantial restrictions on the ability to protest in close proximity to the President or the White House, including against allegedly peaceful crowds. *See Marcavage*, 689 F.3d at 105-09 (upholding New York's orders establishing a four-day no-protest area on two blocks around the RNC); *Menotti*, 409 F.3d at 1120, 1130-37 (upholding order excluding everyone, except the President and international delegates, from most of downtown Seattle, even though recent protests were mostly peaceful and protesters could not convey their message directly to the international leaders); *White House Vigil for ERA Comm.*, 746 F.2d at 1532-40 (upholding ban on stationary protest and large signs on White House sidewalk, notwithstanding that the peaceful protesters could not protest in place of symbolic importance and possibility of less restrictive alternatives).

Because substantial authority supported Officer Kellenberger's alleged execution of an order and no controlling authority made it obvious to all reasonable officials that such an order was unconstitutional, it was not clearly established that the alleged order violated plaintiffs' First Amendment rights. Consequently, plaintiffs' First Amendment claim should be dismissed.

7. **Kellenberger has not violated the Fourth Amendment.**

As previously explained, plaintiffs fail to allege facts plausibly showing Officer Kellenberger was liable for 4th Amendment violation because qualified immunity bars the Fourth Amendment claims for several reasons. At the intersection of presidential security, protest, and crime control that this case presents, no clear principle of law makes it indisputable that Kellenberger used excessive force.

The general standards governing excessive force claims do not clearly establish that Officer Kellenberger could not forcibly disperse the crowd in Lafayette Square. The reasonableness of an officer's use of force to seize an individual depends on a "careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake."*Graham v. Connor*, 490 U.S. 386, 396 (1989) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)).

Significantly, the government's interest in presidential security weighs heavily in the Fourth Amendment balance and can justify forcible seizure without particularized suspicion of criminality. *See Berg*, 897 F.3d at 108-13 (qualified immunity for police officers who placed protesters in pens and noting presidential protection is a special need potentially justifying the detention); *cf. Saucier v. Katz*, 533 U.S. 194, 207-09 (2001) (qualified immunity from excessive

force claim based on agent's allegedly seizing a protester and shoving him in a van to protect the Vice President); *Stigile*, 110 F.3d at 803-07 (presidential protection is a special need justifying random drug testing of employees with access to the White House). Separately, the government's interest in public order and law enforcement can sometimes permit law enforcement officers to "seize" in the Fourth Amendment sense a large cohesive crowd based on probable cause to believe that some, though not all, of its members engaged in criminal behavior, for example when acting as a unit. *See Bernini v. City of St. Paul*, 665 F.3d 997, 1003-04 (8th Cir. 2012); *cf. Carr v. District of Columbia*, 587 F.3d 401, 407-10 (D.C. Cir. 2009); *Lyall v. City of Los Angeles*, 807 F.3d 1178, 1195 (9th Cir. 2015).

Here, because the government had a paramount interest in protecting the President during his arrival in the park and his speech at the church, that interest strongly supports the conclusion that the officers' use of force was lawful. *See generally Stigile*, 110 F.3d at 803-07; *cf. Moss*, 572 U.S. at 748, 758-59; *Berg*, 897 F.3d at 108-13. Additionally, based on the Mayor's reports about unrest in the days leading up to the clearing of the park (and the media reports cited by plaintiffs), the officers could have thought it reasonable to use crowd control techniques to move the crowd in order to protect the President and further the government's interest in law enforcement and prevent bad actors from using the crowd as cover to endanger the officers. *See generally* 18 U.S.C. §§ 111(a)(1), 3056(d) (prohibiting even minor forcible, non-contact interference with federal officers' duties); *see also Lucas v. United States*, 443 F. Supp. 539, 544 (D.D.C. 1977), *aff'd*, 590 F.2d 356 (D.C. Cir. 1979); *supra* note 20 (press reports suggest bottles thrown at officers).

Moreover, given the important government interests at stake and the limited nature of plaintiffs' injuries,[23] the balance of competing interests supported the officers' conduct. Ultimately, plaintiffs cannot point to binding cases clearly establishing that the officers used an unreasonable degree of force, and their *Bivens* claims should be dismissed on qualified immunity grounds. *See, e.g.,Bernini*, 665 F.3d at 1003-06; *Felarca v. Birgeneau*, 891 F.3d 809, 817-19 (9th Cir. 2018); *Young v. Akal*, 985 F. Supp. 2d 785, 801-03 (W.D. La. 2013);*see also White v. Jackson*, 865 F.3d 1064, 1079-80 (8th Cir. 2017); *Dundon v. Kirchmeier*, No. 1:16-cv-406, 2017 WL 5894552, at *17-19 (D.N.D. Feb. 7, 2017), *aff'd,* 701 F. App'x 538 (8th Cir. 2017);*Westfahl v. District of Columbia*, 75 F. Supp. 3d 365, 373-74 (D.D.C. 2014); *see also* TAC ¶¶ 135, 141-42, 160-61, 171-74, 187.

8. **Officer Kellenberger has qualified immunity from the statutory claims.**

Section 1985(3) authorizes a damages suit against one who commits an act in furtherance of a "conspir[acy] . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws . . . ." *Hobson v. Wilson*, 737 F.2d 1, 14 (D.C. Cir. 1984). "[A] plaintiff must allege and prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Id.*; *see United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 828-29 (1983).

Officer Kellenberger has qualified immunity from plaintiffs' § 1985(3) claim because they fail to plead facts showing that Kellenberger entered into a conspiracy with another person to violate plaintiffs' equal protection rights. The complaint does not allege Kellenberger was involved in specific "'events, conversations, or documents indicating . . . an agreement or meeting of the minds' amongst the defendants to violate [plaintiffs'] rights based on [their] membership in a protected class." *Barber v. D.C. Gov't*, 394 F. Supp. 3d 49, 66 (D.D.C. 2019) (quoting *McManus v. District of Columbia*, 530 F. Supp. 2d 46, 75 (D.D.C. 2007)); *see Kurd v. Republic of Turkey*, 374 F. Supp. 3d 37, 62 (D.D.C. 2019).

Rather the complaint merely suggests Kellenberger was possibly at the scene with other federal officers and followed a lawful order. That does not reflect the required agreement to violate plaintiffs' equal protection rights. Therefore, plaintiffs do not sufficiently plead the conspiracy element of their claim.

Moreover, plaintiffs fail to sufficiently allege that Officer Kellenberger's actions were "'motivated by some class-based, invidiously discriminatory animus.'" *Hoai v. Vo*, 935 F.2d 308, 314 (D.C. Cir. 1991) (quoting *Hobson*, 737 F.2d at 14). While plaintiffs claim that the President expressed dislike of the protesters, which they further assert was based on their race or support of racial equality, plaintiffs do not make "nonconclusory allegations" that Officer Kellenberger said or did anything constituting "evidence" that he shared "such intent" to clear the park out of class-based animus. *Hobson*, 737 F.2d at 31; *see Black v. District of Columbia*, 466 F. Supp. 2d 177, 181 (D.D.C. 2006).

Plaintiffs do not allege that only "Black people and their supporters[,]" TAC ¶ 245, were cleared—rather, *everyone* there was cleared. Thus, Officer Kellenberger is entitled to qualified immunity based on plaintiffs' failure to sufficiently plead a discriminatory motive. *See Abbasi*, 137 S. Ct. at 1867-68; *Iqbal*, 556 U.S. at 681-83; *Ford v. Donovan*, 891 F. Supp. 2d 60, 65 (D.D.C. 2012).

Furthermore, Officer Kellenberger is entitled to qualified immunity because it was not clearly established that he could be liable under § 1985(3) for an intracorporate conspiracy of the kind alleged by plaintiffs. Under the intracorporate conspiracy doctrine, "an agreement between or among [officers] of the same legal entity, when the [officers] act in their official capacities, is not an unlawful conspiracy." *Abbasi*, 137 S. Ct. at 1867. In *Abbasi*, the Supreme Court held that federal officials were qualifiedly immune from a § 1985(3) claim because it was not clearly established that an alleged conspiracy among federal agents could support such a claim; "the fact that the courts are divided as to whether or not a § 1985(3) conspiracy can arise from official discussions between or among agents of the same entity demonstrates that the law on the point is not well established." *Id.* at 1868. Significantly, "[f]ederal district courts in the District of Columbia . . . consistently have applied the intracorporate conspiracy doctrine to Section 1985." *Tabb v. District of Columbia*, 477 F. Supp. 2d 185, 190 (D.D.C. 2007) (collecting cases). Thus, a federal employee who allegedly conspires with another federal employee is immune even if the conspirator works for the same agency. *See K.O.*, 2020 WL 3429697, at *11-12.

Officer Kellenberger is qualifiedly immune from plaintiffs' § 1985(3) claim because the claim is based on an alleged intracorporate conspiracy. Notably, plaintiffs allege that "President

Trump, Defendant Barr, and Defendant Esper[,]" all federal officials, "directed the conspiracy[.]" TAC ¶ 246. While mentioning that Officer Kellenberger interacted with unidentified "law enforcement officers[,]" plaintiffs do not allege that Officer Kellenberger reached an agreement with non-federal officials at the park to violate plaintiffs' rights. *Id.* ¶ 82. Because federal employees are members of the same entity for purposes of the intracorporate conspiracy doctrine, Officer Kellenberger's alleged interactions with them could not expose him to liability under § 1985(3). *See Abbasi*, 137 S. Ct. at 1867-68; *see K.O.*, 2020 WL 3429697, at *11-12; *Tabb*, 477 F. Supp. 2d at 190.

Finally, plaintiffs also claim Officer Kellenberger violated § 1986 because he allegedly knew about, but failed to prevent, wrongs conspired to be done under § 1985. But "[a] plaintiff who has not stated a claim under § 1985 has no basis for relief under § 1986." *Moore v. Castro,* 192 F. Supp. 3d 18, 36 (D.D.C. 2016), *aff'd sub nom. Moore v. Carson,* 775 F. App'x 2 (D.C. Cir. 2019). Again, plaintiffs fail to allege facts showing that Officer Kellenberger or anyone else in the park entered into a conspiracy to violate their equal protection rights, that Officer Kellenberger knew about such a conspiracy, that the conspiracy fell outside the intracorporate conspiracy doctrine, or that he had an opportunity to prevent conspirators from harming plaintiffs. Thus, plaintiffs §§ 1985 and 1986 claims fall together. *See Walsh v. JPMorgan Chase Bank, NA*, 75 F. Supp. 3d 256, 265 (D.D.C. 2014).

## CONCLUSION

The claims against Officer Kellenberger should be dismissed with prejudice.

Dated: January 22, 2021.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| BLACK LIVES MATTER D.C., et al., | No. 1:20-cv-01469-DLF |
| *Plaintiffs*, | Judge: Dabney L. Freidrich |
| v. | |
| DONALD J. TRUMP, et al. | |
| *Defendants*. | |

**[PROPOSED] ORDER**

Upon consideration of Defendant Kellenberger's Motion to Dismiss All Individual

Capacity Claims

**ORDERED** that the motion is GRANTED; and it is further

**ORDERED** that all individual capacity claims in this matter are dismissed in accordance

with Federal Rule of Civil Procedure 7(b), 12(b)(6), 17(a) and 19(a).

**SO ORDERED.**

**Date: _____**

_____
**The Honorable Dabney L. Friedrich
United States District Judge**

1