UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| BLACK LIVES MATTER D.C., *et al.,* | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | No. 1:20-cv-01469-DLF |
| | : | |
| DONALD J. TRUMP, *et al.* | : | |
| | : | |
| Defendants. | : | |

SERGEANT THOMAS LOCASCIO'S
MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF HIS MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Defendant Thomas LoCascio, through counsel HANNON LAW GROUP, LLP, and

pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, Local Civil Rule 7(a), and the

Court's January 8, 2021 minute order, respectfully submits this memorandum of points and

authorities in support of his motion to dismiss all claims against him in the Third Amended

Complaint.

BACKGROUND

This lawsuit arises out of the events that occurred in Washington D.C.'s Lafayette Square

on June 1, 2020.  (ECF No. 52 at ¶ 3.)  On June 1, 2020, the plaintiffs and others gathered in

Washington, D.C.'s Lafayette Square to protest racial injustices "perpetrated by law

enforcement" across the country.  (*Id.*)  Plaintiffs allege that former President Donald J. Trump

and former Attorney General William Barr ordered the use of violence against the protesters,

including the individual plaintiffs.  (ECF No. 52 at ¶ 1.)

The complaint identifies Sgt. LoCascio, a Police Officer with the United States Park

Police, by the number on his helmet, A702.  (ECF No. 52 at ¶ 25.)  Plaintiffs allege that on June

1, 2020, Barr "personally ordered that Lafayette Square be cleared," and, quite implausibly, that

Major Mark Adamchik of the U.S. Park Police then "ordered the law enforcement officers . . . to

attack the peaceably assembled protesters."  (ECF No. 52 at ¶¶ 79, 82.)  Plaintiffs further allege that following this order, Sgt. LoCascio "rushed forward and attacked the assembled protesters." (ECF No. 52 at ¶ 83.)  The complaint also states that "law enforcement officials assaulted the plaintiffs," but it does not say that Sgt. LoCascio was one of those officials.  (*Id*.)  The complaint contains no other factual allegations about Sgt. LoCascio.[1]

Plaintiffs filed the instant action three days later, on June 4, 2020.  (ECF No. 1.)  Plaintiffs subsequently amended their complaint on June 9 (ECF No. 11), August 5 (ECF No. 20), and September 3, 2020 (ECF No. 52).  Sgt. LoCascio was served with the third amended complaint on November 11, 2020.  (ECF No. 104.)  The Court then granted the parties joint motion for a briefing schedule, setting January 26, 2021, as Sgt. LoCascio's deadline to file a motion to dismiss.  (ECF No. 137.)

Plaintiffs bring a total of four claims against Sgt. LoCascio.  The first two claims are for constitutional violations under *Bivens*.  In Claim 1, the plaintiffs contend that Sgt. LoCascio violated their First Amendment rights to speech, assembly, and petition.  (ECF No. 52 at ¶¶ 220-26.)  In Claim 2, they contend that Sgt. LoCascio unreasonably seized them, in violation of the Fourth Amendment.  (*Id*. at ¶¶ 227-30.)  In Claim 5, the plaintiffs accuse Sgt. LoCascio of conspiring with the other defendants to deprive plaintiffs of their civil rights in violation of 42 U.S.C. § 1985(3).  (*Id*. at ¶¶ 241-54.)  Lastly, in Claim 6, they allege that Sgt. LoCascio violated 24 U.S.C. § 1986 by failing to "prevent or aid in preventing" the conspiracy to violate their civil rights.  (*Id*. at ¶¶ 255-62.)

---

[1]     In the entirety of the 58-page complaint, Sgt. LoCascio is mentioned only *four* times.  (*See* ECF No. 52 at ¶¶ 25, 83, 221, and 228.) (emphasis added).

## ARGUMENT

## I.    PLAINTIFFS' LACK STANDING TO SUE SGT. LOCASCIO.

The Court should dismiss plaintiffs' claims against Sgt. LoCascio under Rule 12(b)(1) for lack of jurisdiction.  *See* FED. R. CIV. P. 12(b)(1).  "Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.' U.S. CONST., ART. III, § 2."  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014).  "The doctrine of standing gives meaning to these constitutional limits by 'identify[ing] those disputes which are appropriately resolved through the judicial process.'"  *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)) (original quotation marks and alterations).  To establish standing, "a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'"  *Id.* (quoting *Lujan*, 504 U.S. at 560).  It is the plaintiffs' burden to establish that the Court has subject matter jurisdiction.  *Lujan*, 504 U.S. at 561.  When considering whether it has jurisdiction, the Court must accept "the allegations of the complaint as true."  *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) (citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)).

To show an "injury in fact," a complainant must allege an injury that is "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'"  *Lujan*, 504 U.S. at 560.  "The injury must also be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'"  *Estate of Boyland v. United States Dep't of Agric.*, 913 F.3d 117, 123 (D.C. Cir. 2019), *cert. denied sub nom. Estate of Boyland v. Dep't of Agric.*, 140 S. Ct. 947 (2020) (quoting *Lujan,* 504 U.S. 560).

Here, the plaintiffs have not alleged facts that, if true, would show their injuries were "fairly traceable" to Sgt. LoCascio.  The only factual allegations regarding Sgt. LoCascio are that

3

he "participated in dispersing the demonstration at Lafayette Square," and that he "rushed forward and attacked the assembled protesters." (ECF No. 52 at ¶¶ 25, 83.) Beyond that, the plaintiffs offer nothing but legal conclusions.

In Claim 1, the individual plaintiffs generally allege that the defendants suppressed their ability to demonstrate their viewpoints and in Claim 2, that the defendants caused their movements to halt. (*Id*. at ¶¶ 221, 228.) But none of the individual plaintiffs claim to have interacted with Sgt. LoCascio or even to have witnessed his interactions with other demonstrators. The complaint describes the positions and movements of some officers, but not Sgt. LoCascio. (*Id*. at ¶¶ 72-77.) None of the injuries claimed by the individual plaintiffs in Claims 1 or 2 are "fairly traceable" to Sgt. LoCascio.

Similarly, in Claims 5 and 6, the plaintiffs say the defendants conspired to deprive them of their civil rights and failed to prevent others from so conspiring. (*Id*. at ¶¶ 242, 256.) But again, there are no factual allegations specific to Sgt. LoCascio. The plaintiffs allege that former President Trump discussed the response to the protests with various federal and state officials (*id*. at ¶¶ 58-60, 80, 202-203), and that the leadership of various law enforcement agencies met at the Joint Operations Center (*id*. at ¶¶ 76). But the plaintiffs do not describe any meeting or discussion Sgt. LoCascio attended, or any other facts that suggest he participated in or knew about the alleged conspiracy. As a result, the injuries the plaintiffs allege in Claims 5 and 6 are not "fairly traceable" to Sgt. LoCascio. The Court should dismiss all Claims against Sgt. LoCascio for lack of standing.

## II.    PLAINTIFFS' FAIL TO STATE A CLAIM FOR RELIEF.

### A.    Legal Standard.

A Rule 12(b)(6) motion to dismiss tests whether the pleader accomplished what it was obligated to do under the federal pleading rules. *See* Fed. R. Civ. P. 12(b)(6). A claim will fail

this inspection if it asserts a legal theory that is not cognizable as a matter of law or if the factual tale it alleges is implausible.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  The pleading must demonstrate that the allegations "possess enough heft" to show a plausible entitlement to relief.  *Twombly*, 550 U.S. at 557.  Although a complaint need not contain detailed factual allegations, it must allege enough facts to raise a plaintiff's claims beyond the level of speculation, and must "nudge" the claims "across the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009); *Twombly*, 550 U.S. at 557 n.5.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal,* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (alterations in original).  Further, the court "need not accept inferences drawn by [the] plaintiffs if such inferences are unsupported by the facts set out in the complaint."  *Kowal v. MCI Comm'ns Corp.*, 16 F. 3d 1271, 1276 (D.C. Cir. 1994).

When a claim is challenged under Rule 12(b)(6), the Court presumes that all well-pleaded allegations are true, resolves all reasonable doubts and inferences in the pleader's favor, and views the pleading in the light most favorable to the non-moving party.  *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 249 (2009); *Twombly*, 550 U.S. 544, 555; *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 n.3 (D.C. Cir. 1997); *Kowal*, 16 F.3d at 1276.

### B.   *Bivens* does not Apply to Plaintiffs' Constitutional Claims.

The plaintiffs' *Bivens* claims fail because they assert legal theories that are not cognizable as a matter of law.  The Supreme Court first recognized an implied damages claim under the Constitution in *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388,

389 (1971).  That case involved unreasonable searches and seizures under the Fourth

Amendment.  The Supreme Court has since extended *Bivens* twice, once in a Fifth Amendment

gender discrimination case and once in an Eighth Amendment Cruel and Unusual Punishments

Clause case.  *See Davis v. Passman*, 442 U.S. 228, 245 (1979); *Carlson v. Green*, 446 U.S. 14,

18-19 (1980).  These cases "represent the only instances in which the Court has approved of an

implied damages remedy under the Constitution itself."  *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855

(2017).

      Since *Carlson*, "the Supreme Court has carefully circumscribed *Bivens* and 'consistently

refused to extend *Bivens* to any new context or new category of defendants.'"  *Loumiet v. United

States*, 948 F.3d 376, 380 (D.C. Cir. 2020) (quoting *Abbasi*, 137 S. Ct. 1855).  While noting that

"*Bivens* is well-settled law in its own context" the Court has cautioned that "expanding the

*Bivens* remedy is now considered a 'disfavored' judicial activity."  *Abbasi*, 137 S. Ct. at 1848

(citing *Iqbal*, 556 U.S. at 675).  The Supreme Court has "'consistently refused to extend *Bivens* to

any new context or new category of defendants.'"  *Id.* at 1857 (quoting *Correctional Services

Corp. v. Malesko*, 535 U.S. 61, 68 (2001).  It "has not recognized a new *Bivens* action in the four

decades since *Carlson* was decided."  *Loumiet*, 948 F.3d 381.  At the same time, it has declined

to extend *Bivens* on ten separate occasions.  *Id.*

      In determining whether to extend *Bivens*, the separation of powers principle is central to

the analysis.  "When a party seeks to assert an implied cause of action under the Constitution

itself . . . [t]he question is 'who should decide' whether to provide for a damages remedy,

Congress or the courts?"  *Abbasi*, 137 S. Ct. at 1857.  To answer this, the court must apply a two-

part test.  "First, [the court] must consider whether the plaintiff[s] seeks to extend *Bivens* into a

'new context.'"  *Loumiet*, 948 F.3d 381.  "If so, [the court] must consider whether there are any

'special factors counselling hesitation.'"  *Id*.

The test for determining if a case presents a novel *Bivens* context is simple: whether "the case is different in a meaningful way from previous *Bivens* cases decided by this court." *Abbasi*, 137 S. Ct. at 1859.  In *Abbasi*, the Supreme Court gave examples of "differences that are meaningful enough to make a given context a new one,"

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id. at* 1860.

It is "glaringly obvious" that both plaintiffs' *Bivens* claims involve a "new context." *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020).  Plaintiffs' First Amendment claim involves a different constitutional right than those addressed in *Bivens, Davis, and Carlson*.  *See Loumiet*, 948 F.3d at 382 (First Amendment claim is a "new context").  Plaintiffs' Fourth Amendment claim alleges that Sgt. LoCascio "attacked" protesters in a way that "forcibly cause[d] their movement to halt or force[d] them to move from the area in and around Lafayette Square, without probable cause."  (ECF No. 52 at ¶¶ 83, 228.)  As in *Abbasi*, this claim "bear[s] little resemblance to the three *Bivens* claims the Court has approved in the past: a claim against FBI agents for handcuffing a man in his own home without a warrant; a claim against a Congressman for firing his female secretary; and a claim against prison officials for failure to treat an inmate's asthma." *Abbasi*, 137 S. Ct. at 1860.

The court must then consider "whether special factors counsel hesitation." *Id.*  The question is whether "Congress or the courts should decide to authorize a damages suit." *Id.* at 1848 (citing *Bush v. Lucas*, 472 U.S. 367, 380 (1983)).  The Supreme Court has observed that the "answer most often will be Congress" because "the Legislature is in the better position to

consider if the public interest would be served by imposing a new substantive legal liability." *Id.*
at 1857 (internal quotation marks and citations omitted). The "inquiry must concentrate on
whether the Judiciary is well suited, absent congressional action or instruction, to consider and
weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1857-58.

In deciding to "recognize a damages remedy" the court must "assess[]…its impact on
governmental operations systemwide," including the "burden on Government employees who are
sued personally, as well as the projected costs and consequences to the Government itself when
the tort and monetary liability mechanisms of the legal system are used to bring about the proper
formulation and implementation of public policies." *Id.* at 1858. Courts should also consider
whether an equitable remedy is sufficient, and if not "a damages remedy might be necessary to
redress past harm and deter future violations." *Id.* Put another way, "if there is an alternative
remedial structure present in a certain case, that alone may limit the power of the Judiciary to
infer a new *Bivens* cause of action." *Id.* If any of these factors cause the Court to hesitate in
extending *Bivens,* it must decline to do so. *See Hernandez*, 140 S. Ct. at 743.

Here, several special factors exist that should cause the Court to hesitate before finding an
implied cause of action in these new contexts. For one, the judiciary is not well-suited to weigh
the costs and benefits of allowing a private cause of action against individual officers who
participate in dispersing crowds to protect the President. Congress, on the other hand, has
demonstrated its ability to pass laws permitting and proscribing civil liability for federal officers.
*See e.g.,* 42 U.S.C. § 1983; 28 U.S.C. § 2769(d)(2); 28 U.S.C. § 2676.

Moreover, extending an implied cause of action will put an onerous new burden on police
officers. The case at hand illustrates this risk. The plaintiffs appear to have sued every law
enforcement officer they could identify who was on duty in Lafayette Square on June 1, 2020.
The only thing keeping the number of defendants in the low dozens, instead of thousands, is the

8

plaintiffs' inability to identify the rest.  (ECF No. 68.)  The plaintiffs do not even claim to have interacted with Sgt. LoCascio, yet he must hire counsel to defend himself, and if this motion is not granted, he will bear the full burden of discovery and possibly trial.

Finally, the plaintiffs have other equitable remedies sufficient to redress their injuries and prevent future harm.  Indeed, in this very case the plaintiffs seek an injunction to protect *both* their First and Fourth Amendment rights.  (ECF No. 52 at ¶¶ 231-40.)  *See Abbasi*, 137 S. Ct. 1863 (concluding "when alternative methods of relief are available, a *Bivens* remedy usually is not").  All these factors should cause the court to "hesitate" before extending *Bivens* into these "new contexts."  The court should dismiss the claims for failing any cognizable legal theory.

C.    **Plaintiffs Plead Insufficient Facts to Establish their *Bivens* Claims.**

Even if the Court finds that the plaintiffs' *Bivens* claims are legally viable, it should dismiss them for failure to plead facts that entitle them to relief.  Under *Bivens,* the plaintiffs must prove that a "federal agent acting under color of his authority" violated their constitutional rights.  *Bivens*, 403 U.S. at 389.  The court must then "identify the specific constitutional right" at issue and "determine the elements of, and rules associated with, an action seeking damages for its violation."  *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 920 (2017) (discussing § 1983 claim).

To establish a First Amendment violation, they "must show that '(1) [they] engaged in conduct protected under the First Amendment; (2) the defendant took some retaliatory action sufficient to deter a person of ordinary firmness in plaintiff[s'] position from speaking again; and (3) a causal link between the exercise of a constitutional right and the adverse action taken against [them].'"  *Pinson v. United States Dep't of Justice*, 246 F. Supp. 3d 211, 221 (D.D.C. 2017) (quoting *Aref v. Lynch*, 833 F.3d 242, 258 (D.C. Cir. 2016); *Banks v. York*, 515 F. Supp. 2d 89, 111 (D.D.C. 2007)).  The plaintiffs do not meet any of these requirements.

9

The only factual allegations regarding Sgt. LoCascio are that he "participated in dispersing the demonstration at Lafayette Square," and that he "rushed forward and attacked the assembled protesters."  (ECF No. 52 at ¶¶ 25, 83.)  Plaintiffs fail to allege any retaliatory action that Sgt. LoCascio took against them.  Plaintiffs do not even claim to have interacted with Sgt. LoCascio.  They merely allege a generalized grievance insufficient to state a claim.

To plead an unreasonable seizure in violation of the Fourth Amendment, the plaintiffs must allege that an "officer, by means of physical force or show of authority, has in some way restrained [his] liberty."  *United States v. Hood*, 435 F. Supp. 3d 1, 5 (D.D.C. 2020) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)).  Whether "police action amounts to a 'show of authority' requires a court to ask whether a 'reasonable person' in view of all the circumstances surrounding the incident…would have believed that he was not free to leave."  *Hood*, 435 F. Supp. at 5 (quoting *United States v. Castle*, 825 F.3d 625, 632 (D.C. Cir. 2016); *United States v. Wood*, 981 F. 2d 536, 539 (D.C. Cir. 1992)).  "The Fourth Amendment's prohibition on unreasonable search and seizure also 'encompasses the right to be free from the use of excessive force during an arrest, investigatory stop, or any other seizure."  *See Robinson v. District of Columbia*, 130 F. Supp. 3d 180, 193 (D.D.C. 2015) (quoting *Armbruster v. Frost*, 962 F. Supp. 2d 105, 111 (D.D.C. 2013)).  If a court concludes that an individual has been seized, they must then "assess whether the police had constitutional justification for doing so."  *Hood*, 435 F. Supp at 5.

Plaintiffs offer no factual allegations that show Sgt. LoCascio restrained their liberty.  To the contrary, they allege that the officers at Lafayette Square *dispersed* the demonstrators.  (ECF No. 52 at ¶ 25.)  Plaintiffs cannot argue that Sgt. LoCascio restrained their liberty to the point that they felt they could not leave, and thus were seized, while simultaneously arguing that he acted to clear all demonstrators out of Lafayette Square for the safety of the President.  In addition,

plaintiffs make no representations of how Sgt. LoCascio engaged in any physical force or show of authority, apart from the generalized statements that he "rushed forward and attacked the assembled protesters." (ECF No. 52 at ¶ 83.)  Even if Sgt. LoCascio had seized the plaintiffs, there would be no Fourth Amendment violation.  Moreover, presidential security and safety is of paramount government interest, justifying the alleged actions of Sgt. LoCascio.

The plaintiffs' bald assertions and legal conclusions that Sgt. LoCascio violated their First and Fourth Amendment rights are insufficient to state a cause of action pursuant to *Bivens* and as such, the claims should be dismissed.

### D.  Plaintiffs Plead Insufficient Facts to Establish a § 1985(3) Conspiracy.

The plaintiffs also fail to make a claim that Sgt. LoCascio conspired with other defendants to deprive the plaintiffs of their civil rights.  To make out a conspiracy claim under 42 U.S.C. § 1985(3), the plaintiffs "must allege four elements: (1) a conspiracy; (2) for the purpose of depriving any person or class of persons of the equal protection of the laws, or of privileges and immunities under the law; (3) motivated by some class based, invidiously discriminatory animus exists; (4) whereby a person is either injured in his person or property, or is deprived of any right or privilege of a citizen of the United States." *Graves v. United States*, 961 F. Supp. 314, 320 (D.D.C. 1997) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971); *Hobson v. Wilson*, 737 F.2d 1, 14 (D.C.Cir.1984)).  The plaintiffs do not meet any of these requirements.

"To allege a conspiracy, the plaintiff must present factual allegations to provide plausible support that 'defendants manifested the specific intent to agree to participate in a concerted effort to deprive someone of their civil rights based on a racially discriminatory motive.'" *Nanko Shipping, Guinea v. Alcoa, Inc.*, 330 F. Supp. 3d 439, 450 (D.D.C. 2018) (citing *Morgan v. District of Columbia*, 550 F. Supp. 465, 470 (D.D.C. 1982)).  This requires "more than just conclusory allegations of an agreement," and must include "a factual basis for events,

11

conversations, or documents that indicate an agreement between defendants to violate his rights." *Nanko Shipping, Guinea*, 330 F. Supp. 3d at 450. Importantly, "[t]he statute does not apply to *all* conspiratorial tortious interferences with the rights of others, but only those motivated by some class-based, invidiously discriminatory animus." *Atherton v. Dist. of Columbia Office of Mayor*, 567 F.3d 672, 688 (D.C. Cir. 2009) (quoting *Martin v. Malhoyt*, 830 F.2d 237, 258 (D.C.Cir.1987)).

The plaintiffs offer nothing more than conclusory allegations of an agreement. Plaintiffs simply state that "Defendants conspired together to deprive Plaintiffs . . . of their civil rights," and that the "conspiracy included those involved in law enforcement actions in and around Lafayette Square on June 1, 2020." (ECF No. 52 at ¶¶ 242-43.) Plaintiffs make no distinctions among the "defendants;" a group that includes a broad range of people, from the former President and Attorney General of the United States to unnamed police officers. The plaintiffs do not identify a single meeting, discussion, or document that evidences any communication, let alone conspiratorial agreement, between Sgt. LoCascio and the other defendants. *Nanko Shipping, Guinea*, 330 F. Supp. 3d at 450 (allegations must include "a factual basis for events, conversations, or documents that indicate an agreement between defendants to violate his rights"). The plaintiffs' conclusory allegations do not provide "plausible support" for the claim that Sgt. LoCascio conspired with the President of the United States or anyone else. *Graves*, 961 F. Supp. at 320 ("The plaintiff has failed to allege that there was ever an agreement or 'meeting of the minds' between any of the defendants.").

The plaintiffs also fail to allege that Sgt. LoCascio acted with discriminatory animus or with the purpose of depriving Plaintiffs' of their rights. The plaintiffs baldly assert that "Defendants do not like Plaintiffs' [] viewpoints," and that the conspiracy "targeted" their "right to be free from unreasonable seizures under the Fourth Amendment." (ECF No. 52 at ¶¶ 249-

50.)  But contrary to these broad allegations about all defendants, the plaintiffs acknowledge that Sgt. LoCascio was not conspiring with any such purpose but was simply following orders.  The plaintiffs allege that U.S. Park Police Major Adamchik ordered the law enforcement officers to "attack" the protesters and that Sgt. LoCascio then did so.  (ECF No. 52 at ¶¶ 82-3.)  That is the extent of the plaintiffs' allegation that Sgt. LoCasio's "agreed" to conspire with the purpose of depriving the plaintiffs' of their First and Fourth Amendment rights.  *See Atherton*, 567 F.3d at 688–89 (not sufficient to allege that defendants "conspired" "for ethnic purposes").  The plaintiffs' "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice to state a cause of action under § 1985(3)."  *Id.*

### E.    Plaintiffs Plead Insufficient facts to establish that Sgt. LoCascio Failed to Prevent a § 1985(3) Conspiracy.

The plaintiffs' fourth and final claim against Sgt. LoCascio must also be dismissed for failure to state a claim.  The plaintiffs allege that all the defendants are liable under 42 U.S.C. § 1986 because they failed to prevent the conspiracy alleged in Claim 5.  Section 1986 states as follows:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented . . .

42 U.S.C. § 1986.  By its very terms, § 1986 requires the plaintiffs to show the existence of a § 1985(3) conspiracy, that Sgt. LoCascio knew of the conspiracy, that he had "power to prevent or aid in preventing" it, and that he neglected to prevent it.  Again, the plaintiffs have not alleged sufficient facts to establish any of these elements.

First, as explained above, the plaintiffs failed to allege a colorable claim under § 1985(3) and allege no facts that suggest Sgt. LoCascio was aware of any conspiracy.  *Lattisaw v. Dist. of*

*Columbia*, 118 F. Supp. 3d 142, 162 (D.D.C. 2015) ("'a colorable claim under § 1985 is a

prerequisite to stating an adequate claim for neglect to prevent under § 1986'") (quoting *Burnett*

*v. Sharma,* 511 F.Supp.2d 136, 145 (D.D.C.2007)).  For these reasons alone, the claim must be

dismissed.

Moreover, the plaintiffs allege no facts at all about Sgt. LoCascio's ability to prevent the

conspiracy.  Instead, they simply offer "threadbare recitals" of the statutory language:

"Defendants knew that a Section 1985 violation was about to occur or was occurring, had the

power to prevent or aid in preventing it, and neglected or refused to prevent or aid in preventing

it."  (ECF No. 52 at ¶ 256.)  The Court should dismiss Claim 6.

## III.     SGT. LOCASCIO IS ENTITLED TO QUALIFIED IMMUNITY ON ALL CLAIMS.

Qualified immunity is an affirmative defense that "protects government officials from

liability for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person should have known."  *Pearson v. Callahan*,

555 U.S. 223, 231 (2009) (internal quotation marks and citations omitted).  For a right to be

clearly established, it "must be sufficiently clear 'that every reasonable official would have

understood what he is doing violates that right.'"  *Reichle v. Howards*, 566 U.S. 658, 664 (2012)

(quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  Said another way, a right is clearly

established if "existing precedent [has] placed the statutory or constitutional question beyond

debate."  *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011).

This standard "protects the balance between vindication of constitutional rights and

government officials' effective performance of their duties by ensuring that officials can

'reasonably . . . anticipate when their conduct may give rise to liability for damages.'"  *Reichle*,

566 U.S. at 664 (quoting *Davis v. Scherer*, 468 U.S. 183, 195 (1984)).  *See Pearson*, 555 U.S. at

14

231 ("[q]ualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably").  The allegedly violated right must be established "'not as a broad general proposition,' but in a 'particularized' sense so that the 'contours' of the right are clear to a reasonable official."  *Reichle*, 566 U.S. at 665 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)).  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Qualified immunity is "an *immunity from suit* rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original).  *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991) ("stress[ing] the importance of resolving immunity questions at the earliest possible stage in litigation.").  Public officers "are entitled to some form of immunity from suits for damages" in order "to shield them from undue interference with their duties and from potentially disabling threats of liability."  *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982).

To determine whether an officer is entitled to qualified immunity, the Supreme Court has created a two-part test.  *See Saucier v. Katz*, 533 U.S. 194, 200-01 (2001).  The Court must consider "in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right."  *Id.* (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991).  If so, the Court must determine whether the right at issue was clearly established. *Saucier*, 533 U.S. at 201.  Once a defense of qualified immunity is raised, it is the plaintiffs' burden to prove that the defendant is not entitled to qualified immunity.  *See Dukore v. District of Columbia*, 799 F.3d 1137, 1145 (D.C. Cir. 2015) (plaintiffs' burden to "show that the particular right in question—narrowly described to fit the factual pattern confront the officers—was clearly established").

15

A.   **Sgt. LoCascio is Immune from Plaintiffs' *Bivens* Claims.**

Sgt. LoCascio is entitled to qualified immunity because the plaintiffs have not shown that he violated any of their constitutional rights, let alone a "clearly established" right.  As explained above, the plaintiffs' *Bivens* claims for violations of the First and Fourth Amendment fail to state any cognizable claim for a constitutional violation.  Even if the Court were inclined to extend *Bivens* into these "new contexts," the plaintiffs have not alleged any facts that would establish such a violation.

Moreover, if the Court were to extend *Bivens* into these "new contexts" *and* give the plaintiffs' a fourth opportunity to cure their pleading deficiencies, Sgt. LoCascio would still be entitled to qualified immunity under the second *Saucier* step.  That step requires that the plaintiffs show the violated right is "sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Saucier*, 554 U.S. at 202 (quoting *Anderson v. Creighton*, 483 U.S. 635 (1987)).  This means that "'existing precedent must have placed the statutory or constitutional question' confronted by the official 'beyond debate.'"  *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014) (quoting *Ashcroft*, 563 U.S. at 741).  But again, there is no authority at all for the constitutional claims the plaintiffs assert here.  As a result, Sgt. LoCascio is immune from the plaintiffs *Bivens* claims.

B.   **Sgt. LoCascio is Immune from the Plaintiffs' Statutory Claims.**

Sgt. LoCascio is also entitled to qualified immunity from the statutory claims because the plaintiffs have not shown that he violated their rights under § 1985(3) or § 1986.  The plaintiffs have not pled any facts that suggest Sgt. LoCascio conspired with the former President of the United States or anyone else, nor that he was aware of any such conspiracy and in a position to stop it.

Even ignoring their pleading deficiency, the plaintiffs cannot show that their rights in circumstances like these are "clearly established."  There is simply no "existing precedent" that put Sgt. LoCascio on notice, "beyond debate," that obeying Major Adamchik's order to clear protesters from Lafayette Square to protect the President of the United States, would subject him to liability for conspiring with the officials who issued the order.  Nor is there any "existing precedent" that put him on notice that if he did not stop the President of the United States from engaging in such a conspiracy, that he would be liable for damages.  The plaintiffs cannot show that Sgt. LoCascio violated any clearly established statutory right of the protesters.  Claims 5 and 6 must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant Thomas LoCascio respectfully requests that the Court dismiss all claims against him in the plaintiffs' third amended complaint.

Dated:  January 26, 2021                          Respectfully submitted,

HANNON LAW GROUP, LLP

_____
Daniel S. Crowley, Bar No. #989874
333 8th Street NE
Washington, DC 20002
Tel: (202) 232-1907
Fax: (202) 232-3704
dcrowley@hannonlawgroup.com

*Attorney for Defendant Thomas LoCascio*

17