UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BLACK LIVES MATTER D.C., *et al.*, <br><br> *Plaintiffs,* <br><br> v. <br><br> JOSEPH R. BIDEN, JR., President of the United States of America, *et al.*, <br><br> *Defendants*. | Civil Action No. 20-1469 (DLF) |

**UNITED STATES' SUPPLEMENTAL MEMORANDUM
IN FURTHER SUPPORT OF ITS MOTION TO DISMISS**

Plaintiffs filed this lawsuit to prevent a repeat of the June 1, 2020, forcible clearing of Lafayette Square. They sought injunctive relief against then-President Donald J. Trump, then-Attorney General William P. Barr, and then-Secretary of Defense Mark Esper, in addition to several other federal officials, all named in their official capacities (the "Official-Capacity Federal Defendants"). *See* 3d Am. Compl. (ECF No. 52) ¶ 291. In a motion to dismiss filed October 1, 2020 (ECF No. 79), the Official-Capacity Federal Defendants argued that Plaintiffs lack standing to seek prospective injunctive relief based on their prior alleged injuries. *See* United States' Mem. in Support of Its Motion to Dismiss (ECF No. 79-1) at 9 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)).

Whether or not Plaintiffs had standing to bring their equitable claims last year, changed circumstances have rendered those claims moot. Plaintiffs' alleged fears of future injury were based almost entirely on statements they attributed to federal officers who have since left office. Because Plaintiffs lack a reasonable fear that the challenged conduct will be repeated by the current incumbents of those offices, Plaintiffs' equitable claims should be dismissed as moot.

**LEGAL STANDARD**

"A request for injunctive relief remains live only so long as there is some present harm left to enjoin." *Taylor v. Resolution Trust Corp.*, 56 F.3d 1497, 1502 (D.C. Cir. 1995)). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Renne v. Geary*, 501 U.S. 312, 320-21 (1991) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)); *Christian Knights of the Ku Klux Klan v. District of Columbia*, 972 F.2d 365, 369 (D.C. Cir. 1992)). Subsequent events "may render a claim moot if there is no reasonable expectation that the conduct will recur." *Leonard v. Dep't of Def.*, 38 F. Supp. 3d 99, 104 (D.D.C. 2014) (citing *Pharmachemie B.V. v. Barr Labs., Inc.*, 276 F.3d 627, 631 (D.C. Cir. 2002)). Also, "where the defendant is a government actor—and not a private litigant—there is less concern about the recurrence of objectionable behavior[.]" *See Citizens for Responsibility & Ethics in Wash. v. SEC*, 858 F. Supp. 2d 51, 61-62 (D.D.C. 2012).

Similarly, a plaintiff who cannot reasonably be expected to benefit from prospective relief ordered against the defendant, in light of intervening events, has no claim for an injunction. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 364-65 (2011) (concluding that plaintiffs whose employment ended after an action was filed had no claim for injunctive relief against their former employer concerning its employment practices).

**ARGUMENT**

Federal Rule of Civil Procedure 25(d) provides that, when a government official sued in his personal capacity is replaced while an action is pending, the official's successor is automatically substituted as a party. But that does not mean that all lawsuits survive a substitution of government officials. When a complaint seeks official-capacity relief that is tied inextricably

to the particular individual holding an office, the claim may be mooted by the official's departure. And that is what has happened here. Plaintiffs' supposed fear of future injury was tied to particular federal officials who were sued in their official capacities but who no longer serve in their former positions. The allegations of this complaint are personal to the former government officials, focusing on their specific words, deeds, and intent. In such circumstances, there is no reason to consider the successors-in-office to be successors-in-conduct. Accordingly, Plaintiffs' requests for equitable relief that sought to enjoin conduct of former officials are now moot and should be dismissed.

I.   **THE DEPARTURE OF PRESIDENT TRUMP, ATTORNEY GENERAL BARR, AND SECRETARY ESPER FROM OFFICE RENDERS PLAINTIFFS' EQUITABLE CLAIMS MOOT.**

Since Plaintiffs filed this lawsuit, President Trump, Secretary Esper, and Attorney General Barr have each left office.[1] As discussed below, Plaintiffs' claim to equitable relief depends on Tweets and other statements by former federal officers. That claim is now moot because "where the conduct challenged is personal to the original named defendant, even though he was sued in his official capacity, a request for prospective injunctive relief is mooted when the defendant resigns." *Nat'l Treasury Emp. Union v. Campbell*, 654 F.2d 784, 788 (D.C. Cir. 1981).

Plaintiffs' operative complaint makes clear that this suit was personal to three former officials—former President Trump, former Attorney General Barr, and former Secretary Esper—who Plaintiffs identify as individuals who harbored a retaliatory motive against them. Specifically, Plaintiffs allege that these Defendants were at the helm of an effort to infringe on demonstrators' constitutional and civil rights. *See* 3d Am. Compl. ¶¶ 53-64. They further allege that former

---

[1] The United States also notes that Pamela A. Smith has succeeded Gregory Monahan as the Chief of the U.S. Park Police.

3

President Trump urged the "domination" of demonstrators, *id.* ¶ 57, that former Secretary Esper also encouraged the domination of "the battle space" in reference to streets where individuals were "gathered to peaceably protest," *id.* ¶ 59, and that former Attorney General Barr had "personally [led] the response to the unrest," *id.* ¶ 60.  On the other hand, Plaintiffs' complaint is entirely devoid of any allegations regarding any personal conduct or animus against demonstrators on behalf of the other Official-Capacity Federal Defendants, who Plaintiffs have sued simply because each official is "responsible for the actions" of their respective agencies.  *See, e.g., id*. ¶ 31 (Director of the U.S. Secret Service James M. Murray); ¶ 32 (Commanding General of the D.C. National Guard Major General William J. Walker); and ¶ 33 (Director of the Federal Bureau of Prisons Michael Carvajal).

In their opposition to the Official-Capacity Federal Defendants' motion to dismiss, Plaintiffs emphasized and reiterated that statements by former President Trump and former Secretary Esper justified Plaintiffs' fear of future injury.  *See* Opp'n (ECF No. 98) at 66 (arguing that prior tweets and statements by former President Trump and former Secretary Esper "reflect[] intent to continue violating Plaintiffs' and other protestors' constitutional rights").  Plaintiffs also argued that former President Trump took "an entirely different approach" to demonstrators with viewpoints that favored him, while praising the alleged attack on racial justice demonstrators.  *Id.* at 11.

The substitution of those Defendants removed any supposed prospective retaliatory intent or animus from the case.  The former President's tweets from many months ago and other statements by former Secretary Esper or former Attorney General Barr can no longer support any conclusions about *future actions* by current or future government officials—which must be the basis of prospective equitable relief.  As another District Court recently noted in dismissing similar

4

claims to those brought here, the former President's tweets have been "not only erased but utterly repudiated by this change in administration." *W. States Ctr., Inc. v. Dep't of Homeland Sec.*, Civ. A. No. 20-1175, 2021 WL 1896965, at *1 (D. Or. May 11, 2021). As noted, Plaintiffs' operative complaint includes no allegations about the officials currently in charge of federal officers and agents. Nor could there be, as the current officials have made no statements akin to those in the complaint.

"[W]hile Federal Civil Rule 25(d)(1) provides for automatic substitution of a successor, and eliminates the requirement that the plaintiff demonstrate need for continuing the action upon substitution, it will not keep alive an otherwise moot controversy." *Network Project v. Corp. for Pub. Broad.*, 561 F.2d 963, 966 (D.C. Cir. 1977) (citations omitted). For a live controversy to remain, there must be a "more-than-speculative chance" that the Official-Capacity Federal Defendants will again use excessive force against Plaintiffs in the future because they exercised their First Amendment rights. *See Am. Bar Ass'n v. FTC*, 636 F.3d 641, 645 (D.C. Cir. 2011) (citation omitted). The Supreme Court has long held that, upon "an intervening change in administration, the issuance of prospective coercive relief against the successor to the office must rest, at a minimum, on supplemental findings of fact indicating that the new officer will continue the practices of his predecessor." *Philadelphia v. Educ. Equal. League*, 415 U.S. 605, 622 (1974) (citing *Spomer v. Littleton*, 414 U.S. 514 (1974)).

In light of the departure of former President Trump, former Attorney General Barr, and former Secretary Esper, Plaintiffs' complaint fails to provide any basis or "reasonable expectation" that their successors will again engage in any retaliation for Plaintiffs' First Amendment activities. *Cf. Spomer*, 414 U.S. at 521-22 (remanding for mootness analysis an official-capacity suit for injunctive relief against a State's Attorney because the suit was "based upon an alleged practice of

5

willful and malicious racial discrimination" that was "personal to" the named defendant, who had left office). Plaintiffs do not point to any evidence suggesting otherwise, nor does their complaint identify any statements by the successors of the named Official-Capacity Federal Defendants. *See ACLU v. Finch*, 638 F.2d 1336, 1345 (5th Cir. 1981) ("[M]ootness in this context is determined by reference to the allegations of the complaint.").

Further, Plaintiffs concede that their complaint does not challenge any ongoing practices, *see* Opp'n at 51 (noting that "Plaintiffs do not challenge a large-scale policy—or any policy at all. Rather, Plaintiffs challenge the acts taken on this specific day against this specific group of protestors . . . and the implied threat to take similar actions in the future at the President's whim"). Plaintiffs have not alleged that they are subject to any similar "whim" by President Biden, nor could they. *See Wise v. City of Portland*, Civ. A. No. 3:20-1193, (D. Or. entered May 15, 2021), Opinion and Order (ECF No. 88) at 18 (Plaintiffs—"protest medics" providing support for the Black Lives Matter movement—retaliation claims were moot because their "speculations regarding future actions of federal law enforcement . . . rely on facts and circumstances that could not reasonably be expected to recur" by Federal Defendants' successors). Because Plaintiffs have failed to plausibly allege any anticipated future injuries based on their allegations focused on the views and conduct of former President Trump and his Cabinet, no live controversy remains in this matter. *Cf. Network Project*, 561 F.2d at 967 (dismissing as moot claim when "the wrongful conduct charged is personal to the named defendant," the named defendant had left office, and the plaintiffs "ha[d] not averred that it is departmental policy to follow the practices charged"); *see also Nat'l Treasury Emp. Union*, 654 F.2d at 787-88 (dismissing as moot appeal regarding claims seeking equitable relief from member of Congress and Director of the Office of Personnel

6

Management ("OPM") for alleged unlawful lobbying after the OPM director resigned and the proposed legislation failed to pass upon Adjournment of Congress).

Finally, Plaintiffs' claims regarding their alleged medical injuries do not create a live controversy because they do not seek any monetary damages against the Official-Capacity Federal Defendants. Such damages are otherwise barred by sovereign immunity. *See Clark v. Libr. of Cong.*, 750 F.2d 89, 103 (D.C. Cir. 1984) ("Sovereign immunity . . . bar[s] suits for money damages against officials in their official capacity absent a specific waiver by the government." (emphasis omitted)); *accord Pinson v. Dep't of Just.*, --- F. Supp. 3d ---, 2021 WL 790380, at *8 n.8 (D.D.C. Jan. 8, 2021) (dismissing official-capacity retaliatory transfer claim as moot where the named Bureau of Prisons officials had left federal service where the alleged harm involved an exacerbation of health conditions).

## II. THE VOLUNTARY-CESSATION EXCEPTION TO MOOTNESS DOES NOT APPLY.

Plaintiffs may contend that the voluntary-cessation doctrine applies, such that their claims are not moot. *See United States v. W.T. Grant Co.*, 345 U.S. 629, 632-33 (1953). However, as noted, Plaintiffs only support for their central allegation—that the government retaliated against their viewpoints by using excessive force in removing them from Lafayette Square—is their reliance on the rhetoric of the prior administration. There can be little doubt that the replacement of the officials whose rhetoric gave rise to Plaintiffs' claims represents a fundamental change. *See W. States Ctr., Inc.*, 2021 WL 1896965, at *1. And Plaintiffs would be hard-pressed to contend that such rhetoric is likely to recur because the alleged sources of the retaliatory animus for the clearing of Lafayette Square (i.e., former President Trump, former Attorney General Barr, and former Secretary Esper) no longer hold any authority over the Official-Capacity Federal Defendants. *See Wise*, Civ. A. No. 3:20-1193, Opinion and Order at 23. More importantly, that

7

change was not voluntary, as the officials who allegedly harbored any retaliatory animus were replaced by a new administration that was voted into office.  As noted, Plaintiffs have not alleged—and cannot allege—that the successors have espoused any similar views to those alleged here. *Id.* at 18.

Apart from Plaintiffs primarily grounding their claims in the actions of the prior administration, Plaintiffs have expressly disclaimed any challenge to the government's law-enforcement policies.  Indeed, the Official-Capacity Federal Defendants never had a policy, official or unofficial, of violating the First or Fourth Amendment rights of the Plaintiffs, nor did they violate any civil rights statute.  Thus, there has been no voluntary cessation because there is no illegal policy to withdraw.

\* \* \*

## CONCLUSION

Plaintiffs never had standing to bring their equitable claims, but those claims are moot in any event. For that reason, and those stated in the Official-Capacity Federal Defendants' motion to dismiss, Plaintiffs' equitable claims should be dismissed.

Dated May 19, 2021

Respectfully submitted,

CHANNING D. PHILLIPS, D.C. Bar No. 415793
Acting United States Attorney

BRIAN P. HUDAK
Acting Chief, Civil Division

/s/   *Christopher C. Hair*
CHRISTOPHER C. HAIR, PA Bar No. 306656
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-2541
christopher.hair@usdoj.gov

/s/   *Sean P. Mahard*
SEAN P. MAHARD, CT Bar No. 436524
Special Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-2574
sean.mahard@usdoj.gov

*Counsel for the United States*