UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| BLACK LIVES MATTER D.C., *et al.*,<br><br>                    Plaintiffs,<br><br>        v.<br><br>DONALD J. TRUMP, *et al.*<br><br>                    Defendants. | No. 1:20-cv-01469-DLF |

**PLAINTIFFS' UNOPPOSED MOTION FOR ENTRY OF PARTIAL FINAL
JUDGMENT OR FOR CERTIFICATION OF INTERLOCUTORY APPEAL**

Plaintiffs hereby move under Fed. R. Civ. P. 54(b) for entry of partial final judgment, per

this Cout's June 21, 2021, decision, dismissing the *Bivens* claims against Defendants Barr,

Adamchik, Daniels, Cox, Feliciano, Hendrickson, Jarmuzewski, McDonald, Seiberling, Sinacore,

LoCascio, and Kellenberger (the "Individual Federal Defendants"), or, in the alternative, for

certification of an interlocutory appeal on the *Bivens* question under 28 U.S.C. § 1292(b). Either

entry of judgment or certification will enable the parties to proceed to discovery knowing

definitively which issues and which defendants are in the case, thereby avoiding the possibility of

conducting two separate but overlapping rounds of discovery and two separate but overlapping

jury trials. If the Court grants this motion, proceedings in the Court should be stayed to avoid

duplicative discovery.

On the condition that a stay of all proceedings in this Court is entered in this case and

*Buchanan v. Trump*, No. 20-cv-1542, pending the resolution of the proposed appeal, individual

capacity federal Defendants Barr, Adamchik, Daniels, Cox, Feliciano, Hendrickson, Jarmuzewski,

McDonald, Seiberling, Sinacore, and Kellenberger consent to Plaintiffs' motion under Federal

Rule of Civil Procedure 54(b) to enter a partial final judgment on the dismissal of the *Bivens* claims; and they take no position on Plaintiffs' motion under 28 U.S.C. § 1292(b), except for Defendant Kellenberger, who consents to that relief as well.[1] Individual capacity federal Defendant LoCascio consents to the entry of partial final judgment under Rule 54(b), and he does not oppose a stay or an interlocutory certification under § 1292(b). On the condition that the case is stayed pending appeal, the District of Columbia and Arlington Defendants do not oppose either form of relief sought here.

In sum, then, if the Court stays its proceedings as requested, all Individual Federal Defendants consent to the entry of the partial final judgment sought here, and the other Defendants do not oppose that relief. Regarding the alternative relief of certification under § 1292(b), provided there is a stay of this Court's proceedings, Defendant Kellenberger consents, and the remaining Defendants either do not oppose or take no position.

## FACTS

On June 1, 2020, peaceful protesters—including all eight individually named Plaintiffs in this action as well as members and supporters of organizational Plaintiff Black Lives Matter D.C.—assembled in historic Lafayette Square Park across from the White House to protest racial injustice in the United States after the death of George Floyd and other Black people at the hands of law enforcement. ECF 160, at 3. In response, officers of various federal agencies in and around Lafayette Square (along with officers of Arlington County, Virginia) sprayed the crowd with tear

---

[1] Those individual capacity federal defendants represented by DOJ counsel state that their position on the relief requested by the plaintiffs in this motion does not constitute an endorsement of any of the factual representations or legal arguments that the plaintiffs assert. In the same vein, these individual federal defendants state that they reserve their right to challenge the plaintiffs' representations and arguments as the case proceeds.

gas, flash-bang grenades, smoke bombs, and rubber bullets and beat them with batons. *See id.* at 3-4. The unprovoked violence caused a range of physical and emotional injuries. *See id.* at 4-5.

Some of the protesters, including Plaintiffs Dustin Foley and his daughter E.X.F., fled west and encountered officers of the D.C. Metropolitan Police Department, stationed in a separate line a block away from the federal officers. *See id.* at 4; *cf.* ECF 52 (Third Amended Complaint), at 38-39. The MPD officers attacked these fleeing demonstrators with tear gas and chased them further from Lafayette Square. *See id.* Plaintiffs do not allege that the D.C. officer Defendants were part of the group that charged at and fired upon Plaintiffs in or immediately adjacent to Lafayette Square.

Plaintiffs initiated this action on June 4, 2020, and the operative amended complaint asserts several sets of claims: *Bivens* claims for damages for constitutional violations against the Individual Federal Defendants (the Attorney General, the U.S. Park Police incident commander, and a number of line-level U.S. Park Police officers); claims for injunctive relief against other federal defendants in their official capacities; claims under 42 U.S.C. § 1983 against the District of Columbia and a number of its officers; and claims against federal, D.C., and Arlington County officers for engagement in or failure to prevent a conspiracy to violate civil rights under 42 U.S.C. § 1985 and 1986. ECF 52, at 45-56.

All Defendants filed motions to dismiss, which the Court granted in part and denied in part on June 21, 2021. ECF 159, 160. The Court dismissed as non-justiciable most but not all of the injunctive relief claims against the federal defendants, and the Court dismissed all conspiracy-related claims as insufficiently alleging the elements. ECF 160, at 23-27, 50-51. The Court granted the D.C. Defendants' motions to dismiss as to the injunctive relief and Fourth Amendment claims, but denied the individual D.C. Defendants' motion to dismiss the First Amendment claims, holding

that the complaint alleged the violation of clearly established rights. *Id.* at 33-43. Of primary relevance here, the Court dismissed the *Bivens* claims against the Individual Federal Defendants, holding that no cause of action exists under *Bivens* to seek damages against them under either the First or Fourth Amendment. *Id.* at 8-16. The *Bivens* claims were brought only against the Individual Federal Defendants, and the Court's rationale for dismissing them applied just to these claims.

The claims against the federal government for injunctive relief were subsequently settled. ECF 181, 182-1.

Plaintiffs now move for entry of final judgment under Federal Rule of Civil Procedure 54(b) as to the portion of the Court's decision dismissing the *Bivens* claims, or, in the alternative, certification of an interlocutory appeal of the *Bivens* question under 28 U.S.C. § 1292(b). (Plaintiffs did not file this motion earlier because, as the Court knows, the matter has been stayed since July 2021 while the parties have engaged in settlement negotiations, which produced the agreement just noted.)

## ARGUMENT

## I. The Court Should Enter Final Judgment on the *Bivens* Claims Under Fed. R. Civ. P. 54(b).

The Court should enter final judgment regarding the *Bivens* claims based on its order of dismissal, and it should stay proceedings in this Court pending an appeal. Permitting Plaintiffs to appeal the dismissal of the *Bivens* claims now will enable the parties to proceed to discovery knowing which issues and which defendants are in the case, thereby avoiding the possibility of conducting two separate and overlapping rounds of discovery and two separate and overlapping jury trials. Of note, Individual Federal Defendants all consent to the entry of judgment under Rule

54(b) (so long as this case and the parallel case *Buchanan v. Trump*, No. 20-cv-1542, are stayed pending the outcome of any appeals from the final judgment).

In cases with multiple claims or multiple parties, courts can enter final judgment as to fewer than all of the parties or claims. Fed. R. Civ. P. 54(b). For such a partial final judgment to be entered under Rule 54(b), the court must make three findings: "(1) the order must resolve a distinct 'claim for relief'; (2) the order must be 'final' with respect to that claim; and (3) the district court must permissibly determine that there is 'no just reason for delay' in entering judgment." *Attias v. CareFirst, Inc.* 969 F.3d 412 (D.C. Cir. 2020); *accord Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7-8 (1980) (setting out same requirements organized into two findings instead of three). In making the determination that there is no just reason for delay, the district court should weigh judicial administrative interests and the equities involved. *Attias*, 969 F.3d at 417. A proper final judgment under Rule 54(b) must make an express determination that there is no just reason for delay, with enough analysis for a reviewing court to determine if the district court abused its discretion. *See Bldg. Indus. Ass'n of Super. Cal. v. Babbitt*, 161 F.3d 740 (D.C. Cir. 1998).

Here, the *Bivens* claims are distinct claims for relief, the order dismissing those claims is final, and there is no just reason to delay this appeal. Both judicial administrative interests and the equities involved weigh in favor of resolving this isolated legal issue to ensure that the litigation moves forward in the most efficient way possible.

### A. The *Bivens* Claims Are Distinct Claims for Relief.

A distinct claim for relief is one that is "separable" from the other claims, as this Court explained in another case dealing with claims against both federal and District defendants: "The relevant inquiry in deciding whether the claims are separable is whether the legal issues on which the court dismissed the counts against the federal defendants overlap with the legal issues on which

the court dismissed the counts against the D.C. defendants such that granting final judgment to only some of the defendants would create the risk of the Circuit hearing the same issue twice." *Johnson v. Mukasey*, 248 F.R.D. 347, 355 (D.D.C. 2008).

The *Bivens* claims are distinct from all the other claims in the litigation—those dismissed and those not dismissed—because there is no risk that the D.C. Circuit would have to hear argument more than once about whether *Bivens* claims can be pursued in this situation. *Bivens* claims only apply, and *can* only apply, to the federal defendants sued for damages in their individual capacities. Accordingly, here, only the Individual Federal Defendants are sued under *Bivens* (Claims 1 and 2), while constitutional claims against the official-capacity federal Defendants and the D.C. Defendants arise under entirely different causes of action: inherent equitable power to enforce the Constitution via injunctive relief (Claims 3 and 4), and 42 U.S.C. § 1983 against local officials (Claims 7-10). *See* ECF 52, at 47-55. There is one set of overlapping claims asserted against all Defendants—the conspiracy claims under 42 U.S.C. §§ 1985 and 1986, *see id.* (Claims 5 and 6)—which are legally distinct from the *Bivens* claims and were dismissed on completely different grounds. See ECF 160, at 23-27, 33.

Plaintiffs seek entry of Rule 54(b) judgment only as to the *Bivens* claims, which were dismissed based on a legal question (the existence of a *Bivens* cause of action) that is entirely distinct logically and doctrinally from all the other issues in the case. Even if the District defendants end up appealing some other aspect of the claims against them, the appeals court will not be confronted with the *Bivens* issue again.

Additionally, the claims as to which Plaintiffs seek final judgment are separable and distinct because they were brought against only the Individual Federal Defendants, who have been entirely dismissed from the case. Rule 54(b) was amended in the 1960s to add the "multiple

parties" language (to the pre-existing "multiple claims" language), and the D.C. Circuit has acknowledged that "[t]he motivation behind the amendment was to provide plaintiffs a way to appeal the dismissal of a *defendant* in a multiple defendant action." *Brooks v. District Hosp. Partners, L.P.*, 606 F.3d 800, 805 n.2 (D.C. Cir. 2010). The Individual Federal Defendants have been dismissed from this case, ECF 159, at 2, the dismissal of the *Bivens* claims against them was on grounds inapplicable to any other defendants. Recently, the D.C. Circuit held that a 54(b) final judgment was properly entered where it involved claims pertaining to parties who were entirely dismissed from the case, and those claims were separate from the remaining claims. *M.M.V. v. Garland*, 1 F.4th 1100, 1106 n.3 (D.C. Cir. 2021). Likewise, in *Moriarty v. Hashemite Kingdom of Jordan*, this Court found that a dismissal of one party based on grounds inapplicable to any other defendant (in that case, sovereign immunity) could properly be the basis for a partial final judgment under 54(b) because "there is no possibility that a potential reviewing court would be forced to review the same issue—sovereign immunity—twice." 2019 WL 6701339, *2 (D.D.C. Dec. 9, 2019). These cases are precisely on point here, as the *Bivens* arguments apply only to the Individual Federal Defendants. And Plaintiffs are not seeking final judgment as to the statutory claims (under 42 U.S.C. §§ 1985 & 1986) that are common to the dismissed and non-dismissed Defendants. The requirement that there be a distinct claim for a final judgment under Rule 54(b) is met in this case.

**B.  The *Bivens* Claims Are Final.**

The order dismissing the *Bivens* claims is final. This case presents the paradigmatic example of finality: The case is finished with respect to the *Bivens* claims and the *Bivens* defendants, unless the dismissal of these claims is reversed on appeal. This Court has previously found that the finality requirement was satisfied where there was no further court action required

on the claims at issue unless the claims were appealed. *Am. Forest Resource Council v. Ashe*, 301

F.R.D. 14, 18 (D.D.C. 2014); *Baystate Med. Ctr. v. Leavitt*, 587 F. Supp. 2d 44, 47 (D.D.C. 2008).

The finality requirement under Rule 54(b) is easily met.

**C.  The *Bivens* Claims Present No Just Reason for Delay in Entering Judgment.**

In determining whether there is no just reason for delay, this court must consider both

judicial administrative interests and the equities. *Attias*, 969 F.3d at 417. Judicial administrative

interests depend on "such factors as whether the claims under review were separable from the

others remaining to be adjudicated and whether the nature of the claims already determined was

such that no appellate court would have to decide the same issues more than once even if there

were subsequent appeals." *Curtiss-Wright Corp.*, 446 U.S. at 8.

Here, as noted, the *Bivens* question is applicable only to the Individual Federal Defendants,

and whether a *Bivens* claim is actionable under these circumstances is a threshold question that the

D.C. Circuit will have to determine only once. If the Individual Federal Defendants raise other

merits issues on appeal, "[e]ven in the unlikely event that the D.C. Circuit were to accept the

invitation [to reach the merits and find] an 'alternative basis' to affirm this Court's dismissal, the

D.C. Circuit's decision on the matter would be final; so the D.C. Circuit would not have to 'decide

the same issue[ ] more than once even if there were subsequent appeals.'" *Jewler v. District of

Columbia*, 198 F. Supp. 3d 1, 4 (D.D.C. 2016) (quoting *Curtiss-Wright Corp.,* 446 U.S. at 8)

(granting Rule 54(b) motion and noting the most likely result of a successful appeal would be

reversal and remand). Because the *Bivens* issue is separable and will not come up twice in the

appeal process, this factor weighs toward entering final judgment.

For similar reasons, final judgment is appropriate on a claim that is legally and factually

separable from the remaining claims, even if there is some high-level overlap between the claims.

*Am. Forest Resource Council*, 301 F.R.D. at 18. The claims at issue here are legally and factually separate. As noted, the *Bivens* claims apply only to the Individual Federal Defendants, not to any of the other defendants, and the other defendants remaining in the case cannot be subject to *Bivens* liability, so the claim is legally separable. The claims are also factually separable. The *Bivens* claims are based on the actions of Individual Federal Defendants during the violent clearing of Lafayette Square. While the remaining non-dismissed claims in this case arise out of the same evening's events, they arise from different sets of actions: the D.C. defendants' attack that took place a block away and affected only two of the nine named Plaintiffs (Dustin Foley and his daughter E.X.F.). Because the legal and factual issues between the *Bivens* claims and the remaining claims are separate, this factor weighs in favor of entering a Rule 54(b) final judgment.

The equities also weigh toward granting the appeal. Both sides here have an interest in prompt judicial review. *See Baystate Medical Center v. Leavitt*, 587 F. Supp. 2d 44, 47 (D.D.C. 2008) (considering impact of delayed appellate review on the parties). Indeed, the Individual Federal Defendants all consent to the entry of partial final judgment under Rule 54(b) so long as this case and the parallel case *Buchanan v. Trump*, No. 20-cv-1542, are stayed pending the outcome of any appeals from the final judgment. By resolving the threshold *Bivens* question early in the litigation, the parties can avoid future duplicative litigation if this Court's order dismissing the claims against the Individual Federal Defendants is later overturned.

The interest in avoiding duplicative litigation is particularly relevant to discovery, which has not yet begun. The scope of discovery (which, following the remaining Defendants' answers, is poised to begin next) would change significantly if the Individual Federal Defendants were brought back into the case, because the scope of the inquiry into the events of June 1 would broaden to encompass the actions of the federal officers at Lafayette Square and whether those actions had

lawful justifications. Rather than opening another round of discovery into these hefty subjects if the claims are reinstated via an appeal following the resolution of the other claims—thus prolonging the ultimate resolution of the litigation—it would be more efficient if the parties could gain certainty about the status of the *Bivens* claims, and thus the scope of discovery, before discovery begins. This Court has previously said that the efficient use of the Court's, parties', and witnesses' resources weighs toward final judgment in such circumstances. *Seed Company Limited v. Westerman*, 2019 WL 3222412, *4 (D.D.C. July 17, 2019).[2]

Partial final judgment would also be more efficient as to the Plaintiffs (Plaintiffs McDonald, Poteet, Sanders, J.N.C., Scallan, and Bond) who brought *Bivens* claims but lack damages claims against the D.C. Defendants; discovery regarding these six individuals' injuries— whether relevant to the merits of their claims or to their defenses—would have to wait until after any appeal following the resolution of the claims of Plaintiffs Foley and E.X.F. against the D.C. Defendants. Perhaps most importantly, the six identified Plaintiffs might be denied the opportunity to take discovery to identify the specific officers who attacked them directly before the three-year statute of limitations for their *Bivens* claims runs out while they await the resolution of other Plaintiffs' claims against other Defendants. This Court has recognized that the equities favor entering final judgment where "if [claimant] succeeds in having the claims reinstated on appeal,

---

[2] The Court in that case used the factors from *Allis-Chalmers Corp. v. Phila. Elec. Co.*, 521 F.2d 360 (3d Cir. 1975), which have not been formally adopted by the D.C. Circuit. However, the factors—"(1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like," *id.* at 364—are entirely compatible with the general "no just reason for delay" inquiry and are instructive as to the considerations identified for this factor in *Curtiss-Wright*.

he would be able to rejoin the pending litigation alongside the . . . remaining claimants—an efficiency that could be squandered if [claimant] must delay his appeal until after the remainder of the litigation comes to a close." *United States v. All Assets Held in Account Number XXXXXXXX in the Name of Doraville Props. Corp.*, 2015 WL 13673819, *2 (D.D.C. Dec. 17, 2015).

Moreover, leaving the scope of discovery uncertain means the parties and the Court will be forced to deal with multiple costly discovery questions before even getting to trial. Although discovery would be broader with the *Bivens* claims in the case, even the claims against the D.C. Defendants will require some discovery from the federal Defendants about their perception of the events that gave rise to the attack by the D.C. Defendants. Uncertainty over the status of the Individual Federal Defendants—i.e., whether they will eventually rejoin the litigation as defendants against reinstated *Bivens* claims—will prompt the federal government to litigate the scope of discovery with that risk in mind, leading to more disputes than might be necessary if the Individual Federal Defendants were definitively either in or out of the case. *Cf.* ECF 38 (Defendant Barr's vigorous opposition to discovery even about the conduct of other potential defendants).

Finally, certainty about whether the *Bivens* claims will be reinstated would be beneficial to both sides with regard to future settlement discussions. Initial settlement talks bore fruit only as to the claims for injunctive relief, not as to damages. Talks could resume based on discovery or after summary judgment. The clearer the scope of the parties' potential liability (and potential recovery), the fewer obstacles there will be standing in the way of settlement. Concretely: if Plaintiffs and Defendants assign different probabilities to the reinstatement of the *Bivens* claim, they are likely to approach settlement discussions with very different expectations. If the *Bivens* issue were conclusively settled, an important uncertainty would be removed, and settlement would become more likely.

The equities favor, and the Individual Federal Defendants all consent to, entering final judgment on the *Bivens* claims under Rule 54(b) and staying the action in this Court pending appeal.

## II.     The Court Should Certify an Interlocutory Appeal Under 28 U.S.C. § 1292(b).

In the alternative, the Court should certify the question whether the Plaintiffs can pursue the *Bivens* claims for interlocutory appeal under 28 U.S.C. § 1292(b). "A district judge may certify a non-final order for appeal if it involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b)." *Philipp v. Fed. Republic of Germany*, 253 F. Supp. 3d 84, 87 (D.D.C. 2017) (cleaned up).

The availability of certification depends on the court's finding that (1) the issue raises a controlling question of law, (2) there are substantial grounds for difference of opinion, and (3) interlocutory appeal will materially advance the litigation. *See, e.g., id.* at 87-88. If those prerequisites are satisfied, the district court has discretion whether to certify the appeal. *See, e.g., United States v. Honeywell Intern'l Inc.*, 2021 WL 2493382, at *4 (D.D.C. June 18, 2021).

All three of these statutory factors are met in this case. And the Court should exercise its discretion to allow an interlocutory appeal and stay the action in this Court pending the appeal—a result no party opposes.

### A.  The Dismissal of the *Bivens* Claims Raises a Controlling Question of Law.

The *Bivens* issue raises a controlling question of law because it shapes the future and scope of the litigation. "This is the kind of question 'that would require reversal if decided incorrectly or that could materially affect the course of litigation with resulting savings of the court's or the parties' resources.'" *Montesano v. Cath. Univ. of Am.*, 2021 WL 6849086, at *1 (D.D.C. Sept. 3,

2021) (quoting *Judicial Watch, Inc. v. Nat'l Energy Policy Development Grp.*, 233 F. Supp. 2d 16, 19 (D.D.C. 2002)).

Here, the question whether a *Bivens* cause of action is available is a pure question of law—as demonstrated by the fact that it was resolved here on a motion to dismiss, taking all the facts in the complaint as true—that would require reversal if decided incorrectly. It would save parties resources to determine whether these claims are actionable under *Bivens* at the beginning of litigation, rather than having to engage in an entire second discovery process and a second jury trial if the claims are reinstated after the end of litigation against the other parties. *See, e.g., Molock v. Whole Foods Market Grp.,* 317 F. Supp. 3d 1, 4 (D.D.C. 2018) (finding a controlling issue of law where a reversal would reinstate a national class action instead of a D.C. class action); *Kennedy v. District of Columbia*, 145 F. Supp. 3d 46, 48-50 (D.D.C. 2015) (certifying an interlocutory appeal on proper definition of "disability" in Americans with Disabilities Act, because reversal on that question would result in reinstatement of the plaintiff's claim). The *Bivens* issue is a controlling question of law that determines whether some of Plaintiffs' claims survive or not.

## B.  There are Substantial Grounds for Difference of Opinion on the *Bivens* Claims.

Respectfully, there are substantial grounds for difference of opinion regarding the Court's ruling here on *Bivens*, which effectively concludes that recent Supreme Court cases have implicitly overruled decades of D.C. Circuit precedent recognizing the availability of *Bivens* for demonstrators' First and Fourth Amendment claims about protests at the headquarters of a branch of government, *e.g., Dellums v. Powell,* 566 F.2d 167, 194-195 (D.C. Cir. 1977)—precedents that the Defendants do not dispute would otherwise apply. *See* ECF 76 (Defendant Barr's motion to dismiss) at 8 (arguing that lower court decisions are no longer relevant given the *Abbasi* holding).

Whether the Supreme Court decisions in *Hernandez v. Mesa*, 140 S. Ct. 735 (2020), and *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), supersede the D.C. Circuit's conclusion that no "special factors counsel hesitation" in demonstrators' rights cases very similar to this one is quite debatable. The *Hernandez* case dealt with the attempt by a foreign national to hold a U.S. officer accountable for a death that occurred on foreign soil, and accordingly raised profound concerns about both foreign relations and border security. See 140 S. Ct. at 744-46. Thus, the decision not to extend the *Bivens* remedy in the *Hernandez* case rested on special factors quite different than the Court's primary basis for finding special factors here: the security of the person of the President. The *Abbasi* case, too, presented a unique factual scenario that counseled hesitation for a reason not present here: a terrorism investigation in the immediate aftermath of the September 11 attacks. 137 S. Ct. at 1851-52. Neither *Abbasi* nor *Hernandez* overturned, discussed, or even cited *Dellums*, or discussed the availability of damages under *Bivens* for plaintiffs making claims under the First or Fourth Amendments arising from domestic law enforcement activity. Neither case dealt with political speech, or a traditional public forum like Lafayette Square. While the facts of this case may present a new context, that is only one step of the *Abbasi* analysis; the second, as the Court recognized, is the special factors question, ECF 160, at 12, and because of the differences in both the facts and the factors cited in *Hernandez* and *Abbasi* as compared with those here, it is far from clear that the Supreme Court has implicitly abrogated *Dellums*.

Indeed, this Court has repeatedly disagreed with the government when it has argued that actions against protestors should no longer be subject to *Bivens* claims based on general *Bivens* trends at the Supreme Court. *See, e.g., Patterson v. United States*, 999 F. Supp. 2d 300, 303, 308-311, 317 (D.D.C. 2013) (denying motion to dismiss where demonstrator sued U.S. Park Police officers for retaliatory arrest in violation of his First and Fourth Amendment rights); *Hartley v.*

14

*Wilfert*, 918 F. Supp. 2d 45, 50-54 (D.D.C. 2013) (denying motion to dismiss where plaintiff sued Secret Service agents under the First Amendment for attempting to intimidate her out of protesting near the White House); *Bloem v. Unknown Dep't of the Interior Employees*, 920 F. Supp. 2d 154, 156-57, 159-61 (D.D.C. 2013) (recognizing *Bivens* claim could lie for violations of the First, Fourth, and Fifth Amendments where agents took and destroyed plaintiff's protest materials). In each of these cases, this Court refused to find that circuit precedent had been overruled; in none of these cases was this Court reversed.

Because the D.C. Circuit and this Court have repeatedly found that demonstrators' *Bivens* claims for First and Fourth Amendment violations are cognizable, even where protests occurred near the headquarters of a branch of the federal government, the decision to depart from the scope of the *Bivens* remedy as previously understood in this Circuit is one as to which there are substantial grounds for difference of opinion.

**C. Appealing the Dismissal of the *Bivens* Claim Will Materially Advance the Litigation.**

While this factor incorporates many of the same considerations from the first factor, the "materially advance" inquiry also considers the pragmatic aspect of how much time over the life of the case the interlocutory appeal will save. "All the movant need show is that 'reversal would hasten or at least simplify the litigation in some material way, such as by significantly narrowing the issues, conserving judicial resources, or saving the parties from needless expense.'" *Montesano*, 2021 WL 6849086, at *2 (quoting *Molock*, 317 F. Supp. 3d at 6).

As discussed in Part I.C above, the scope of discovery will dramatically change for both Plaintiffs and Defendants depending on whether the Individual Federal Defendants are still in the case. Without them, discovery may be faster in the short term, but having to go back and do discovery all over again if the decision to dismiss is reversed on appeal after this case is fully

litigated in this Court would ultimately lead to a huge delay in the termination of this litigation and an enormous duplication of work for everyone involved. This kind of delay weighs toward granting the interlocutory appeal and removing uncertainty about the ultimate scope of the litigation. *See In re Vitamins Antitrust Litig.*, 2000 WL 33142129, *2 (D.D.C. 2000) (granting certification where a later appellate ruling on which law governed jurisdictional discovery would prompt a massive delay); *Howard v. Office of Chief Admin. Officer of U.S. House of Reps.*, 840 F.Supp.2d 52, 57 (D.D.C. 2012) (granting certification based on possibility that a claim could be reinstated after final judgment, which would force the parties to "undertake another round of discovery, more dispositive motions, and potentially another trial").

**D.  This Court Should Exercise Its Discretion To Allow an Interlocutory Appeal.**

This Court should exercise its discretion to certify for an interlocutory appeal the decision to dismiss the *Bivens* claims.

Ultimately, with the prerequisites for certification met for the reasons given above, the decision to grant an interlocutory appeal is within the district court's discretion. *Terrell v. Mr. Cooper Group, Inc.,* 2021 WL 2778542, at *3 (D.D.C. July 2, 2021). The Supreme Court has said that Congress created § 1292(b) review for "exceptional" cases. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 74 (1996). This is such a case.

At issue here is an event of great national significance as to the scope of free speech rights in the heart of the nation's capital. The constitutional violations committed by Defendants (on the facts as alleged) are so obvious and clearly established that when the threshold *Bivens* question was not at issue—as it was not for the claims against the D.C. officers—the Court denied qualified immunity. *See* ECF 160 at 40. Specifically, the Court held in these circumstances that "the right to be free from government violence for the peaceful exercise of protected speech is so

fundamental to our system of ordered liberty that it is 'beyond debate.'" *Id.* (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018)). And Lafayette Square is "a primary assembly point for First Amendment activity aimed at influencing national policies," "where the government not only tolerates but explicitly permits demonstrations and protests because of its unique location across the street from the White House." *United States v. Doe*, 968 F.2d 86, 88-89 (D.C. Cir. 1992); *accord Quaker Action Group v. Morton*, 516 F.2d 717, 725 (D.C. Cir. 1975) (calling Lafayette Square a "unique situs for the exercise of First Amendment rights"); *Women Strike for Peace v. Morton*, 472 F.2d 1273, 1287 (D.C. Cir. 1972) (opinion of Wright, J.) ("There is an unmistakable symbolic significance in demonstrating close to the White House[.]"). The constitutional limitations at issue here—and, equally important, whether any federal officer must abide by them or is exempt from accountability because of the absence of a *Bivens* action—are of critical importance to the scope of the First Amendment.

Finally, the *Bivens* doctrine is in flux and would benefit from further appellate guidance. The decision whether to apply *Bivens* implicates core rule-of-law principles, including the idea that "[t]he very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury." *Marbury v. Madison*, 5 U.S. 137, 163 (1803). Sitting justices on the Supreme Court have sharply differing views on the doctrine; some have called for discarding *Bivens* entirely, *Hernandez,* 140 S. Ct. at 750 (Thomas, J., concurring), while others see the actions as critical to defend against abuses of power, *Abbasi*, 137 S. Ct. at 1873 (Breyer, J., dissenting). Perhaps Judge Willett of the Fifth Circuit framed the question most powerfully: it is whether the *Bivens* doctrine has shrunk to such an extent as to "allow[] federal officials to operate in something resembling a Constitution-free zone." *Byrd v. Lamb*, 990 F.3d 879, 884 (5th Cir. 2021) (Willett, J., concurring). Here, that "Constitution-free zone" has an

especially problematic location: the "unique" and "primary" public forum for political expression

that is Lafayette Square. This critical issue should be certified for review.

## CONCLUSION

Plaintiffs' motion should be granted. A proposed order is filed herewith.

April 20, 2022                                    Respectfully submitted,

<u>/s/ Scott Michelman</u>

Jon Greenbaum (D.C. Bar No. 489887)       Scott Michelman (D.C. Bar No. 1006945)
Arthur Ago (D.C. Bar No. 463681)          Arthur B. Spitzer (D.C. Bar No. 235960)
David Brody (D.C. Bar No. 1021476)        Michael Perloff (D.C. Bar No. 1601047)
Arusha Gordon (D.C. Bar No. 1035129)      American Civil Liberties Union Foundation
Lawyers' Committee for Civil Rights Under Law    of the District of Columbia
1500 K Street N.W., Suite 900             915 15th Street NW, Second Floor
Washington, D.C. 20005                    Washington, D.C. 20005
(202) 662-8600                            (202) 457-0800
jgreenbaum@lawyerscommittee.org           smichelman@acludc.org

John A. Freedman (D.C. Bar No. 453075)    Kaitlin Banner (D.C. Bar No. 1000436)
David E. Kouba (D.C. Bar No. 483145)      Dennis Corkery (D.C. Bar No. 1016991)
Sonia Tabriz (D.C. Bar No. 1025020)       Jonathan Smith (D.C. Bar No. 396578)
Arnold & Porter Kaye Scholer LLP          Washington Lawyers' Committee for Civil
601 Massachusetts Avenue, N.W.                 Rights and Urban Affairs
Washington, D.C. 20004                    700 14th Street, NW, Suite 400
(202) 942-5000                            Washington, D.C. 20005
John.Freedman@arnoldporter.com            (202) 319-1000
                                          kaitlin_banner@washlaw.org

                                          *Counsel for Plaintiffs*[3]

---

[3] Counsel wish to acknowledge the assistance of paralegal Elaine Stamp and intake specialist Jada Collins in the preparation of this filing.