UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BLACK LIVES MATTER D.C., et al.,

             *Plaintiffs*,

    v.

DONALD J. TRUMP, et al.

             *Defendants*.

Case No. 1:20-cv-01469-DLF

**PLAINTIFFS' MOTION FOR LEAVE TO FILE A FOURTH AMENDED COMPLAINT**

Plaintiffs, pursuant to Federal Rule of Civil Procedure 15(a)(2), move for leave to amend their complaint to add claims against the United States under the Federal Tort Claims Act ("FTCA"), add claims against the federal officer Defendants under District of Columbia common law and the D.C. First Amendment Assemblies Act ("FAAA"), and add further factual information. Attached as Exhibit A is Plaintiffs' proposed Fourth Amended Complaint, which is cited throughout this motion as "Proposed 4AC." Exhibit B shows in redline Plaintiffs' revisions to the Third Amended Complaint. Plaintiffs conferred with defense counsel pursuant to Local Civil Rule 7(m). The existing District of Columbia defendants take no position on this motion. The existing individual-capacity federal Defendants oppose this motion. Undersigned counsel understands from a Department of Justice attorney that the United States, which is no longer a party to this case following the settlement of the claims against the official-capacity government defendants in 2022, ECF 182, will arrange for counsel and respond appropriately when and if served.

## BACKGROUND

On June 1, 2020, peaceful protestors gathered in Lafayette Square across from the White House—the quintessential public forum for constitutionally protected speech—to protest systemic injustices perpetrated by law enforcement in the United States, exemplified by the murder of George Floyd. Proposed 4AC ¶¶ 62-63. As demonstrations sparked across the country, then-President Trump expressed his animus toward protestors who mobilized in support of Black lives and an intent to "dominate" demonstrators who disagreed with him. *Id.* ¶¶ 47-61.

Without provocation, federal officers, at the direction of the Attorney General, launched a coordinated, violent attack on Plaintiffs as they were peacefully exercising their First Amendment rights. *Id.* ¶¶ 78-97. Officers charged at the demonstrators, struck them with batons and shields, and fired tear gas, pepper spray capsules, rubber bullets, and flash bangs into the peacefully gathered crowd, forcing the demonstrators to flee the area. *Id.* As Plaintiffs fled from the square, some encountered officers of the D.C. Metropolitan Police Department, who fired tear gas at them as they attempted to reach safety. *Id.* ¶¶ 98-104. As a result of Defendants' actions, the individual Plaintiffs suffered physical injuries and symptoms related to exposure to chemical irritants, and many became fearful of police violence when exercising their constitutional right to engage in peaceful protest. *Id.* ¶¶ 116-83.

## PROCEDURAL HISTORY

Plaintiffs filed this action three days later, on June 4, 2020, alleging violations of the First and Fourth Amendments and conspiracy to violate civil rights. ECF 1. Five days later, they filed their First Amended Complaint to add class allegations and an additional category of defendant officers based on newly discovered information. ECF 11. The Second Amended Complaint added additional claims and new plaintiffs. ECF 29. The Third Amended Complaint, filed September 3,

2020, identified defendants previously named only as John Does. ECF 50, 52. All Defendants moved to dismiss.

In June 2021, one year after Plaintiffs filed their original complaint, the Court dismissed many of the claims, including Plaintiffs' *Bivens* claims. ECF 159. The parties then entered into settlement negotiations, and proceedings in this Court were stayed for nine months, from July 2021 to April 2022. *See* July 14, 2021 Minute Order; ECF 183. The parties settled claims against the federal defendants sued in their official capacities. ECF 182. Plaintiffs then moved for partial final judgment with respect to the claims against the federal officers sued in their individual capacities; the court granted the motion on May 16, 2022. ECF 185. That same day, Plaintiffs appealed from the Court's dismissal of their *Bivens* claims, ECF 186, 187, and—pending that appeal— proceedings in this Court were again stayed. ECF 185.

The D.C. Circuit affirmed this Court's judgment, issuing its mandate on August 15, 2023. *Buchanan v. Barr*, 71 F.4th 1003 (D.C. Cir. 2023); ECF 189. Plaintiffs now seek to amend their complaint to add FTCA claims that became properly exhausted after they filed the Third Amended Complaint (and while this case was stayed), to plead additional claims under D.C. law, and to elaborate on their factual allegations.

## ARGUMENT

Rule 15(a) provides that "[t]he court should freely give leave [to amend a complaint] when justice so requires." Unless there is "a reason 'such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc.,' then leave should be given." *Des Longchamps v. Allstate Prop. & Cas. Ins. Co.*, 38 F. Supp. 3d 39, 43 (D.D.C. 2014) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "'[T]he

non-movant bears the burden of persuasion that a motion to amend should be denied.'" *Smalls v. Spencer*, No. CV 17-606 (TJK), 2018 WL 1461963, at *1 (D.D.C. Mar. 22, 2018) (quoting *Johnson v. District of Columbia*, No. 13-cv-1445 (JDB), 2015 WL 4396698, at *2 (D.D.C. July 17, 2015)). Amendment is futile "if the proposed claim would not survive a motion to dismiss," *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996), assuming (as on a motion to dismiss) all the allegations to be true and giving plaintiffs the benefit of all reasonable inferences, *Johnson*, 2015 WL 4396698, at *3. At base, if "the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman*, 371 U.S. at 182.

## I.      Justice Requires Granting Leave To Amend for Plaintiffs To Assert Their Newly Exhausted FTCA Claims.

Plaintiffs seek to amend the complaint to add claims for assault and battery against the United States under the FTCA, which incorporates D.C. common law tort standards. *See* 28 U.S.C. § 1346(b)(1) (providing that liability of the United States is determined "in accordance with the law of the place where the act or omission occurred."). Plaintiffs had not yet exhausted their administrative remedies when they filed their Third Amended Complaint, but they did so while proceedings in this case were stayed. Because Plaintiffs were required by the FTCA to exhaust their administrative remedies before bringing their claims to court, justice requires granting leave to amend. Further, amendment is not futile because Plaintiffs have stated valid claims for assault and battery.

Courts have long recognized that justice often requires leave to amend in order to add claims. *See* 6 Wright & Miller, Fed. Practice & Proc. § 1474 (3d ed. 2023). "A motion for leave to amend should not be denied solely because it asserts new causes of action." *Hisler v. Gallaudet Univ.*, 206 F.R.D. 11, 13 (D.D.C. 2002). This is particularly true where a plaintiff must meet

administrative exhaustion requirements before bringing the new claims. *See Valdez-Lopez v. Chertoff*, 656 F.3d 851, 857 (9th Cir. 2011) (noting that plaintiffs would be required to engage in "undue acrobatics" if they were unable to amend their pleadings to add FTCA claims once they had become exhausted); *Martin v. Naval Crim. Investigative Serv.*, 2012 WL 1570840, at *4 (S.D. Cal. May 3, 2012) (granting leave to file additional claims under FTCA that had become exhausted after the original complaint was filed).

The FTCA requires parties who seek to bring claims against the United States for tortious conduct to administratively exhaust their claims before bringing them in court. *See* 28 U.S.C. § 2675(a). The purpose of this requirement is to give federal agencies a chance to settle claims and avert litigation altogether. *See GAF Corp. v. United States*, 818 F.2d 901, 917 (D.C. Cir. 1987). Here, Plaintiffs Sanders, J.N.C., McDonald, Bond, Scallan, Poteet, Foley, and E.X.F. timely submitted claims via Standard Form 95 to the U.S. Park Police, Federal Bureau of Prisons, D.C. National Guard, and U.S. Secret Service between March 22-24, 2021. Proposed 4AC ¶ 41.

To date, no agency has made a final disposition of these claims. *Id.* ¶ 43.

After six months elapsed without a final disposition, Plaintiffs were permitted, but not required, to deem their claims denied and thus exhausted. *See* 28 U.S.C. § 2675(a) ("The failure of an agency to make final disposition of a claim within six months after it is filed shall, *at the option of the claimant any time thereafter*, be deemed a final denial of the claim for purposes of this section." (emphasis added)). The earliest they could have considered their claims denied was in September 2021, which was one year *after* they filed the operative Third Amended Complaint, ECF 52 ("3AC"), and while proceedings in this court were stayed, *see* Sep. 13, 2021 Minute Order. And as noted above, the text of the FTCA makes plain that Plaintiffs were free to afford the agencies more time to respond to the notice of their injuries. *See also Lamb v. Millennium*

*Challenge Corp.*, 573 F. Supp. 3d 346, 362 (D.D.C. 2021) (noting that the FTCA is designed to "give the administrative agency a meaningful opportunity to consider the claim"). Plaintiffs did not unduly delay their claims by allowing the agencies more than the statutory minimum of six months to offer a remedy for the assault and battery federal officers committed against Plaintiffs.

Plaintiffs' claims are timely under the FTCA's statute of limitations. 28 U.S.C. § 2401. Under that provision, a claim is barred in three circumstances: if it is not brought in court within six years, *id.* § 2401(a); if it is not presented in writing to the appropriate federal agency within two years, *id.* § 2401(b); or if an "action" is not "begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented," *id.* Plaintiffs clear all three hurdles: it has been less than six years since the June 1, 2020, attack on the Lafayette Square demonstrations; Plaintiffs properly exhausted their claims, as discussed; and the agencies never sent Plaintiffs notices of final denial.

Independently, Plaintiffs claims are timely also because they relate back to the operative complaint under Rule 15 for the reasons discussed below in Part II.A, and also because the United States was served with process as to each of the prior complaints. *See* Fed. R. Civ. P. 15(c)(2).

Plaintiffs' delay in adding the FTCA claims to this suit is not undue, dilatory, or in bad faith. "The length of litigation cannot, on its own, justify denying leave to amend." *Johnson*, 2015 WL 4396698, at *3. On the contrary: delay alone "without the requisite prejudice" does not justify denial of leave to amend. *Dove v. Wash. Metro. Area Transit Auth.*, 221 F.R.D. 246, 249 (D.D.C. 2004) (citing *Caribbean Broad. Sys., LTD v. Cable Wireless PLC*, 148 F.3d 1080, 1084 (D.C. Cir. 1998)). Whereas a court might deny leave to amend where a plaintiff requests amendment on the eve of trial, *see Atchinson v. District of Columbia*, 73 F.3d 418, 427 (D.C. Cir. 1996), here, by contrast, Defendants and the United States would not be prejudiced by the proposed amendments

because this case has not progressed past the pleading stage. *See, e.g., Johnson*, 2015 WL 4396698, at *3. No Defendant has filed an answer. No discovery has taken place except a limited order to provide the full names of unidentified defendants for whom Plaintiffs had partial names or badge numbers. *See* ECF 56; Oct. 2, 2020 Minute Order. And the United States had earlier notice of and opportunity to respond to Plaintiffs' FTCA claims through the mandatory administrative exhaustion process. Accordingly, no existing or proposed defendant will suffer prejudice from the addition of these claims. "Where the proponent of the amendment establishes that the additional claim would not unduly increase discovery or delay the trial, and when the opponent could not claim surprise . . . the amendment should be allowed." *Djourabchi v. Self*, 240 F.R.D. 5, 13 (D.D.C. 2006) (Lamberth, J.) (cleaned up).

Amendment would not be futile. To state a claim under the FTCA, Plaintiffs must assert tort claims (1) "against the United States," (2) "for money damages," (3) "for injury or loss of property, or personal injury or death," (4) "caused by the negligent or wrongful act or omission of any employee of the [federal] Government," (5) "while acting within the scope of his office or employment," (6) "under circumstances where the United States, if a private person, would be liable to the claimant[s] in accordance with the law of the place where the act or omission occurred." *Brownback v. King*, 141 S. Ct. 740, 746 (2021) (citation omitted); *see* 28 U.S.C. § 1346(b). Elements 1-5 are satisfied: Plaintiffs' claims are (1) against the United States (2) for money damages, (3) for personal injury, and they (4) were caused by Defendants' unlawful use of physical force (5) while acting within the scope of their employment as law enforcement officers. *See* Proposed 4AC ¶¶ 209-18.

For the sixth element, Plaintiffs' claims are governed by D.C. common law. "An assault is an intentional and unlawful attempt or threat, either by words or by acts, to do physical harm to

the victim. A battery is an intentional act that causes a harmful or offensive bodily contact." *Evans-Reid v. District of Columbia*, 930 A.2d 930, 937 (D.C. 2007) (citation and internal quotation marks omitted). Plaintiffs' proposed amended complaint alleges that Defendants' "use of physical force, including but not limited to chemical agents, frightening loud munitions, batons and shields, and a physical charge at Plaintiffs" "were intended to and did unlawfully attempt and threaten physical harm to Plaintiffs," Proposed 4AC ¶ 210, and that these intentional acts caused Plaintiffs "to experience harmful or offensive bodily contacts," *id.* ¶ 215. Plaintiffs' proposed amended complaint amply elaborates, explaining what federal officers did by way of attempted and actual harmful bodily contacts, when and where they did it, and how they injured plaintiffs as a result. *Id.* ¶¶ 78-183.

Not only do plaintiffs clearly satisfy Rule 15, but granting leave to amend also serves judicial efficiency. If leave is denied, Plaintiffs would file a separate action to pursue their now-exhausted FTCA claims, which arise out of the same incident they are already challenging in this case. This would either result in the consolidation of the actions, *see* Fed R. Civ. P. 42, or in two separate factfinders deciding the same issues.

To serve Rule 15's maxim that plaintiffs be afforded an opportunity to test their claims on the merits and to avoid wasting judicial resources on duplicative proceedings, the Court should grant Plaintiffs leave to add their FTCA claims.

## II.    Plaintiffs Should Be Granted Leave To Add Claims Under D.C. Common Law and the D.C. First Amendment Assemblies Act.

Plaintiffs also seek to add claims against the individual federal Defendants—Barr, Adamchik, Seiberling, LoCascio, Jarmuzewski, Hendrickson, Cox, McDonald, Sinacore, Daniels, Feliciano, and Kellenberger—personally for the torts of assault and battery under D.C. common law, and for violations of the D.C. First Amendment Assemblies Act ("FAAA"). Justice requires

granting leave to amend to add these claims: Plaintiffs' claims are timely under Rule 15(c), Plaintiffs have not unduly delayed in bringing them, and amendment is not futile because Congress preserved Plaintiffs' ability to bring these claims via the Westfall Act.

### A. Plaintiffs' Proposed Claims Relate Back to the Operative Complaint.

As a threshold matter, Plaintiffs' common law tort and FAAA claims, which would otherwise fall outside the statute of limitations, are timely here under Rule 15 because they "relate back" to the filing of the operative Third Amended Complaint. Rule 15(c) provides that amendments made after the expiration of the relevant statute of limitations will "relate back" to the date of an earlier pleading for purposes of satisfying the statute of limitations where "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out" in the prior pleading. Fed. R. Civ. P. 15(c)(1)(B). Here, because the operative and proposed complaints "state claims that are tied to a common core of operative facts"—Defendants' June 1, 2020, attack on Plaintiffs as they gathered for a peaceful assembly—"relation back [is] in order." *Mayle v. Felix*, 545 U.S. 644, 664 (2005).[1]

Over three years have passed since Defendants' attack on the peaceful protest in Lafayette Square Park on June 1, 2020. The statutes of limitations for tortious assault and battery are one year. D.C. Code § 12-301(4). The statute of limitations for violations of the FAAA is three years.

---

[1] This Court has analyzed relation back by considering only the operative complaint in some cases and by considering a timely amended complaint that met the requirements for relation back in others. *Compare Halldorson v. Sandi Group*, 934 F. Supp. 2d 147, 157 (D.D.C. 2013) (requiring new claims to relate back to the operative Second Amended Complaint) *with Palmer v. Homecomings Financial LLC*, 677 F.Supp.2d 233, 238-40 (D.D.C. 2010) (analyzing relation back relative to the first timely complaint that provided the requisite common core of operative facts, and which had been subsequently amended). Under either approach, Plaintiffs satisfy Rule 15(c) with their operative Third Amended Complaint, which (1) was filed within the relevant statutes of limitations, (2) sets out the "core of operative facts" their proposed claims rely on, and (3) names the defendants against whom Plaintiffs' D.C. common law and FAAA claims are now asserted.

*See id.* § 12-301(8) (establishing a three-year limitations period for violations "for which a limitation is not otherwise specially prescribed"). Plaintiffs promptly filed suit on June 4, 2020—just three days after the "conduct, transaction, or occurrence" that gave rise to Plaintiffs' claims. Fed. R. Civ. P. 15(c)(1)(B). The first, second, and third amended complaints were all filed less than one year after the events and therefore within all of the relevant statutes of limitations. *See* ECF 11; ECF 29; ECF 52.

The purpose of relation back is to "qualify a statute of limitations." *Mayle*, 545 U.S. at 662. When a party asserts a "new claim . . . based on the same facts as the [earlier] pleading and only changes the legal theory," relation back is typically satisfied. *Id.* at 664 n.7 (citation omitted). Further, claims can relate back "even though the amendment invoke[s] a legal theory not suggested by the [earlier] complaint and relie[s] on facts not originally asserted," *Id.* at 659 (analyzing *Tiller v. Atl. Coast Line R. Co.*, 323 U.S. 574 (1945)). "Ultimately, '[s]o long as the [earlier] and amended [complaints] state claims that are tied to a common core of operative facts, relation back will be in order.'" *Kubicki ex. rel. Kubicki v. Medtronic, Inc.*, 293 F. Supp. 3d 129, 159 (D.D.C. 2018) (K.B. Jackson, J.) (quoting *Mayle*, 545 U.S. at 664; first and third alterations by *Kubicki*). By contrast, new claims do not relate back where they "assert a new ground for relief supported by facts that differ in both time and type from those the [earlier] pleading set forth." *Mayle*, 545 U.S. at 650.

Here, Plaintiffs fall within the heartland of the relation-back doctrine, as they assert "new claim[s] . . . based on the same facts as the [earlier] pleading" while "only chang[ing] the legal theory," and because, more generally, their new claims are "tied to a common core of operative facts." *Mayle*, 545 U.S. at 664 & n.7. Indeed, Plaintiffs propose "precisely the sort of amendment contemplated by Rule 15(c), which provides for relation back where the amended pleading asserts a claim arising out of the conduct set forth in the [prior] pleading." *Hartley v. Dombrowski*, 744 F.

Supp. 2d 328, 335-36 (D.D.C. 2010). Just like their earlier claims, Plaintiffs' common law tort and FAAA claims arise out of the June 1, 2020, attack by Defendants against peaceful protestors demonstrating in and around Lafayette Square. *Compare* 3AC ¶¶ 51-116 (detailed allegations about the attack on its context), *with* Proposed 4AC ¶¶ 220, 226, 234, 245 (explaining how each of the four D.C.-law claims that Plaintiffs propose to add arose out of the attack on Plaintiffs while they were demonstrating at Lafayette Square on June 1, 2020). "The fact that an amendment changes the legal theory on which the action initially was brought is of no consequence if the factual situation upon which the action depends remains the same and has been brought to the defendant's attention by the [earlier] pleading." *Dave v. District of Columbia*, 811 F. Supp. 2d 111, 117 (D.D.C. 2011) (citation omitted); *accord Jones v. Ottenberg's Bakers, Inc.*, 999 F. Supp. 2d 185, 190 (D.D.C. 2013) (emphasizing that a "plaintiff may substitute one legal argument for another within the same lawsuit"); *Thompson v. Jasas Corp.*, 212 F. Supp. 2d. 21, 26-27 (D.D.C. 2002) (claim for intentional infliction of emotional distress related back to claims under Title VII because claims were based on the same conduct).

In *Dave*, a former government employee previously alleged discrimination and retaliation in violation of Title VII, then sought to add claims under § 1983 and the Due Process Clause of the Fifth Amendment. 811 F. Supp. 2d at 114-15. The Court found the additional claims related back because they "merely assert[ed] that the same alleged discriminatory and retaliatory conduct described in the original complaint also gave rise to due process [and § 1983] claims." *Id.* at 117. Similarly, Plaintiffs here merely allege that Defendants' conduct violating Plaintiffs' First and Fourth Amendment rights also gave rise to claims for assault, battery, and violations of the FAAA.

It is of no moment that the prior claims have been dismissed; what matters is that "the factual underpinnings of [Plaintiffs'] new claims are the same" as their previous claims. *Brink v.*

*XE Holding, LLC*, 2023 WL 5846674, at *5 (D.D.C. Sept. 11, 2023) (holding the plaintiff's individual tort claims related back to class claims that were previously dismissed). Here, Plaintiffs' operative and proposed new complaints both set forth that Defendants "attacked the civil rights activists with no [] warning, forcefully ejected them from Lafayette Square, and pursued them for several blocks." 3AC ¶¶ 90, 94; Proposed 4AC ¶ 93. Both complaints allege that Defendant Barr "personally issued the order that resulted in the unlawful actions complained of in this lawsuit," 3AC ¶ 17; Proposed 4AC ¶ 16. Both assert that "Defendants had no legitimate basis to destroy the peaceable gathering" of demonstrators in Lafayette Square Park on June 1, 2020. 3AC ¶ 4; Proposed 4AC ¶ 4. Because all of Plaintiffs' claims stem from the same discrete incident—*i.e.*, a common core of operative facts—their proposed claims relate back to the operative complaint.

Courts applying the relation-back doctrine also consider whether the earlier complaint provided Defendants sufficient notice "of the basis for liability [Plaintiffs] would later advance in the amended complaint." *Meijer, Inc. v. Biovail Corp.*, 533 F.3d 857, 866 (D.C. Cir. 2008). In analyzing notice, this Court has taken a practical approach, recognizing that Defendants may be on notice "even if the [earlier] complaint[] did not allege the specific facts of the claims." *Hartley*, 744 F. Supp. 2d at 335. In *Hartley*, for instance, this Court held that defendants who were sued for medical malpractice related to a botched operation were sufficiently on notice of the plaintiff's proposed informed consent claims because "'[r]easonably prudent' defendants would expect that plaintiffs might assert other theories of recovery" for the injuries claimed in the prior complaint. *Id.* "Indeed, when a suit is filed, defendant knows that the whole transaction described in it will be fully sifted, by amendment if need be, and that the form of the action or the relief prayed or the law relied on will not be confined to their first statement." *Id.* (cleaned up).

Here, Plaintiffs' operative complaint alleged facts establishing the torts of assault and battery. In pleading their claims, Plaintiffs alleged not only that Defendants violated their First and Fourth Amendment rights, but also specifically that "[o]fficers fired flash-bang shells, tear gas, pepper spray, smoke canisters, pepper balls, rubber bullets and/or other projectiles and other chemical irritants into the crowd," and "hit, punched, shoved, and otherwise assaulted the demonstrators with their fists, feet, batons, and shields." 3AC ¶¶ 88, 90. These are intentional and unlawful acts that attempted and threatened Plaintiffs with physical harm, and when the blows and rubber bullets landed and the gas caused Plaintiffs to experience burning sensations and to struggle to breathe, 3AC ¶¶ 141-44, 160-64, harmful bodily contact occurred. The Defendants were thus on notice of the facts underlying the assault and battery claims that Plaintiffs now bring.

Plaintiffs' operative complaint also clearly alleged viewpoint discrimination, which violates both the First Amendment (one of the bases for the claims in the prior complaint) and the FAAA (one of the bases for the claims Plaintiffs now propose to add). Viewpoint discrimination is "discriminat[ion] against speech based on the ideas or opinions it conveys." *Iancu v. Brunetti*, 139 S. Ct. 2294, 2299 (2019). "It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys," and thus "[d]iscrimination against speech because of its message is presumed to be unconstitutional." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995). The FAAA codifies the First Amendment's prohibition against viewpoint discrimination. *See* D.C. Code § 5-331.04(c) ("No time, place, or manner restriction regarding a First Amendment assembly shall be based on the content of the beliefs expressed or anticipated to be expressed during the assembly . . . .").

To determine whether government action is viewpoint discriminatory, courts consider, *inter alia*, (1) whether defendants have indicated that speakers with different messages would be

treated differently, *see, e.g.*, *Mahoney v. Babbitt*, 105 F.3d 1452, 1456 (D.C. Cir. 1997), and (2) whether defendants did in fact treat speakers with different messages differently, *see, e.g.*, *Frederick Douglass Found., Inc. v. District of Columbia*, 82 F.4th 1122, 1142 (D.C. Cir. 2023).

Plaintiffs claimed in the operative complaint that Defendants violated the First Amendment by "suppress[ing] . . . the viewpoint [the Lafayette Square demonstration] represented" and that "Defendants' actions were based on and/or taken in retaliation for the viewpoint being expressed by the demonstrators," 3AC ¶¶ 221, 223. More specifically, Plaintiffs alleged that leading up to the attack, "President Trump repeatedly advocated the use of force against Black demonstrators and civil rights activists who were protesting in D.C. and around the nation," *id.* ¶ 53; that President Trump invoked a racist slogan used since 1967 "to advocate for police brutality and discriminatory practices targeting African Americans," *id.* ¶ 54; and that, by contrast, President Trump had "routinely been sympathetic to protesters whose views align with his own," *id.* ¶ 62, including tweeting to "encourage[] his supporters to engage in a counter demonstration," to Plaintiffs' demonstration while disparaging those gathered in support of George Floyd, *id.* ¶ 64 (quoting a tweet reading, in part, "Tonight, I understand, is MAGA NIGHT AT THE WHITE HOUSE???"). These facts sufficiently put Defendants on notice that Plaintiffs could assert claims under the FAAA's viewpoint-discrimination prohibition, D.C. Code § 5-331.04(c), which codifies the First Amendment's viewpoint-discrimination prohibition into D.C. law. Plaintiffs' assertion of new legal theories does not undermine notice where the key facts were alleged in the earlier pleading. *See Hartley*, 744 F. Supp. 2d at 335 (noting that courts will "require [a defendant] to anticipate *all* theories of recovery and prepare its defense accordingly" (emphasis added)).

That Plaintiffs' proposed Fourth Amended Complaint also includes additional facts to support these added claims does not undermine relation-back or Defendants' notice of liability.

*See Mayle*, 545 U.S. at 659, 664 (discussing *Tiller*, 323 U.S. 574). As *Mayle* explained, the plaintiff in *Tiller* had originally filed suit under the Federal Employers' Liability Act for the wrongful death of her husband who was hit by a train car; the plaintiff later amended the complaint to add a claim under the Federal Boiler Inspection Act because the train lacked a rear light. *Id.* at 659. Even though the relevant facts for this claim were not included in the earlier complaint, it related back because there was "but one episode-in-suit" between the two claims—the impact that caused her husband's death. *Id.* at 660.

Here, as in *Tiller*, Plaintiffs' additional facts elaborate on the same "episode-in-suit" as in the earlier pleading. *See, e.g.*, Proposed 4AC ¶¶ 51, 56, 58 (detailing specific instances further evidencing the same type of viewpoint discrimination previously alleged); *id.* ¶ 220, 226 (setting out elements of assault and battery claims by reference to facts of the attack that were asserted in the operative complaint as well as in the Proposed 4AC, including that Defendants used batons and chemical agents against Plaintiffs, as alleged at 3AC, ¶ 3, 90); *id.* ¶¶ 157, 182-83 (each elaborating on the extent of a Plaintiff's injury); *id.* ¶ 187 (describing Defendant Barr's shifting, contradictory explanations for the attack because they bolster Plaintiffs' viewpoint discrimination claim by suggesting that the official explanations were shams to cover up unconstitutional suppression of a disfavored viewpoint).

In sum, Plaintiffs seek to add new legal theories and elaborate on their factual allegations while continuing to seek redress for "but one episode-in-suit": Defendants' brutal attack on a peaceful assembly of demonstrators, carried out because those demonstrators were exercising their right to protest racial injustice and police violence rather than expressing a message more to the Administration's liking. Plaintiffs' proposed amendments therefore relate back to their operative complaint.

### B. There Is No Delay, Prejudice, Bad Faith, or Repeated Failure To Cure Deficiencies.

Plaintiffs seek to add D.C. tort and FAAA claims following the dismissal of their analogous *Bivens* claims. "Rule 15(a) exists in order to give litigants the opportunity to fix mistakes or omissions . . . rather than allow technical flaws to penetrate a case before a court may resolve it on the merits." *Dove*, 221 F.R.D. at 248. "Leave to amend is particularly appropriate following dismissal of a complaint for failure to state a claim." *Caribbean Broad. Sys.*, 148 F.3d at 1084 (cleaned up). Because the purpose of Rule 15 is to facilitate a decision on the merits, where as here, "a plaintiff has imperfectly stated what may be an arguable claim . . . leave to amend is ordinarily in order." *Alley v. Resol. Tr. Corp.*, 984 F.2d 1201, 1207 (D.C. Cir. 1993). Plaintiffs seek to amend their complaint in the exact circumstances contemplated by the rule: the Court determined that they initially failed to state a claim, but by amending their complaint, they can have their claims heard on the merits.

Plaintiffs bring their proposed claims in good faith, with no dilatory motive, and without undue delay. Although this case was originally filed in June 2020, it has been stayed almost continuously since July 2021 due to settlement negotiations and Plaintiffs' appeal. *See Lima v. Deutsche Bank Nat'l Tr. Co.*, 2018 WL 11366942, at *2 (D. Haw. June 14, 2018) (considering length of stay, including appellate proceedings, in declining to find undue delay); *U.S. ex rel. Kirk v. Schindler Elevator Corp.*, 926 F. Supp. 2d 510, 517-18 (S.D.N.Y. 2013) (same). And it was only through the D.C. Circuit appeal, just recently resolved, that Plaintiffs learned both that their original *Bivens* claims could not proceed and that D.C. law claims for the same conduct were potentially available. On the infirmity of the *Bivens* claims, the key precedent on which the appeals court relied in affirming the dismissal of these claims was *Egbert v. Boule*, 142 S. Ct. 1793 (2022), which the Supreme Court decided two years *after* Plaintiffs filed the original complaint. *See*

*Buchanan*, 71 F.4th at 1009-10. Regarding the D.C. law claims Plaintiffs seek to assert now in lieu of the failed *Bivens* claims, Circuit Judge Walker, in his concurrence in this case, was (to the best of Plaintiffs' knowledge) the first judge anywhere in the country to suggest the viability of the theory on which Plaintiffs now rely: that the Westfall Act, 28 U.S.C. § 2679(b)(2)(A), preserved state law claims to remedy constitutional violations, even where *Bivens* is no longer a viable vehicle. *Buchanan*, 71 F.4th at 1012-18 (Walker, J., concurring). In light of Judge Walker's persuasive analysis (discussed further below), Plaintiffs now seek to add claims to redress the same injury for which they originally pursued their *Bivens* claims. And they do so at the first opportunity presented since the appellate court affirmed the dismissal of their *Bivens* claims. Although Plaintiffs filed prior amended complaints, this is the first time they seek amendment to cure this deficiency via this recently identified theory.

Finally, Defendants will not be prejudiced by the proposed amendment because, as noted above, this case has not proceeded beyond the pleading stage. Defendants will have a full opportunity to file an answer, conduct discovery, and mount a defense.

### C. Plaintiffs' Proposed Amendments Are Not Futile Because the Westfall Act Preserves Claims Brought for a Violation of the Constitution.

On the merits, Judge Walker's concurrence in the D.C. Circuit decision in this case persuasively illuminated why the Westfall Act permits claims such as the ones Plaintiffs now seek to add. The Westfall Act generally bars claims for money damages against federal employees acting within the scope of their employment. 28 U.S.C. § 2679(b)(1). Plaintiffs argued (unsuccessfully) to the court of appeals that the Act's exception at 28 U.S.C. § 2679(b)(2)(A) for civil actions "brought for a violation of the Constitution of the United States," preserved *Bivens* remedies that existed at the time Congress passed the Westfall Act in 1988. Judge Walker, while concurring in the panel's rejection of Plaintiffs' view, persuasively explained how § 2679(b)(2)(A)

preserved a different category of claims: common law claims that were "[f]or most of our history" available to "those injured by federal officers' unconstitutional conduct." *Buchanan*, 71 F.4th at 1012 (Walker, J. concurring).

      **1.**  **The Westfall Act's Carveout Allows State Law Claims Brought for a Violation of the Constitution.**

Judge Walker is correct. The Westfall Act preserves actions against federal employees "brought for a violation of the Constitution." 28 U.S.C. § 2679(b)(2)(A). The text contains no qualification or limitation providing that it applies only to federal causes of action or excludes common law claims from its ambit, even as other exceptions and limitations appear throughout the FTCA. *See* 28 U.S.C § 2680(h) (allowing certain intentional tort claims only when they arise from the "acts or omissions of investigative or law enforcement officers"); *see generally id.* § 2680 (prescribing other circumstances when the government is immune from suit). Courts "do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply, and our reluctance is even greater when Congress has shown elsewhere in the same statute that it knows how to make such a requirement manifest." *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 341 (2005).

The historical vehicle for seeking relief for a constitutional violation by a federal officer was state law: "The Framers saw state common-law suits as an important check on federal misconduct." *Buchanan*, 71 F.4th at 1012 (Walker, J. concurring). So, the Westfall Act, by exempting the category of actions "brought for a violation of the Constitution," affirmatively preserved state-law claims brought for the purpose of remedying a violation of the Constitution. *See id.* at 1016. Where state law provides a right of action, plaintiffs do not need to rely on the implication of one under *Bivens*. *See id.* at 1012-13. To hold otherwise would assume that Congress, in virtually every circumstance, eliminated *all* causes of action "brought for a violation

of the Constitution of the United States." Such a reading renders § 2679(b)(2)(A) all but meaningless and would pose "serious constitutional question[s]," *Webster v. Doe*, 486 U.S. 592, 603 (1988).

"From the ratification of the Bill of Rights until 1971 [with *Bivens*], the Court did not create implied private action[s] for damages against federal officers alleged to have violated a citizen's constitutional rights," yet such plaintiffs were not without remedy because "[s]uits to recover such damages were generally brought under state tort law." *Hernandez v. Mesa*, 140 S. Ct. 735, 751 (2020) (Thomas, J., concurring). In these suits for damages, federal officials were beholden to state law, while "federal law supplied the defense if the conduct complained of was done pursuant to a federally imposed duty." *Wheeldin v. Wheeler*, 373 U.S. 647, 652 (1963) (cleaned up). Where that defense failed because the conduct was unconstitutional, damages were due.

For instance, in *Little v. Barreme*, the Supreme Court held that a U.S. Navy Captain was liable for trespass where an order to seize a ship, given by President Adams himself, was "invalid" and thus the seizure was "a plain trespass." 6 U.S. (2 Cranch) 170, 176-79 (1804). In *Mitchell v. Harmony*, the Supreme Court affirmed trespass liability for a military officer who had seized property, under orders. 54 U.S. 115 (1851). Indeed, in *Bivens* itself, the Solicitor General argued that "there was no need to create a new federal remedy for Fourth Amendment violations, because 'a body of state law' already provided 'substantial recovery.'" *Buchanan*, 71 F.4th at 1017 n.6 (Walker, J., concurring) (citation omitted). The government's premise was correct, as the *Bivens* court recognized, because litigants could bring claims under state law (though the Court ultimately found the redress available to be wanting). *See* Thomas Koenig & Christopher D. Moore, *Of State Remedies and Federal Rights* 16-17 (May 29, 2023), https://ssrn.com/abstract=4462807. In fact, before *Bivens*, the state common law tort of trespass "provided virtually the only civil remedy

against Fourth Amendment violations perpetrated by federal officials." Akhil Reed Amar, *Using State Law to Protect Fed. Constitutional Rights: Some Questions & Answers About Converse-1983*, 64 U. Colo. L. Rev. 159, 160 (1993). Even though "the ultimate issue before the court concerned the federal Constitution," the "cause of action was supplied by state law." *Buchanan*, 71 F.4th at 1014 (Walker, J., concurring) (cleaned up). And after *Bivens*, the court implicitly acknowledged state law causes of action by not finding them to have been unavailable (only insufficient). *See* Carlos M. Vázquez & Stephen I. Vladeck, *State Law, the Westfall Act, and the Nature of the Bivens Question*, 161 U. Pa. L. Rev. 509, 549-50 (2013) (analyzing *Carlson v. Green*, 446 U.S. 14 (1980)).

Because the Westfall Act expressly preserves suits "brought for a violation of the Constitution," § 2679(b)(2)(A), common law tort claims remain available to obtain damages against a federal employee where the plaintiff seeks a remedy for conduct violating her rights under the Constitution. In such a case, the "purpose" of the suit "is to remedy a constitutional violation," and accordingly, as a matter of plain meaning, the action falls within the category of remedies Congress explicitly preserved. *See Buchanan*, 71 F.4th at 1016 (Walker, J., concurring). It is especially clear that a state or local cause of action is preserved where the suit is brought under a state or local law that provides a cause of action for constitutional violations themselves, such that "a constitutional violation is part of the plaintiff's cause of action." *Id.*

A reading of the Westfall Act contrary to Judge Walker's would pose several problems. First, it is a basic principle of statutory interpretation that Congress does not "hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001). It is therefore quite unlikely that Congress would have silently abrogated an essential check on federal power inherited from the English common law tradition and relied upon since the Founding—indeed, one that

"profoundly influenced the drafting of the drafting of the Fourth Amendment" itself. *Buchanan*, 71 F.4th at 1015 (Walker, J., concurring). Congress would be expected to use "exceptionally clear language" to abrogate state-law tort suits; not only does no such language appear, but the text of the statute dictates the opposite result, as the Westfall Act instead contains text "tailored to *preserve*" such remedies. *Id.* at 1017 (Walker, J., concurring). It is doubtful that Congress implicitly eradicated the primary vehicle for civil actions brought for a violation of the Constitution while enacting text reflecting the diametrically opposite intent.

Second, the implications of reading the Westfall Act to eradicate these suits would render § 2679(b)(2)(A) practically meaningless. As interpreted by the Supreme Court and the D.C. Circuit, the effect of that clause, *with respect to Bivens itself*, is to preserve only claims arising under the specific circumstances in the three Supreme Court cases recognizing *Bivens* actions. *See Hernandez*, 140 S. Ct. at 748 n.9; *Buchanan*, 71 F.4th at 1008 ("As Supreme Court precedent makes clear, any new *Bivens* claim must still 'satisf[y] the "analytic framework" prescribed by the last four decades of intervening case law." (quoting *Egbert*, 142 S. Ct. at 1809, in turn quoting *Abbasi*, 582 U.S. at 139); *see id.* at 1012 (Wilkins, J., concurring) ("[T]he Supreme Court's 'new context' test renders irrelevant all pre-1988 lower court decisions recognizing *Bivens* claims[.]"). Absent Judge Walker's reading of § 2679(b)(2)(A) as also preserving *common law* claims to vindicate constitutional rights, preserving *Bivens* claims in the three specific sets of circumstances addressed by the Supreme Court in the years 1971-80 is all the clause would do. *See Byrd v. Lamb*, 990 F.3d 879, 883 (5th Cir. 2021) (Willett, J., specially concurring) ("Virtually everything beyond the specific facts of the *Bivens* trilogy is a new context . . . . And new context = no *Bivens* claim." (footnotes and internal quotation marks omitted)), *cert. denied*, 142 S. Ct. 2850 (2022); Stephen I. Vladeck, *The Disingenuous Demise and Death of* Bivens, 2020 Cato Sup. Ct. Rev. 263, 273 (2020)

(summarizing that since 1980, "the Court gradually—but consistently—scaled back *Bivens* until almost nothing was left"). That reading of § 2679(b)(2)(A) is thoroughly implausible. It would arbitrarily differentiate the three *Bivens* contexts that happened to reach the Supreme Court during the first decade of the *Bivens* doctrine from all other constitutional violations. Plaintiffs are aware of no instance in which Congress enacted statutory text prescribing a rule for a broad category of claims, and yet was deemed to have limited that rule to a tiny fraction of claims in that category without saying so.

Third, Judge Walker's reading better accords not only with common sense but also with the Supreme Court's pronouncements on the subject. While the Supreme Court has taken a narrow view of the scope of what § 2679(b)(2)(A) preserved *with respect to Bivens*, *see Hernandez*, 140 S. Ct. at 748 n.9, "that does not foreclose the possibility that the Act could *also* let some state tort suits proceed." *Buchanan*, 71 F.4th at 1016 (Walker, J., concurring). Indeed, to the extent that the Supreme Court has discussed the availability of common law tort claims specifically, it has indicated that they continue to be available. *See Wilkie v. Robbins*, 551 U.S. 537, 551 (2007) (stating that there was "no question" that the tort victim could sue federal employees for trespass and declining to recognize a *Bivens* cause of action).

A fourth and final concern militating in favor of Judge Walker's reading of the Westfall Act is that rejecting that reading would raise "serious constitutional question[s]" by leaving most plaintiffs without "any judicial forum for a colorable constitutional claim." *Webster*, 486 U.S. at 603. That is so because of how dramatically the *Bivens* remedy has been contracted. The present *Bivens* analysis contains two steps: (1) determine "whether the case presents a new *Bivens* context," and, if so, (2) determine "whether there are special factors" that suggest "there is *even a single reason* to pause before applying *Bivens* in a new context." *Egbert*, 142 S. Ct. at 1803

(emphasis added; citation and internal quotation marks omitted). Both "new context" and "special factors" criteria are "exceedingly broad." *Buchanan*, 71 F.4th at 1008. For example, a new context might arise where the only difference from prior Supreme Court cases is "the rank of the officers involved." *Ziglar v. Abbasi*, 582 U.S. 120, 140 (2017). As for special factors, a *Bivens* remedy is unavailable "[w]here there is even the *potential* that 'judicial intrusion' into a given field might be 'harmful' or 'inappropriate.'" *Buchanan*, 71 F.4th at 1009 (quoting *Egbert*, 142 S. Ct. at 1805; emphasis added). If almost any difference from the original three Supreme Court *Bivens* cases qualifies a plaintiff's claim as a new context, and there will be special factors precluding a *Bivens* remedy "in most every case," *Egbert*, 142 S. Ct. at 1803, the upshot is that *Bivens* claims are functionally limited to cases presenting the exact facts of the Supreme Court's first three *Bivens* cases.

The possibility that all other completed[2] constitutional violations by federal officers are beyond the reach of a civil remedy is potentially *itself* unconstitutional. *See generally Webster*, 486 U.S. at 603;  *accord Byrd*, 990 F.3d at 883-84 (Willett, J., specially concurring) (warning that it would raise "serious constitutional concerns" to "slam[ ] shut" the "courthouse doors" on "victims of unconstitutional conduct"); William Baude, *Bivens Liability and Its Alternatives*, Summary, Judgment (Feb. 27, 2020) ("It does seem perverse to think that Congress can eliminate state law damages for constitutional violations without either Congress or the courts providing an alternative."), https://perma.cc/BL77-3JSU. Such a result would also be deeply troubling for the state of our fundamental freedoms. As Judge Walker observed, "If federal officers had been above

---

[2] *Ongoing* or threatened *future* constitutional violations could be remedied by injunctive relief, but as to past violations, "it is damages or nothing." *Davis v. Passman*, 442 U.S. 228, 245 (1979) (quoting *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 410 (1971) (Harlan, J., concurring)).

the law at the Founding, the new rights won at Yorktown and guaranteed by the Bill of Rights would have been significantly declawed." *Buchanan*, 71 F.4th at 1015 (Walker, J., concurring). These concerns about constitutional unaccountability might yet "be premature," *id.*—but only if Judge Walker's reading of the Westfall Act is correct.

Considering the constitutionally problematic implications of a narrow reading, the history of remedying abuses of power by federal officials through the common law, and the text of § 2679(b)(2)(A) itself, the Westfall Act is best read to preserve claims that fit into the parameters described by its words: "a civil action against an employee of the Government[] which is brought for a violation of the Constitution of the United States."

### 2. Plaintiffs' D.C. Tort and FAAA Claims Are "Brought for a Violation of the Constitution."

Plaintiffs aver that Defendants' tortious conduct violated the First Amendment by violently suppressing their speech "in the absence of a clear and present danger, . . . based on its content and/or viewpoint . . . in a manner not narrowly tailored," Proposed 4AC ¶¶ at 221 (assault), 227 (battery); and that this tortious conduct violated the Fourth Amendment "by subjecting them to unreasonable seizure," *id.* ¶¶ 222 (assault), 228 (battery). They therefore assert civil tort claims "brought for a violation of the Constitution." § 2679(b)(2)(A). Indeed, under D.C. law, assault requires "'an intentional *and unlawful* attempt or threat, either by words or by acts, to do physical harm to the victim.'" *Evans-Reid*, 930 A.2d at 937 (quoting *Etheredge v. District of Columbia*, 635 A.2d 908, 916 (D.C. 1993); emphasis added). It is the unconstitutionality of the federal officers' conduct here that satisfies the element of unlawfulness.

Likewise, Plaintiffs' FAAA claims are "brought for a violation of the Constitution." § 2679(b)(2). Plaintiffs aver that Defendants violated D.C. Code § 5-331.04(c), which provides a cause of action either under the FAAA itself or, alternatively, through negligence per se, for

viewpoint discrimination in violation of the First Amendment. *See supra* Part II.A (discussing §

5-331.04(c)'s codification of the prohibition against viewpoint discrimination); *Iancu*, 139 S. Ct.

at 2299 (proclaiming that it is "a core postulate of free speech law" that "[t]he government may

not discriminate against speech based on the ideas or opinions it conveys"). Plaintiffs plead facts

plausibly showing that the attack on Plaintiffs during their demonstration was "based on the

content of the beliefs expressed." D.C. Code § 5-331.04(c); *see supra* Part II.A (specifying facts

setting out viewpoint discrimination contained in the operative Third Amended Complaint);

Proposed 4AC ¶¶ 238, 248 (alleging that Plaintiffs' assembly "would not have been suppressed

had it been expressing a pro-[Trump] Administration message."). They therefore state a claim for

relief.

Judge Walker recognized that if the Westfall Act preserves state-law suits—and, as

explained above, it does—then Plaintiffs "in this case may . . . seek a remedy." *Buchanan*, 71 F.4th

at 1017 (Walker, J., concurring). Accordingly, Plaintiffs' proposed amendments would not be

futile, and they "ought to be afforded an opportunity to test [their] claim[s] on the merits." *Foman*,

371 U.S. at 182.

## CONCLUSION

The Court should grant Plaintiffs leave to file their Fourth Amended Complaint. A

proposed order is attached.


Dated:  November 13, 2023                    Respectfully submitted,

                                             /s/ Scott Michelman
                                             Scott Michelman (D.C. Bar No. 1006945)
                                             Arthur B. Spitzer (D.C. Bar No. 235960)
                                             Michael Perloff (D.C. Bar No. 1601047)
                                             Ausjia Perlow (D.C. Bar No. 90005259)

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
OF THE DISTRICT OF COLUMBIA
915 15th Street NW, Second Floor
Washington, D.C. 20005
(202) 457-0800
smichelman@acludc.org

Kaitlin Banner (D.C. Bar No. 1000436)
Dennis Corkery (D.C. Bar No. 1016991)
Jonathan Smith (D.C. Bar No. 396578)
WASHINGTON LAWYERS'
COMMITTEE FOR CIVIL RIGHTS AND
URBAN AFFAIRS
700 14th Street, NW, Suite 400
Washington, D.C. 20005
Phone: (202) 319-1000
Fax: (202) 319-1010
kaitlin_banner@washlaw.org

Jon Greenbaum (D.C. Bar No. 489887)
Arthur Ago (D.C. Bar No. 463681)
David Brody (D.C. Bar No. 1021476)
Arusha Gordon (D.C. Bar No. 1035129)
LAWYERS' COMMITTEE FOR CIVIL RIGHTS
UNDER LAW
1500 K Street N.W., Suite 900
Washington, D.C. 20005
(202) 662-8600
jgreenbaum@lawyerscommittee.org

John A. Freedman (D.C. Bar No. 453075)
David E. Kouba (D.C. Bar No. 483145)
Sonia Tabriz (D.C. Bar No. 1025020)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, N.W.
Washington, D.C. 20004
(202) 942-5000
John.Freedman@arnoldporter.com

*Counsel for Plaintiffs*[3]

---

[3] Counsel wish to acknowledge the assistance of paralegal Elaine Stamp in the preparation of this brief.