UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

BLACK LIVES MATTER D.C., *et al.*,

*Plaintiffs,*

v.

JOSEPH R. BIDEN, JR., *et al.*,[1]

*Defendants.*

Civil Action No. 1:20-cv-1469 (DLF)

---

### FORMER INDIVIDUAL FEDERAL DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO AMEND THE COMPLAINT

Former Defendants William Barr, Mark Adamchik, Jonathan Daniels, Sean Cox, Luis Feliciano, Jeffery Hendrickson, Nicholas Jarmuzewski, Bryan McDonald, Cara Seiberling, and Lawrence Sinacore, as sued in their individual capacities (the "Former Individual Federal Defendants"), by and through their undersigned counsel, respectfully submit this memorandum in opposition to Plaintiffs' motion to amend the complaint pursuant to Federal Rule of Civil Procedure 15. *See* ECF No. 191 ("Mot. to Amend"). Plaintiffs' motion seeks to amend the complaint to assert a claim under the D.C. First Amendment Assemblies Act (D.C. Code § 5-331.04(c)), and tort claims for assault, battery, and negligence per se under D.C. law against the Former Individual Federal Defendants in their individual capacity. The Court should deny the motion with respect to these individual capacity claims against the Former Individual Federal Defendants because Plaintiffs cannot amend their complaint post-judgment under the

---

[1] As noted in the Former Individual Federal Defendants' prior filings in this case, at the time the official capacity claims were still pending, President Biden, Secretary of Defense Austin, and Attorney General Garland in their official capacities were automatically substituted for their predecessors in office as the official capacity federal defendants under Fed. R. Civ. P. 25(d).

circumstances of this case, and they have neither filed nor made the showing needed to sustain a proper motion to vacate the judgment. The Court should also exercise its discretion to deny the motion under Rule 15(a) because Plaintiffs unduly delayed their attempt to amend the complaint and allowing the motion would undermine judicial economy.

## FACTS AND PROCEDURAL HISTORY

On June 4, 2020, Plaintiffs commenced this litigation by filing their original complaint. *See* ECF No. 1 ("Compl."). Plaintiffs amended their complaint as a matter of course on June 9, 2020, *see* ECF No. 11 ("FAC"), and they amended the complaint twice thereafter, via unopposed motions, on August 5, 2020, and September 3, 2020, respectively. *See* ECF No. 29 ("SAC"); ECF No. 52 ("TAC"). The third amended complaint, which is the operative complaint, asserted First Amendment free speech and Fourth Amendment unreasonable seizure and force claims under *Bivens*[2] against the Former Individual Federal Defendants. *See* TAC ¶¶ 220-230. The complaint also asserted claims under 42 U.S.C. §§ 1985(3) and 1986 against the Former Individual Federal Defendants for allegedly joining, or failing to intervene in, a conspiracy to violate Plaintiffs' First and Fourth Amendment rights and target the speech of "Black people and their supporters." *See* TAC ¶¶ 241-262. The complaint alleged that, in the midst of civil unrest and as part of an operation to facilitate a presidential appearance in the square, the Former Individual Federal Defendants issued a dispersal order and had line-level officers charge, use chemical irritants, or use baton strikes to clear the square. *See* TAC ¶¶ 4, 17, 65, 67, 79-83, 88, 90, 92, 95, 98, 150, 203.

On October 1, 2020, Barr moved to dismiss the third amended complaint on the ground that Plaintiffs lacked a *Bivens* remedy and could not overcome his qualified immunity. *See* ECF

---

[2] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

No. 76 ("Barr MTD"). In doing so, Barr noted that Plaintiffs could try to pursue state law tort claims as an alternative remedy to their *Bivens* claims, though those claims would be subject to applicable defenses. *See* Barr MTD at 28. Plaintiffs opposed the motion, *see* ECF No. 98 ("Opp. Barr MTD"), but did not seek to add the state law tort claims referenced in Barr's motion. When Adamchik and the line-level federal defendants filed two separate motions to dismiss similarly noting that Plaintiffs could attempt to assert state law tort claims, *see* ECF No. 97 ("Adamchik MTD") at 28; ECF No. 146 ("Line MTD") at 30, Plaintiffs similarly opposed the motions, without requesting to add state law tort claims to their complaint. *See* ECF No. 122 ("Opp. Adamchik MTD"); ECF No. 150 ("Opp. Line MTD"). In their opposition to Adamchik's motion filed on December 14, 2020, however, Plaintiffs requested that, if their claims were dismissed, they should be allowed to amend the complaint to include allegations based on former U.S. Park Police Chief Monahan's testimony to Congress on July 28, 2020. *See* Opp. Adamchik MTD at 38-39, 38 n.12.

On June 21, 2021, this Court issued an order and opinion dismissing all claims against the Former Individual Federal Defendants. *See* ECF No. 160 ("Dismissal Op."). The Court dismissed the *Bivens* claims for lack of a *Bivens* remedy under the analysis established by *Ziglar v. Abbasi*, 582 U.S. 120 (2017) and its progeny, and the Court dismissed the §§ 1985 and 1986 claims for failure to allege facts establishing an actionable conspiracy under those statutes. *See* Dismissal Op. at 8-16, 23-27. The Court also dismissed some of the injunctive relief claims against the United States, dismissed the §§ 1985 and 1986 claims against the D.C. and Arlington County defendants, and dismissed some of the § 1983 claims against the D.C. and Arlington County defendants. *See* *id*. at 16-23, 30-49. As a result of this decision, as of June 21, 2021, the Former Individual Federal Defendants were dismissed from the case because no live claims remained against them.

From June 21, 2021, to July 14, 2021, Plaintiffs did not move to amend the complaint. Instead, on July 14, 2021, Plaintiffs and the remaining defendants—i.e., the United States, the D.C. defendants, and the Arlington County defendants—filed a joint motion for a stay to enable the remaining parties to engage in settlement negotiations. *See* ECF No. 164 ("Jt. Stay Motion"), ¶¶ 3-5. Plaintiffs also stated that they were preparing a motion to seek a partial final judgment under Federal Rule of Civil Procedure 54(b) or an interlocutory appeal under 28 U.S.C. § 1292(b), and they were "considering whether to move for leave to amend their complaint to try to restore certain claims in light of the Court's June 21 ruling." *Id*. ¶ 2. The Court granted the joint stay motion, *see* Minute Order Dated 10/14/2021, and thereafter, the remaining parties, though not the Former Individual Federal Defendants, moved for a series of stays for settlement negotiations. *See* ECF No. 167; 171; 173; 176; 178; 180. The Court granted the requested stays, so that the case was stayed between July 14, 2021, and April 13, 2022. On April 13, 2022, Plaintiffs and the United States announced the settlement of the remaining claims against the United States by filing the settlement agreement and a stipulation of dismissal. *See* ECF No. 182; ECF No. 183. At that point, the United States was also out of the case.

On April 20, 2022, Plaintiffs moved for a partial final judgment pursuant to Rule 54(b) in favor of the Former Individual Federal Defendants on the *Bivens* claims. *See* ECF No. 184 ("Pls. Mot. For Final J."). The Former Individual Federal Defendants consented to the motion on the condition that there was a stay of all remaining proceedings (against the local government defendants) pending the resolution of the proposed appeal. *Id*. at 1. Plaintiffs posited that the Court should enter partial final judgment in favor of the Former Individual Federal Defendants because doing so "w[ould] enable the parties to proceed to discovery knowing definitively which issues and which defendants are in the case, thereby avoiding the possibility of conducting two separate

but overlapping rounds of discovery and two separate but overlapping jury trials." *Id*. Plaintiffs noted that the entry of partial final judgment was appropriate because the *Bivens* claims were separable from the remaining claims, and because the Bivens claims "pertain[ed] to parties who were entirely dismissed from the case, and . . . were separate from the remaining claims." *Id*. at 7; *see id*. at 7-9. Plaintiffs added, "[t]his case presents the paradigmatic example of finality: The case is finished with respect to the *Bivens* claims and the *Bivens* defendants, unless the dismissal of these claims is reversed on appeal." *Id*. at 8. Plaintiffs further contended that, because the partial final judgment would enable immediate appellate review, the partial final judgment would "avoid future duplicative litigation," streamline discovery, and avoid discovery disputes that might arise depending on whether an appellate reversal resulted in the Former Individual Federal Defendants becoming parties again. *Id*. at 9-11.

On May 16, 2022, the Court granted Plaintiffs' motion for partial final judgment. *See* ECF No. 185 ("Ord. Granting Final J."). The Court also ordered this case stayed pending the appeal. *See id*. at 4. The Court determined that the three criteria for a partial final judgment were met: 1) the *Bivens* claims were distinct claims for relief; 2) the claims were completely and finally resolved by the dismissal order; and 3) there was no just reason to delay entry of judgment. *Id*. at 2-3. The Court explained that:

> Here, there will not be piecemeal appeals of claims that are not separable because the plaintiffs do not bring *Bivens* claims against the non-appealing defendants. For the same reason, the D.C. Circuit will not be faced with deciding the same issues more than once. Under the equities analysis, delayed review would cause duplicative discovery if the D.C. Circuit disagrees with this Court on the dismissal of the *Bivens* claims against the individual-capacity federal defendants.

*Id*. at 3.

On the same day, this Court entered a partial final judgment, ordering that "final judgment of dismissal is entered in favor of [the Former Individual Federal Defendants] against the plaintiffs

as to Counts 1 and 2 of the plaintiffs' Third Amended Complaint, Dkt. 52." ECF No. 186 ("Judgment") at 1 (capitalization omitted).

Plaintiffs appealed the dismissal of the *Bivens* claims to the D.C. Circuit. *See* ECF No. 187. On June 23, 2023, the D.C. Circuit affirmed the judgment of dismissal, concluding that Plaintiffs lacked a *Bivens* remedy. *See Buchanan v. Barr*, 71 F.4th 1003, 1006-10 (D.C. Cir. 2023). The D.C. Circuit also rejected Plaintiffs' contention that the Westfall Act's exception for "civil action[s] against an employee of the Government . . . which [are] brought for a violation of the Constitution of the United States" preserved the scope of *Bivens* claims available at the time of the statute's enactment. *See Buchanan*, 71 F.4th at 1007-08. Judge Wilkins joined the majority opinion in full and wrote a concurrence further explaining his reasons for doing so. *See id*. at 1010-12 (Wilkins, J., concurring). Judge Walker issued a concurrence noting his agreement with the majority's conclusion that Plaintiffs' claims "do not fit any recognized cause of action under the Constitution." *Id*. at 1012 (Walker, J., concurring). Judge Walker also stated that the Westfall Act exception cited by Plaintiffs "*might* preserve state tort suits 'brought' to remedy constitutional injuries." *Id*. at 1012-13 (quoting 28 U.S.C. § 2679(b)(2)(A)) (emphasis added). Judge Walker suggested that it was possible that "a suit *might* count as brought for a violation of the Constitution' if its *purpose* is to remedy a constitutional violation," *id*. at 1016 (first emphasis added, second in original), but acknowledged that "until now, the Westfall Act's constitutional-tort exception has been read more narrowly than that" by the Supreme Court because "[t]he Supreme Court has said the exception 'simply left *Bivens* where it found it,' ensuring that *Bivens* actions weren't precluded by the Westfall Act." *Id*. (quoting *Hernandez v. Mesa*, 140 S. Ct. 735, 748 n.9 (2020)). Concluding with the observations that he was "not certain whether the Westfall Act is best read to allow state tort suits for constitutional injuries" and that Plaintiffs might be able to seek a remedy "*[i]f the*

Westfall Act does not preclude state tort suits against federal officers for constitutional violations," Judge Walker joined in affirming the dismissal of the *Bivens* claims against the Former Individual Federal Defendants. *Id.* at 1017-18 (emphasis in original). On August 15, 2023, the D.C. Circuit issued its mandate, *see* ECF No. 189 ("D.C. Cir. Mandate"), effectively ending the stay pending appeal.

On November 13, 2023, Plaintiffs filed a motion to amend the complaint. *See* Mot. to Amend. The attached proposed fourth amended complaint asserts a D.C. First Amendment Assemblies Act claim and common-law assault, battery, and negligence per se claims against the Former Individual Federal Defendants. *See* ECF No. 191-1 ("PFAC") ¶¶ 219-252. The proposed amended complaint also asserts Federal Tort Claims Act claims against the United States. *See id.* ¶¶ 209-218. The complaint states that the D.C. common-law and statutory claims are intended to remedy alleged violations of Plaintiffs' First and Fourth Amendment rights and are therefore exempt under the Westfall Act pursuant to 28 U.S.C. § 2679(b)(2)(A). *See id.* ¶¶ 223, 229, 240, 251. For the most part, the proposed amended complaint contains generalized allegations about the activities of "law enforcement officers" or "defendants" on June 1, 2020, without specifically alleging any conduct by the Former Individual Federal Defendants. *See, e.g., id.* ¶¶ 8, 64-68, 77, 87, 89.

As to the Former Individual Federal Defendants, the proposed amended complaint asserts the following incidents and conduct: "Barr directed the Federal Bureau of Prisons and other federal law enforcement agencies to send 'riot teams' and other specialized agents to control the protests in Washington, D.C.," *id.* ¶ 55; Barr entered the square and pointed north in the direction of St. John's Church, *id.* ¶¶ 74-75; Barr "personally ordered" that the square be cleared, *id.* ¶ 76; Adamchik "ordered the law enforcement officers present at Lafayette Square to attack the

peaceably assembled protesters," *id*. ¶ 78; McDonald stood in a double line of officers, *id*. ¶ 77; Jarmuzewski, Hendrickson, and McDonald "rushed forward and attacked" unidentified protestors, *id*. ¶ 80; Seiberling was among horseback officers pushing unidentified protesters down H Street, *id*. ¶ 89; "Sinacore and a group of other Park Police officers rushed" an unidentified protestor "from behind and slammed him against the wall of a building," *id*. ¶ 90; Feliciano "joined in the initial charge" and pushed his weight behind his shield and "bashed" an unidentified protestor in his path, *id*, ¶ 91; Cox was part of a line of officers advancing on H Street who "charged" after unidentified protestors, *id*. ¶ 92; Feliciano bumped into an unidentified protestor, causing him to stumble, *id*. ¶ 94; "Kellenberger beat Australian news correspondent Amelia Brace in the back with his baton as she was fleeing with her cameraman," *id*. ¶ 96; and Daniels shoved an unidentified journalist, *id*. ¶ 97. This complaint further alleges that, at a congressional hearing on July 28, 2020, a national guardsman testified that the operation to clear the square on June 1 was disproportionate to the situation presented by non-threatening protestors, and Park Police Chief Monahan testified about Adamchik's role in the operation. *See id*. ¶¶ 79, 85. In short, while framing their causes of action as tort counts under D.C. law rather than *Bivens* counts, Plaintiffs still seek to assert claims against the same specified individuals for the same injuries stemming from the same events and to remedy alleged constitutional violations.

Indeed, in their motion to amend, Plaintiffs recognize that their newly proposed causes of action arise from the same essential facts as the causes of action on which judgment was previously entered against them, though they changed legal theories. *See* Mot. to Amend at 10-11. Plaintiffs acknowledge that their proposed new causes of action against the Former Individual Federal Defendants are time-barred because the applicable limitations periods for the assault, battery, Assemblies Act, and negligence per se claims have expired. *See id*. at 9-10. But Plaintiffs maintain

that the Court should permit the amended complaint to relate back to the time of the original June 2020 complaint under Rule15(c)(1)(B) because these new causes of action arise from the same occurrences as their dismissed *Bivens* and statutory counts. *See id.*[3]

Plaintiffs' motion to amend should be denied for two reasons. First, because this Court entered partial final judgment on constitutional claims rooted in the same facts as the newly proposed common-law and D.C. statutory claims brought to remedy the same constitutional violations, the final judgment operates to bar Plaintiffs' proposed amendment, and Plaintiffs have failed to file the requisite motion to vacate the judgment or make the showing needed to sustain such a motion. Second, the Court should exercise its discretion to deny the motion to amend under Rule 15(a) because Plaintiffs deliberately employed a wait-and-see strategy to unduly delay the progress of this litigation, and their current motion, which proposes to re-enlist parties who have long been dismissed from the case, would undermine judicial economy, vitiate the Former Individual Federal Defendants' legitimate interests in repose, and waste the parties' and the Court's resources.

## ARGUMENT

I.  **Plaintiffs' motion to amend is procedurally improper and fails to address the correct standard.**

Plaintiffs' motion to amend rests on the flawed premise that only Rule 15 governs their motion to file an amended complaint.  That is incorrect. "[O]nce a final judgment has been entered, a court cannot permit an amendment [under Rule 15] unless the plaintiff first satisfies Rule 59(e) [or Rule 60's] more stringent standard[s] for setting aside that judgment." *Ciralsky v. C.I.A.*, 355

---

[3] The Former Individual Federal Defendants do not raise the statute of limitations as a separate ground for denial of the motion to amend, but reserve the right to move to dismiss the complaint on all available grounds, including statute of limitations, in the event that leave to amend is granted.

F.3d 661, 673 (D.C. Cir. 2004) (citing *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996)) (cleaned up). Plaintiffs, despite seeking and obtaining a final judgment on their *Bivens* claim, have not sought to amend this final judgment under Rule 60. They were required to do so because their proposed causes of action arise from the same "aggregate of operative facts" that has already been subject to a final judgment—the *Bivens* claim. *See Steele v. United States*, No. 1:14-CV-1523-RCL, 2023 WL 6215790, at *9 (D.D.C. Sept. 25, 2023) (citation omitted). That set of facts, regardless of the "'multiple remedies'" it may support, only "'states a single claim for relief'" under Rule 54(b). *Id.* (quoting *Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 744 n.4 (1976)). As such, the final judgment on the *Bivens* claim necessarily precludes Plaintiffs' attempt to bring new causes of action based on the *Bivens* claim solely via Rule 15.

> A.  **Plaintiffs cannot add the new causes of action against the *Bivens* Defendants by solely relying on Rule 15**.

On June 21, 2021, the Court granted the Former Individual Federal Defendants' motions to dismiss with prejudice. Ord. Granting Final J., ECF No. 160. Plaintiffs did not wait until after the remaining counts were resolved to appeal the decision. Instead, they made the tactical decision to move for entry of a final judgment on the *Bivens* claim pursuant to Rule 54(b) so they could seek an immediate appeal. Pls.' Mot. for Final J., ECF No. 184. In requesting entry of final judgment, Plaintiffs represented that the "case is finished with respect to the *Bivens* claims and the *Bivens* defendants, unless the dismissal of these claims is reversed on appeal." Pls.' Mot. for Final J. at 7. Thus, according to Plaintiffs, the "case present[ed] the paradigmatic example of finality." *Id.* Consistent with Plaintiffs' representation that the "case was finished . . . with the *Bivens* defendants," Pls.' Mot. for Final J. at 7, the Court held that the *Bivens* claims "were definitively and completely resolved" and entered final judgment, Ord. Granting Final J. at 2.

The Court's entry of final judgment on the *Bivens* claim "under Rule 54(b) trigger[ed] . . . all of the direct consequences of any final judgment." *Johnson v. Orr*, 897 F.2d 128, 131 (3d Cir. 1990); *see* 10 Moore's Federal Practice – Civil § 54.26 ("A final judgment certified and entered under the authority of Rule 54(b) is a judgment for all purposes."). It therefore had significant procedural consequences. No longer could Plaintiffs rely on Rule 15 alone to bring new causes of action based on the same underlying facts. *See Lightfoot v. Dist. of Columbia*, 555 F. Supp. 2d 61, 66 (D.D.C. 2008) ("Once a final judgment has been entered, a court cannot permit amendment of the complaint under Rule 15(a)[.]") (citations omitted). Rather, Plaintiffs needed to first satisfy "the strict standards for altering final judgments in Rules 59(e) [or] 60(b)" by filing a motion under one of those rules. *City of Dover v. United States Env't Prot. Agency*, 40 F. Supp. 3d 1, 4 (D.D.C. 2013); *see Ciralsky*, 355 F.3d at 673.

This two-step procedural process is not only "well settled in the D.C. Circuit," but also "in virtually every circuit to have considered the question." *City of Dover*, 40 F. Supp. 3d at 4; *see* 6 Wright & Miller, Fed. Prac. & Proc. Civ. § 1489 (3d ed.) ("[O]nce a judgment is entered the filing of an amendment [under Rule 15] cannot be allowed until the judgment is set aside or vacated under Rule 59 or Rule 60."); *Ahmed v. Dragovich*, 297 F.3d 201, 207-08 (3d Cir. 2002) ("[T]he liberality of [Rule 15] is no longer applicable once judgment has been entered. At that stage, it is Rules 59 and 60 that govern the opening of final judgments."); *Vielma v. Eureka Co.*, 218 F.3d 458, 468 (5th Cir. 2000) ("Post-judgment amendment to a complaint can only occur once the judgment itself is vacated under Fed. R. Civ. P. 59 or 60.").

Plaintiffs made no attempt to meet the first step in this process by filing a motion pursuant to Rule 59 or 60. Doing so now would be untimely. Rule 60(b)(1)-(3) gives Plaintiff a one-year deadline that they are now past. Moreover, Plaintiffs have offered no reason to reopen the judgment

under Rule 60's remaining provisions. Plaintiffs stand in an even worse position with respect to

Rule 59. They are well past the 28 day limit set forth in subsection (e) and cannot point to an

intervening change of controlling law, the discovery of new evidence, or a clear error or manifest

injustice that must be corrected. *See Page v. Comey*, No. 20-cv-3460, 2023 WL 244350, at *2

(D.D.C. Jan. 18, 2023) (citing *Banister v. Davis*, 140 S. Ct. 1698, 1703 (2020); *Fox v. Am. Airlines,

Inc.*, 389 F.3d 1291, 1296 (D.C. Cir. 2004)). Accordingly, Plaintiffs' motion for leave to amend

under Rule 15 as to the Former Individual Federal Defendants should be denied.

The underlying rationale for first requiring a post-judgment motion accords with well-

established finality principles. In *Tool Box, Inc. v. Ogden City Corp.*, 419 F.3d 1084 (10th Cir.

2005) the plaintiff attempted to amend its First Amendment claim to bring a new theory of liability

after the Circuit affirmed the dismissal. *Id*. at 1086. However, the court refused to permit

amendment under Rule 15 alone. *Id*. Attempting to do so without first filing a Rule 60 motion

"'employed [Rule 15] in a way that is contrary to the philosophy favoring finality of judgments

and the expeditious termination of litigation.'" *Id*. at 1087 (quoting 6 Wright & Miller, § 1489);

*see City of Dover*, 40 F. Supp. 3d at 4 (same). This was especially true where "the moving party

had an opportunity to seek the amendment before entry of judgment but waited until after judgment

before requesting leave." *Id*. at 1088. In *Pipefitters Loc. 636 Ins. Fund v. Blue Cross & Blue Shield

of Michigan*, 418 F. App'x 430 (6th Cir. 2011) the Sixth Circuit identified a related concern when

a plaintiff chooses to appeal the dismissal of its case rather than seeking to amend its complaint.

*Id*. at 434-35. The plaintiff could not simply amend the claim on remand via Rule 15 because this

would "reduc[e] the ruling in [the appeal decision] to an advisory opinion from the Court informing

[the plaintiff] of the deficiencies of the complaint[.]" *Id*. at 435 (citations omitted). The plaintiff

would then have "an opportunity to cure those deficiencies," despite having "no right to such an entitlement." *Id*.

Plaintiffs' motion to amend also runs counter to core finality principles that underlie the requirement of a post-judgment motion. Even though they sought and obtained a final judgment on the *Bivens* claims, Plaintiffs now seek to treat the judgment on that discrete set of facts as, in effect, an interlocutory decision subject to revision now that Plaintiffs have identified an alternative recovery theory. *See* Mot. to Amend at 10 (stating that the new counts are "based on the same facts as the earlier pleading while only changing the legal theory") (citation omitted). Doing so runs "contrary to the philosophy favoring finality of judgments." *Tool Box*, 419 F.3d at 1087. And in this case, Plaintiffs' approach is particularly lacking in justification because Plaintiffs, on their own initiative, urged the Court to convert the *Bivens* dismissal into a final judgment on their word that "this case was finished . . . with the *Bivens* defendants[.]" Pls.' Mot. for Final J. at 7. The Court should not endorse Plaintiffs' effort to "circumvent the strict standards for altering a final judgment[.]" *City of Dover*, 40 F. Supp. 3d at 4.

Indeed, Plaintiffs admit they were aware of their assault and battery counts at least as early as March of 2021, *see* Mot. to Amend at 5, but likely were aware much earlier, *see* Barr MTD at 28; *infra* at 21-22. Yet, nonetheless, Plaintiffs chose not to add those counts before filing their Rule 54(b) motion in April 2022. Instead, they made a tactical decision to seek final judgment on that same set of facts and try their luck in the D.C. Circuit. *See Tool Box, Inc*, 419 F.3d at 1088 ("Courts have refused to allow a post-judgment amendment when, as here, the moving party had an opportunity to seek the amendment before entry of judgment but waited until after judgment before requesting leave.").

Plaintiffs have treated this Court's dismissal of the *Bivens* claims—affirmed by the D.C. Circuit—as, in effect, an interlocutory decision under Rule 54(b) that "may be revised at any time *before* the entry of a judgment." rather than an "entry of a final judgment," which is what they requested and obtained. Fed. R. Civ. 54(b) (emphasis added). This improperly "reduce[s] the ruling in [the appeal decision] to an advisory opinion" that instructs Plaintiffs how to bring a supposedly better claim based on the same allegations. *Pipefitters Loc. 636 Ins. Fund*, 418 F. App'x at 435. Plaintiffs have "no right to such an entitlement." *Id*. Final judgments are, in fact, final because the judgment definitively "ends the litigation" on the claim for good. *See Cunningham v. Hamilton Cnty., Ohio*, 527 U.S. 198, 204 (1999) (A final judgment "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.") (citation omitted).

**B.    Plaintiffs proposed counts arise from the same claim as the *Bivens* counts and therefore are subject to the *Bivens* claim final judgment.**

Plaintiffs seek to bring four new causes of action against the Former Individual Federal Defendants—assault, battery, negligence per se, and violation of the D.C. FAAA. They argue that the Court should allow them to add those new counts because they are "based on the same facts as the earlier pleading while only changing the legal theory." Mot. to Amend at 10 (citation omitted); *see id.* at 11 ("[T]he factual underpinnings of Plaintiffs' new claims are the same as their previous claims.") (citation omitted). Plaintiffs fail to recognize, however, that the proposed causes of action arise out of the same allegations that supported the *Bivens* counts, and are therefore subject to the preclusive effect of the final judgment on the *Bivens* counts.

The final judgment that this Court entered on Plaintiffs' *Bivens* causes of action barred not only those counts, but also any other counts that arose from the same facts, regardless of whether they are advanced under different legal theories. This follows from baseline principles of claim preclusion and from Rule 54(b), which allows the district courts to enter final judgment on a

14

"claim." The word "'claim' in Rule 54(b) refers to a set of facts giving rise to legal rights in the claimant, not to legal theories of recovery based upon those facts." *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.*, No. CV 11-1623 (RC), 2015 WL 13680780, at *3 (D.D.C. Apr. 2, 2015) (citation omitted) (collecting cases); *see Steele*, 2023 WL 6215790, at *9 (A claim is an "aggregate of operative facts" that may support multiple legal theories.) (citation omitted). "[D]ifferent legal theories," regardless of their number, "do not multiply the number of claims for relief." *N.A.A.C.P. v. Am. Fam. Mut. Ins. Co.*, 978 F.2d 287, 292 (7th Cir. 1992) ("One set of facts producing one injury creates one claim for relief, no matter how many laws the deeds violate."). Thus, a "'complaint asserting only one legal right, even if seeking multiple remedies for the alleged violation of that right, states a single claim for relief.'" *Steele*, 2023 WL 6215790, at *9 (quoting *Liberty Mut. Ins. Co.*, 424 U.S. at 744 n. 4).

Plaintiffs' proposed counts and the *Bivens* counts are brought against the same defendants, for the same conduct, arising out of the same event, and seek damages for the same alleged constitutional injuries. *Compare* TAC ¶ 228 (alleging "the use of physical force, including but not limited to chemical agents, frightening loud munitions, batons and shields, and a physical charge at Plaintiffs") *with* PFAC ¶ 220 (same). As a result, the underlying claim for relief alleged against the Former Individual Federal Defendants in the proposed amendment is the same "single claim for relief" that supported the *Bivens* counts. *Liberty Mut. Ins. Co.*, 424 U.S. at 744 n. 4. "[O]nly changing the legal theory" on this single claim, Mot. to Amend at 10, as Plaintiffs' concede they have done, "do[es] not multiply the number of claims for relief," *N.A.A.C.P.*, 978 F.2d at 292. Plaintiffs still have one claim against the *Bivens* defendants, which is already subject to a final judgment, and therefore, already enjoying the repose attending a final judgment. *See supra* at 10-13; *see also Ramirez-Zayas v. Puerto Rico*, 225 F.R.D. 396, 398 (D.P.R. 2005) ("In the instant

case, Plaintiffs sought and were granted leave to appeal this Court's partial judgment pursuant to Rule 54(b), [which the First Circuit dismissed]. Therefore, said partial judgment became final for purposes of a Rule 60(b) motion.")

The D.C. Circuit's "rule of thumb" for evaluating whether to enter a final judgment pursuant to Rule 54(b) also defines a single claim as one arising out of the same discrete set of facts, regardless of whether it may give rise to recovery under multiple legal theories. *Attias v. CareFirst, Inc.*, 969 F.3d 412, 417 (D.C. Cir. 2020). Claims will "'not qualify as 'separate' claims within the meaning of Rule 54(b)'" if the "'alleged claims are so closely related that they would fall afoul of the rule against splitting claims[.]'" *Id.* (quoting *Tolson v. United States*, 732 F.2d 998, 1002 (D.C. Cir. 1984)). "Put another way, if claim preclusion would bar the uncertified claims if they were brought separately after judgment on the certified claims, they are not separate claims under Rule 54(b).". *Apprio, Inc. v. Zaccari*, No. CV 18-2180 (JDB), 2021 WL 5799380, at *3 (D.D.C. Dec. 7, 2021). In *Apprio*, the court denied Rule 54(b) certification for this reason, finding that the dismissed count and remaining count concerned "the same relationship, the same software, and the same core dispute regarding ownership." *Id.* at *4. Claim preclusion, therefore, would have prevented the plaintiff from pursuing the theories in separate suits because the theories arose from the same transaction. *Id*; *see also Abdelhady v. George Washington Univ.*, No. 1:22-CV-01334 (TNM), 2023 WL 2162061, at *2 (D.D.C. Feb. 22, 2023).

Here, the proposed counts "are so closely related [to the *Bivens* claim] that they would fall afoul of the rule against splitting claims" if Plaintiffs tried to bring them in separate suits. *Attias*, 969 F.3d at 417. As such, the proposed counts do "not qualify as 'separate' claims within the meaning of Rule 54(b)," *id.*, and are therefore subject to the final judgment on the *Bivens* claim. Plaintiffs' invitation to treat the new counts as separable claims disregards their previous position.

They embraced the D.C. Circuit's formulation of claim as a set of discrete facts in their Rule 54(b) motion. *See* Mot. for Final J. at 8 (arguing that the *Bivens* counts are "legally and *factually* separable from the remaining claims") (emphasis added). Now they make an about-face and disclaim this formulation. Plaintiffs cannot have it both ways.

The Court should not reward this fractured pleading. Plaintiffs' Rule 54(b) motion would not have survived a claim-preclusion analysis if they had added the new counts before seeking entry of final judgment on the *Bivens* claims. Plaintiffs managed to avoid this result only by holding back their new causes of action until after their Rule 54(b) motion. That strategy undermines the judicial efficiency and separability considerations at the heart of the Rule 54(b) analysis. *See Abdelhady*, 2023 WL 2162061, at *2. Conversely, recognizing that the final judgment on the *Bivens* claim forecloses the proposed counts faithfully applies both the D.C. Circuit and Rule 54(b)'s conception of claim as a set of discrete facts. Plaintiffs' attempt to bring new causes of action solely via Rule 15 fails.

### C.   Plaintiffs lack authority for their position that dismissal of the *Bivens* claim is irrelevant.

Plaintiffs do not address the above argument. They simply assert that "[i]t is of no moment that the prior claims have been dismissed," Pls.' Mot. to Amend at 11, and cite to *Brink v. XE Holding, LLC,* No. CV 11-1733 (EGS/ZMF), 2023 WL 5846674 (D.D.C. Sept. 11, 2023). If anything, the *Brink* litigation reinforces the Former Individual Federal Defendants' argument. In *Brink*, the plaintiffs brought a class action suit alleging unpaid benefits from military contractors, and seeking recovery under eight counts. *Brink v. Cont'l Ins. Co.*, 787 F.3d 1120, 1122 (D.C. Cir. 2015). After the court dismissed the complaint with prejudice, the plaintiffs filed Rule 59(e) and Rule 15 motions to vacate the judgment and amend the complaint to fix a deficiency with the ADA count. *Id*. at 1128. The court denied the motion. *Id*.

On appeal, the D.C. Circuit affirmed dismissal of the counts pertaining to unpaid benefits, holding that the "class-wide tort claims are barred by the exclusive statutory scheme set forth in the Base Act and Longshore Act." *Id.* at 1125. But it also held that the allegations encompassed sets of facts, separate and distinct from class-wide claims, which supported unalleged common law causes of action. For example, a breach of contract claim arose "*independently* of an entitlement to benefits under the Longshore Act," because the claim was "based on a separate agreement to make payments . . . not encompassed in this class-action complaint." *Id.* at 1126 (emphasis added). Finally, the D.C. Circuit vacated the denial of the motion to amend. *Id.* at 1128 (citation omitted). It reasoned that the district court had "complete[ly] fail[ed] to provide reasons for refusing to grant leave to amend." *Id.* at 1129 (citation omitted). On remand, the district court granted a plaintiff's motion to amend and added a breach of contract claim on this basis, reasoning that the "previous litigation eliminated only the class claims[.]" *Brink*, 2023 WL 5846674 at *5 (discussing rationale for granting motion to amend); *see* Minute Order, March 13, 2017 (granting motion to amend).

As an initial matter, the procedural posture in this case is fundamentally different than the *Brink* litigation. The plaintiffs in *Brink* sought to amend their complaint to add common law claims *after* their case was over and *before* they filed an appeal. And they did so the right way—filing Rule 59 and 15 motions together. Here, Plaintiffs did the opposite. They obtained a Rule 54(b) final judgment *while* the lawsuit was ongoing, filed an appeal, lost the appeal, and then sought to amend the complaint only *after* the appeal was resolved. And they never filed the appropriate post-judgment motion with their Rule 15 motion. The difference in the remand posture also underscores another procedural distinction. In *Brink* the D.C. Circuit specifically vacated the order denying the

motion to amend thereby explicitly giving the plaintiffs the right to refile the Rule 15 motion. Here, unlike in *Brink*, the D.C. Circuit provided no such right because Plaintiffs lost their appeal.

There is also a substantive distinction regarding the concept of a claim. The D.C. Circuit held that a plaintiff could bring a breach of contract claim because it was "based on a separate agreement to make payments" and therefore arose "independently" of the Longshore Act class-wide tort claims. *Brink*, 787 F.3d at 1126. Here, there is nothing analogous to the "separate agreement" in *Brink* that would support a separate claim. Plaintiffs admit to "only changing the legal theory," Pls.' Mot. to Amend at 10, rather than identifying a separate set of facts that "arise independently" of the *Bivens* claim, *Brink*, 787 F.3d at 1126. Thus, the D.C. Circuit's opinion in *Brink* reinforces the D.C. Circuit's conception of a distinct claim arising from a distinct and discrete set of facts. The district court's rationale for permitting amendment in *Brink* comports with this conclusion. It reasoned that the plaintiff could add the breach of contract claim because the initial complaint had also alleged facts that would have supported a breach of contract claim. *Brink*, 2023 WL 5846674 at *5. These facts, as the D.C. Circuit pointed out, were distinct from the allegations underlying Long Shore Act claim. Accordingly, comparison to *Brink*, if anything, exposes the errors in Plaintiffs' reasoning.

## II.      **The Court should deny the motion in its discretion under Rule 15**

Plaintiffs' failure to move to vacate the judgment suffices as a basis to deny their motion to amend. But even if Plaintiffs could proceed under Rule 15, their motion to amend should be denied as a matter of discretion based on their unexplained delay in pursuing amendment and their attempt to engage in piecemeal litigation of the Former Individual Federal Defendants' liability.

Under Rule 15, where the defendant does not consent to allow the plaintiff to amend his or her complaint after the filing of the plaintiff's one amendment as a matter of course, the plaintiff

must move the Court for leave to amend. *See* Fed. R. Civ. P. 15(a)(2). "The decision to grant or deny leave to amend is within the sound discretion of the trial court, however, it is an abuse of discretion to deny leave without a sufficient reason." *Becker v. Dist. of Columbia*, 258 F.R.D. 182, 184 (D.D.C. 2009). Although Rule 15 provides that "[t]he court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), and places the burden of persuasion on the amendment's opponent, *see Dove v. Wash. Metro. Area Transit Auth*., 221 F.R.D. 246, 247 (D.D.C. 2004), the Court has discretion to deny leave to amend based on factors "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Where the plaintiff has unduly delayed in seeking the amendment, the Court may deny the amendment based on that delay, *see Mowrer v. United States Dep't of Transp*., 14 F.4th 723, 732-33 (D.C. Cir. 2021), especially where it is coupled with one or more other factors including, for example, the addition of a new theory of liability, potential prejudice, dilatory conduct, or bad faith. *See Atchison v. Dist. of Columbia*, 73 F.3d 418, 426 (D.C. Cir. 1996); *see also Elkins v. Dist. of Columbia*, 690 F.3d 554, 565 (D.C. Cir. 2012). "As such, the inquiry into undue delay includes consideration of the court's interests in judicial economy and finality, as well as a focus on the movant's reasons for not amending sooner." *Mwani v. Al Qaeda*, 600 F. Supp. 3d 36, 51 (D.D.C. 2022) (internal quotation marks, citation, and punctuation omitted). And "[a] motion to amend may be denied as dilatory or unduly delayed where a plaintiff was aware of the facts giving rise to the cause of action before filing the complaint that she now wishes to amend." *LaPrade v. Abramson*, No. CIV.A.97-10, 2006 U.S. Dist. LEXIS 86431, at *11 (D.D.C. Nov. 29, 2006) (citing *Yager v. Carey*, 910 F. Supp. 704, 731-32 (D.D.C. 1995)); *see also Onyewuchi v. Gonzalez*, 267

F.R.D. 417, 420 (D.D.C. 2010) ("Leave to amend is properly denied when the plaintiff was aware of the information underlying the proposed amendment long before moving for leave to amend the complaint.").

### A. Plaintiffs unduly delayed their motion to amend without sufficient excuse.

Here, Plaintiffs' motion for leave to amend the complaint should be denied because they have unduly delayed the filing of their motion and thereby have needlessly delayed the litigation. Indeed, because Plaintiffs admit they knew the alleged facts giving rise to their causes of action long before moving for their current proposed amendments, they have no legitimate excuse for the delay, which warrants denial of their motion.

Plaintiffs acknowledge that their current proposed complaint borrows its core factual allegations from the third amended complaint filed in September 2020, *see* Mot. to Amend at 14-15, and hence, since at least that time, they possessed all the factual information they needed to move to amend the complaint to assert their current causes of action. In reality, Plaintiffs had all the requisite supposed factual information even earlier, by around July 2020. Specifically, Plaintiffs have been aware of the vast majority of the alleged facts underlying their claims since the time of the commencement of this suit in June 2020. *Compare* Compl. ¶¶ 2-3, 5, 25-26, 28-38, 41-53, 68-108 *with* PFAC ¶¶ 2-3, 5, 45-46, 48-50, 52-55, 57-60, 73-78, 82-84, 87-89, 116-186. And they should have known the remaining few details, which consist of minor additional characterizations of the conduct described in previous complaints, by the time of the July 2020 congressional testimony which they now cite as the basis for the extra allegations. *See* PFAC ¶¶ 79 n.18, 85 n.19; *see also* SAC ¶¶ 41, 42; TAC ¶¶ 21-30, 68-71, 86-88, 90-100; Opp. Adamchik

MTD at 38 n.12.[4] In their opposition to Adamchik's dismissal motion in December 2020, Plaintiffs recognized that they could have previously moved to amend the complaint to add their current factual allegations, as they asserted that, if the Court dismissed any of their claims, it should grant them leave to amend the complaint to add factual allegations based on the July 2020 congressional testimony. *See* Opp. Adamchik MTD at 39, 45 n.17. But plaintiffs unduly delayed filing their motion to amend for nearly three years until November 2023, and that delay justifies the denial of their motion. *See LaPrade,* 2006 U.S. Dist. LEXIS 86431, at *11.

In addition, Plaintiffs could have framed their causes of action as tort claims under D.C. law, as they now wish to do, from the outset of this case. Yet they inexcusably failed to do so. In that regard, civil rights plaintiffs regularly assert both state law tort claims and *Bivens* claims against a federal officer in his individual capacity to ensure that, if the United States does not certify that the officer acted within the scope of his or her federal employment or the Court does not find as much, *see* 28 U.S.C. §§ 2679(b), 2679(d)(1), 2679(d)(3), then the plaintiffs have timely filed a state law tort cause of action that may proceed directly against the defendant in his individual capacity. *See, e.g., Kelley v. FBI*, 67 F. Supp. 3d 240, 251-52 (D.D.C. 2014) (plaintiffs asserted *Bivens* claims and state law tort claims against federal defendants in their individual capacities in the same complaint, within five months of commencing suit). Here, Plaintiffs could have taken this approach from the commencement of the case, but chose not to. Their failure to do so underscores the unreasonableness of their delay.

---

[4] Notably, Plaintiffs' second and third amended complaints included virtually all their remaining current allegations about the Former Individual Federal Defendants' conduct and the clearing of the square. *See* SAC ¶¶ 41, 42; TAC ¶¶ 21-30, 68-71, 86-88, 90-100. Plaintiffs must have known of the few new details in the proposed amended complaint based on their alleged personal observations of the clearing of the square or public congressional testimony or news reporting released by July 2020, with the exception of an isolated after-the-fact comment contained in former Defense Secretary Esper's 2022 book. *See* ECF No. 191-1 ¶ 56 n.16.

That Plaintiffs waited until well after the grant of the dispositive motions to file their motion to amend further strengthens the case for denial of the motion on grounds of delay. Where a plaintiff moves to amend a complaint after a summary judgment or dismissal motion has been granted and the litigation has been ongoing for years, courts routinely deny the proposed amendments on grounds of undue delay. *See, e.g., Bell v. DOD*, 2018 U.S. Dist. LEXIS 166101, *48-49 (D.D.C. Sept. 27, 2018) (motion to amend denied after two years of litigation and grant of summary judgment); *Brown v. FBI*, 744 F. Supp. 2d 120, 123 (D.D.C. 2010) (same for two years of litigation and grant of motion to dismiss and grant of partial summary judgment); *see also Nat'l Sec. Couns. v. CIA*, 960 F. Supp. 2d 101, 134 (D.D.C. 2013) ("When a plaintiff seeks leave to amend its complaint in an attempt to evade the effect of [the Court's] Memorandum Opinion and Order dismissing the plaintiff's claims against the moving defendants, the request will be denied.") (internal quotation marks omitted). There is even greater cause to deny a motion to amend that has been made after the entry of judgment or an appeal. *See Figgie Int'l, Inc. v. Miller*, 966 F.2d 1178, 1181 (7th Cir. 1992) ("In a post-judgment situation, delay without explanation is sufficient reason to deny a motion to amend."); *Mady Marieluise Schubarth v. Fed. Republic of Germany*, No. 14-cv-2140, 2021 U.S. Dist. LEXIS 256068, at *14 (D.D.C. Jan. 25, 2021) ("Moreover, the potential prejudice to [defendant] here is more severe than any prejudice in *Bronner*, since [plaintiff] waited until after a dispositive motion and an appeal to present the Court with her new jurisdictional theory."). Here, because Plaintiffs have moved to amend the complaint after three years of litigation, including an order of dismissal, a partial final judgment, and a decision on appeal in favor of the Former Individual Federal Defendants, the Court should deny the motion on grounds of undue delay.

Plaintiffs posit that they did not unduly delay their motion to amend because they agreed to stay this case while the appeal and settlement negotiations with the United States proceeded, thereby precluding amendments to the complaint during the period encompassed by those stays. *See* Mot. to Amend at 16. But even accounting for the stays from July 14, 2021, to August 15, 2023, Plaintiffs still had 351 days—nearly a year—between the July 28, 2020 congressional testimony referenced in the newly proposed complaint and the July 14, 2021 stay in which to amend the complaint to include their current allegations. As noted, during that time, Plaintiffs amended their complaint twice and suggested they might do so again, *see* SAC; TAC; Opp. Adamchik MTD at 39, 45 n.17, underscoring their ability to seek their current amendments much sooner. And yet, without any reasonable excuse, Plaintiffs failed to move to add their current claims and factual allegations to the complaint, causing undue delay for the better part of a year. Thus, the stays pending settlement negotiations and appeal do not excuse Plaintiffs' undue delay for the year before the stays were in effect or for the more than three months after the D.C. Circuit issued its mandate.

Plaintiffs also claim that the entire period of delay between the filing of the third amended complaint and the decision on appeal was justified because they did not know that they lacked a *Bivens* remedy, and therefore had to assert alternative claims, until the D.C. Circuit affirmed the dismissal of the *Bivens* claims. But Plaintiffs' decision to wait and see how their *Bivens* claims fared before attempting to plead causes of action under D.C. law reflects a strategic effort to delay rather than an excuse for their untimely motion to amend.

After all, neither the absence of a *Bivens* remedy under the special factors doctrine nor a plaintiff's decision to frame a claim as a *Bivens* cause of action inherently affects the plaintiff's ability to simultaneously plead state law counts against individual defendants, including via

pleading in the alternative. *See* Fed. R. Civ. P. 8(d)(3); *cf. Love v. United States*, 915 F.2d 1242, 1249 (9th Cir. 1989) ("The Loves are entitled to plead the *Bivens* claim along with the FTCA claim as an alternative basis for recovery."); *Bame v. Clark*, 466 F. Supp. 2d 105, 110 (D.D.C. 2006) (noting that *Bivens* and 42 U.S.C. § 1983 claims can be pleaded in the alternative where there is a question as to whether defendant is deemed a federal or state actor).[5] The plaintiff can plead both types of cause of action at once, regardless of whether a state law claim, a *Bivens* claim, or both will eventually be dismissed. Thus, here, from the commencement of this suit, Plaintiffs were free to try to assert *Bivens* counts and causes of action under D.C. law at once, regardless of the ultimate viability of the *Bivens* counts.[6] Their decision to try to add their causes of action under D.C. law at this late juncture is exactly the sort of wait-and-see strategy that justifies the denial of a motion to amend. *See Berk v. Ritz Carlton Condo. Ass'n*, No. CV 19-20666, 2021 U.S. Dist. LEXIS 218974, at *13-14 (D.N.J. Nov. 12, 2021) ("Plaintiff's only explanation for her delay is that she now believes, having read the Court's summary judgment opinion, that she should have proceeded under the FHA either in addition to or in place of her ADA claim. Such wait and see tactics amount to undue delay and would prejudice the defendants.").

---

[5] Following the Attorney General's scope-of-employment certification, the state tort claims asserted against federal defendants in their individual capacities would be subject to dismissal under the Westfall Act. But Plaintiffs would be free to challenge that certification in this Court. In any event, the fact that Plaintiffs' new state law theories might not be viable is hardly a basis to excuse their delay in presenting them to the Court.

[6] Plaintiffs contend that they did not realize that their *Bivens* claims were unfounded until the Supreme Court issued its decision in *Egbert v. Boule*, 596 U.S. 482 (2022). However, as the Former Individual Federal Defendants pointed out repeatedly before the Supreme Court handed down *Egbert*, *see* Barr MTD at 5-29; Adamchik MTD at 5-29; Line MTD at 7-30; *see also Abbasi*, 582 U.S. at 131-49; *Loumiet v. United States*, 948 F.3d 376, 380-82 (D.C. Cir. 2020), pre-*Egbert* decisions made it clear that Plaintiffs had no *Bivens* remedy from the outset. Indeed, this Court held as much prior to *Egbert*. *See* Dismissal Op. at 16.

Plaintiffs further insist that, because Judge Walker's concurrence on appeal marked the first time any federal judge has raised the possibility that a plaintiff could avoid the Westfall Act's certification and substitution provisions by bringing state tort claims against individual federal employees for the purpose of enforcing a constitutional right, Plaintiffs were justified in declining to amend their complaint to add such claims until Judge Walker issued his concurrence. But because Judge Walker did not command a majority of the D.C. Circuit panel and declined to reach any ultimate conclusion as to the validity of state law tort claims brought against federal officers for the purpose of addressing constitutional violations, *see Buchanan*, 71 F.4th at 1017-18 (Walker, J., concurring), the concurrence did not change the law in any way which could justify Plaintiffs' delay. *See MGM Glob. Resorts Dev., LLC v. United States DOI*, No. CV 19-2377, 2020 U.S. Dist. LEXIS 169262, at *17 (D.D.C. Sept. 16, 2020) ("A Circuit concurrence is not binding on this Court . . ."). And, again, even prior to the concurrence, nothing stopped Plaintiffs from doing what is often done in cases like this: pleading their tort claims under D.C. law and hoping for a favorable outcome.

Moreover, while the Former Individual Federal Defendants believe the concurrence's theory lacks merit, Plaintiffs could have advocated their theory of avoiding the Westfall Act in advance of Judge Walker's concurrence. In the portion of his concurrence on which Plaintiffs rely, Judge Walker cited only statutes enacted, and cases decided, before the commencement of this suit in June 2020. *See Buchanan*, 71 F.4th at 1014-18 (Walker, J., concurring) (citing the Westfall Act, as well as cases decided between 1763 and 2020).[7] Plaintiffs could have marshaled the same cases,

---

[7] Judge Walker cited *Egbert v. Boule*, 596 U.S. 482 (2022), which was issued while the appeal was pending, only as support for his discussion of the current state of *Bivens* law, *see Buchanan*, 71 F.4th at 1012-13 (Walker, J., concurring), not for his thoughts on the relationship between state tort law and the Westfall Act. Judge Walker also cited a 2023 law review article written by two

statutes, and articles to assert their current claims in their first complaint in June 2020, to say nothing of the two that followed. Indeed, Judge Walker borrowed the principal underpinnings of his concurrence from a pair of law review articles written and published many years ago— including one written by one of Plaintiffs' amici. *See id*. at 1014, 1016 (citing Akhil Reed Amar, *Of Sovereignty and Federalism*, 96 Yale L.J. 1425 (1987), and Carlos M. Vázquez & Stephen I. Vladeck, *State Law, the Westfall Act, and the Nature of the Bivens Question*, 161 U. Pa. L. Rev. 509 (2013)); *see also* ECF No. 120 at 6-17 (Vladek and other amici arguing for allowing constitutional tort claims under the Westfall Act or *Bivens*). Consequently, it was Plaintiffs' lack of diligence which delayed their current effort to amend the complaint to include D.C. tort claims. *Cf. Zisumbo v. Ogden Reg'l Med. Ctr*. 801 F.3d 1185, 1196 (10th Cir. 2015) (amendment not permitted past scheduling order deadline in the absence of new facts because "belated realizations" that a claim may be legally available "do not justify granting an untimely motion to add new claims."); *Charles v. Chesney*, No. CV 99-2430, 2023 U.S. Dist. LEXIS 10229, at *6 (E.D. Pa. Jan. 19, 2023) (denying Rule 60 motion based in part on plaintiff's reliance on concurrences and dissents rather than majority opinion in arguing there had been a change in the law); *Transverse, LLC v. Iowa Wireless Servs., LLC*, No. A-10-CV-517, 2019 U.S. Dist. LEXIS 121412, at *11-15 (W.D. Tex. July 22, 2019) ("potential" change in the law caused by developing split in state appellate courts did not excuse delay in seeking to amend the complaint).[8]

---

law students, which simply collected the same pre-existing authorities as the rest of Judge Walker's analysis. *See id*. at 1016.

[8] Plaintiffs argue their proposed claims are not futile because they seek to follow Judge Walker's guidance in his concurrence. Mot. to Amend at 17-25. The Former Individual Federal Defendants do not agree that the concurring opinion of a single judge reflects the governing law, and they contend the proposed amendments are futile for multiple reasons. They focus here, however, on the many other infirmities in Plaintiffs' effort to amend post-judgment, especially given that some

**B. Judicial economy and finality support denial of the motion to amend.**

Plaintiffs' motion to amend should be denied because their attempt to assert causes of action under D.C. law against the Former Individual Federal Defendants undermines judicial economy and would destroy the Former Individual Federal Defendants' legitimate interest in repose created by the affirmance of the dismissal of the *Bivens* claims. The Former Individual Federal Defendants and Plaintiffs have already engaged in three years of litigation, including voluminous briefing of multiple motions to dismiss, early discovery motions, a partial final judgment, and an appeal. *See, e.g.*, ECF No. 38 (Opp. to Early Discovery Motion); ECF No. 72, (Opp. to 2d Early Discovery Motion); Barr MTD; Adamchik MTD; Line MTD; Dismissal Op.; Judgment; D.C. Cir. Mandate. During that process, because Plaintiffs had multiple opportunities to clarify the nature of their claims via prior amendments to the complaint and the Court then disposed of all the claims against the Former Individual Federal Defendants, the Court and the parties have finally been able to position the case to proceed efficiently to discovery against the Arlington County and D.C. defendants, narrowing the claims, parties, and scope of discovery. By contrast, Plaintiffs' proposal to amend the complaint to rejoin the Former Individual Federal Defendants would destroy the last three years of progress and efficiency. By seeking to rely on the same operative facts as the prior complaints to reassert claims challenging the constitutionality of the Former Individual Federal Defendants' alleged use of force and clearing of Lafayette Square

---

courts in this district appear to prefer to resolve viability arguments on motions to dismiss. *See, e.g.*, *Farouki v. Petra Int'l Banking Corp.*, No. 08-2137, 2013 WL 12309520, at *3 (D.D.C. June 12, 2013) (preferring "a properly filed and fully briefed motion to dismiss," to a futility argument and explaining the court "would benefit" after "the parties have squarely and fully briefed the issues."); *Fox*, 851 F. Supp. 2d at 22 (granting leave to amend, in part, "without prejudice to any responsive motions the defense may choose to file."). In the event the motion to amend is granted, the Former Individual Federal Defendants reserve the right to challenge the viability of the Plaintiffs' proposed claims on all available grounds at a later juncture in the case, including on a motion to dismiss.

Park, Plaintiffs attempt to relitigate those defendants' liability, to their unfair prejudice.[9] In the interests of judicial economy and efficiency, the Court should reject Plaintiffs' attempt to simply relabel their *Bivens* claims as common-law tort causes of action and return this case to square one.

The proposed amendments to the complaint would also prejudicially eliminate the Former Individual Federal Defendants' interest in the finality of the partial final judgment. As discussed above, *see supra* at 9-18, that judgment settled whether the Former Individual Federal Defendants could be held liable in their individual capacity for the alleged use of force and restrictions on protest locations based on the shared factual allegations underlying Plaintiffs' prior complaints and their proposed fourth amended complaint. Yet, because Plaintiffs' proposed causes of action under D.C. law stem from the very same allegations that the Former Individual Federal Defendants violated the Constitution by allegedly using force on protesters and clearing the square, those claims would terminate the Former Individual Federal Defendants' repose in the partial final judgment, resulting in significant prejudice to their interest and the Court's interest in finality. *See generally In re Eaton Vance Mut. Funds Fee Litig.*, 403 F. Supp. 2d 310, 320 (S.D.N.Y. 2005) ("There is a strong interest in finality of judgments and the expeditious termination of litigation.").

That is precisely what Plaintiffs promised to avoid when they proposed the partial final judgment which they now seek to upend. In moving for partial final judgment following the dismissal of all claims against the Former Individual Federal Defendants, Plaintiffs told the Court that the judgment would "enable the parties to proceed to discovery knowing *definitively* which issues and *which defendants* are in the case," Pls. Mot. for Final J. at 1 (emphases added), in part

---

[9] Indeed, as Plaintiffs previously noted in seeking partial final judgment, under their proposal to have the Former Individual Federal Defendants participate in discovery as parties, those defendants and the government will have a greater need and incentive to litigate discovery with the concerns of the individuals in mind, *see* ECF No. 184 at 11, expanding the scope of litigation over discovery and adverse impact on those individuals.

because *"[t]he case is finished* with respect to the *Bivens* claims and the *Bivens defendants*" absent a different outcome on appeal, *id*. at 8 (emphases added). The Court should hold Plaintiffs to their word that the final judgment and the appeal finished the case with respect to the *Bivens* defendants and definitively settled which parties would proceed to discovery by leaving the Former Individual Federal Defendants where they were after those proceedings—dismissed from the case.

On the issue of finality, aside from a cursory assertion that the Court's dismissal order should not warrant denial of their motion to amend, *see* Mot. to Amend at 11, Plaintiffs do not explain why they should be allowed to undermine the Former Individual Federal Defendants' legitimate interest in repose or disregard their own prior position in support of the partial final judgment. On the issue of judicial economy, Plaintiffs contend that they should be allowed to amend their complaint to bring the Former Individual Federal Defendants back into the case to avoid the inefficiency of filing a separate lawsuit against those defendants. *See id*. at 8. However, even assuming *arguendo* that a separate lawsuit was not otherwise precluded, Plaintiffs' proposal to amend the complaint in this suit is not more efficient than the commencement of a separate suit. In that regard, since there are no live claims against the Former Individual Federal Defendants, Plaintiffs' newly proposed claims against those defendants could not be consolidated with existing claims against them in a manner that might be more efficient than starting a new lawsuit. Rather, regardless of whether Plaintiffs seek to amend the complaint in this suit or commence a new lawsuit, they would effectively be starting from scratch in adding the Former Individual Federal Defendants to the case. Thus, Plaintiffs' motion to amend the complaint should be denied because the avoidance of a separate lawsuit would not significantly improve efficiency, and the proposed elimination of the benefits of the partial final judgment and the prior proceedings in this case would be grossly inefficient.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion to amend the complaint.

Dated: December 7, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

C. SALVATORE D'ALESSIO, JR.
Director, Torts Branch

/s/ John B. F. Martin
JOHN B. F. MARTIN
NY Bar No. 4682928, under LCvR 83.2
Trial Attorney, Constitutional Torts Staff
Torts Branch, Civil Division
U.S. Department of Justice
Ben Franklin Station, P.O. Box 7146
Washington, D.C. 20044
T: (202) 616-4492; F: (202) 616-4314
John.B.Martin@usdoj.gov

/s/ Joseph A. Gonzalez
JOSEPH A. GONZALEZ
D.C. Bar No. 995057
Trial Attorney, Constitutional Torts Staff
Torts Branch, Civil Division
U.S. Department of Justice
Ben Franklin Station, P.O. Box 7146
Washington, D.C. 20044
T: (202) 598-3888; F: (202) 616-4314
Joseph.A.Gonzalez@usdoj.gov

*Counsel for Former Defendants William Barr, Mark Adamchik, Jonathan Daniels, Sean Cox, Luis Feliciano, Jeffery Hendrickson, Nicholas Jarmuzewski, Bryan McDonald, Cara Seiberling, and Lawrence Sinacore in their individual capacity*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| BLACK LIVES MATTER D.C., *et al.*,<br><br>　　　　　　　　*Plaintiffs,*<br><br>　　　v.<br><br>JOSEPH R. BIDEN, JR., *et al*.,<br><br>　　　　　　　　*Defendants*. | Civil Action No. 1:20-cv-1469 (DLF) |

**[PROPOSED] ORDER**

　　Upon consideration of Plaintiffs' motion to amend the complaint (ECF No. 191), the Former

Individual Federal Defendants' response thereto, and the entire record herein, it is hereby

**ORDERED** that Plaintiffs' motion to amend the complaint is denied in part insofar as it seeks to add

claims against the Former Individual Federal Defendants under counts 13, 14, 15, and 16 of the

proposed fourth amended complaint (ECF 191-1).

**SO ORDERED.**

_____　　　　　　　_____
Date　　　　　　　　　　　　　　　　　　　　Dabney L. Friedrich
　　　　　　　　　　　　　　　　　　　　　　United States District Judge