## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BLACK LIVES MATTER D.C., *et al.*, <br>                 *Plaintiffs*, <br>         v. <br> DONALD J. TRUMP, *et al.*, <br>               *Defendants*. | No. 20-cv-1469 (DLF) |
| RADIYA BUCHANAN, *et al.*, <br>                 *Plaintiffs*, <br>         v. <br> DONALD J. TRUMP, *et al.*, <br>               *Defendants*. | No. 20-cv-1542 (DLF) |

## <u>MEMORANDUM OPINION</u>

These lawsuits, *Black Lives Matter, D.C. v. Trump* ("*Black Lives Matter*") and *Buchanan v. Trump* ("*Buchanan*"), arise out of the law-enforcement response to protests in Lafayette Square on June 1, 2020. Before the Court are the *Black Lives Matter* and *Buchanan* plaintiffs' motions for leave to amend their complaints. For the reasons that follow, the Court will grant the motions in part and deny the motions in part.

## I.    BACKGROUND

On June 1, 2020, protestors gathered in D.C.'s Lafayette Square "to protest racism and police brutality" in the aftermath of George Floyd's death. *Buchanan v. Barr*, 71 F.4th 1003, 1006 (D.C. Cir. 2023). Police cleared the square with physical force. *Id.* The protestors "were struck with batons and rubber bullets, experienced adverse reactions to . . . chemical irritants, and suffered emotional and psychological harm." *Id.*

Lawsuits followed.  In one action, *Black Lives Matter*, several protestors sought damages, variously, from then-Attorney General William P. Barr, certain U.S. Park Police officers, and certain other D.C. Metropolitan Police officers for violating, variously, their First and Fourth Amendment rights under *Bivens v. Six Unknown Agents*, 42 U.S.C. § 1985(3), 42 U.S.C. § 1986, and 42 U.S.C. § 1983.  Third Amend. Class Action Compl. ¶¶ 220–73, BLM Dkt. 52.[1]  Black Lives Matter D.C. ("BLMDC"), an advocacy organization and an LLC, also lodged claims against the same defendants under 42 U.S.C. § 1985(3), 42 U.S.C. § 1986, and 42 U.S.C. § 1983.  *Id.*  In another action, *Buchanan*, three different protestors sued Barr and other federal, D.C., and State officials for damages.  Amend. Compl., Buchanan Dkt. 29.  They sought relief under the *Posse Comitatus* Act and under *Bivens* or 42 U.S.C. § 1983 for violations of their First, Fourth, and Fifth Amendment rights.  *Id.* ¶¶ 115–58.[2]

Barr and the other federal defendants who were sued for damages (the "federal damages defendants") moved to dismiss.  BLM Dkts. 76, 97, 142, 143, 146; Buchanan Dkts. 34, 59.  The Court granted the motions.  BLM Dkt. 159; Buchanan Dkt. 68.  It held that Supreme Court precedent foreclosed every individual plaintiff's arguments under *Bivens*, that the *Black Lives Matter* plaintiffs had not plausibly pled a conspiracy under 42 U.S.C. §§ 1985(3) and 1986, and that the *Posse Comitatus* Act did not give the *Buchanan* plaintiffs a cause of action for damages. Mem. Op. at 8–16, 23–26, 27–28 (Jun. 21, 2021); BLM Dkt. 160, Buchanan Dkt. 69.

---

[1] The Court uses "BLM Dkt." to cite docket entries in the *Black Lives Matter* docket, No. 20-cv-1469.  It uses "Buchanan Dkt." to cite entries in the *Buchanan* docket, No. 20-cv-1542.

[2] Both the *Black Lives Matter* and the *Buchanan* plaintiffs additionally sought equitable relief against federal officials, including then-President Donald J. Trump, in their official capacities. *See, e.g.*, Third Amend. Class Action Compl. ¶¶ 231–40, BLM Dkt. 52; Amend. Compl. ¶¶ 152–58, Buchanan Dkt. 29.  Those aspects of the *Black Lives Matter* and *Buchanan* lawsuits have settled and are therefore not relevant here.  BLM Dkt. 182; Buchanan Dkt. 86.

Because the Court did not dismiss every plaintiff's claims against every defendant, including some § 1983 claims against the non-federal defendants and other claims for injunctive relief against federal officers (including then-President Donald J. Trump) in their official capacities, its decision did not yield a final, appealable order. *Id.* at 50. Nevertheless, the plaintiffs sought to appeal the Court's *Bivens* rulings immediately.[3] They urged the Court to grant partial final judgment under Federal Rule of Civil Procedure 54(b) or, in the alternative, to certify its decision for interlocutory appeal under 28 U.S.C. § 1292(b). Pl.'s Unopposed Mot. for Entry of Partial Final J. or for Certification of Interlocutory Appeal, BLM Dkt. 184; Pl.'s Unopposed Mot. for Entry of Rule 54(b) Final Judgment, or In The Alternative, to Certify Order & J. for Interlocutory Appeal, Buchanan Dkt. 89. The Court accepted the invitation and granted partial final judgment to the federal damages defendants under Rule 54(b). In *Black Lives Matter*, it "ordered that final judgment of dismissal [be] entered in favor of . . . William P. Barr" and the other federal damages defendants "against the plaintiffs as to Counts 1 and 2 of the plaintiffs' Third Amended Complaint," which sought relief for violations of the individual *Black Lives Matter* plaintiffs'—but not BLMDC's—First and Fourth Amendment rights under *Bivens*. Partial Final J., BLM Dkt. 186 (emphasis deleted); *see* Third Amend. Compl. ¶¶ 220–230, BLM Dkt. 52. In *Buchanan*, it "ordered that final judgment of dismissal [be] entered in favor of . . . William P. Barr" and the other federal damages defendants "as to Count 4 of the plaintiffs' Amended Complaint," which sought relief under *Bivens* for violation of the *Buchanan* plaintiffs' First, Fourth, and Fifth Amendment rights. Partial Final J., Buchanan Dkt. 91 (emphasis deleted); Amend. Compl. ¶¶ 136–42, Buchanan Dkt. 29.

---

[3] Throughout, unless the context indicates otherwise, the Court uses "the plaintiffs" to refer collectively to all plaintiffs in *Buchanan* and *Black Lives Matter*.

The plaintiffs appealed.  On appeal, a unanimous panel of the D.C. Circuit affirmed this Court's judgments in favor of the federal damages defendants.  *Buchanan*, 71 F.4th at 1006.  Judge Walker authored a concurrence.  Although relief under *Bivens* was unavailable, Judge Walker suggested the plaintiffs "[might] yet seek a remedy" by suing the federal damages defendants for assault and battery under D.C. law.  *Id.* at 1017 (Walker, J., concurring).

After returning to this Court, the plaintiffs sought leave to amend their complaints.  In both *Black Lives Matter* and *Buchanan*, the plaintiffs' amendments alleged new facts, including the identity of police officers previously named as John Doe defendants.  *See, e.g.*, Fourth Amend. Class Action Compl. (Redline Copy) ¶¶ 4–5, 20–23, BLM Dkt. 191-2 ("*BLM* Fourth Amend. Compl."); Second Amend. Compl. (Redline Copy) ¶¶ 24–33, 37, Buchanan Dkt. 101-2 ("*Buchanan* Second Amend. Compl.").  The *Buchanan* plaintiffs and the individual *Black Lives Matter* plaintiffs also sought damages against the United States under the Federal Tort Claims Act ("FTCA"), and the *Buchanan* plaintiffs additionally sought damages against former President Trump in his individual capacity under D.C. law.  *BLM* Fourth Amend. Compl. ¶¶ 209–18; *Buchanan* Second Amend. Compl. ¶¶ 141–48, 156–62, 169–76 (FTCA claims), 149–55, 163–68, 177–201 (D.C. law claims against Trump).  Finally, the plaintiffs sought leave to assert several new causes of action for damages against Barr and the other federal damages defendants under D.C. law: the *Buchanan* and individual *Black Lives Matter* plaintiffs (*e.g.*, excluding BLMDC) sought damages for assault and battery; the *Buchanan* plaintiffs sought damages for intentional infliction of emotional distress; and every plaintiff—including BLMDC—sought damages for violations of the D.C. First Amendment Assemblies Act and negligence *per se*.  *See BLM* Fourth Amend. Compl. ¶¶ 219–52; *Buchanan* Second Amend. Compl. ¶¶ 149–55, 163–68, 177–201.

Barr and the other federal damages defendants opposed the motions.  BLM Dkts. 192, 193; Buchanan Dkt. 103.  Because the United States and Trump in his individual capacity are not yet parties to this case—and cannot be joined until the Court grants the plaintiffs' motion to add them—they have not been served with the motions and did not file oppositions.

## II.    ANALYSIS

The parties disagree on the legal standard governing the plaintiffs' motions for leave to amend.  For the following reasons, the Court concludes (1) that Federal Rule of Civil Procedure 15 governs the plaintiffs' attempts to add new facts to their complaints, to seek damages from the United States and former President Trump, and to seek damages against the federal damages defendants on behalf of Black Lives Matter, D.C., but that (2) Federal Rules of Civil Procedure 59 and 60 govern the plaintiffs' other amendments.  It also concludes (3) that leave to amend is warranted with respect to the plaintiffs' first three proposed amendments, which are governed by Rule 15, but not with respect to the amendments governed by Rules 59 and 60.

### A.    Legal Standard

Under Federal Rule of Civil Procedure 15(a)(2), "[a] party may amend its pleading . . . with [an] opposing party's written consent or the [C]ourt's leave." Fed. R. Civ. P. 15(a)(2).  "The court should freely give leave when justice so requires."  *Id.*  By contrast, Federal Rules of Civil Procedure 59 and 60 limit a party's opportunities to alter, amend, or seek relief from a judgment.  Under Rule 59, "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."  Fed. R. Civ. P. 59(e).  And under Rule 60(b), a court "may relieve a party . . . from a final judgment, order, or proceeding" only "[o]n motion and just terms."  Fed. R. Civ. P. 60(b).  Relief under Rule 60 is available for certain specified reasons and for "any other reason that justifies relief."  *Id.* 60(b)(6).

When a plaintiff's amended complaint would raise claims subject to a final judgment, the plaintiff must "reopen[] . . . the judgment pursuant to Rule 59(e) or 60(b)" before seeking leave to amend under Rule 15. *Bldg. Indus. Ass'n of Superior Cal. v. Norton*, 247 F.3d 1241, 1245 (D.C. Cir. 2001) (citing cases); *accord* 6 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1489 (3d ed. 2008).  Otherwise, a losing party could always "resurrect[] claims on which [she] lost" by amending her complaint after judgment, making Rules 59 and 60 superfluous. *Norton*, 247 F.3d at 1245.

This principle applies to partial final judgments under Rule 54(b), which are final judgments like any other. *See Cassell v. Michaux*, 240 F.2d 406, 408 (D.C. Cir. 1956).  Rule 54(b) authorizes final judgments with respect to "individual claims."  *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436 (1956); *see* Fed. R. Civ. P. 54(b) (authorizing a court to "direct entry of a final judgment as to one or more . . . *claims*") (emphasis added).  It does not allow a court to enter final judgment on anything less than a "claim"—say, on a particular defense or theory of liability.  *Gold Seal Co. v. Weeks*, 209 F.2d 802, 810–11 (D.C. Cir. 1954); *cf.* 28 U.S.C. § 1292(b) (authorizing interlocutory appeals on "controlling question[s] of law").

As a "rule of thumb," "claim" carries the same meaning under Rule 54(b) as it carries for purposes of claim preclusion. *Tolson v. United States*, 732 F.2d 998, 1001 (D.C. Cir. 1984); *Attias v. CareFirst, Inc.*, 969 F.3d 412, 417 (D.C. Cir. 2020) (quoting *Tolson*).  In other words, to qualify as a judgment on a "claim" under Rule 54(b), a judgment must settle whether a particular defendant is liable to a particular plaintiff because of a particular transaction or "nucleus of operative facts." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1594–95 (2020) (cleaned up); *see Gold Seal Co.*, 209 F.2d at 810–11.

In view of these principles, the Court's "final judgment[s] of dismissal" trigger Rules 59 and 60 with respect to some but not all of the plaintiffs' proposed amendments. Partial Final J., BLM Dkt. 186 (emphasis deleted); Partial Final J., Buchanan Dkt. 91 (emphasis deleted).

*First*, Rule 15 governs the plaintiffs' amendments adding new facts to their complaint. Nothing in the Court's *Black Lives Matter* or *Buchanan* judgments limits the facts the plaintiffs may present in favor of otherwise valid claims, so the plaintiffs may add those facts without first seeking relief from a judgment under Rule 59 or 60.

*Second*, Rule 15 governs the plaintiffs' amendments that seek relief against Trump and the United States. In both *Black Lives Matter* and *Buchanan*, the Court entered judgment "in favor of . . . William P. Barr" and the other federal damages defendants. *Id.* Neither judgment mentioned Trump or the United States or resolved claims against either of them. As a result, to the extent that the plaintiffs seek relief against either party now, they raise new "claims" that the Court's prior judgments do not cover. *See Taylor v. Sturgell*, 553 U.S. 880, 893–95 (2008). With no judgment in the way, all plaintiffs may seek relief against the United States—and the *Buchanan* plaintiffs may seek relief against Trump—under Rule 15 without relying on Rules 59 and 60.

*Third*, Rule 15 governs the *Black Lives Matter* plaintiffs' amendments that seek damages from the federal damages defendants on behalf of BLMDC. BLMDC did not litigate *Buchanan*, so the Court's *Buchanan* judgment does not bind it. *Id.* It did litigate *Black Lives Matter*, but the Court's *Black Lives Matter* partial final judgment did not address BLMDC's claims. Rather, it dismissed "Counts 1 and 2" of the *Black Lives Matter* complaint, counts that did not assert BLMDC's rights or seek relief on its behalf. Partial Final J., BLM Dkt. 186; *see* Third Amend. Compl. ¶¶ 220–30, BLM Dkt. 52. Because the Court never issued judgment against BLMDC, the *Black Lives Matter* plaintiffs' amendments asserting new claims on behalf of BLMDC—which

seek damages for BLMDC under the D.C. First Amendment Assemblies Act and for negligence *per se*, *see BLM* Fourth Amend. Compl. ¶¶ 231–52—do not require relief from a judgment.[4]  *See Sturgell*, 553 U.S. at 893–95.

*Fourth*, however, Rules 59 and 60 govern the remaining plaintiffs' amendments targeting the federal damages defendants—the assault and battery claims brought in *Black Lives Matter* and *Buchanan* and the intentional infliction of emotional distress claims brought in *Buchanan*.  In both *Black Lives Matter* and *Buchanan*, the Court issued judgment against the remaining plaintiffs on the *Bivens* counts of their complaints.  Partial Final J., BLM Dkt. 186 (awarding judgment on "Counts 1 and 2" of the *Black Lives Matter* complaint, which asserted *Bivens* claims); Partial Final J., Buchanan Dkt. 91 (awarding judgment on "Count 4" of the *Buchanan* complaint, which asserted *Bivens* claims).  And the plaintiffs' old *Bivens* counts assert the same "claim" as their new amendments, since they rest on the same transaction or "nucleus of operative facts": both the old and new counts assert that the individual defendants wrongfully used force to clear Lafayette Square of protestors on June 1, 2020.[5]  *Lucky Brand Dungarees*, 140 S. Ct. at 1595; *Ashbourne v. Hansberry*, 894 F.3d 298, 302 (D.C. Cir. 2018).  Indeed, if the plaintiffs' new amendments did not stem from the same transaction as their old *Bivens* claims, they could not relate back to the plaintiffs' original complaints and would run afoul of D.C.'s statute of limitations for intentional torts and for First Amendment Assemblies Act claims.  D.C. Code § 12-301(a)(4), (a)(8); *see* Fed.

---

[4] "[I]n certain limited circumstances, a nonparty may be bound by a judgment because she was adequately represented by someone with the same interests who was a party to the suit" or because "she assumed control over the litigation in which that judgment was rendered."  *Sturgell*, 443 U.S. at 894–95 (cleaned up).  The defendants do not argue that either exception applies on the facts of this case.

[5] The plaintiffs in fact concede that their new claims involve the same core facts as their older ones.  Pl.'s Mot. for Leave to File Fourth Amend. Compl. at 9, BLM Dkt. 191; Mot. for Leave to File Second Amend. Compl. at 18, Dkt. 101-3.

R. Civ. P. 15(c)(1) ("An amendment to a pleading relates back . . . [when] the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading."). Accordingly, the plaintiffs' proposed amendments assert the same "claims" as the older counts of their complaints the Court dismissed, the Court's judgment against the plaintiff on those claims applies in full to the amendments, and the plaintiffs may not assert the claims anew without first seeking relief under Rules 59 and 60. *Tolson*, 732 F.2d at 1001; *Norton*, 247 F.3d at 1245.

It does not matter that judgments lack claim-preclusive effect in the actions in which they issue. Even though principles of claim preclusion do not apply within one action, "res judicata doctrine" remains "[an] appropriate guide in Rule 54(b) determinations." *Tolson*, 732 F.2d at 1001. Just so here. In both *Black Lives Matter* and *Buchanan*, the Court entered judgment against the plaintiffs on some of their claims. Now, consistent with *Tolson*, the Court relies on claim-preclusion principles to settle the scope of those "claims" and the Court's judgments dismissing them. *Id.* By contrast, the plaintiffs would construe the Court's judgment as attempting what *Tolson* explicitly rejected—as granting partial final judgment on one of the plaintiffs' legal theories (their *Bivens* theory) while leaving other legal theories based on the same facts (their intentional-tort and First Amendment Assemblies Act theories) open. *Id.* at 1000–02 (holding that district court could not grant partial final judgment on *respondeat superior* theory of liability without granting judgment on negligent supervision and retention theories too).

Nor does it matter that the Court entered final judgment on only the counts of the plaintiffs' complaints that raised *Bivens* claims. When the Court issued its judgments in *Black Lives Matter* and *Buchanan*, the plaintiffs' *Bivens* counts were "entirely distinct logically and doctrinally from all the other issues in the case[s]," especially because the Court had also dismissed the plaintiffs'

*Posse Comitatus* and civil-conspiracy counts.  Pls.' Unopposed Mot. for Entry of Partial Final J. or for Cert. of Interlocutory Appeal at 6, BLM Dkt. 184; *accord* Pls.' Unopposed Mot. for Entry of Rule 54(b) Final J. or to Certify Order for Interlocutory Appeal at 6–7, Buchanan Dkt. 89-1. Certainly, the Court had no reason to explain how its judgments would interact with claims the plaintiffs had not asserted.  Now, however, the plaintiffs seek to proceed afresh with legal theories that are "closely related" to the counts the Court rejected.  *Attias*, 969 F.3d at 418 (cleaned up).

The Court also rejects the plaintiffs' contention that the law of the case doctrine governs the effect of its partial final judgments.  The law of the case doctrine "expresses the practice of courts generally to refuse to reopen what has been decided" in earlier stages of litigation. *Messenger v. Anderson*, 225 U.S. 436, 444 (1912); *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 740 (D.C. Cir. 1995) (quoting *Messenger*).  It "is a principle that guides courts in the exercise of their discretion, not a binding rule."  *Wye Oak Tech., Inc. v. Republic of Iraq*, 24 F.4th 686, 697 (D.C. Cir. 2022).  In other words, the law of the case doctrine does not produce final judgments. It yields judgments that district courts can alter.  Rule 54(b), however, makes partial final judgments "final."  Fed. R. Civ. P. 54(b).

*Wilcox v. Georgetown University* does not say otherwise.  987 F.3d 143 (D.C. Cir. 2021). In *Wilcox*, a district court dismissed a complaint without prejudice.  *Id.* at 145–46.  The Circuit held that the dismissal did not yield a final order, since it did not "withdraw[]" the district court "from the case as a whole."  *Id.* at 149.  Here, all agree that the Court's partial final judgments were final, making *Wilcox* inapposite.

For these reasons, the Court concludes that Federal Rule of Civil Procedure 15 governs the plaintiffs' proposed amendments (1) adding new facts to their complaints; (2) seeking damages from the United States and former President Trump; and (3) seeking damages against the federal

damages defendants on behalf of BLMDC.  Federal Rules of Civil Procedure 59 and 60 govern the plaintiffs' proposed amendments (4) seeking relief against the federal damages defendants on the other plaintiffs' behalf.

**B.**     **Leave to Amend**

Having decided the applicable legal standard, the Court (1) will grant leave to amend with respect to the amendments governed by Rule 15 but (2) will not alter or vacate its prior judgements with respect to the amendments governed by Rules 59 and 60.

*1.     Rule 15 Amendments*

Under Federal Rule of Civil Procedure 15(a)(2), "[a] party may amend its pleading . . . with [an] opposing party's written consent or the [C]ourt's leave."  Fed. R. Civ. P. 15(a)(2).  "The court should freely give leave when justice so requires."  *Id.*  "[I]t is an abuse of discretion to deny leave to amend unless there is sufficient reason, such as 'undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies by previous amendments . . . or futility of amendment.'"  *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curiam) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (alterations omitted).

These principles favor granting leave to amend.  The plaintiffs have not acted in bad faith, intentionally dragged their feet, or repeatedly failed to cure deficiencies in their pleadings.  Nor do their amendments reflect undue delay.  "Consideration of whether delay is undue . . . should generally take into account the actions of other parties and the possibility of any resulting prejudice."  *Atchinson v. District of Columbia*, 73 F.3d 418, 426 (D.C. Cir. 1996).  Here, although this case has been pending for more than three years and has not yet progressed to discovery, the plaintiffs are not principally responsible for the slow pace.  Rather, the plaintiffs and defendants both urged the Court to stay proceedings from September 2021 through September 2023 pending

11

settlement negotiations and the plaintiffs' appeal.  Min. Order of Sept. 13, 2021, BLM & Buchanan

Dkts.; Pls.' Unopposed Mot. for Entry of Partial Final J. at 1, BLM Dkt. 184; Pl.'s Unopposed

Mot. for Entry of Rule 54(b) Final J. at 2, Buchanan Dkt. 89.  Equally importantly, the defendants

have not shown that allowing the plaintiffs' amendments would prejudice them.  Allowing the

plaintiffs' amendments would not create "unfairness in procedure or timing preventing the

[defendants] from properly responding," *In re Vitamins Antitrust Litig.*, 217 F.R.D. 34, 36 (D.D.C.

2003), and "amendment" of the complaint would not "require additional discovery" after lengthy

opportunities for fact-finding or upend any defendant's litigation strategy, *Atchinson*, 73 F.3d at

426–27; *cf. Bode & Grenier, LLP v. Knight*, 808 F.3d 852, 860 (D.C. Cir. 2015) (affirming denial

of leave to amend complaint "one year after summary judgment motions were decided . . . and

only days before trial" was scheduled to begin).

By allowing amendment, the Court does require the defendants to devote time and money

to this case.  Even so, the "[i]nconvenience" and "additional cost" of litigation do not ordinarily

add up to prejudice.  *City of Moundridge v. Exxon Mobil Corp.*, 250 F.R.D. 1, 6–7 (D.D.C. 2008).

Otherwise, *every* substantive amendment under Rule 15 would yield prejudice and thus undue

delay.  *Hisler v. Gallaudet Univ.*, 206 F.R.D. 11, 14 (D.D.C. 2002).  The cases the defendants cite

do not say otherwise.  Those cases deal with litigation far more protracted than this matter or

implicate other exceptional issues.  *See, e.g.*, *Mowrer v. U.S. Dep't of Transp.*, 14 F.4th 723, 733

(D.C. Cir. 2021) (declining to decide whether amendment that would "eliminate a defense to

liability" and "oblige [defendant] to continue litigating a case that [had] already run for nine years"

would cause undue prejudice by concluding that the plaintiffs had waived the relevant claims);

*Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*, 810 F.2d 243, 247 (D.C. Cir. 1987)

(affirming denial of leave to amend after seven years of litigation); *Mwani v. Al Qaeda*, 600 F.

12

Supp. 3d 36, 51–52 (D.D.C. 2022) (denying leave to amend in case that was "administratively closed" eight years earlier and in which amendment required plaintiffs to serve their new complaint on Al Qaeda, a "complicated" endeavor).

Finally, for now, the Court expresses no view under Rule 15 regarding the futility of the plaintiffs' proposed new claims.  For example, it declines to decide without further briefing whether the plaintiffs' proposed new claims are barred by the applicable statutes of limitations. *See, e.g.*, Former Defs.' Opp. to Pl.'s Mot. for Leave to File Second Amend. Compl. at 5, Buchanan Dkt. 103 (contending that the plaintiffs "let the statute of limitations run on any state law assault and battery claims"); *id.* at 24–25 & n.6 ("In the event the motion to amend is granted, the [federal damages defendants] reserve the right to challenge the viability of Plaintiffs' proposed claims on all available grounds at a later juncture in the case, including on a motion to dismiss.").  Instead, the Court will consider such arguments at the motion to dismiss stage, with the benefit of full briefing.

Accordingly, the Court will grant the plaintiffs leave to amend with respect to the following: the new factual allegations, including the allegations as to the identity of defendants previously sued as John Doe defendants, *see, e.g.*, *BLM* Fourth Amend. Compl. ¶¶ 1–201, *Buchanan* Second Amend. Compl. ¶¶ 1–129; the proposed damages claims against the United States under the Federal Tort Claims Act ("FTCA"), *BLM* Fourth Amend. Compl. ¶¶ 209–18, *Buchanan* Second Amend. Compl. ¶¶ 141–48, 156–62, 169–76; the *Buchanan* action's proposed damages claims against former President Trump in his individual capacity under D.C. law, *Buchanan* Second Amend. Compl ¶¶ 149–55, 163–68, 177–200; and BLMDC's proposed D.C. First Assemblies Act and negligence *per se* claims against the federal damages defendants, *BLM* Fourth Amend. Compl. ¶¶ 231–52.

13

2.      *Amendments Governed by Rules 59 and 60*

As to the plaintiffs' other proposed amendments, however, the Court will not grant relief under Federal Rule of Civil Procedure 59 or 60.  Under Rule 59, "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."  Fed. R. Civ. P. 59(e).  Meanwhile, under Rule 60(b), a court "may relieve a party . . . from a final judgment [or] order" for several enumerated reasons or "any other reason that justifies relief."  *Id.* 60(b)(6).  The parties agree that the time for amendment under Rule 59(e) has expired, and the defendants do not seek relief for any of Rule 60(b)'s enumerated reasons, so the Court must only decide whether relief from a judgment is warranted for "any other reason" under Rule 60(b)(6).

Even assuming a Rule 60(b)(6) motion is timely, such a motion requires "extraordinary circumstances."  *Kemp v. United States*, 596 U.S. 528, 533 (2022).  Rule 60(b)(6) motions "may not 'be employed to rescue . . . litigant[s] from strategic choices that later turn out to be improvident.'"  *Kramer v. Gates*, 481 F.3d 788, 792 (D.C. Cir. 2007) (quoting *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C. Cir. 1980)).  In a similar vein, "failure to raise a ripe issue precludes a finding of extraordinary circumstances" under Rule 60(b)(6) "unless that failure was essentially involuntary."  *United States v. Philip Morris USA Inc.*, 840 F.3d 844, 852 (D.C. Cir. 2016) (cleaned up).

The plaintiffs' failure to raise their D.C.-law theories of liability against the individual defendants is not "extraordinary" and does not warrant relief from a judgment under Rule 60(b)(6).  Nothing stopped the defendants from suing the federal damages defendants under D.C. law in their initial complaints.  As Judge Walker explained above, the cases favoring state-law suits are quite literally centuries old.  *Buchanan*, 71 F.4th at 1014 (Walker, J., concurring); *see, e.g.*, *Little v. Barreme*, 6 U.S. (2 Cranch) 170, 179 (1804); *Slocum v. Mayberry*, 15 U.S. (2 Wheat) 1, 10 (1817).

14

Similarly, scholars have debated whether the Westfall Act bars suits against federal officers sounding in state law for nearly a decade. *See, e.g.*, Carlos M. Vazquez & Stephen I. Vladeck, *State Law, the Westfall Act, and the Nature of the* Bivens *Question*, 161 U. Pa. L. Rev. 509, 571 (2013). And in his motions to dismiss the plaintiffs' initial complaints, Barr observed that "damages claims under state tort law" might provide the plaintiffs with "other potential avenues for relief." Def.'s William Barr & Gregory Monahan's Mot. to Dismiss All Individual-Capacity Claims at 23, Buchanan Dkt. 34; *accord* William Barr's Mot. to Dismiss All Individual-Capacity Claims at 28, BLM Dkt. 76. "Having failed to" raise their state-law theories "at any earlier stage of this litigation" without an excuse, the plaintiffs cannot now surmount "the high bar for Rule 60(b)(6) relief." *Philip Morris*, 840 F.3d at 853. Even if Judge Walker's solo concurrence had changed the law in this Circuit (and it did not), "extraordinary circumstances" require more than "an intervening change in case law." *Kramer v. Gates*, 481 F.3d 788, 792 (D.C. Cir. 2007); *see, e.g.*, *Akins v. Islamic Republic of Iran*, 549 F. Supp. 3d 104, 115 (D.D.C. 2021).

The reality that the plaintiffs' problems stem from their own "strategic choices"—their decision to seek partial final judgment under Rule 54(b)—also cuts strongly against relieving them from the Court's prior judgment. *Cf. Kramer*, 481 F.2d at 792. If the plaintiffs had not sought an immediate appeal of the Court's orders at the motion-to-dismiss stage, the Court would not have entered the partial final judgments that stand in the way of their proposed amendments. So too if the plaintiffs asked only for certification of an interlocutory appeal under 28 U.S.C. § 1292(b). The plaintiffs chose to seek a partial final judgment, and they must now accept the consequences of their "voluntary, deliberate, free, untrammeled choice." *Ackermann v. United States*, 340 U.S. 193, 200 (1950).

Against this backdrop, the *Black Lives Matter* plaintiffs do not argue that they are entitled to Rule 60(b)(6) relief.  They have therefore forfeited their arguments to the contrary.  *Salazar ex rel. Salazar v. District of Columbia*, 602 F.3d 431, 437 (D.C. Cir. 2010).  For their part, the *Buchanan* plaintiffs say that this case's exceptional public importance justifies granting relief under Rule 60(b)(6).  But courts in this district regularly refuse relief under Rule 60(b)(6) in cases just as important as, if not more important than, this one.  *See, e.g.*, *Salazar ex rel. Salazar v. District of Columbia*, 633 F.3d 1110, 1112–13 (D.C. Cir. 2011) (refusing relief from a judgment in structural-reform litigation "concerning medical services . . . provided by the District of Columbia government"); *Philip Morris*, 840 F.3d at 852 (refusing relief from judgment against Philip Morris restricting cigarette company's advertising); *Twelve John Does v. District of Columbia*, 841 F.2d 1133, 1141–42 (D.C. Cir. 1988) (refusing relief in structural-reform case dealing with D.C. prison conditions).  The *Buchanan* plaintiffs present no decision from this Circuit pointing in the other direction.

For these reasons, the plaintiffs' motions to assert several new causes of action for damages against Barr and the other federal damages defendants under D.C. law are foreclosed under Rules 59 and 60.  Accordingly, the Court will deny the motions to amend to the extent that: (1) the *Buchanan* and individual *Black Lives Matter* plaintiffs seek damages against the federal damages defendants for assault and battery under D.C. law, *see BLM* Fourth Amend. Compl. ¶¶ 219–30; *Buchanan* Second Amend. Compl. ¶¶ 149–55, 163–68; (2) the *Buchanan* plaintiffs seek damages against the federal damages defendants for intentional infliction of emotional distress under D.C. law, *Buchanan* Second Amend. Compl. ¶¶ 177–82; and (3) the plaintiffs (excluding BLMDC, which was not a party to the Court's partial final judgments and thus cannot be bound by them) seek damages against the federal damages defendants for violations of the D.C. First Amendment

Assembles Act and negligence *per se* under D.C. law, *BLM* Fourth Amend. Compl. ¶¶ 231–52, *Buchanan* Second Amend. Compl. ¶¶ 183–201.

## CONCLUSION

For the reasons stated, the Court will grant the plaintiffs' motions for leave to amend in part and deny them in part.  A separate order accompanies this memorandum opinion.

March 13, 2024                                               DABNEY L. FRIEDRICH
                                                           United States District Judge