UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BLACK LIVES MATTER D.C., et al.,<br>*Plaintiffs*,<br>v.<br>WILLIAM P. BARR, et al.,<br>*Defendants*. | Case No. 1:20-cv-01469-DLF<br><br>Consolidated with No. 20-01542 (DLF) |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF OBJECTION TO WESTFALL ACT CERTIFICATION**

The United States has filed a certification under the Federal Employees Liability Reform and Tort Compensation Act of 1988 (Westfall Act), seeking to have itself substituted for twelve of its officers, and those officers dismissed, as to Claims 13 and 14 asserted by Plaintiff Black Lives Matter D.C. (BLMDC) in the Fourth Amended Complaint. Plaintiff BLMDC objects to the certification as legally impermissible because the Westfall Act does not apply to civil actions against employees of the Government brought for a violation of the Constitution.

In the Westfall Act, Congress amended the FTCA to provide that a suit against the United States is generally the exclusive remedy for tortious conduct of government employees acting with the scope of their employment, 28 U.S.C. § 2679(b)(1), and that the United States may substitute itself for such employees when they are sued, 28 U.S.C. § 2679(d). However, the Westfall Act contains a critical exception as well: the FTCA's exclusive-remedy provision "does not extend or apply to a civil action against an employee of the Government [] which is brought for a violation of the Constitution of the United States." 28 U.S.C. § 2679(b)(2)(A). Plaintiff's Claims 13 and 14 in the Fourth Amended Complaint against twelve individual federal officers are civil actions

brought for violations of the Constitution and accordingly fall within this exception. Thus, the United States' attempt to substitute itself is not authorized, and the claims may proceed.

Plaintiff's argument proceeds in two steps. First, as Judge Walker posited in his concurrence on appeal in this case, *see Buchanan v. Barr*, 71 F.4th 1003, 1012-18 (D.C. Cir. 2023) (Walker, J., concurring), the Westfall Act carveout from the exclusive remedy provision preserves claims against individual officers "brought for a violation of the Constitution," 28 U.S.C. § 2679(b)(2)(A), under a state or local cause of action, not just if asserted via *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). The statutory text does not limit the exception to *Bivens* claims. The historical vehicle for seeking relief for a constitutional violation by a federal officer was state law. So the Westfall Act, by exempting the category of actions "brought for a violation of the Constitution," affirmatively preserved state-law claims brought for the purpose of remedying a violation of the Constitution. *See Buchanan*, 71 F.4th at 1016 (Walker, J., concurring). To hold otherwise would assume that Congress, in virtually every circumstance, eliminated *all* causes of action "brought for a violation of the Constitution of the United States." Such a reading would render § 2679(b)(2)(A) practically meaningless and would pose "serious constitutional question[s]." *Webster v. Doe*, 486 U.S. 592, 603 (1988). Thus, the Westfall Act preserves plaintiffs' ability to bring state and local claims "brought for a violation of the Constitution."

Second, Claims 13 and 14—one asserting a violation of the D.C. First Amendment Assemblies Act (FAAA) directly and the other asserting a common-law negligence per se claim based on a violation of the FAAA—fit comfortably within this provision. They are claims "brought for a violation of the Constitution" because they are, in substance, claims of viewpoint discrimination in violation of the First Amendment. The provision of the FAAA giving rise to these claims prohibits suppressing a demonstration "based on the content of the beliefs expressed

or anticipated to be expressed." D.C. Code § 5-331.04(c). The clear parallel between this prohibition and the contours of core First Amendment doctrine prohibiting viewpoint discrimination shows that what Plaintiff BLMDC is challenging via its FAAA claims is, in essence, a violation of the Constitution. Thus, Claims 13 and 14 fit squarely into the FTCA's carveout for claims "brought for a violation of the Constitution of the United States," 28 U.S.C. § 2679(b)(2)(A), and so this Court should refuse to dismiss the individual federal officer defendants from the case.

## BACKGROUND

On June 1, 2020, peaceful protestors gathered in Lafayette Square across from the White House—a quintessential public forum for constitutionally protected speech—to protest systemic injustices perpetrated by law enforcement in the United States, exemplified by the murder of George Floyd just days before. ECF 213 (Fourth Amended Complaint) ¶¶ 59-60. As demonstrations sparked across the country, then-President Trump expressed his animus toward protestors who mobilized in support of Black lives and an intent to "dominate" demonstrators who disagreed with him. *Id.* ¶ 49; *see generally id.* ¶¶ 44-58.

Without provocation, federal officers, at the direction of the Attorney General, launched a coordinated, violent attack on Plaintiffs and other demonstrators as they were peacefully exercising their First Amendment rights. *Id.* ¶¶ 75-94. Officers charged at the demonstrators, struck them with batons and shields, and fired tear gas, pepper spray capsules, rubber bullets, and flash bangs into the peacefully gathered crowd, forcing the demonstrators to flee the area. *Id.* As Plaintiffs fled from the square, some encountered officers of the D.C. Metropolitan Police Department, who fired tear gas at them as they attempted to reach safety. *Id.* ¶¶ 95-98. As a result of Defendants' actions, the individual Plaintiffs and members of Plaintiff BLMDC suffered physical injuries and

symptoms related to exposure to chemical irritants, and many became fearful of police violence when exercising their constitutional right to engage in peaceful protest. *Id.* ¶¶ 103-156.

## PROCEDURAL HISTORY

Plaintiffs filed this action three days later, on June 4, 2020, alleging violations of the First and Fourth Amendments and conspiracy to violate civil rights. ECF 1. Five days later, they filed their First Amended Complaint to add class allegations and an additional category of defendant officers based on newly discovered information. ECF 11. The Second Amended Complaint added additional claims and new plaintiffs. ECF 29. The Third Amended Complaint, filed September 3, 2020, identified defendants previously named only as John Does. ECF 50, 52. All Defendants moved to dismiss.

In June 2021, the Court dismissed many of the claims, including Plaintiffs' *Bivens* claims against twelve federal officers—William P. Barr, Mark Adamchik, Cara Seiberling, Thomas LoCascio, Nicholas Jarmuzewski, Jeffrey Hendrickson, Sean Cox, Bryan McDonald, Lawrence Sinacore, Jonathan Daniels, Luis Feliciano, and Sean Kellenberger (collectively, "Federal Officer Defendants"). ECF 159. The parties then entered into settlement negotiations, and proceedings in this Court were stayed for nine months. *See* July 14, 2021 Minute Order; ECF 183. In April 2022, the parties settled claims against the federal defendants sued in their official capacities. ECF 182. Plaintiffs then moved for partial final judgment with respect to the claims against the federal officers sued in their individual capacities; the court granted the motion on May 16, 2022. ECF 185. That same day, Plaintiffs appealed from the Court's dismissal of their *Bivens* claims, ECF 186, 187, and—pending that appeal—proceedings in this Court were again stayed. ECF 185.

The D.C. Circuit affirmed this Court's judgment dismissing the Bivens claims. *Buchanan v. Barr*, 71 F.4th 1003 (D.C. Cir. 2023). Of relevance to the dispute now before this Court, Judge

Walker wrote a concurring opinion suggesting that claims other than *Bivens* could be a viable means to obtain redress for constitutional violations by the Federal Officer Defendants individually: namely, certain claims under state or local law that could be (as stated in the Westfall Act) "brought for a violation of the Constitution of the United States." 28 U.S.C. § 2679(b)(2)(A). *See Buchanan*, 71 F.4th at 1016 (Walker, J., concurring).

Plaintiffs moved to amend their complaint in November 2023. ECF 191. In March 2024, the Court granted the motion in part and denied it in part. As relevant here, the Court permitted the individual Plaintiffs to add two claims against the United States under the FTCA and Plaintiff BLMDC to add two claims against the Federal Officer Defendants individually based on the D.C. First Amendment Assembles Act (FAAA). ECF 198, 199. Plaintiffs filed their Fourth Amended Complaint in April 2024, adding the FTCA and FAAA claims as Claims 11-12 and 13-14, respectively. ECF 213.

On April 19, 2024, the United States filed the certification at issue here, seeking to have itself substituted for Federal Officer Defendants, and those officers dismissed, as to the FAAA claims by Plaintiff BLMDC. ECF 219. BLMDC promptly objected the following day, ECF 220, and pursuant to this Court's minute order of April 22, 2024, now files this memorandum to explain why certification should be denied.

**ARGUMENT**

The government's certification is subject to challenge. *See De Martinez v. Lamagno*, 515 U.S. 417, 429 (1995) (rejecting the view that "Congress . . . assigned to the federal court only rubber-stamp work" when the government has made a Westfall Act certification); *Wuterich v. Murtha*, 562 F.3d 375, 381 (D.C. Cir. 2009) ("A plaintiff may contest the Attorney General's scope-of-employment certification before a district court."). Thus, "[a]lthough a Westfall Act

certification is conclusive for the purposes of removal, such a certification is not necessarily conclusive as to the substitution of the federal government as the defendant." *Taylor v. Clark*, 821 F. Supp. 2d 370, 373 (D.D.C. 2011) (citation omitted).

Although objections to certification more commonly contest the factual contention that the employees in question were acting within the scope of their employment, a certification might be invalid for legal reasons as well. For instance, certification would not be effective as to "*Bivens* claims against individual federal officials," *Harbury v. Hayden*, 522 F.3d 413, 418 n.2 (D.C. Cir. 2008) (Kavanaugh, J.), because the carveout from the exclusive-remedy provision, 28 U.S.C. § 2679(b)(2)(A), encompasses *Bivens* claims, *see Hui v. Castaneda*, 559 U.S. 799, 807 (2010).

Similar reasons undergird Plaintiff BLMDC's objection to certification here. Like *Bivens* claims, Plaintiff's D.C.-law claims based on the FAAA are "brought for a violation of the Constitution of the United States." 28 U.S.C. § 2679(b)(2)(A).[1] As Judge Walker posited in his concurrence in the D.C. Circuit decision in this case, the carveout at § 2679(b)(2)(A) preserves state- and local-law, as well as *Bivens*, claims "brought for a violation of the Constitution of the United States." *See Buchanan*, 71 F.4th at 1016 (Walker, J., concurring).

## I. The Westfall Act Provides for FTCA Substitution for Ordinary Tort Claims Against Federal Employees but Explicitly Exempts Claims Brought for a Violation of the Constitution.

Congress enacted the Westfall Act in 1988 to overturn the Supreme Court's decision in *Westfall v. Erwin*, 484 U.S. 292 (1988). In that case, the Court held that federal employees supervising a military supply depot lacked immunity from an ordinary state tort claim by a depot worker who alleged that the defendants had negligently stored toxic ash that ended up causing the plaintiff chemical burns to his eyes and throat when the ash spilled out of its bag and he inhaled it.

[1] Plaintiffs no longer pursue *Bivens* claims here in light of D.C. Circuit's decision on appeal.

*Id.* at 293-94. No constitutional violation was implicated in the case, which alleged simple negligence; no constitutional right is discussed anywhere in the opinion.

Congress responded by enacting the Westfall Act, which provided:

> The remedy against the United States provided by sections 1346(b) and 2672 of this title for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim or against the estate of such employee. Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded without regard to when the act or omission occurred.

28 U.S.C.A. § 2679(b)(1). This "exclusive remedy" provision was subject to an important exception: The Westfall Act preserves actions against federal employees "brought for a violation of the Constitution of the United States." 28 U.S.C. § 2679(b)(2)(A).

Most of the Plaintiffs in this case argued (unsuccessfully) to the court of appeals that the Act's exception at 28 U.S.C. § 2679(b)(2)(A) for civil actions "brought for a violation of the Constitution," preserved *Bivens* remedies that existed at the time Congress passed the Westfall Act in 1988. Judge Walker, while concurring in the panel's rejection of Plaintiffs' view, explained how § 2679(b)(2)(A) could be read to preserve a *different* category of claims: state and local law claims, which were "[f]or most of our history" available to "those injured by federal officers' unconstitutional conduct." *Buchanan*, 71 F.4th at 1012 (Walker, J. concurring).

Plaintiff BLMDC now asserts against the Federal Officer Defendants two local law claims of that type: a statutory claim and a negligence per se claim, each invoking the D.C. First Amendment Assemblies Act (FAAA) to challenge viewpoint discrimination in violation of the First Amendment. Because these are claims against federal employees "brought for a violation of the Constitution of the United States," 28 U.S.C. § 2679(b)(2)(A), they are exempt from the

exclusive-remedy provision of § 2679(b)(1), and the United States cannot be substituted for the Federal Officer Defendants. Instead, Plaintiff's claims should be allowed to proceed against the individual officers.

## II. The Westfall Act's Carveout Applies to State Law Claims Brought for a Violation of the Constitution.

While the Supreme Court has recognized that the class of claims that the Westfall Act exempted from the exclusive-remedy provision—claims against federal employees "brought for a violation of the Constitution," 28 U.S.C. § 2679(b)(2)(A)—includes *Bivens* claims, *see, e.g.*, *Hui*, 559 U.S. at 807, it has never held that this phrase includes *only Bivens* claims. The plain meaning of the provision's text—along with the practice of constitutional enforcement against federal employees throughout nearly all of our Nation's history, the implications of a contrary construction, principles of statutory construction, and the canon of constitutional avoidance—shows why the carveout covers state and local, as well as *Bivens*, claims "brought for a violation of the Constitution." 28 U.S.C. § 2679(b)(2)(A).

**A. Text and History.** In construing a statute, courts "look first to its language, giving the words used their ordinary meaning." *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 100 (2012) (citations and internal quotation marks omitted). And history can help elucidate that meaning. *See, e.g.*, *Tanzin v. Tanvir*, 592 U.S. 43, 49 (2020).

The plain language of the Westfall Act does not limit its exception to the exclusive remedy provision to federal claims alone. By its terms, the carveout applies to any action "brought for a violation of the Constitution," 28 U.S.C. § 2679(b)(2)(A), no matter the source of law.

History supports this understanding. An action "brought for a violation of the Constitution," 28 U.S.C. § 2679(b)(2)(A), has, since the Founding, been recognized to include state and local law claims brought to vindicate constitutional rights. Indeed, for the vast majority

of our Nation's history, these claims would have been *all* that this phrase referred to. "From the ratification of the Bill of Rights until 1971 [when the Court decided *Bivens*], the Court did not create implied private action[s] for damages against federal officers alleged to have violated a citizen's constitutional rights," yet such plaintiffs were not without remedy because "[s]uits to recover such damages were generally brought under state tort law." *Hernandez v. Mesa*, 589 U.S. 93, 115-16 (2020) (Thomas, J., concurring). "The Framers saw state common-law suits as an important check on federal misconduct." *Buchanan*, 71 F.4th at 1012 (Walker, J. concurring). In these suits for damages, federal officials were beholden to state law, while "[f]ederal law . . . supplie[d] the defense, if the conduct complained of was done pursuant to a federally imposed duty." *Wheeldin v. Wheeler*, 373 U.S. 647, 652 (1963). Where that defense failed because the conduct was unconstitutional, damages were due.

For instance, in *Little v. Barreme*, the Supreme Court held that a U.S. Navy Captain was liable for trespass where an order to seize a ship, given by President Adams himself, was contrary to federal law, and thus the seizure was "a plain trespass." 6 U.S. (2 Cranch) 170, 179 (1804). In *Mitchell v. Harmony*, the Supreme Court affirmed trespass liability for a military officer who had seized property, under orders. 54 U.S. 115, 137 (1851). Other examples of common law cases against federal officers abound; these demonstrate that such "common-law causes of action remained available through the 19th century and into the 20th." *Tanzin*, 592 U.S. at 49 (collecting examples).

Before *Bivens*, the state common law tort of trespass "provided virtually the only civil remedy against Fourth Amendment violations perpetrated by federal officials." Akhil Reed Amar, *Using State Law to Protect Federal Constitutional Rights: Some Questions & Answers About Converse-1983*, 64 U. Colo. L. Rev. 159, 160 (1993). Although "the ultimate issue before the court

concerned the federal Constitution," the "cause of action was supplied by state law." *Buchanan*, 71 F.4th at 1014 (Walker, J., concurring) (cleaned up); *see also Browder v. City of Albuquerque*, 787 F.3d 1076, 1084 (10th Cir. 2015) (Gorsuch, J., concurring) ("Often, after all, there's no need to turn federal courts into common law courts and imagine a whole new tort jurisprudence under the rubric of § 1983 and the Constitution in order to vindicate fundamental rights when we have state courts ready and willing to vindicate those same rights using a deep and rich common law that's been battle tested through the centuries.").

Indeed, in *Bivens* itself, the Solicitor General argued that "there was no need to create a new federal remedy for Fourth Amendment violations, because 'a body of state law' already provided 'substantial recovery.'" *Buchanan*, 71 F.4th at 1017 n.6 (Walker, J., concurring) (citation omitted). The government's premise was correct: even after *Bivens*, although most plaintiffs now invoked the *Bivens* cause of action, "state law continued to provide causes of action for damages, even in cases where *Bivens* was available." Thomas Koenig & Christopher D. Moore, *Of State Remedies and Federal Rights* 15-16 (May 29, 2023), *at* https://ssrn.com/abstract=4462807 (footnotes omitted). Meanwhile, in its early *Bivens* jurisprudence, the Court implicitly acknowledged state law causes of action by finding them *insufficient*—not *unavailable*. *See* Carlos M. Vázquez & Stephen I. Vladeck, *State Law, the Westfall Act, and the Nature of the Bivens Question*, 161 U. Pa. L. Rev. 509, 549-50 (2013) (analyzing *Carlson v. Green*, 446 U.S. 14 (1980)).

After the Westfall Act, the Court continued to recognize the continued viability of state tort claims for constitutional violations. In *Wilkie v. Robbins*, 551 U.S. 537 (2007), the Court rejected a *Bivens* claim for governmental retaliation against a landowner who refused grant the government an easement across his land; en route to so holding, the Court observed that the plaintiff had other remedies against the Bureau of Land Management officials who had allegedly engaged in the

retaliatory harassment. Specifically, one of the actions of which the plaintiff complained was the unauthorized entry of Bureau of Land Management employees onto the grounds of plaintiff's guest lodge; *id.* at 547; the Court stated that the plaintiff "had a civil remedy in damages for trespass" for that invasion and reiterated that, although he chose not to pursue it, there was "no question" that the action was "available to him if he could prove his allegations." *Id.* at 551.

Because the Westfall Act expressly preserves suits "brought for a violation of the Constitution," § 2679(b)(2)(A), state law claims remain available to obtain damages against a federal employee where the plaintiff seeks a remedy for conduct violating her rights under the Constitution. In such a case, the "purpose" of the suit "is to remedy a constitutional violation," and accordingly, as a matter of plain meaning, the action falls within the category of remedies Congress preserved. *See Buchanan*, 71 F. 4th at 1016 (Walker, J., concurring). It is especially clear that a state or local cause of action is preserved where the suit is brought under a state or local law that provides a cause of action for constitutional violations themselves, such that "a constitutional violation is part of the plaintiff's cause of action." *Id.* One example of this type is an "'action on the statute,' alleging a 'cause of action in tort resulting from activity in violation of a legislatively created duty or standard.'" *Id.* (quoting Vázquez & Vladeck, *supra*, at 538-39 (cleaned up)). Modern analogues to this cause of action are implied statutory causes of action and "the black letter tort of negligence per se," Vázquez & Vladeck, *supra*, at 539—precisely the two causes of action that Plaintiff BLMDC asserts here to enforce the FAAA's prohibition on viewpoint discrimination that violates the First Amendment.

The absence of any statutory language excluding state and local law claims from the ambit of 28 U.S.C. § 2679(b)(2)(A) is particularly notable when contrasted with the many explicit exceptions and limitations that appear throughout the FTCA. *See* 28 U.S.C § 2680 (listing 13

exceptions to the FTCA's authorization of a cause of action against the government). Courts "do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply, and our reluctance is even greater when Congress has shown elsewhere in the same statute that it knows how to make such a requirement manifest." *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 341 (2005).

"Nor is there any such thing as a 'canon of donut holes,' in which Congress's failure to speak directly to a specific case that falls within a more general statutory rule creates a tacit exception. Instead, when Congress chooses not to include any exceptions to a broad rule, courts apply the broad rule." *Bostock v. Clayton Cnty.*, 590 U.S. 644, 669 (2020). More generally, "it is never [courts'] job to rewrite a constitutionally valid statutory text." *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 89 (2017).

Because an action "brought for a violation of the Constitution," 28 U.S.C. § 2679(b)(2)(A), includes—indeed, has always included—actions under state law to vindicate constitutional rights, that is how the Court should interpret the phrase now.

**B. Implications.** The plain meaning of the text is buttressed by comparing it to the alternative. Reading the Westfall Act to eradicate state and local law suits "brought for a violation of the Constitution," § 2679(b)(2)(A), would render that provision practically meaningless.

As interpreted by the Supreme Court and the D.C. Circuit, the effect of that clause with respect to *Bivens* suits is to preserve only claims arising under the specific circumstances in the three Supreme Court cases recognizing *Bivens* actions. *See Hernandez*, 589 U.S. at 111 n.9; *Buchanan*, 71 F.4th at 1008 ("As Supreme Court precedent makes clear, any new *Bivens* claim must still satisfy the analytic framework prescribed by the last four decades of intervening case law." (cleaned up)). *Bivens* analysis contains two steps: (1) determine "whether the case presents

a new *Bivens* context," and, if so, (2) determine "whether there are special factors" that suggest "there is *even a single reason* to pause before applying *Bivens* in a new context." *Egbert v. Boule*, 596 U.S. 482, 492 (2022) (emphasis added; citation and internal quotation marks omitted). The Supreme Court has squarely recognized a *Bivens* claim in just three circumstances—a warrantless search and seizure in a home, employment discrimination by a Member of Congress based on sex, and denial of medical care at a prison, *see Hernandez*, 589 U.S. at 116—so any situation outside of those three contexts is "new." *See Ziglar v. Abbasi*, 582 U.S. 120, 139 (2017) ("If the case is different in a meaningful way from previous *Bivens* cases decided by *this Court*, then the context is new." (emphasis added)); *accord Loumiet v. United States*, 948 F.3d 376, 382 (D.C. Cir. 2020) (stressing "*Abbasi*'s holding that the new-context analysis may consider only Supreme Court decisions approving *Bivens* actions").

In any "new context," a court must inquire into any "special factors"—a concept that is "exceedingly broad," *Buchanan*, 71 F.4th at 1008, rendering a *Bivens* remedy unavailable "[w]here there is even the *potential* that 'judicial intrusion' into a given field might be 'harmful' or 'inappropriate.'" *Id*. at 1009 (quoting *Egbert*, 596 U.S. at 496; emphasis added). If any difference from the original three Supreme Court *Bivens* cases qualifies a plaintiff's claim as a new context, and there will be special factors precluding a *Bivens* remedy "in most every case," *Egbert*, 596 U.S. at 492, the upshot is that *Bivens* claims are functionally limited to cases presenting the exact facts of the Supreme Court's first three *Bivens* cases. *See Byrd v. Lamb*, 990 F.3d 879, 883 (5th Cir. 2021) (Willett, J., specially concurring) ("Virtually everything beyond the specific facts of the *Bivens* trilogy is a new context . . . . And new context = no *Bivens* claim." (footnotes and internal quotation marks omitted)). Accordingly, absent Judge Walker's reading of § 2679(b)(2)(A) as allowing state- and local-law claims to vindicate constitutional rights,

preserving *Bivens* claims in the three specific sets of circumstances the Supreme Court considered in its first three *Bivens* cases is all the clause would do.

That reading of § 2679(b)(2)(A) is thoroughly implausible. It would assume Congress meant to differentiate the three *Bivens* contexts that happened to reach the Supreme Court in the first decade of the *Bivens* doctrine from every other constitutional violation—all without a word of text suggesting that result. If Congress meant for this language to cover only three Supreme Court cases, it would have used far more specific and limiting language—language of the kind used in the very next section of the FTCA. *See* 28 U.S.C. § 2680 (listing exceptions to liability). Plaintiffs are aware of no instance in which Congress enacted statutory language prescribing a rule for a broad category of claims, and yet was deemed to have limited that rule to a tiny fraction of claims in that category without saying so.

**C. Statutory Canons.** Principles of statutory interpretation likewise support reading the Westfall Act carveout to permit state and local suits "brought for a violation of the Constitution." 28 U.S.C. § 2679(b)(2)(A).

First, it is a basic principle of statutory interpretation that Congress does not "hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001). It is quite unlikely that Congress would have silently abrogated an essential check on federal power inherited from the English common law tradition and relied upon since the Founding—indeed, one that "profoundly influenced the drafting of the drafting of the Fourth Amendment" itself. *Buchanan*, 71 F.4th at 1015 (Walker, J., concurring). This assumption is especially dubious because the text Congress enacted reflected the opposite intent—to *preserve* constitutional enforcement actions, not to scuttle them. The notion that Congress hid this particular elephant in this particular mousehole is doubtful for yet a third reason: in passing the Westfall Act, Congress was responding

to the specific decision in *Westfall v. Erwin*, 484 U.S. 292 (1988). That case, as noted above, was not about the type of historical, pre-*Bivens* constitutional enforcement action using state or local law as a vehicle to vindicate fundamental rights. It was, instead, a garden-variety negligence claim. *See supra* Part I. Thus, even if the statutory words of the Westfall Act carveout were ambiguous (and they are not), it would be incongruous to read the Westfall Act as abolishing a traditional category of claims that had nothing to do with the reason for Congress's passing the Act in the first place.

Second, "[s]tatutes which invade the common law . . . are to be read with a presumption favoring the retention of long-established and familiar principles, except when a statutory purpose to the contrary is evident." *United States v. Texas*, 507 U.S. 529, 534 (1993) (citation and internal quotation marks omitted); *accord, e.g.*, *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 489 (2008). Given the long history of common-law actions to enforce constitutional rights, *see supra* Part II.A, this canon applies with full force here. Congress would be expected to use "exceptionally clear language" to abrogate state-law tort suits; not only does no such language appear, but the text of the statute dictates the opposite result, as the Westfall Act contains text "tailored to *preserve*" such remedies. *Buchanan*, 71 F.4th at 1017 (Walker, J., concurring). If Congress had intended § 2679(b)(2)(A) to apply only to *Bivens* actions and not their traditional state law counterparts, Congress could have drafted the carveout to preserve actions "brought under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971)" or "brought under federal law for a violation of the Constitution." Neither of these is what the text of § 2679(b)(2)(A) says. *Cf. Bostock v. Clayton Cnty.*, 590 U.S. 644, 656-57 (2020) (refusing to read limitations into a statute where "Congress could have taken a more parsimonious approach" but

did not). Accordingly, the presumption in favor of common law principles counsels against reading limitations into that provision.

**D. Constitutional Avoidance.** Rejecting the plain-meaning approach laid out by Judge Walker poses an additional problem: it would raise a potential constitutional infirmity. Courts should, of course, strive to interpret statutes so as to avoid such a reading: "[W]hen deciding which of two plausible statutory constructions to adopt, a court must consider the necessary consequences of its choice. If one of them would raise a multitude of constitutional problems, the other should prevail—whether or not those constitutional problems pertain to the particular litigant before the Court." *Clark v. Martinez*, 543 U.S. 371, 380-81 (2005); *accord, e.g.*, *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988); *NLRB v. Catholic Bishop of Chi.*, 440 U.S. 490, 500 (1979).

Excluding state and local law claims from the ambit of § 2679(b)(2)(A) would raise "serious constitutional question[s]" by leaving most plaintiffs without "any judicial forum for a colorable constitutional claim." *Webster v. Doe*, 486 U.S. 592, 603 (1988); *accord, e.g.*, *Bowen v. Mich. Acad. of Fam. Physicians*, 476 U.S. 667, 681 n. 12 (1986); *Johnson v. Robison*, 415 U.S. 361, 366 (1974). As the D.C. Circuit has explained, "[I]t has become something of a time-honored tradition for the Supreme Court and lower federal courts to find that Congress did not intend to preclude altogether judicial review of constitutional claims in light of the serious due process concerns that such preclusion would raise. These cases recognize and seek to accommodate the venerable line of Supreme Court cases that casts doubt on the constitutionality of congressional preclusion of judicial review of constitutional claims." *Bartlett v. Bowen*, 816 F.2d 695, 699-700 (D.C. Cir. 1987); *see id.* at 700 n. 15 (citing examples).

Understanding how an unduly narrow reading of the Westfall Act carveout obstructs judicial review of certain constitutional claims requires a brief review of the scope both of the FTCA and of *Bivens*—the two methods for constitutional enforcement, aside from state and local law claims, that the Westfall Act allows. To the extent constitutional violations are tortious, the FTCA *may* reach them, as it provides a cause of action against the United States for individuals injured by federal employees' conduct (within the scope of their employment) that would be tortious under local law. 28 U.S.C. § 1346(b)(1). But some constitutional claims will escape the FTCA's reach because of its many exceptions. For instance, the FTCA is unavailable for claims "arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights," except for those falling within the first six categories if committed by an "investigative or law enforcement officer." 28 U.S.C. § 2680(h). The FTCA is likewise unavailable for certain claims involving customs, taxation, or the detention of property more generally by "any other law enforcement officer," 28 U.S.C. § 2680(c); claims "caused by the imposition or establishment of a quarantine by the United States," *id.* § 2680(f); claims arising abroad, *id.* § 2680(k); and certain claims involving the mail, *id.* § 2680(b), admiralty, *id.* § 2680(d), national security, *id.* § 2680(e), monetary regulation, *id.* § 2680(i), the military, *id.* § 2680(j), or a swath of federal entities—the Tennessee Valley Authority, Panama Canal Company, or "a Federal land bank, a Federal intermediate credit bank, or a bank for cooperatives," *id.* § 2680(l), (m), (n). Thus, a cross-section of serious constitutional violations—for instance, interference with contract rights based on a person's race, *see id.* § 2680(h), seizure by a federal customs officer of a book or film based on its content, *see id.* § 2680(c); seizure of a federal prisoner's religious items by correctional officers, *see Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 216 (2008) (so holding, pursuant to § 2680(c));

and detaining people under quarantine because of a pandemic, *see* 28 U.S.C. § 2680(f)—would, even if tortious under state or local law, evade judicial redress under the FTCA.

These lacunae might, during a brief period of history, have been filled by *Bivens* actions. But because the *Bivens* remedy has been limited to three particular sets of circumstances, *see supra* Part II.B, that remedy is unavailable to fill in the gaps in the coverage of the FTCA as to constitutional violations by federal employees.

All that is left to fill these gaps are the traditional, historical remedies: state and local claims "brought for a violation of the Constitution" 28 U.S.C. § 2679(b)(2)(A)—unless the Westfall Act carveout is read to exclude these claims as well. In that case, the Westfall Act would have placed a subset of constitutional violations by federal officers beyond the reach of a civil remedy.

That result would raise "serious due process concerns." *Bartlett*, 816 F.2d at 699; *accord Webster*, 486 U.S. at 603; *see also Byrd v. Lamb*, 990 F.3d 879, 883-84 (5th Cir. 2021) (Willett, J., specially concurring) (warning that it would raise "serious constitutional concerns" to "slam[ ] shut" the "courthouse doors" on "victims of unconstitutional conduct"); William Baude, *Bivens Liability and Its Alternatives*, Summary, Judgment (Feb. 27, 2020) ("It does seem perverse to think that Congress can eliminate state law damages for constitutional violations without either Congress or the courts providing an alternative."), *at* https://perma.cc/BL77-3JSU. As Judge Walker observed, "If federal officers had been above the law at the Founding, the new rights won at Yorktown and guaranteed by the Bill of Rights would have been significantly declawed." *Buchanan*, 71 F.4th at 1015 (Walker, J., concurring). These concerns about constitutional unaccountability might yet "be premature," *id.*—but only if Judge Walker's reading of the Westfall Act is correct.

* * *

In sum, as Judge Walker recognized, Plaintiff's reading of the Westfall Act "finds support in the text of the statute, accords with Founding-era principles of officer accountability, and closes a remedial gap—ensuring relief for those injured by federal officers' unconstitutional conduct." *Buchanan*, 71 F.4th at 1017 (Walker, J., concurring). For all of these reasons and those detailed above, the Court should read the Westfall Act carveout as encompassing state and local, as well as *Bivens*, claims "brought for a violation of the Constitution." 28 U.S.C. § 2679(b)(2)(A).

**III. Plaintiff's FAAA Claims Are "Brought for a Violation of the Constitution."**

Plaintiff avers that the Federal Officer Defendants violated D.C. Code § 5-331.04(c), which provides: "No time, place, or manner restriction regarding a First Amendment assembly shall be based on the content of the beliefs expressed or anticipated to be expressed during the assembly . . . ." Plaintiffs assert cause of actions under the FAAA itself and through negligence per se.

These claims are "brought for a violation of the Constitution." 28 U.S.C. § 2679(b)(2)(A). The FAAA violation of which Plaintiff complains consists of viewpoint discrimination forbidden by the First Amendment. Viewpoint discrimination is "discriminat[ion] against speech based on the ideas or opinions it conveys." *Iancu v. Brunetti*, 588 U.S. 388, 393 (2019). "It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys," and thus "[d]iscrimination against speech because of its message is presumed to be unconstitutional." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995). To determine whether government action is viewpoint discriminatory, courts consider, *inter alia*, (1) whether defendants have indicated that speakers with different messages would be treated differently, *see, e.g.*, *Mahoney v. Babbitt*, 105 F.3d 1452, 1456 (D.C. Cir. 1997), and (2) whether defendants did in fact treat speakers with different messages differently, *see, e.g.*, *Frederick Douglass Found., Inc. v. District of Columbia*, 82 F.4th 1122, 1142 (D.C. Cir. 2023). The FAAA

codifies the First Amendment's prohibition against viewpoint discrimination, as it prohibits the same thing: suppressing speech "based on the content of the beliefs expressed or anticipated to be expressed." D.C. Code § 5-331.04(c).

Plaintiff BLMDC alleges that Defendants violated the First Amendment by "the suppression of a peaceful demonstration . . . based on the content of the beliefs expressed," and that "the Assembly would not have been suppressed had it been expressing a pro-Administration message." ECF 213 (Fourth Amended Complaint) ¶¶ 198, 207 (cleaned up). More specifically, Plaintiffs alleged that leading up to the attack, "President Trump repeatedly advocated the use of force against Black demonstrators and civil rights activists who were protesting in D.C. and around the nation," *id.* ¶ 44; that President Trump invoked a racist slogan used since 1967 "to advocate for police brutality and discriminatory practices targeting African Americans," *id.* ¶ 45; and that, by contrast, President Trump had "routinely been sympathetic to protesters whose views align with his own," *id.* ¶ 56, including tweeting to "encourage[] his supporters to engage in a counter-demonstration," to Plaintiffs' demonstration while disparaging those gathered in support of George Floyd, *id.* ¶ 58 (quoting a tweet reading, in part, "Tonight, I understand, is MAGA NIGHT AT THE WHITE HOUSE???"). Further reflecting the extreme hostility to the viewpoint expressed by Plaintiff BLMDC, its members, and the other civil rights demonstrators, President Trump said to the Chairman of the Joint Chiefs, referring to civil rights demonstrators, 'Can't you just shoot them. Just shoot them in the legs or something,'" *id.* ¶ 53, and a few days later President Trump "retweeted a message expressing feeling 'sicken[ed]' by '[t]he fact that [George Floyd] has been held up as a martyr,'" *id.* ¶ 55. Suppressing the demonstration because of its viewpoint constitutes both First Amendment viewpoint discrimination, as pleaded in the original complaint, *see* ECF 1, at ¶ 111 (Claim 1), and a violation of the FAAA's viewpoint-discrimination prohibition, D.C. Code

§ 5-331.04(c), which codifies the First Amendment's viewpoint-discrimination prohibition into D.C. law. *See* ECF 213 (Fourth Amended Complaint) ¶¶ 198, 207 (Claims 13 and 14).

Plaintiff's FAAA claims thus fit comfortably within the Westfall Act's carveout for claims "brought for a violation of the Constitution," 28 U.S.C. § 2679(b)(2)(A), because "a constitutional violation is part of the plaintiff's cause of action." *Buchanan*, 71 F.4th at 1016 (Walker, J., concurring). In fact, a constitutional violation here is not just *part* of the FAAA causes of action here: it is the whole thing.

**CONCLUSION**

The Court should reject the government's Westfall Act certification so that Plaintiff BLMDC may proceed with its claims against the Federal Officer Defendants—as Congress allowed in the Westfall Act carveout provision, and just as Plaintiff would have been able to do at the Founding. A proposed order is attached.

Dated: May 6, 2024

Respectfully submitted,

/s/ Scott Michelman
Scott Michelman (D.C. Bar No. 1006945)
Arthur B. Spitzer (D.C. Bar No. 235960)
Michael Perloff (D.C. Bar No. 1601047)
Joy Holden (D.C. Bar No. 90021283)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
OF THE DISTRICT OF COLUMBIA
529 14th Street NW, Suite 722
Washington, D.C. 20045
(202) 457-0800
smichelman@acludc.org

Kaitlin Banner (D.C. Bar No. 1000436)
Dennis Corkery (D.C. Bar No. 1016991)
WASHINGTON LAWYERS'
COMMITTEE FOR CIVIL RIGHTS AND
URBAN AFFAIRS

700 14th Street, NW, Suite 400
Washington, D.C. 20005
(202) 319-1000
kaitlin_banner@washlaw.org

David Brody (D.C. Bar No. 1021476)
LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
1500 K Street N.W., Suite 900
Washington, D.C. 20005
(202) 662-8600
dbrody@lawyerscommittee.org

John A. Freedman (D.C. Bar No. 453075)
David E. Kouba (D.C. Bar No. 483145)
Sonia Tabriz (D.C. Bar No. 1025020)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, N.W.
Washington, D.C. 20004
(202) 942-5000
John.Freedman@arnoldporter.com

*Counsel for Plaintiffs*[2]

[2] Counsel wish to acknowledge the assistance of paralegal Elaine Stamp in the preparation of this brief.