UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BLACK LIVES MATTER D.C., *et al.*,

    *Plaintiffs*,

v.

WILLIAM P. BARR, *et al.*,

    *Defendants*.

No. 20-cv-1469 (DLF)

## MEMORANDUM OPINION

This lawsuit arises out of the law-enforcement response to protests in Lafayette Square on June 1, 2020. Before the Court is plaintiff Black Lives Matter, D.C. ("BLMDC")'s objection to the United States' Notice of Substitution under the Westfall Act. For the reasons that follow, the Court will overrule the objection.

**I.  BACKGROUND**

    **A.  Statutory Background**

When federal officials injure or threaten to injure private citizens, their victims have at least four ways to seek redress.

One path targets the United States under the Tucker Act or its younger brother, the Little Tucker Act. Both statutes waive the United States' sovereign immunity for lawsuits "founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. §§ 1346(a)(2), 1491(a)(1).[1] Neither statute

---

[1] Lawsuits under the "Little" Tucker Act must seek $10,000 or less in damages but may proceed either in federal district court or the Court of Federal Claims. *United States v. Hohri*, 482 U.S.

creates a cause of action, however. *Maine Cmty. Health Options v. United States*, 590 U.S. 296, 322 (2020). To proceed with a Tucker Act lawsuit, a plaintiff must "premise her damages action on 'other sources of law,' like 'statutes or contracts.'" *Id.* (quoting *United States v. Navajo Nation*, 556 U.S. 287, 290 (2009)).

Another path targets the United States under the Federal Tort Claims Act ("FTCA"). In general, the FTCA waives the United States' sovereign immunity for "claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). It also creates a private right of action, providing that "[t]he United States shall be liable" for its employees' torts "in the same manner and to the same extent as a private individual under like circumstances." *Id.* § 2674. But what the FTCA gives, it sometimes takes away. Among other things, the FTCA "[does] not apply" to claims "based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation . . . or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty . . . whether or not the discretion involved be abused." *Id.* § 2680(a). It also does not apply to "[a]ny claim arising in a foreign country," *id.* § 2680(k), or to "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights" save certain claims against investigative or law enforcement officers, *id.*

---

64, 72 (1987). Lawsuits under the Tucker Act proper may seek more than $10,000 but must proceed in the Court of Federal Claims. *Id.* These jurisdictional features of the Tucker Acts are not relevant to this case.

2

§ 2680(h). Further, the Act—as its name suggests—is limited to tort claims. "[C]onstitutional claims are not cognizable under the FTCA." *Harper v. Williford*, 96 F.3d 1526, 1528 (D.C. Cir. 1996) (per curiam).

Yet another path requires citizens to seek prospective relief against specific federal officials who have threatened them with injury. For example, if a citizen alleges that federal officials plan to take unlawful (or unconstitutional) action against her, she may sue to enjoin the officials from acting. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326–27 (2015). "The ability to sue to enjoin" official action in this way "is a judge-made remedy" and "is subject to express and implied statutory limitations." *Id.* at 327.

Finally, a citizen may seek money damages from the federal officer or officers who injured her. In rare cases, the Constitution itself authorizes suits for money damages against lawbreaking federal officers. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971); *Davis v. Passman*, 442 U.S. 228, 238–49 (1979); *Carlson v. Green*, 446 U.S. 14, 18–23 (1980). But actions directly under the Constitution are very much the exception. Such lawsuits typically proceed—or, historically at least, have typically proceeded—under state tort law, subject to any federal defenses that the officer(s) may raise. *Buchanan v. Barr*, 71 F.4th 1003, 1014–15 (D.C. Cir. 2023) (Walker, J.., concurring) (citing cases including *Little v. Barreme*, 6 U.S. (2 Cranch) 170 (1804)); *see* Richard H. Fallon, Jr. et al., *Hart and Wechsler's The Federal Courts and the Federal System* 880–82 (7th ed. 2015).

The relationship between the second path (suits against the United States under the FTCA) and the fourth path (suits against federal officers under state tort law) has not always run smoothly. Before 1988, federal officers sued for state-law torts could claim a limited immunity from suit under federal common law. *Barr v. Matteo*, 360 U.S. 564 (1959); *Howard v. Lyons*, 360 U.S. 593,

597 (1959). In 1988, the Supreme Court held that this immunity attached "only when the conduct of [the] federal official[]" was (1) "within the scope of [her] official duties" and (2) "discretionary in nature." *Westfall v. Erwin*, 484 U.S. 292, 297–98 (1988).

But Congress quickly abrogated *Westfall* and codified a broader immunity in its place. Ten months after the Supreme Court decided *Westfall*, Congress passed and the President signed the Federal Employees Liability Reform and Tort Compensation Act. Pub. L. No. 100-694, 102 Stat. 4563 (1988). The statute, also known as the Westfall Act, makes "[t]he remedy against the United States provided by" the FTCA "exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim." 28 U.S.C. § 2679(b)(1); *see Osborn v. Haley*, 549 U.S. 225, 229 (2007). "Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee . . . is precluded." 28 U.S.C. § 2679(b)(1). The Act also creates a procedure by which the United States may convert actions against its officers or employees into FTCA actions against it. "Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action commenced upon such claim in a United States district court shall be deemed an action against the United States . . . and the United States shall be substituted as the party defendant." 28 U.S.C. § 2679(d)(1); *Osborn*, 549 U.S. at 230.

The Westfall Act contains only two exceptions: it "does not extend or apply to a civil action against an employee of the Government—(A) which is brought for a violation of the Constitution of the United States, or (B) which is brought for a violation of a statute of the United States under which such action against an individual is otherwise authorized." *Id.* § 2679(b)(2). Today's case concerns these exceptions to the Act.

### B. Factual Background & Procedural History[2]

On June 1, 2020, protestors gathered in D.C.'s Lafayette Square "to protest racism and police brutality." *Buchanan*, 71 F.4th at 1006. Police dispersed the protest with batons, rubber bullets, and pepper spray. *Id.* In BLMDC's telling, the police "had no legitimate basis to destroy the peaceable gathering" and did so "to suppress the demonstrators' message." Pls.' Fourth Amend. Class Action Compl. ¶ 4, Dkt. 213.

Several protestors sued. Some, but not BLMDC, sought damages from the federal officials who dispersed their protest (or authorized its dispersal) under *Bivens v. Six Unknown Agents* and the First and Fourth Amendments. Third Amend. Class Action Compl. ¶¶ 220–30, Dkt. 52. This Court held that Supreme Court precedent foreclosed those plaintiffs' *Bivens* claims, and the D.C. Circuit unanimously affirmed. *Buchanan*, 71 F.4th at 1006. Judge Walker authored a separate concurrence. As he saw things, despite the failure of their *Bivens* claims, the protestors "[might] yet seek a remedy" under D.C. law—although Judge Walker was "not certain whether" such a suit could succeed. *Id.* at 1017 (Walker, J.., concurring).

On remand, the protestors and BLMDC moved to amend their complaint to add claims against the federal officials under D.C. law. Dkt. 191. The Court granted their motion in part. Dkt. 198. As is relevant here, it authorized BLMDC to raise claims against the federal officials under the D.C. First Amendment Assemblies Act, which bars the imposition of "time, place, or manner restriction[s]" on protests "based on the content of the beliefs expressed . . . during the" protest. D.C. Code § 5-331.04(c); *see* Dkt. 198. It also authorized BLMDC to raise negligence *per se* claims against those officials under D.C. tort law. Dkt. 198.

---

[2] The parties do not dispute the facts for purposes of BLMDC's objection. Accordingly, the Court recounts the facts as the parties have presented them.

The United States filed a Notice of Substitution under the Westfall Act. Dkt. 219. It argued that BLMDC's new claims could only proceed against the United States under the FTCA. *Id.* BLMDC objects to the Notice of Substitution. Dkt. 220. It contends that its claims may proceed under the Westfall Act's constitutional-tort exception. *Id.*

## II. LEGAL STANDARD

A plaintiff may object to a Notice of Substitution under the Westfall Act. *De Martinez v. Lamagno*, 515 U.S. 417, 425–26 (1995). In ruling on a plaintiff's objection, the Court decides all questions of law without deference. *See, e.g.*, *Jacobs v. Vrobel*, 724 F.3d 217, 220 (D.C. Cir. 2013); *Council on Am. Islamic Relations v. Ballenger*, 444 F.3d 659, 664–66 (D.C. Cir. 2006) (applying *de novo* review). It also decides questions of fact afresh, although "'[t]he Attorney General's certification that a federal employee was acting within the scope of his employment' . . . constitute[s] *prima facie* evidence" to that effect. *Council on Am. Islamic Relations*, 444 F.3d at 662 (quoting *De Martinez*, 515 U.S. at 434).

## III. DISCUSSION

The Westfall Act makes the FTCA's remedies "exclusive" for all claims within their scope. 28 U.S.C. § 2679(b)(1). The Act does not apply, however, to "a civil action against an employee of the Government . . . which is brought for a violation of the Constitution of the United States." *Id.* § 2679(b)(2)(A).

The parties agree that BLMDC's action amounts to a "civil action against . . . employee[s] of the Government." *Id.* They also agree that its claims otherwise fall within the scope of the FTCA. That leaves one question: whether BLMDC's First Amendment Assemblies Act and negligence *per se* claims are "brought for a violation of the Constitution of the United States." *Id.*

6

They are not.  BLMDC's claims can succeed only under a broad construction of the Westfall Act's constitutional carveout, one on which an action is "brought for a violation of the Constitution" whenever it has the purpose or effect of remedying a constitutional violation.  But BLMDC's broad construction is not the most plausible reading of the carveout.  It follows that BLMDC's claims are not brought for a violation of the Constitution and that the Court must overrule BLMDC's objection to certification.

### A. The Meaning of the Westfall Act

The Court interprets the Westfall Act by reading its text in context.  *Lamagno*, 515 U.S. at 424–37; *see, e.g.*, *Pulsifer v. United States*, 601 U.S. 124, 132–53 (2024); *Delaware v. Pennsylvania*, 598 U.S. 115, 127–41 (2023).  Here, the key text is the phrase "a civil action . . . brought for a violation of the Constitution."  28 U.S.C. § 2679(b)(2)(A).

As Judge Walker observed above, the literal meaning of this phrase sweeps quite broadly.  *See Buchanan*, 71 F.4th at 1016 (Walker, J., concurring).  "To 'bring' an action or suit . . . refers to the initiation of legal proceedings."  *Bring suit*, *Black's Law Dictionary* (6th ed. 1990).  And "for" denotes "[t]he cause, motive or occasion of an act, state, or condition."  *For*, *Black's Law Dictionary* (6th ed. 1990).  Joining the definitions together, an action "brought for a violation of the Constitution" might be one initiated "[b]y reason of" or "with respect to" a violation of the Constitution.  *Id.*; *accord For*, *Oxford English Dictionary* (online ed. 2024) (defining "for" to mean "[w]ith regard to or respect to, as regards, concerning").  In other words, a lawsuit might "count as 'brought for a violation of the Constitution' if its purpose is to remedy a constitutional violation," regardless of the legal theory on which the lawsuit proceeds.  *Buchanan*, 71 F.4th at 1016 (Walker, J., concurring) (emphasis deleted).

7

But "action . . . brought for a violation of the Constitution" also carries two narrower meanings. On one, the phrase captures lawsuits in which "a constitutional violation is part of the plaintiff's cause of action." *Id*. Although less literal, this reading tracks how lawyers ordinarily use the phrase "action brought for a violation." *Cf. FCC v. AT&T, Inc.*, 562 U.S. 397, 407 (2011) ("[C]onstruing statutory language is not merely an exercise in ascertaining 'the outer limits of [a word's] definitional possibilities.'") (quoting *Dolan v. U.S. Postal Service*, 546 U.S. 481, 486 (2006)). For example, suppose a lawyer describes an "action" she "brought" against a prison doctor for "violating" her client's Eighth Amendment rights. One would expect the lawyer to have sued under the Eighth Amendment, *see Carlson*, 446 U.S. at 17, or perhaps under a statute that creates a private right of action for Eighth Amendment violations, *see, e.g.*, 42 U.S.C. § 1983 (authorizing suits against state officials). It would be surprising if the lawyer had in fact sued for medical malpractice under state law, even if the (alleged) malpractice rose to the level of deliberate indifference. *Cf. Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

On the other, an "action . . . brought for a violation of the Constitution" refers only to actions that arise directly under the Constitution—that is, to *Bivens* claims. This "*Bivens*-only" construction would accord with the statutory history of the Westfall Act, which Congress enacted against the backdrop of the Supreme Court's *Bivens* jurisprudence. *Buchanan*, 71 F.4th at 1017 (Walker, J., concurring). It would also cohere with recent *dictum* from the Supreme Court, which hints that the Westfall Act's "brought for a violation of the Constitution" language might be limited to the *Bivens* context. *See Hernandez v. Mesa*, 589 U.S. 93, 111 n.9 (2020) ("The [Westfall] Act also permits claims 'brought for a violation of the Constitution.' By enacting this provision, Congress . . . simply left *Bivens* where it found it. [The provision] is not a license to create a new *Bivens* remedy . . . .") (internal citations omitted).

8

BLMDC urges the Court to adopt the broadest reading of the Westfall Act's constitutional carveout, one on which a lawsuit is brought "for a violation of the Constitution" whenever it would help vindicate a plaintiff's constitutional rights. The Court will decline. Although the Court need not decide whether the narrower or *Bivens*-only view is correct, five contextual factors rule out BLMDC's broad reading of the statute.

*First*, "for" is a relational word—to repeat, it means "[b]y reason of," "with respect to," "as regards," or "concerning." *For*, Black's Law Dictionary (6th ed. 1990); *For*, Oxford English Dictionary (online ed. 2024). As the Supreme Court has explained, "a non-hyperliteral reading" of such words "is needed to prevent . . . statute[s] from assuming near-infinite breadth." *FERC v. Elec. Power Supply Ass'n*, 577 U.S. 260, 278 (2016) (citing cases). Just so here. A great many lawsuits concern or regard constitutional violations in *some* way. But that reading of the phrase "for a violation of the Constitution" takes "for" to "the furthest stretch of its indeterminacy," an interpretive move the Court has rejected time and again. *Id.* (quoting *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995)); *see, e.g.*, *Dubin v. United States*, 599 U.S. 110, 119 (2023).

*Second*, the Westfall Act exempts actions "brought for a violation of a statute of the United States under which such action . . . is otherwise authorized" as well as actions "brought for a violation of the Constitution." 28 U.S.C. § 2679(b)(2). It is settled that this provision only applies when an action alleges a breach of "obligations or duties of care" imposed by a federal statute— *i.e.*, when an action arises directly under the statute or (perhaps) when the statutory violation is part of the plaintiff's cause of action in some other way. *United States v. Smith*, 499 U.S. 160, 174 (1991) (holding that "a physician allegedly committing malpractice under state or foreign law does not 'violate'" the [federal] Gonzalez Act because "[n]othing in the Gonzalez Act imposes any

9

obligations or duties of care upon . . . physicians"); *Ali v. Rumsfeld*, 649 F.3d 762, 776 (D.C. Cir. 2011) (holding that action under the Alien Tort Statute ("ATS") was not "brought for a violation of a law of the United States" because "nothing in the ATS 'imposes any obligations or duties of care'") (quoting *Smith*, 499 U.S. at 174). And "identical words and phrases within the same statute should normally be given the same meaning." *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 232 (2007). It follows that an action can be "brought for a violation of the *Constitution*" only if the plaintiff's cause of action arises directly under the Constitution or (maybe) requires a Constitutional violation as an element.

*Third*, BLMDC's broad reading of the carveout contravenes Congress' "record of statutory usage." *Peter v. Nantkwest, Inc.*, 589 U.S. 23, 31 (2019) (quoting *W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 88 (1991)). Statutes often refers to actions "for" or "brought for" violations of sections of the U.S. Code. When they do, they typically mean actions that directly assert causes of action created by those sections or that allege violations of those sections as an element of another claim. For example, the Copyright Act creates a registration requirement applicable to certain "civil action[s] for infringement of . . . copyright." 17 U.S.C. § 411(a). This requirement does not apply to actions based on legal theories besides copyright infringement, such as breach of a licensing contract, even when they allege facts that could also support a copyright infringement claim. *See, e.g.*, *Foss v. Marvic Inc.*, 994 F.3d 57, 60 (1st Cir. 2021) (describing action raising infringement and non-infringement claims); David Nimmer, 2 *Nimmer on Copyright* § 7.16(B)(1)(b)(i) ("[B]ecause a suit under the Digital Millenium Copyright Act is not an 'action for copyright infringement,' it would seem that there is no registration pre-requisite to bringing a claim thereunder."); *cf. T.B. Harms Co. v. Eliscu*, 339 F.2d 823, 826–28 (2d Cir. 1964). In other contexts, it is similarly clear that an action "for" a violation of a statute must at the very least allege

10

a violation of that statute as an element, and in some cases must proceed directly under that statute. *See, e.g.*, 52 U.S.C. § 30109(d)(2) (creating defense for "any criminal action brought for a violation of any provision of" the Federal Election Campaign Act); 29 U.S.C. § 216(e)(3)(C) (setting penalties in actions "brought for a violation of" the Fair Labor Standards Act); 15 U.S.C. § 3364(e)(1) (creating defense "to civil or criminal action[s] brought for violation of the Federal antitrust laws . . . with respect to any action taken . . . pursuant to any order of the President under" the President's emergency natural gas allocation authority). By analogy, an action "for" a violation of the Constitution must either allege a violation of the Constitution as an element or arise directly under the Constitution as well.

*Fourth*, BLMDC's broad reading of the carveout risks conflict with the Tucker Acts. The Tucker Acts waive the United States' sovereign immunity with respect to actions "founded . . . upon the Constitution." 28 U.S.C. §§ 1346(a)(2), 1491(a)(1). That language closely resembles the Westfall Act's, suggesting that an action "brought for a violation of the Constitution" should be "founded on" the Constitution as well. *See Founded*, *Black's Law Dictionary* (6th ed. 1990) ("Based upon; arising from, growing out of, or resting upon."). But an action is not "founded on" the Constitution under the Tucker Act unless it actually asserts that the government violated the plaintiff's Constitutional rights, either because it directly arises under the Constitution or (maybe) because it asserts a violation of the Constitution as an element. *Compare Jacobs v. United States*, 290 U.S. 13, 16 (1933) (holding that Takings Clause claim was "founded upon" the Fifth Amendment because it rested on "the duty to pay imposed by the amendment"), *with Schillinger v. United States*, 155 U.S. 163, 168 (1894) (rejecting premise that tort claims for "wrongful arrest and detention" or "seizure of . . . property" were "founded upon" the Constitution, even though such claims vindicated interests protected by the Due Process Clause). Otherwise, a whole host

11

of tort claims—say for trespass, battery, or false imprisonment—would be cognizable under the Tucker Acts if brought to vindicate a constitutional right in an abstract sense. *But cf. Schillinger*, 155 U.S. at 168 (they are not). The natural inference is that an action is not "brought for a violation of the Constitution" unless it asserts a constitutional violation, either as a freestanding cause of action or as an element of another claim.

*Fifth*, the *Bivens*-only and as-an-element readings of the carveout—but not the broader reading—harmonize the Westfall Act with the general federal-question jurisdiction statute. Under 28 U.S.C. § 1331, federal district courts have jurisdiction over actions "arising under" federal law, including the Constitution. An action "for a violation" of the Constitution presumably "arises under" the Constitution, *see, e.g.*, *Pompy v. Moore*, No. 19-10334, 2024 WL 845859, at *12 (E.D. Mich. Feb. 28, 2024), but an action does not "arise under" the Constitution unless it "necessarily raise[s]" a constitutional question, *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)). Putting two and two together, an action "for a violation" of the Constitution must also necessarily raise a constitutional question—in other words, it must arise directly under the Constitution (as a *Bivens* claim does) or otherwise assert a violation of a constitutional right as an element. *See Gunn*, 568 U.S. at 259. Were things otherwise, some actions "for a violation" of the Constitution would not "arise under" the Constitution and would not be cognizable in federal court under 28 U.S.C. § 1331. *Pompy*, 2024 WL 845759, at *12. That outcome would be odd to say the least. *Id.*

Given this context, it is not surprising that the Supreme Court has repeatedly implied (albeit in passing *dictum*) that the Westfall Act's constitutional carveout is centrally concerned with *Bivens* claims, not other lawsuits meant to vindicate constitutional rights. *See, e.g.*, *Smith*, 499 U.S. at 166–67 ("[T]he FTCA is not the exclusive remedy for torts committed by Government

employees . . . when an injured plaintiff brings: (1) a *Bivens* action . . . .") (emphasis deleted); *Hui v. Castaneda*, 559 U.S. 799, 809 (2010) (describing 28 U.S.C. § 2679(b)(2)(A) as "the Westfall Act's *Bivens* exception"); *see also Minneci v. Pollard*, 565 U.S. 118, 126 (2012) (explaining that federal prisoners "ordinarily cannot bring state-law tort actions against employees of the Federal Government," even when the tort claims are linked to a constitutional violation) (emphasis deleted). Nor is it surprising that courts have repeatedly applied the Westfall Act's exclusivity provisions to bar tort suits arising out of a defendant's alleged constitutional violations. *See, e.g.*, *Sudnick v. Dep't of Defense*, 474 F. Supp. 2d 91, 97 (D.D.C. 2007). Nor is it surprising that at least three courts have declined to adopt BLMDC's more expansive reading of the Westfall Act's constitutional carveout. *Pompy*, 2024 WL 845859, at *12; *Mellein v. United States*, No. 23-cv-7970, 2024 WL 1601802, at *5 (C.D. Cal. Mar. 14, 2024); *Quiñonez v. United States*, No. 22-cv-03195, 2023 WL 5663156, at *2–3 (N.D. Cal. Aug. 30, 2023). The Court will not chart a different path in this case.

BLMDC's contrary arguments fall short. *First*, it is true but unhelpful that common-law tort actions against federal officials in cases involving constitutional violations have a long and venerable history. Granted, "[s]tatutes which invade the common law . . . are to be read with a presumption favoring the retention of long-established and familiar principles" unless "a statutory purpose to the contrary is evident." *United States v. Texas*, 507 U.S. 529, 534 (1993) (quoting *Isbrandtsen Co. v. Johnson*, 343 U.S. 779, 783 (1952)). Here, however, "a statutory purpose to the contrary is evident" for the reasons already given. *Id.* Proving the point, tort actions against federal officials for *non*-constitutional torts have a venerable history too. *See, e.g.*, *Mitchell v.*

13

*Harmony*, 54 U.S. (13 How.) 115, 131 (1851).³  Yet it is undisputed that the Westfall Act replaces *those* actions with suits against the United States under the FTCA.

*Second*, the Westfall Act's historical context does not compel the Court to read the Westfall Act's carveout more broadly.  Although Congress drafted the Act in response to *Westfall*, a non-constitutional case, it does not follow that the words it wrote lack implications for cases related to constitutional violations.  *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998) ("[I]t is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed.").  Further, the Act's historical backdrop cuts both ways.  In 1988, many observers viewed *Bivens* claims—not state-law tort claims—as citizens' first line of defense against constitutional violations.  *See, e.g.*, *Carlson*, 446 U.S. at 18 (characterizing the holding of *Bivens* very broadly, to "establish[] that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right"); H.R. Rep. 100-700, at 6 (1988) (committee report on the Westfall Act equating "constitutional torts" with "*Bivens* torts").  Thus, although Congress drafted the Westfall Act to avoid interfering with *some* constitutional claims, its focus may not have extended to state-law claims, or at least to state law claims that do not allege constitutional violations as an element.  *Cf. Hernandez*, 589 U.S. at 111 n.9.

*Third*, it is not true that the narrower constructions of the Westfall Act's carveout "render that provision practically meaningless."  Pls.' Mem. of L. at 12, Dkt. 226.  On any reading of the

---

³ Although BLMDC characterizes *Harmony* as a constitutional tort case, *see* Pls.' Mem. of L. at 9, Dkt. 226, the case did not involve constitutional claims or defenses.  In *Harmony*, Army officials seized a merchant's goods during the Mexican American war.  54 U.S. at 129.  The merchant sued for trespass and won, and the Supreme Court affirmed.  *Id.* at 130.  The Court held, not that the seizure was unconstitutional, but that the officials simply lacked legal authority to seize the merchant's property.  *Id.* at 131–37.

14

Act, the carveout applies at minimum to *Bivens* claims, a small but not totally spectral category. *Hui*, 559 U.S. at 807; *see generally Egbert v. Boule*, 596 U.S. 482, 492 (2022). The carveout may also apply to statutory or common-law claims that require proof of a constitutional violation as an element. Either way, a statutory provision does not become surplusage merely because—as here—it covers fewer cases than what a litigant might prefer. That is particularly so in this case, where the set of cognizable *Bivens* claims has shrunk since 1988. *Compare Carlson*, 446 U.S. at 17, *with Egbert*, 596 U.S. at 492. Even if the carveout has a limited reach today, it swept more broadly when Congress passed the Westfall Act.

*Fourth*, and finally, principles of constitutional avoidance do not compel a broader reading of the Westfall Act's carveout. In BLMDC's telling, the narrow reading of the carveout raises serious constitutional questions insofar as it "leav[es] most plaintiffs without 'any judicial forum for a colorable constitutional claim.'" Pls.' Mem. of L. at 16 (quoting *Webster v. Doe*, 486 U.S. 592, 603 (1988)). But this argument faces two problems. At the outset, the Westfall Act does not leave anyone forum-less. It substitutes one way of handling constitutionally inflected tort claims (state tort law) for another (the FTCA). True, the FTCA's limitations can make it difficult for some plaintiffs to press certain claims, say claims that arise in a foreign country. 28 U.S.C. § 2680(k). In other ways, however, the FTCA *lengthens* plaintiffs' odds of recovery. For example, in contrast to damages suits against federal officers, the United States cannot claim qualified immunity in suits under the FTCA. *Compare Loumiet v. United States*, 828 F.3d 935, 946 (D.C. Cir. 2016), *with Martin v. Malhoyt*, 830 F.2d 237, 252 (D.C. Cir. 1987). And suits under the FTCA allow plaintiffs to target the federal government—a deep-pocketed defendant—rather than "potentially judgment-proof federal employee[s]." *Harbury v. Hayden*, 522 F.3d 413, 417 (D.C. Cir. 2008).

What is more, the Westfall Act would not raise constitutional questions even if it *did* foreclose colorable constitutional claims for damages. Quite the opposite: many rules foreclose similar claims and boast a spotless constitutional pedigree. Qualified immunity, for example, bars recovery unless a defendant violates a "clearly established" constitutional command. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see, e.g.*, *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) ("When properly applied, [qualified immunity] protects 'all but the plainly incompetent or those who knowingly violate the law.'") (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Similarly, without a *Bivens* action, a plaintiff may not sue for damages unless her lawsuit also implicates interests protected by the relevant state's law of torts. *Bivens*, 403 U.S. at 394–95. Neither of these gaps creates a serious constitutional question under existing law. Rather, remedial gaps have always been present in suits challenging official action. As Blackstone noted long ago, albeit in the English context, "the remedy in . . . cases" implicating "such injuries or encroachments as may occur between the crown and the subject" is "generally of a peculiar and eccentrical nature." 3 William Blackstone, *Commentaries* *116.

A contrary rule would require unusual distinctions between rights to sue for damages and rights to sue for injunctive relief. The Supreme Court "has never recognized an unqualified right to pre-enforcement review of constitutional claims in federal court." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 49 (2021). Rather, "[t]he power of federal courts of equity to enjoin unlawful executive action is subject to express and implied statutory limitations." *Armstrong*, 575 U.S. at 327. Indeed, the Constitution itself adds to those limitations. For example, the doctrine of standing may limit plaintiffs' ability to sue for injunctive relief even when that outcome makes it difficult or impossible to enforce a given constitutional provision across the board. *See, e.g.*, *United States v. Richardson*, 418 U.S. 166, 174–75 (1974) (Appropriations Clause); *Massachusetts*

*v. Mellon*, 262 U.S. 447, 486–87 (1923) (taxpayer standing).  Against this backdrop, it would be surprising to learn that a statute limiting federal officers' *damages* liability could raise constitutional questions.

*Wilkie v. Robbins* does not change these conclusions.  551 U.S. 537 (2007).  In *Wilkie*, a rancher sued federal officials under *Bivens* for various (alleged) acts of harassment, including several intrusions onto his land.  *Id.* at 542–43.  The Supreme Court declined to recognize the rancher's *Bivens* claim, remarking that for some of the harassment the rancher "had a civil remedy in damages for trespass."  *Id.* at 551.  BLMDC says that this remark shows "the continued viability of state tort claims for constitutional violations," Pls.' Mem. of L. at 10, but it does not.  By "civil remedy in damages for trespass," the *Wilkie* Court may well have meant a trespass action against the United States under the FTCA.  *See Wilkie*, 551 U.S. at 551 (citing *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 72–73 (2001), in which the Court recognized that federal officials have immunity from most state torts).  At minimum, *Wilkie*'s discussion of the issue is not enough to outweigh the contrary considerations canvassed above.

For all these reasons, the Court concludes that "a civil action . . . brought for a violation of the Constitution" must require a plaintiff to plead a constitutional violation either as a *Bivens* claim or as part of his cause of action.  28 U.S.C. § 2679(b)(2)(A).

### B. BLMDC's Claims

This construction of the Westfall Act dooms BLMDC's objection to certification.  BLMDC's claims under the D.C. First Amendment Assemblies Act and for negligence *per se* do not arise directly under the Constitution and do not require BLMDC to plead a constitutional violation as an element, meaning they are not claims brought for a violation of the Constitution under the Westfall Act.

In relevant part, the First Amendment Assemblies Act instructs: "No time, place or manner restriction regarding a First Amendment assembly shall be based on the content of the beliefs expressed or anticipated to be expressed during the assembly, or on factors such as the attire or appearance of persons participating or expected to participate in an assembly, nor may such restrictions favor non-First Amendment activities over First Amendment activities." D.C. Code § 5-331.04(c). The parties dispute whether this provision applies to federal officers like the defendants. *Compare* United States' Mem. at 22–23, Dkt. 229, *with* Pls.' Reply at 14, Dkt. 231. Even if it does, however, suits under the Act are obviously not suits directly under the Constitution. Nor do they require proof of a First Amendment violation as an element, for the Act is broader than the First Amendment in important ways. For example, the Act categorically forbids content-based restrictions on speech. By contrast, the First Amendment permits such restrictions when they are narrowly tailored and serve a compelling government interest, a more forgiving standard. *See, e.g.*, *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 444 (2015) (upholding content-based restriction on speech as narrowly tailored to a compelling government interest). Additionally, the First Amendment's compelling-interest test features a variety of historically grounded exceptions, exceptions that do not appear in the First Amendment Assemblies Act. *See United States v. Stevens*, 559 U.S. 460, 468–69 (2010). These differences show that a violation of the First Amendment Assemblies Act does not constitute a violation of the First Amendment and that, as a result, BLMDC's First Amendment Assemblies Act claim is not one for a violation of the Constitution.

The same holds true for BLMDC's negligence *per se* claim. Again, BLMDC's negligence *per se* claim does not directly arise under the Constitution. And it does not require proof of a Constitutional violation as an element either. The thrust of BLMDC's negligence *per se* claim is

18

that the First Amendment Assemblies Act created a duty of care for federal officials, a duty that the defendants breached. *See, e.g.*, *McNeil Pharm. v. Hawkins*, 686 A.2d 567, 579 (D.C. 1996). But for the reasons already given, any duty of care created by the First Amendment Assemblies Act sweeps more broadly than the duties created by the First Amendment. Thus, BLMDC's negligence *per se* claim does not qualify as a claim for a violation of the Constitution under the Westfall Act.

## CONCLUSION

For all these reasons, the Court overrules BLMDC's objection to certification. A separate order accompanies this memorandum opinion.

July 4, 2024

DABNEY L. FRIEDRICH
United States District Judge