UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RADIYA BUCHANAN, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, *et al.*, <br><br> Defendants. | No. 20-01469 (DLF) LEAD <br><br> No. 20-01542 (DLF) (Consolidated) |

**DEFENDANT UNITED STATES' MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION TO DISMISS**

# Table of Contents

Table of Authorities.............................................................................................................ii

INTRODUCTION ................................................................................................................ 1

BACKGROUND .................................................................................................................. 2

STANDARDS OF REVIEW ................................................................................................ 3

    I.   MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION
        UNDER RULE 12(b)(1) ............................................................................................ 3

    II.  MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER RULE
        12(b)(6)..................................................................................................................... 3

ARGUMENT ....................................................................................................................... 4

    I.   THE COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS'
        CLAIMS ORIGINALLY ASSERTED AGAINST FORMER PRESIDENT TRUMP .. 4

    II.  PLAINTIFFS' REMAINING CAUSES OF ACTION AGAINST THE UNITED
        STATES FAIL TO ADEQUATELY ALLEGE A CLAIM WITHIN THE "LAW
        ENFORCEMENT PROVISO" OF THE FTCA'S INTENTIONAL TORT
        EXCEPTION ............................................................................................................ 8

    III. PLAINTIFFS HAVE FAILED TO STATE CLAIMS FOR ASSAULT, BATTERY,
        AND IIED UNDER DISTRICT OF COLUMBIA LAW...........................................11

        A.  Assault ............................................................................................................ 12

        B.  Battery ............................................................................................................ 13

        C.  Intentional Infliction of Emotional Distress ...................................................... 14

CONCLUSION.................................................................................................................... 16

i

## Table of Authorities

**Cases**

*Acosta Orellana v. CropLife Int'l,*
  711 F. Supp. 2d 81 (D.D.C. 2010).......................................................................... 12, 13, 14

*Allen v. Brown,*
  320 F. Supp.3d 16 (D.D.C. 2018).................................................................................... 6

*American Farm Bureau v. United States EPA,*
  121 F. Supp. 2d 84 (D.D.C. 2000)................................................................................. 10

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ...................................................................................................... 3, 4

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ..................................................................................................... 3, 13

*Bernstein v. Fernandez,*
  649 A.2d 1064 (D.C. 1991) ............................................................................................ 15

*Bivens v. Six Unknown Fed. Narcotics Agents,*
  403 U.S. 388 (1971) ........................................................................................................ 2

*Brown v. Hill, Case,*
  No 14-0140 (TSC), 2021 U.S. Dist. LEXIS 178114 (D.D.C. Sept. 20, 2021) ........................ 15

*Brownback v. King,*
  592 U.S. 209 (2021) ..................................................................................................... 4, 12

*Buchanan v. Barr,*
  71 F.4th 1003 (D.C. Cir. 2023)........................................................................................ 2

*Calva-Cerqueira v. United States,*
  281 F. Supp.2d 279 (D.D.C. 2003)..................................................................................11

*Clayton v. District of Columbia,*
  931 F. Supp. 2d 192 (D.D.C. 2013)................................................................................. 3

*Colbert v. U.S. Postal Serv.,*
  831 F. Supp. 2d 240 (D.D.C. 2011)................................................................................. 7

*Collier v. District of Columbia,*
  46 F. Supp.3d 6 (D.D.C 2014).......................................................................................... 12

*Commodity Futures Trading Comm'n v. Nahas,*
  738 F.2d 487 (D.C. Cir. 1984)......................................................................................... 3

*Curran v. Holder,*
  626 F. Supp. 2d 30 (D.D.C. 2009)...................................................................... 3

*District of Columbia v. Jackson,*
  810 A.2d 388 (D.C. 2002) ................................................................................ 12

*Evans-Reid v. District of Columbia,*
  930 A.2d 930 (D.C. 2007) ................................................................................ 12

*FDIC v. Meyer,*
  510 U.S. 471 (1994) ..................................................................................... 3, 12

*Futrell v. Dep't of Labor Fed. Credit Union,*
  816 A.2d 793 (D.C. 2003) ................................................................................ 15

*Harbury v. Hayden,*
  522 F.3d 413 (D.C. Cir. 2008) ............................................................................ 5

*Holder v. District of Columbia,*
  700 A.2d 738 (D.C. 1997) ................................................................................ 12

*In re Consolidated United States Atmospheric Testing Litigation,*
  820 F.2d 982 (9th Cir. 1987) .............................................................................. 6

*Jackson v. District of Columbia,*
  412 A.2d 948 (D.C. 1980) ................................................................................ 12

*Jackson v. United States,*
  857 F. Supp. 2d 158 (D.D.C. 2012) ..................................................................... 5

*Kerrigan v. Britches of Georgetowne,*
  705 A.2d 624 (D.C. 1997) ................................................................................ 15

*King v. Kidd,*
  640 A.2d 656 (D.C. 1993) ................................................................................ 15

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
  511 U.S. 375 (1994) .......................................................................................... 3

*Langford v. United States,*
  No. 87-1698, 1988 U.S. Dist. LEXIS 19536 (D.D.C. Aug. 9, 1988)......................... 6

*Lee v. United States,*
  570 F. Supp.2d 142 (D.D.C. 2008) ...................................................................... 8

*Madden v. D.C. Transit Sys., Inc.,*
  307 A.2d 756 (D.C. 1973) ................................................................................ 13

*Majano v. United States*,
    545 F. Supp. 2d 136 (D.D.C. 2008) ........................................................................ 8

*McNeil v. United States*,
    508 U.S. 106 (1993) .......................................................................... ….5

*Millbrook v. United States*,
    569 U.S. 50 (2013) ............................................................................................... 8

*Norton v. United States*,
    530 F. Supp. 3d 1 (D.D.C. 2021) ................................................................. 5, 7, 10

*Papasan v. Allain*,
    478 U.S. 265 (1986) ......................................................................................... 4, 13

*Person v. Children's Hosp. Nat. Med. Ctr.*,
    562 A.2d 648 (D.C. 1989) ............................................................................. 12, 14

*Petty v. United States*,
    80 Fed. App'x 986 (6th Cir. 2003) ....................................................................... 9

*Provancial v. United States*,
    454 F.2d 72 (8th Cir. 1972) ................................................................................. 7

*Ramirez v. United States*,
    No. 22-cv-187 (CRC), 2023 U.S. Dist. LEXIS 16444 (D.D.C. Feb. 1, 2023) ............................ 6

*Ross v. DynCorp*,
    362 F. Supp. 2d 344 (D.D.C. 2005) .................................................................... 15

*Sherrod v. McHugh*,
    No. 16-0816 (RC), 2017 U.S. Dist. LEXIS 20981 (D.D.C. Feb. 15, 2017) ............................ 12

*Simpkins v. District of Columbia*,
    108 F.3d 366 (D.C. Cir. 1997) ............................................................................ 7

*Slate v. District of Columbia*,
    79 F. Supp. 3d 225 (D.D.C. 2015) ...................................................................... 6

*Smith v. Clinton*,
    253 F. Supp. 3d 222 (D.C. Cir. 2018) ................................................................. 6

*Trudeau v. Fed. Trade Comm'n*,
    456 F.3d 178 (D.C. Cir. 2006) ............................................................................11

*Wang v. United States*,
    61 Fed. App'x. 757 (2nd Cir. 2003) ..................................................................... 9

iv

*Williams v. District of Columbia*,
    9 A.3d 484 (D.C. 2010) .................................................................................... 14

*Wilson v. Libby*,
    535 F.3d 697 (D.C. Cir. Aug. 2008) .................................................................. 6

*Wise v. United States*,
    145 F. Supp. 3d 53 (D.D.C. 2015) ..................................................................... 5

*Wright v. Foreign Serv. Grievance Bd.*,
    503 F. Supp. 2d 163 (D.D.C. 2007) ................................................................ 11

## **Statutes**

28 U.S.C. § 1346 ..................................................................................................... 1

28 U.S.C. § 2671 ..................................................................................................... 9

28 U.S.C. § 2675(a) ............................................................................................... 5

28 U.S.C. § 2679(d)(1) .......................................................................................... 1

28 U.S.C. § 1346(b) ............................................................................................. 11

28 U.S.C. § 1346(b)(1) .......................................................................................... 5

D.C. Code § 5-331.04(c) ........................................................................................ 1

## **Rules**

Fed. R. Civ. P. 8(a)(1) ............................................................................................ 6

Fed. R. Civ. P. 12(b)(1) .......................................................................................... 3

Fed. R. Civ. P. 12(h)(3) .......................................................................................... 3

Fed. R. Civ. P. 12(b)(6) ................................................................................. 3, 4, 13

## INTRODUCTION

In their Second Amended Complaint ("SAC") (ECF No. 208), Plaintiffs Radiya Buchanan ("Buchanan"), Ann Dagrin ("Dagrin"), and Lindsay Field ("Field") (collectively "plaintiffs") purport to bring claims for assault (*see* ECF No. 208 at ¶¶ 136-43), battery (*see id.* at ¶¶ 150-56), and intentional infliction of emotional distress ("IIED") (*see id*. at ¶¶ 162-69) against the United States pursuant to Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346, *et seq*.  In addition, the SAC originally pled claims against former President Donald J. Trump in his individual capacity for assault (*see id*. at ¶¶ 144-49), battery (*see id.* at ¶¶ 157-61), IIED (*see id*. at ¶¶ 170-74), violation of the D.C. First Amendment Assemblies Act ("FAAA") (D.C. Code § 5-331.04(c)) (*see id*. at ¶¶ 175-83), and for negligence *per se* (*see id*. at ¶¶ 185-91).  The United States has filed a Notice of Substitution with respect to the claims asserted against the former President after the Attorney General's designee issued a certification pursuant to the Westfall Act, 28 U.S.C. § 2679(d)(1), that the former President was acting within the scope of his office or employment at the time of the incidents out of which plaintiffs' claims arose.  As a result, the United States has been substituted as the sole party-defendant with respect to these claims.

Plaintiffs' SAC suffers from several defects that require dismissal of the claims against the United States.  First, the Court lacks subject matter jurisdiction over the claims originally asserted against former President Trump, as plaintiffs failed to exhaust their administrative remedies with respect to those claims.  Second, plaintiffs' claims for assault, battery, and IIED asserted against the United States must be dismissed as plaintiffs have not pled sufficient facts to place their claims within the FTCA's limited waiver of sovereign immunity.  Lastly, even if sovereign immunity had been waived, plaintiffs' claims against the United States must be dismissed as they fail to plead legally sufficient claims for assault, battery, and IIED under District of Columbia law.

1

## BACKGROUND

Following the death of George Floyd on May 25, 2020, protest took place across the country in opposition to police violence and in support of racial justice.  Plaintiffs joined in one such protest on June 1, 2020, outside the White House in the vicinity of Lafayette Square Park (*see* ECF No. 208 at ¶¶ 66, 75, 86).  Plaintiffs allege that they were injured by crowd-dispersal efforts by law enforcement officers during the protest.  Plaintiff Buchanan alleges that she encountered law enforcement officers throwing flash-bang grenades and spraying tear gas.  She began to suffer the effects of the tear gas and continued to do so even on the drive home.  *See id.* at ¶ 69.  Plaintiff Dagrin alleges that she was "struck by a white and gray cloud of tear gas," and "began coughing and experienced pain in her throat and discomfort in her eyes." *Id.* at ¶ 78.  Plaintiff Field alleges that she was struck with what she believes to be a rubber bullet, and that she suffered the effects of tear gas in her vicinity.  *See id.* at ¶¶ 92, 94.

Plaintiffs originally asserted claims against various individual federal officials and U.S. Park Police ("USPP") officers seeking damages pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).  *See* ECF Nos. 1 and 29.  However, this Court dismissed those *Bivens* claims on June 21, 2021.  *See* ECF No. 69.  The D.C. Circuit affirmed, issuing its mandate on August 15, 2023.  *See Buchanan v. Barr*, 71 F.4th 1003 (D.C. Cir. 2023) (ECF No. 97).  Soon thereafter, the Court granted plaintiffs leave to file a Second Amended Complaint to add claims against the United States under the FTCA for assault, battery, and IIED, and add claims against the former President for assault, battery, IIED, violation of the FAAA, and for negligence *per se* under D.C. law.  The Attorney General's designee has certified pursuant to the Westfall Act that the former President was acting within the scope of his employment with respect to conduct underlying plaintiffs' claims.  Consequently, the United States has been

2

substituted as the sole party defendant with respect to the claims asserted against the former President.

## STANDARDS OF REVIEW

### I.    MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION UNDER RULE 12(b)(1)

Rule 12(b)(1) requires dismissal of claims where the Court "lack[s] jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1).  "Rule 12(b)(1) presents a threshold challenge to the Court's jurisdiction . . . [and] the Court is obligated to determine whether it has subject-matter jurisdiction in the first instance." *Curran v. Holder*, 626 F. Supp. 2d 30, 32 (D.D.C. 2009) (internal citation and quotation marks omitted).  "A federal court presumptively lacks jurisdiction in a proceeding until a party demonstrates that jurisdiction exists." *Commodity Futures Trading Comm'n v. Nahas*, 738 F.2d 487, 492 n.9 (D.C. Cir. 1984) (emphasis added); *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("[I]t is presumed that a cause lies outside [the federal courts'] limited jurisdiction.").  "If sovereign immunity has not been waived, a claim is subject to dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction." *Clayton v. District of Columbia*, 931 F. Supp. 2d 192, 200 (D.D.C. 2013) (citing *FDIC v. Meyer*, 510 U.S. 471, 475 (1994)).  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).

### II.   MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When resolving a motion to dismiss pursuant to Rule 12(b)(6), the pleadings are construed broadly so that all facts pleaded therein are accepted as true, and all inferences are

3

viewed in a light most favorable to the plaintiff. *See Iqbal*, 556 U.S. at 678. However, a court is not required to accept conclusory allegations or unwarranted factual deductions as true. *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Likewise, a court need not "accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

While a plaintiff's failure to state a claim under Rule 12(b)(6) does not usually deprive a federal court of subject-matter jurisdiction, "in the unique context of the FTCA, all elements of a meritorious claim are also jurisdictional." *Brownback v. King*, 592 U.S. 209, 217 (2021). If a "tort claim[] fail[s] to survive a Rule 12(b)(6) motion to dismiss, the United States necessarily retain[s] sovereign immunity, also depriving the court of subject-matter jurisdiction." *Id*. Therefore, if a plaintiff fails to plausibly allege the elements of an FTCA claim under 28 U.S.C.§ 1346(b)(1), it not only constitutes a failure to state a claim upon which relief can be granted, but also deprives the court of subject matter jurisdiction over the claim. *Brownback*, 592 U.S. at 218. Ultimately, the focus is on the language in the complaint, and whether it sets forth sufficient factual allegations to support a plaintiff's claims for relief.

## ARGUMENT

## I.   THE COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' CLAIMS ORIGINALLY ASSERTED AGAINST FORMER PRESIDENT TRUMP

Plaintiffs' claims premised on the actions of former President Trump must be dismissed because Plaintiffs failed to properly exhaust their administrative remedies prior to filing suit. In Counts 3, 5, 7, 8, and 9, plaintiffs originally pled claims for assault, battery, IIED, violation of the FAAA, and for negligence *per se* against the former President. Where, as here, the Attorney General's designee has executed a Westfall Act certification with respect to a claim, "the tort suit automatically converts to an FTCA action against the United States," "the Government becomes

4

the sole party defendant," and "the FTCA's requirements, exceptions, and defenses apply to the suit." *Harbury v. Hayden*, 522 F.3d 413, 416 (D.C. Cir. 2008) (internal punctuation altered).

The FTCA is the exclusive waiver of sovereign immunity for claims against the United States for allegedly tortious conduct of an employee of the Government acting within the scope of his office or employment. 28 U.S.C. §§ 1346(b)(1), 2671 *et seq.*; *see, e.g., Wise v. United States*, 145 F. Supp. 3d 53, 60 (D.D.C. 2015). To bring suit under the FTCA, however, "a claimant must first satisfy the FTCA's exhaustion requirement under 28 U.S.C. § 2675(a)." *Norton v. United States*, 530 F. Supp. 3d 1, 5 (D.D.C. 2021). In relevant part, Section 2675(a) provides:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C. § 2675(a).

"The Supreme Court has interpreted this to mean that '[t]he FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies.'" *Norton*, 530 F. Supp. at 5 (quoting *McNeil v. United States*, 508 U.S. 106, 113 (1993)). "A claimant's failure to 'heed [the FTCA's] clear statutory command' warrants dismissal of his claim." *Norton*, 530 F. Supp. 3d at 5 (citing *McNeil*, 508 U.S. at 113); *see also Jackson v. United States*, 857 F. Supp. 2d 158, 161 (D.D.C. 2012) ("The failure to exhaust prior to filing suit requires dismissal of the case for lack of jurisdiction."). "A plaintiff must therefore plead administrative exhaustion in

an FTCA case." *Allen v. Brown*, 320 F. Supp.3d 16, 32 (D.D.C. 2018); *Slate v. District of Columbia*, 79 F. Supp. 3d 225, 233 (D.D.C. 2015) ("A plaintiff must plead grounds for the Court's jurisdiction, *see* Fed. R. Civ. P. 8(a)(1), and thus in an FTCA case a plaintiff must plead administrative exhaustion."); Fed. R. Civ. P. 8(a)(1) (plaintiff must plead "a short and plain statement of the grounds for the court's jurisdiction"). *See also Smith v. Clinton*, 253 F. Supp. 3d 222, 234-37 (D.C. Cir. 2018) (dismissing claims for failure to exhaust after the United States was substituted as the defendant pursuant to the Westfall Act); *Wilson v. Libby*, 535 F.3d 697, 711-12 (D.C. Cir. Aug. 2008) (affirming dismissal of tort claims for the same reason).

Here, because the plaintiffs failed to present the claims based on the alleged wrongdoing of former President Trump to the "appropriate Federal agency", i.e., the Executive Office of the President, prior to filing this suit, these claims must be dismissed for lack of subject-matter jurisdiction. *See, e.g., Ramirez v. United States*, No. 22-cv-187 (CRC), 2023 U.S. Dist. LEXIS 16444, at *6-9 (D.D.C. Feb. 1, 2023) (journalist injured during a Lafayette Square protest could not bring FTCA suit based on alleged wrongdoing of U.S. Park Police (USPP) officers because he presented claim only to White House Counsel rather than USPP prior to filing suit); *Langford v. United States*, No. 87-1698, 1988 U.S. Dist. LEXIS 19536, at *2 (D.D.C. Aug. 9, 1988) (denying plaintiff's motion to amend complaint to add claims based on negligence of Bureau of Prison personnel because plaintiff had presented administrative claim only to U.S. Marshals Service prior to instituting suit); *In re Consolidated United States Atmospheric Testing Litigation*, 820 F.2d 982, 999-1000 (9th Cir. 1987) (plaintiff, whose husband allegedly died as result of exposure to radiation during nuclear testing, presented administrative claim to Department of Energy, which conducted tests, but not to Department of Defense (DOD); failure to present claim to latter agency precluded plaintiff from bringing suit alleging that her husband

had received inadequate treatment for his radiological injuries at DOD health care facility);

*Provancial v. United States*, 454 F.2d 72, 74 (8th Cir. 1972) (arrestee, who presented claim for

injuries suffered during arrest by Bureau of Indian Affairs officers to Department of the Interior,

could not base FTCA suit on alleged malpractice of Public Health Service physicians in treating

his injuries where he did not present separate claim to Department of Health, Education, and

Welfare).

      Insofar as Plaintiffs' claims in the instant case are based on the alleged wrongdoing of the

former President, they likewise failed to exhaust their administrative remedies.  The SAC

identifies the USPP, Federal Bureau of Prisons, D.C. National Guard, and the United States

Secret Service as the relevant federal agencies.  (ECF No. 208 at ¶ 36).  The individual plaintiffs

allege that on May 24, 2022, they "submitted claims via Standard Form 95" ("administrative

claims") to these agencies.  *Id.*  However, they do not allege that an administrative claim was

ever filed with the Executive Office of the President.  Thus, with respect to the claims they now

assert based on the actions of former President Trump, Plaintiffs have failed to plead that they

exhausted their administrative remedies, which is a jurisdictional prerequisite that must be met

before filing suit.

      "The D.C. Circuit has consistently held that the 'FTCA's requirement of filing an

administrative complaint with the appropriate agency prior to instituting an action [is]

jurisdictional.'"  *Norton,* 530 F. Supp. 3d at 6 (quoting *Simpkins v. District of Columbia*, 108 F.3d

366, 371 (D.C. Cir. 1997).  It is the "'*claimant's* responsibility to submit [her] tort claim to the

appropriate federal agency,'" *Norton*, 530 F. Supp. 3d at 9 (emphasis in original), and to plead

administrative exhaustion in an FTCA case, *Colbert v. U.S. Postal Serv*., 831 F. Supp. 2d 240, 243

(D.D.C. 2011) (citing Fed. R. Civ. P. 8(a)(1)).  Here, plaintiffs do not allege that they submitted a

claim to the proper agency as to the claims they originally asserted against former President Trump. Therefore, plaintiffs' failure to exhaust their administrative remedies as to these claims deprives this Court of subject-matter jurisdiction over them.  Accordingly, counts 3, 5, 7, 8, and 9 must be dismissed.

## II.     PLAINTIFFS' REMAINING CAUSES OF ACTION AGAINST THE UNITED STATES FAIL TO ADEQUATELY ALLEGE A CLAIM WITHIN THE "LAW ENFORCEMENT PROVISO" OF THE FTCA'S INTENTIONAL TORT EXCEPTION

The Court lacks subject matter jurisdiction over the plaintiffs' claims for assault, battery, and IIED against the United States.  Under the FTCA, "the United States is liable for torts committed by employees of the Government 'to the same extent as a private individual under like circumstances.'"  *Lee v. United States*, 570 F. Supp.2d 142, 148 (D.D.C. 2008) (citing 28 U.S.C. § 2674).  The FTCA contains an "intentional tort exception" which preserves the United States' immunity from suit for "any claim arising out of," among others, "assault [and] battery." *Millbrook v. United States*, 569 U.S. 50, 52 (2013) (citing 28 U.S.C. § 2680(h)); *see also Majano v. United States*, 545 F. Supp. 2d 136, 147-48 (D.D.C. 2008) (excluding an IIED claim because the claim arose out of an assault and battery tort specifically excluded under § 2680(h)).  There is, however, an "exception to the exception" – the so-called "law enforcement proviso," which "extends the waiver of sovereign immunity to claims for six intentional torts, including assault and battery, when they are based on the acts or omissions of law enforcement."  *Millbrook*, 569 U.S. at 52; Section 2680(h) defines "investigative or law enforcement officer" as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violation of Federal law."  *Id.*  Therefore, in order to vest this court with subject matter jurisdiction, the individual plaintiffs must establish that their claims of assault, battery, and IIED not only are premised on the acts or omissions of "employees of the Government" as that term is

defined by 28 U.S.C. § 2671, but also that these individuals were law enforcement officers of the United States within the meaning of § 2680(h).  *See Wang v. United States*, 61 Fed. App'x. 757, 759 (2nd Cir. 2003); *Petty v. United States*, 80 Fed. App'x 986, 989 (6th Cir. 2003).  Plaintiffs have done neither.

Throughout the SAC, plaintiffs repeatedly refer to the actions of unidentified "law enforcement officers."  *See, e.g.,* SAC (ECF No. 208) at ¶ 68 (" [L]aw enforcement suddenly began to shoot cannisters of tear gas into the crowd…"); at ¶ 76 ("[Plaintiff Dagrin] saw law enforcement officers, both on foot and mounted on horses, charge toward the crowd and deploy tear gas and flash-bang grenades."); at ¶ 90 ("[Plaintiff Field saw] officers were approaching … and spraying pepper spray or tear gas.").  Although Plaintiffs allege that federal law enforcement officers were present and engaged in crowd dispersal tactics, *see id*. ¶ 53, they do not allege facts that, if true, would demonstrate that these specific plaintiffs were harmed by the actions of federal law enforcement officers.  Indeed, Plaintiffs repeatedly allege that numerous officers from the Washington, D.C. Metropolitan Police Department ("MPD"), who are not federal officers, were also involved in the purported assaults.

Specifically, Plaintiff Buchanan alleges that at on "June 1, 2020, [she]… arrived at the protest at Lafayette Park before 6:00 pm."  SAC (ECF No. 208) at ¶ 66.  She claims that at approximately 6:30 pm, "law enforcement suddenly began to shoot cannisters of tear gas into the crowd and point their weapons at the crowd to get them to move."  *Id*. at ¶ 68.  She fled the park, and eventually wound up at the corner of 17th and H Streets, where she encountered officers, allegedly from the MPD.  *Id*. at ¶ 69.  These officers began throwing flash-bang grenades and tear gas canisters at her and Plaintiff Dagrin, "one of which landed and burst within a foot of

them." *Id*.  "The gas burnt their eyes, noses, and throats," and she and Plaintiff Dagrin continued to feel the effects of the tear gas even on their drive home.  *Id.*

Plaintiff Dagrin claims that "on June 1, 2020, [she] arrived at Lafayette Park before 6:00 pm." *Id*. at ¶ 75.  "Around 6:30 pm [she] heard a loud explosion.  She saw law enforcement officers, both on foot and mounted on horses, charge toward the crowd and deploy tear gas and flash-bang grenades." *Id.* at ¶ 76.  She eventually made her way to the corner of H and 17th Streets where "[she] was struck by a [] cloud of tear gas from a canister that landed about a foot away .…  Dagrin began coughing and experienced terrible pain in her throat and discomfort in her eyes." *Id.* at ¶ 78.

Finally, Plaintiff Field claims that she arrived at Lafayette Park at approximately 4:45 pm on June 1, 2020.  *Id.* at ¶ 86.  After some time, she saw officers "spraying pepper spray or tear gas.  *See id.* at ¶ 90.  As Plaintiff Field moved toward 17th Street, "she felt a sharp pain in the back of her thigh, which stung and left a bruise.  [She] believes it was a rubber bullet that struck her…" *Id.* at ¶ 92.  She claims that she "inhaled smoke…from a tear gas canister.  She felt the smoke in her eyes and started coughing."  *Id*. at ¶ 94.  In sum, plaintiffs do not clearly allege that their alleged injuries arose out of the intentional acts or omissions of federal investigative or law enforcement officers.

"Despite the favorable inferences that a plaintiff receives on a motion to dismiss, it remains the plaintiff's burden to prove subject matter jurisdiction by a preponderance of the evidence." *Norton*, 530 F. Supp.3d at 5 (quoting *American Farm Bureau v. United States EPA*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000)).  "Although a court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), [a] plaintiff['s] factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion

than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (internal citations and quotation marks omitted).  A court need not accept as true "a legal conclusion couched as a factual allegation" or an inference "unsupported by the facts set out in the complaint." *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006) (internal citation and quotation marks omitted).

Here, although the plaintiffs allege that they were harmed, they do not allege that that harm was a result of the intentional acts or omissions of federal law enforcement officers.  Rather, they only allege that they were harmed by unidentified "law enforcement officers."  Moreover, while the SAC does contain allegations about federal law enforcement's treatment of the crowd generally, at issue is the treatment of these particular plaintiffs, with respect to which the SAC lacks the necessary specificity.  At most, plaintiffs allege in conclusory fashion that "Federal Officers' attack on the protesters commenced" after a USPP officer's orders, *see* SAC at ¶ 53, which is insufficient to establish that their injuries arose from the conduct of federal employees.  Accordingly, the SAC is facially insufficient to place Plaintiffs' claims within the FTCA's law enforcement proviso – the "exception to the exception" – and, as such, the Court lacks subject matter jurisdiction over their claims against the United States.

### III.    PLAINTIFFS HAVE FAILED TO STATE CLAIMS FOR ASSAULT, BATTERY, AND IIED UNDER DISTRICT OF COLUMBIA LAW

The FTCA waives sovereign immunity only "where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. §§ 1346(b), 2674.  Tort liability under the FTCA is determined according to the law of the place in which the acts or omissions occurred – in this case, the District of Columbia.  *See Calva-Cerqueira v. United States*, 281 F. Supp.2d 279, 293 (D.D.C. 2003).  "In the unique context of the FTCA, all elements of a meritorious claim are also jurisdictional."

*Brownback¸*592 U.S. at 217 (2021) (citing *Meyer*, 510 U. S. at 477).  "That means a plaintiff must plausibly allege that 'the United States, if a private person, would be liable to the claimant' under state law both to survive a merits determination under Rule 12(b)(6) and to establish subject-matter jurisdiction. §1346(b)(1)." *Id.* at 218.  For the reasons set forth below, the plaintiffs have failed to state claims for assault, battery, and intentional infliction of emotional distress.  As such, this Court lacks subject-matter jurisdiction and the claims must be dismissed.

A.    ASSAULT

Under D.C. law, "[a]n assault is an intentional and unlawful attempt or threat, either by words or acts, to do physical harm to the plaintiff." *District of Columbia v. Jackson*, 810 A.2d 388, 392 (D.C. 2002) (quoting *Holder v. District of Columbia*, 700 A.2d 738, 741 (D.C. 1997)).  To successfully plead assault, a plaintiff must plausibly show that the defendant intentionally created "an imminent apprehension of . . . a harmful or offensive . . . contact," and that the plaintiff did indeed experience such an apprehension.  *Sherrod v. McHugh*, No. 16-0816 (RC), 2017 U.S. Dist. LEXIS 20981, *13-14 (D.D.C. Feb. 15, 2017) (quoting *Jackson v. District of Columbia*, 412 A.2d 948, 956 (D.C. 1980); *accord Evans-Reid v. District of Columbia*, 930 A.2d 930, 937 (D.C. 2007) (favorably citing *Jackson* for the definition of assault); Restatement (Second) of Torts § 21; *see also Person v. Children's Hosp. Nat. Med. Ctr.*, 562 A.2d 648, 650 (D.C. 1989) ("An assault results from apprehension of an imminent harmful or offensive contact, in contrast with the contact itself.").  A plaintiff "must show that he suffered apprehension or harmful or offensive contact and that a reasonable person in his position would have experienced such an apprehension." *Collier v. District of Columbia*, 46 F. Supp.3d 6, 14 (D.D.C 2014).  An individual "will not be held liable for assault for negligent or reckless behavior lacking the requisite intent to commit an assault." *Acosta Orellana v. CropLife Int'l*, 711 F. Supp. 2d 81, 92

12

(D.D.C. 2010).  An "'essential element of … assault is … intentional putting another in apprehension,' and absent such an allegation a complaint is 'clearly deficient.'"  *Id.* (citing *Madden v. D.C. Transit Sys., Inc.*, 307 A.2d 756, 757 (D.C. 1973)) (emphasis in original).

Here, the plaintiffs do not allege facts establishing all elements of a claim of assault. They allege that "Federal Officers' attack [along with non-federal officers] on the protestors commenced" without any, or with only an inadequate, audible warning to the protesters.  *See* SAC at ¶¶ 52-54.  This falls short of alleging facts that these federal law enforcement officers acted with an intent to cause an *imminent apprehension of harm* to these specific plaintiffs.  Nor do the plaintiffs' conclusory allegations that officers "attempted or threatened to do physical harm" to the plaintiffs, SAC at ¶ 138, suffice.  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 580; *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Plaintiffs' allegations about law enforcement's treatment of protestors generally, and specifically journalists who were covering the events, *see* ¶¶ at 53-55, are also insufficient.  As noted, the relevant issue is the treatment of these specific plaintiffs, and whether plaintiffs have sufficiently alleged that a federal law enforcement officer acted with intent to cause these plaintiffs an imminent apprehension of harm.  Accordingly, Plaintiffs have failed to state a claim for assault under D.C. law.

### B.   BATTERY

Plaintiffs' purported claims for battery fail for a similar reason.  Under D.C. law, "[a] claim for battery is actionable only if the plaintiff has alleged that the defendant has committed (a)

13

'harmful or offensive contact with a person,' which (b) 'result[s] from an act intended to cause that person to suffer such [harmful or offensive] contact.'" *Acosta*, 711 F. Supp. 2d at 91; *see also Person*, 562 A.2d at 650 ("A battery is harmful or offensive contact with a person, resulting from an act intended to cause [that person] … to suffer such a contact….").

Plaintiffs Buchanan and Dagrin do not allege that federal law enforcement officers acted with intent to cause them harmful or offensive contact.  They allege that MPD officers—not federal officers—threw tear gas canisters at them, "one of which landed and burst within a foot of them." *See* SAC at ¶¶ 69, 78.  "The gas burned [Buchanan's] eyes, nose[], and throat[].  [Buchanan's] eyes watered and [she was] gagging and coughing…." *Id*. at ¶ 69; "[Dagrin] began coughing and experienced terrible pain in her throat and discomfort in her eyes." *Id*. at ¶ 78.  Because they fail to allege federal employees acted with the requisite intent to cause harm or offensive contact, Plaintiffs Buchanan and Dagrin's battery claims should be dismissed.

Meanwhile, Plaintiff Field claims that as she "turned to move toward 17th Street, she felt a sharp pain in the back of her thigh, which stung and left a bruise.  [She] believes it was a rubber bullet that struck her…" *Id*. at ¶ 92.  Plaintiff Field fails to allege that this contact, though "offensive," was the result of an act intended to cause such offensive contact with her and that the action was taken by a federal law enforcement officer within the meaning of the FTCA.  *See Acosta*, 711 F. Supp. 2d at 91.  Accordingly, her battery claims should be dismissed.

### C.   INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiffs have also failed to allege IIED claims under D.C. law.  "In order to establish a *prima facie* case of intentional infliction of emotional distress, a plaintiff must show (1) extreme and outrageous conduct on the part of the defendants, which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress." *Williams v. District of Columbia*, 9 A.3d 484, 493-

94 (D.C. 2010) (quoting *Futrell v. Dep't of Labor Fed. Credit Union*, 816 A.2d 793, 808 (D.C. 2003) (internal quotation marks omitted)).   An IIED claim survives a motion to dismiss if a plaintiff alleges "conduct that was 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Williams*, 9A.3d at 494 (quoting *Bernstein v. Fernandez*, 649 A.2d 1064, 1075 (D.C. 1991)); *see also Kerrigan v. Britches of Georgetowne*, 705 A.2d 624, 628 (D.C. 1997).

To determine whether conduct is extreme or outrageous, the court "must consider . . . the specific context in which the conduct took place, for in determining whether conduct is extreme or outrageous, it should not be considered in a sterile setting, detached from the surroundings in which it occurred." *Brown v. Hill*, Case No 14-0140 (TSC), 2021 U.S. Dist. LEXIS 178114, at *11 (D.D.C. Sept. 20, 2021) (quoting *King v. Kidd*, 640 A.2d 656, 668 (D.C. 1993)).   "The 'context' consists of the nature of the activity at issue, the relationship between the parties, and the particular environment in which the conduct took place." *Id.*   "[T]he court . . . determine[s], in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Ross v. DynCorp*, 362 F. Supp. 2d 344, 358-59 (D.D.C. 2005) (citations and internal quotation marks omitted).

As discussed above with respect to their purported claims for assault and battery, plaintiffs have failed to plead any intentional act or omission on the part of a federal law enforcement officer against these specific plaintiffs.  Plaintiffs do not adequately allege that their alleged distress was because of any act taken by a federal law enforcement officer that was intended to cause or recklessly caused them severe emotional distress.  Although Plaintiffs allege that tear gas cannisters, flash-bang grenades, and rubber bullets were used to disperse a large crowd of

protesters, they do not allege that any of these munitions were targeted specifically at them.  As such, plaintiffs' claims should be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant United States respectfully requests that the Court dismiss the claims against it.

Dated: August 19, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

JAMES G. TOUHEY, Jr.
Director, Torts Branch

Kirsten L. Wilkerson
Deputy Director, Torts Branch

s/ Gessesse Teferi
Trial Attorney
United States Department of Justice
Civil Division, Torts Branch
P.O. Box 888
Washington, D.C. 20044-0888
gessesse.teferi@usdoj.gov
Tel.: (202) 307-2098
*Counsel for United States of America*

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 19, 2024, the foregoing was electronically filed with the

clerk of the court by using CM/ECF system which will send a notice of electronic filing to:

> Greta B. Williams
> Naima L. Farrell
> Brittany Raia
> Matthew Guice Aiken
> GIBSON, DUNN & CRUTCHER LLP
> Washington, DC
>
> Randy M. Mastro
> Orin Snyder
> Mylan L. Denerstein
> Anne Champion
> Katherine Marquart
> Lee R. Crain
> Amanda L. LeSavage
> GIBSON, DUNN & CRUTCHER LLP
> New York, New York
>
> *Attorneys for Plaintiffs*

/s/ Gessesse Teferi
Trial Attorney
*Counsel for the United States*

17