# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

RADIYA BUCHANAN, *et al.*,

       Plaintiffs,

   v.

DONALD J. TRUMP, *et al.*,

       Defendants.

No. 20-01469 (DLF) LEAD

No. 20-01542 (DLF) (Consolidated)

# DEFENDANT UNITED STATES OF AMERICA'S REPLY TO PLAINTIFFS' OBJECTION TO WESTFALL ACT CERTIFICATION AND SUBSTITUTION

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES.................................................................................. iii

BACKGROUND ............................................................................................... 1

ARGUMENT....................................................................................................4

   I.   The President is an "Employee of the Government."........................................4

   II.   The Former President Was "Acting within the Scope of his Office or Employment."......14

      A.   Directing law enforcement is the kind of conduct former President Trump was employed to perform. .............................................................................15

      B.   The former President's conduct occurred substantially within the authorized time and space limits of his employment.........................................................21

      C.   The former President's conduct was actuated, at least in part, by a purpose to serve the employer. .....................................................................................21

      D.   The use of force against third persons was not unexpectable by the employer..............24

   III.   Plaintiffs' Request for Jurisdictional Discovery Should Be Denied.............................24

CONCLUSION....................................................................................................25

# TABLE OF AUTHORITIES

Cases

*Alexander v. FBI,*
  691 F. Supp. 2d 182 (D.D.C. 2010), *aff'd*, 456 F. App'x 1 (D.C. Cir. 2011) ................... 13, 15

*Ali Jaber v. United States,*
  155 F. Supp. 3d 70 (D.D.C. 2016), *aff'd*, 861 F.3d 241 (D.C. Cir. 2017) ........................ 11, 23

*Ali v. Fed. Bureau of Prisons,*
  552 U.S. 214 (2008) ........................................................................................................... 8

*Al-Tamimi v. Adelson,*
  264 F. Supp. 3d 69 (D.D.C. 2017) ................................................................................... 13

*Am. Islamic Rels. v. Ballenger,*
  444 F.3d 659 (D.C. Cir. 2006) ................................................................................... 24, 25

*Bivens v. Six Unknown Fed. Narcotics Agents,*
  403 U.S. 388 (1971) ........................................................................................................... 5

*Blassingame v. Trump,*
  87 F.4th 1 (D.C. Cir. 2023) ............................................................................. 20, 21, 22, 27

*Buchanan v. Barr,*
  71 F.4th 1003 (D.C. Cir. 2023) ............................................................................... 5, 7, 22

*Burgess v. United States,*
  553 U.S. 124 (2008) ......................................................................................................... 10

*\*Carroll v. Trump,*
  49 F.4th 759 (2d Cir. 2022) ................................................................................. 7, 12, 17

*Christopher v. SmithKline Beecham Corp.,*
  567 U.S. 142 (2012) ......................................................................................................... 10

*Does 1-10 v. Haaland,*
  973 F.3d 591 (6th Cir. 2020) ........................................................................................... 17

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.,*
  561 U.S. 477 (2010) ......................................................................................................... 13

*\*Harbury v. Hayden,*
  522 F.3d 413 (D.C. Cir. 2008) ................................................................................... 23, 28

*Jacobs v. Vrobel*,
  724 F.3d 217 (D.C. Cir. 2013) ........................................................................23

*\*Klayman v. Obama*,
  125 F. Supp. 3d 67 (D.D.C. 2015) ............................................................passim

*Koch v. United States*,
  209 F. Supp. 2d 89 (D.D.C. 2002) ..................................................................17

*Kosak v. United States*,
  465 U.S. 848 (1984) ........................................................................................11

*LePatourel v. United States*,
  571 F.2d 405 (8th Cir. 1978) ...................................................................10, 11

*Levin v. United States*,
  568 U.S. 503 (2013) ..........................................................................................9

*Lyons v. Brown*,
  158 F.3d 605 (1st Cir. 1998) ..........................................................................18

*McNamara v. United States*,
  199 F. Supp. 879 (D.D.C. 1961) .....................................................................10

*\*Nixon v. Fitzgerald*,
  457 U.S. 731 (1982) .................................................................................18, 28

*Operation Rescue Nat'l v. United States*,
  147 F.3d 68 (1st Cir. 1998) ............................................................................17

*Rasul v. Meyers*,
  512 F.3d 644 (D.C. Cir. 2008), *vacated and remanded*, 555 U.S. 1083 (2008), *reinstated in relevant part*, 563 F.3d 527 (D.C. Cir. 2009) ........................................................24

*Saleh v. Bush*,
  848 F.3d 880 (9th Cir. 2017) ..........................................................................11

*SAS Inst., Inc. v. Iancu*,
  584 U.S. 357 (2018) ..........................................................................................8

*Smith v. Clinton*,
  886 F.3d 122 (D.C. Cir. 2018) ........................................................................24

*Stokes v. Cross*,
  327 F.3d 1210 (D.C. Cir. 2003) ......................................................................17

*Trump v. Carroll*,
 292 A.3d 220 (D.C. 2023) ................................................................................passim

*\*Trump v. United States*,
 144 S. Ct. 2312 (2024). ..........................................................................20, 28

*United States v. Gonzales*,
 520 U.S. 1 (1997) ...............................................................................................8

*United States v. Hatter*,
 532 U.S. 557 (2001) .........................................................................................12

*\*United States v. Smith*,
 499 U.S. 160 (1991) ...................................................................................8, 9, 15

*Watts v. United States*,
 394 U.S. 705 (1969) .........................................................................................22

*Westfall v. Erwin*,
 484 U.S. 292 (1988) .........................................................................................15

*Williams v. United States*,
 350 U.S. 857 (1955) .........................................................................................17

*Wilson v. Libby*,
 535 F.3d 697 (D.C. Cir. 2008) ........................................................................13

*\*Wuterich v. Murtha*,
 562 F.3d 375 (D.C. Cir. 2009) ........................................................................27

*Youngstown Sheet & Tube Co. v. Sawyer*,
 103 F. Supp. 978 (D.D.C. 1952) ....................................................................11

Statutes

3 U.S.C. § 102 ..................................................................................................12

5 U.S.C. § 7322(1) ...........................................................................................14

18 U.S.C. § 603 ................................................................................................14

*28 U.S.C. § 1346(b) .........................................................................................5

*28 U.S.C. § 1346(b)(1) ....................................................................................8

*28 U.S.C. § 2671 .............................................................................9, 10, 14, 16

28 U.S.C. § 2672.............................................................................................8

*28 U.S.C. § 2674...........................................................................................16

*28 U.S.C. § 2679(b)(1)....................................................................................8

*28 U.S.C. § 2679(b)(2)(A)................................................................................9

28 U.S.C. § 2680............................................................................................11

H.R. 5065, § 304, 72d Cong., 1st Sess. (1931)......................................................11

Pub. L. No. 79-601, ch. 753, tit. IV, § 402, 60 Stat. 812, 842 (1946).........................14

Pub. L. No. 80-269, ch. 359, tit. I, 61 Stat. 585, 586 (1947)....................................13

Pub. L. No. 81-206, ch. 506, tit. I, 63 Stat. 631, 632 (1949)....................................13

Pub. L. No. 100-694, § 3, 102 Stat. 4564................................................... 10, 14, 16

<u>Other Authorities</u>

*Federal Tort Claims Act—Applicability to Agencies in Other Than Executive Branch of
Government*,
   26 Comp. Gen. 891 (1947)...........................................................................10

*Maintaining Essential Services in the District of Columbia in the Event Appropriations Cease*,
   12 O.L.C. Op. 290, 294 (1988)......................................................................22

*Payment of Expenses Associated with Travel by the President and Vice President*,
   6 O.L.C. Op. 214 (1982)......................................................................... 22

*Restatement of Agency (Second), chap. 7, title B, introductory note (*Restatement usage*)......15

Restatement (Second) of Agency § 228.....................................................................18

*White House Communications Agency Expenses Incurred on Political or Personal Travel by
the President*,
   14 O.L.C. Op. 144 (1990).............................................................................23

Defendant United States of America, by and through its undersigned counsel, hereby submits this Reply to Plaintiffs' Objection to the United States' Westfall Act Certification and Substitution.  *See* ECF Nos. 242 & 246.

## BACKGROUND

This action arises from the law enforcement response to large-scale racial justice demonstrations and protests, which took place outside the White House in and around Lafayette Square on June 1, 2020.  Plaintiffs allege they were injured by crowd-dispersal efforts by law enforcement officers and that former President "Trump ordered law enforcement officers to take the actions described [in the Second Amended Complaint] in order to forcibly drive protesters from Lafayette Park."  Second Amended Complaint ("SAC") (ECF No. 208) ¶ 56.

Plaintiffs originally asserted claims against Attorney General William P. Barr—who they specifically alleged had personally ordered law enforcement personnel to clear protesters from Lafayette Square and the streets surrounding the park on June 1, 2020—as well as certain U.S. Park Police ("USPP") officers, seeking damages from each of them in their individual capacities pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).  *See* ECF Nos. 1 & 29.

Although they originally also asserted claims for nonmonetary relief against former President Trump and various other federal officials in their official capacities, Plaintiffs did not initially assert any damages claims against former President Trump in his individual capacity. Nor did Plaintiffs initially assert any claims against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq*.

This Court eventually dismissed all of Plaintiffs' *Bivens* claims against Mr. Barr and the other original federal damages defendants.  *See* ECF No. 69.  The Court then granted Plaintiffs'

motion for entry of partial final judgment dismissing Plaintiffs' *Bivens* claims against Mr. Barr and the other original federal damages defendants.  The D.C. Circuit subsequently affirmed this judgment, issuing its mandate on August 15, 2023.  *See Buchanan v. Barr*, 71 F.4th 1003 (D.C. Cir. 2023) (ECF No. 97).

Shortly thereafter, Plaintiffs moved this Court for leave to file a proposed Second Amended Complaint in which they sought to add Mr. Trump as a party-defendant in his individual capacity and to assert various D.C.-law damages claims against not only Mr. Trump, but also against Mr. Barr and the other original federal damages defendants.  ECF No. 101.

In the same motion, Plaintiffs also sought leave to add FTCA claims against the United States for assault, battery, and intentional infliction of emotional distress ("IIED") under D.C. law.  All of these FTCA claims were predicated on the conduct of Mr. Barr and the other original federal damages defendants, each of whom Plaintiffs specifically alleged had acted within the scope of his or her employment either in ordering Lafayette Square and its environs to be cleared or in carrying out such orders.

On March 13, 2024, this Court granted in part and denied in part Plaintiffs' motion for leave to amend.  ECF No. 106.  The Court granted Plaintiffs' leave to file their proposed Second Amended Complaint insofar as it sought to add Mr. Trump as a defendant in his individual capacity and to assert damages claims against him under D.C. law for assault, battery, IIED, violation of D.C.'s First Amendment Assemblies Act ("FAAA"), and negligence per se for violating the FAAA.  The Court also granted Plaintiffs leave to assert FTCA claims against the United States for assault, battery, and IIED under D.C. law.  However, the Court denied Plaintiffs' motion insofar as it sought leave to assert damages claims under D.C. law against Mr.

Barr and the other original federal damages defendants in whose favor the Court previously had entered a partial final judgment dismissing Plaintiffs' *Bivens* claims.

After Plaintiffs filed their SAC (ECF No. 208),[1] the United States filed a Notice of Substitution whereby it substituted itself for former President Trump with respect to all the damages claims that the SAC asserted against him in his individual capacity.  ECF No. 238. Attached to this Notice was a Certification of Scope of Employment (ECF No. 238-1), which certified that at the time of the incidents out of which Plaintiffs' claims arose Mr. Trump was acting within the scope of his office as the President of the United States.  The United States separately moved to dismiss not only the claims that Plaintiffs had asserted directly against it under the FTCA, but also the claims as to which the United States had substituted itself for former President Trump pursuant to the Westfall Act.  ECF No. 240.

On August 20, 2024, Plaintiffs filed an Objection to Westfall Act Certification in which they asserted the certification was ineffectual because (1) the President of the United States is not an "employee of the Government" as that term is used in the Westfall Act, and (2) former President Trump was acting outside the scope of his employment as President when he allegedly "ordered officers to clear Lafayette Square on June 1, 2020, as these orders 'bear no reasonable relation to his official duties as President.'"  ECF No. 242 (quoting ECF No. 101-3 at 12); *see also id.* ("[A]ny reasonable officer would have been aware that it is a violation of foundational First Amendment rights to forcibly end a peaceful protest in a traditional public forum without any legitimate justification for doing so.") (quoting ECF No. 69 at 36).

---

[1] Because Plaintiffs' Motion for Leave to File the Second Amended Complaint was granted only in part, numerous extraneous paragraphs that were interspersed throughout Plaintiffs' proposed Second Amended Complaint (ECF No. 101-1) were deleted from the SAC (ECF No. 208) when it ultimately was filed, causing the latter's paragraphs to be renumbered.

Thereafter, on October 3, 2024, Plaintiffs filed a combined Memorandum of Law in Opposition to Defendant United States of America's Notice of Substitution and its Motion to Dismiss. ECF No. 246. The instant Memorandum addresses the arguments set forth in ECF Nos. 242 and 246 concerning whether the United States was properly substituted for former President Trump. For the reasons stated herein, Plaintiffs' arguments should be rejected.

## ARGUMENT

### I.    The President is an "Employee of the Government."

As a threshold matter, Plaintiffs argue that the President of the United States is not "an employee of the Government" for purposes of the FTCA and the Westfall Act. In so arguing, they largely rely on a dissenting opinion in *Carroll v. Trump*, 49 F.4th 759 (2d Cir. 2022). But the arguments set forth in that dissenting opinion should be rejected for the same reasons that the panel majority rejected them in *Carroll*. Instead, as the panel majority correctly concluded in *Carroll*, nothing in the text, purpose, or history of either the FTCA or the Westfall Act suggests the President is excluded from their coverage.

By their express terms, both statutes cover torts committed by "*any* employee of the Government" while the employee is acting within the scope of his office or employment. *See* 28 U.S.C. §§ 1346(b)(1) & 2672 (FTCA's provisions waiving sovereign immunity of United States from suit and authorizing heads of federal agencies to settle claims for torts committed by "any employee of the Government" acting within his office or employment); 28 U.S.C. § 2679(b)(1) (Westfall Act provision making remedy provided by sections 1346(b)(1) & 2672 for torts committed by "any employee of the Government" while acting within scope of his office or employment exclusive of any other civil action or proceeding against such employee). The Supreme Court "ha[s] previously noted that '[r]ead naturally, the word "any" has an expansive

meaning, that is, "one or some indiscriminately of whatever kind."" *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008) (quoting *United States v. Gonzales*, 520 U.S. 1, 5 (1997) (quoting Webster's Third New International Dictionary 97 (1976)) (cleaned up); *see also SAS Inst., Inc. v. Iancu*, 584 U.S. 357, 363 (2018) ("When used (as here) with a 'singular noun in affirmative contexts,' the word 'any' ordinarily 'refer[s] to a member of a particular group or class without distinction or limitation' and in this way 'impl[ies] every member of the class or group.'") (quoting Oxford English Dictionary (3d ed., Mar. 2016)).

The Supreme Court specifically relied on this very language when it rejected the argument that the Westfall Act's coverage was confined only to those Government employees who were not already shielded from tort liability by other previously enacted immunity statutes. *See United States v. Smith*, 499 U.S. 160, 173 (1991) (noting that under section 2679(b)(1), the FTCA provides the exclusive remedy "with respect to a tort committed by '*any* employee of the Government' within the scope of employment") (italics added by the Court). Accordingly, *Smith* declined to read into the statute any additional exceptions from the Westfall Act's coverage beyond those that Congress had expressly adopted in 28 U.S.C. section 2679(b)(2)(A) and (B). *See id.* at 173 ("When Congress wanted to limit the scope of immunity available under the [Westfall] Act, it did so expressly, as it did in preserving employee liability for *Bivens* actions and for actions brought under a federal statute authorizing recovery against the individual employee."). *See also Levin v. United States*, 568 U.S. 503, 509 (2013) (Westfall Act's immunity provisions shield "*all* federal employees from personal liability without regard to agency affiliation or line of work") (emphasis added).

The conclusion that the FTCA and the Westfall Act cover *all* employees of the Government, including the President of the United States, is buttressed by 28 U.S.C. section

2671, which broadly defines "employee of the Government" and "Federal agency" as those terms are used in both statutes. Section 2671 defines both terms *inclusively*. The term "employee of the Government" is defined by section 2671 as follows:

> "Employee of the government" *includes* (1) officers or employees of any federal agency, members of the military or naval forces of the United States, members of the National Guard while engaged in training or duty . . . and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation, and (2) any officer or employee of a Federal public defender organization, except when such officer or employee performs professional services in the course of providing representation under section 3006A of title 18.

28 U.S.C. § 2671 (emphasis added). Likewise, as defined by section 2671, "the term 'Federal agency' *includes* the executive departments, the judicial and legislative branches, the military departments, independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States, but does not include any contractor with the United States." *Id.* (emphasis added).

The use of the word "includes" in both these definitions "is significant because it makes clear that the examples enumerated in the text are intended to be illustrative, not exhaustive." *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 162 (2012), (citing *Burgess v. United States*, 553 U.S. 124, 131 n.3 (2008) (explaining that "[a] term whose statutory definition declares what it 'includes' is more susceptible to extension of meaning . . . than where . . . the definition declares what a term 'means'")).

The upshot is that neither the fact that the definition of the term "employee of the Government" makes no specific mention of the President, nor the fact that the definition of the term "Federal agency" refers to various entities within the executive branch (e.g., "executive

departments"), rather than to the executive branch as a whole, stands as an impediment to construing the Westfall Act as covering the President.

Indeed, although the definition of "Federal agency" in 28 U.S.C. section 2671 did not reference the judicial or legislative branches of the Government until 1988, *see* Pub. Law No. 100-694, § 3, 102 Stat. 4564, since its inception, the statute has been construed to apply to claims arising out of the torts of employees and officers of all three branches of the Government. *See, e.g.*, *LePatourel v. United States*, 571 F.2d 405, 408 (8th Cir. 1978) ("As a matter of common understanding, federal judges are considered 'employees of the government.'"); *McNamara v. United States*, 199 F. Supp. 879, 880 (D.D.C. 1961) (Holtzoff, J.) (rejecting argument that FTCA was limited to claims arising out of torts of employees of only executive branch, and holding that it applies to torts of employees of all three branches); *Federal Tort Claims Act—Applicability to Agencies in Other Than Executive Branch of Government*, 26 Comp. Gen. 891, 892 (1947) ("While only the executive departments and independent establishments of the United States are mentioned specifically in the definition of a Federal agency, an examination of the entire act and its legislative history requires a conclusion that no agencies or employees are excluded from the operation of the act save in the case of the specific exceptions enumerated in section 421 thereof [now codified in 28 U.S.C. § 2680].").

Even more to the point, during this period the Department of Justice argued, and a court in this district agreed, that the FTCA afforded a remedy to owners of steel mills that President Truman ordered to be seized during the Korean War. *See Youngstown Sheet & Tube Co. v. Sawyer*, 103 F. Supp. 978, 981 (D.D.C. 1952) (Holtzoff, J.) (noting Government counsel's concession "that if the seizure is illegal, an action for damages lies against the United States

- 7 -

under the Federal Tort Claims Act," and further noting that the court also was of the opinion

"that such an action would lie").[2]

Accordingly, the President is properly considered to be an employee of the Government

under the plain language of the FTCA and the Westfall Act.  Until recently, the Westfall Act's

applicability to the President was unquestioned.  *See, e.g.*, *Saleh v. Bush*, 848 F.3d 880, 891 (9th

Cir. 2017); *Ali Jaber v. United States*, 155 F. Supp. 3d 70, 73 n.1 (D.D.C. 2016), *aff'd*, 861 F.3d

241 (D.C. Cir. 2017); *Klayman v. Obama*, 125 F. Supp. 3d 67, 82 (D.D.C. 2015).  And when the

issue finally was squarely presented to the Second Circuit, that court held that the President was

covered by both the Westfall Act and the FTCA.  *See Carroll v. Trump*, 49 F.4th at 768.  As the

Second Circuit found in *Carroll*, "§ 2671 lends itself to only one interpretation: The statute

covers 'all federal employees from personal liability without regard to agency affiliation or line

of work.'"  *Id.* at 770.  "It follows that the President of the United States fits comfortably within

the statutory description's plain language."  *Id.*  The President is employed by the Government in

a literal sense.  He renders services to the United States in return for a salary and other

compensation, including government-provided housing and a pension.  *See* U.S. Const. art. II,

§ 1, cl. 7 (mandating that the President "shall . . . receive for his Services, a Compensation"); 3

---

[2] As the Supreme Court has noted, the district judge who decided the *McNamara* and *Youngstown Sheet & Tube* cases—Judge Holtzoff—"was one of the major figures in the development of the Tort Claims Act."  *Kosak v. United States*, 465 U.S. 848, 856 (1984); *see also id.* at 856 n.13 (detailing Judge Holtzoff's extensive involvement in drafting the FTCA while he served as a special assistant to the Attorney General prior to his appointment to the bench).  In this capacity, he repeatedly appeared before congressional committees that were considering various versions of tort claims bills during the FTCA's decades-long gestation period, and was present at one particular hearing before the House Committee on Claims on such a bill which would have expressly excluded the judicial and legislative branches from the bill's definition of the term "department or establishment."  *See LePatourel v. United States*, 571 F.2d at 408 (discussing H.R. 5065, § 304, 72d Cong., 1st Sess. (1931)); *see also General Tort Bill: Hearing Before Subcomm. of H.R. Claims Comm.*, 77th Cong. 1st Sess. 3, 33 (1932) (hearing on H.R. 5065).

U.S.C. § 102.  He has no employer other than the United States.  *Cf.* U.S. Const. art. II, cl. 8.

The Supreme Court has accordingly recognized the President as a salaried employee of the

United States and has referred to him as such.  *See United States v. Hatter*, 532 U.S. 557, 563

(2001).

      None of Plaintiffs' counterarguments have any merit.  Plaintiffs argue that the President

is not covered by the FTCA or the Westfall Act because the term "executive departments" does

not refer to the executive branch of the Government as a whole, but rather to only 15 cabinet-

level agencies.  (*See* ECF No. 246 at 24.[3])  However, this argument ignores the fact that the

definitions of "employee of the Government" and "Federal agency" in section 2671 are

extremely broad and expressly non-exhaustive.  Thus, as the Second Circuit concluded in

*Carroll v. Trump*, "the better reading of [§ 2671] is that it simply sets forth an *illustrative* set of

examples of those who qualify as covered government officials."  Moreover, the definition of

"executive departments" is not limited to the 15 cabinet-level agencies, *see* ECF No. 246 at 24,

but depends on the context.  *See Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477,

511 (2010) (holding that "Departments" are not limited to cabinet agencies and that the

Securities and Exchange Commission is a "Department" for Appointments Clause purposes).

Here, given the context and history of the FTCA, there is no reason to read "executive

departments" so narrowly.

      Plaintiffs' construction would exclude from the FTCA and the Westfall Act all officers

and employees of the Executive Office of the President ("EOP"), which is not, under Plaintiffs'

theory, an "agency" within the meaning of the FTCA and Westfall Act.  But many courts have

---

[3] Citations to Plaintiffs' Memorandum of Law in Opposition to Defendant United States of America's Notice of Substitution and Motion to Dismiss (ECF No. 246) reference the .PDF pagination found in the ECF filing header.

allowed substitution under the Westfall Act in cases involving officers or employees of the EOP.
*See, e.g.*, *Wilson v. Libby*, 535 F.3d 697, 712 (D.C. Cir. 2008) (Vice President and Vice
President's Chief of Staff); *Alexander v. FBI*, 691 F. Supp. 2d 182, 196-97 (D.D.C. 2010)
(Director of White House Office of Personal Security and White House Counsel), *aff'd*, 456 F.
App'x 1 (D.C. Cir. 2011); *Al-Tamimi v. Adelson*, 264 F. Supp. 3d 69, 82 (D.D.C. 2017)
(President's Deputy National Security Advisor).  Those decisions are consistent with
longstanding practice under the FTCA.  Indeed, in the years immediately following the adoption
of the FTCA, at a time when FTCA claims were paid with appropriated funds, Congress
specifically appropriated funds to establishments within the EOP for the payment of FTCA
claims.  *See, e.g.*, Pub. L. No. 80-269, ch. 359, tit. I, 61 Stat. 585, 586 (1947); Pub. L. No. 81-
206, ch. 506, tit. I, 63 Stat. 631, 632 (1949).  Those appropriations would be inexplicable if the
EOP were not a "Federal agency" within the meaning of the FTCA.

Plaintiffs argue that Congress did not intend for the term "executive departments" in
section 2671's definition of "Federal agency" to describe the executive branch of the
Government as a whole because in defining "executive departments," Congress specifically
included the "judicial and legislative branches" but not the "executive branch."  But the
definition's reference to "executive departments" dates to the original enactment of the FTCA,
whereas the reference to the judicial and legislative branches was not added to the definition of
"Federal agency" until some four decades later.  *See* Pub. L. No. 79-601, ch. 753, tit. IV, § 402,
60 Stat. 812, 842 (1946) (original definition, which contains reference to "executive
departments"); Pub. L. No. 100-694, § 3, 102 Stat. 4563, 4564 (1988) (amending 28 U.S.C.
§ 2671 to insert words "the judicial and legislative branches" into the statutory definition of

"Federal agency").  Language added to the statute in 1988 does not inform the meaning of the phrase "executive departments" in 1946.

Plaintiffs also argue that interpreting the FTCA's definition of "employee" to exclude the President accords with Congress' understanding as articulated in other statutes (ECF No. 246 at 25-26).  Among the statutes Plaintiffs cite is the Hatch Act, which defines the term "employee" to mean "any individual, *other than the President* and Vice President, employed or holding office . . . in an Executive agency other than the Government Accountability Office [] or . . . a position within the competitive service which is not in an Executive agency," not including "a member of the uniformed services."  5 U.S.C. § 7322(1) (italics added).  Far from supporting Plaintiffs' argument, however, the Hatch Act fundamentally undermines it by demonstrating that when Congress wants to exclude the President from a statutory definition of the term "employee," it does so expressly.  *Cf. Application of 18 U.S.C. § 603 to Contributions to the President's Re-Election Committee*, 27 O.L.C. Op. 118, 119 (2003) (noting that President and Vice President are expressly excluded from Hatch Act's definition of "employee" and concluding that this exclusion would serve no purpose unless the President and Vice President were not otherwise understood to be "holding office . . . in an Executive agency").

Next, Plaintiffs argue that the President is not an "employee of the government" because he does not perform work "in the service of the United States," as he supposedly is not subject to anyone else's control.  *See* ECF No. 246 at 26-27 (quoting *Employee*, Webster's New International Dictionary of the English Language (2d ed. 1943)).  But that argument is entirely at odds with ordinary principles of agency law, which Plaintiffs acknowledge are "illuminating," *id.* at 27.  The Restatement of Agency (Second) states:

> The definition of servants as given in Section 2 is based on the theory that they are a particular kind of agent; that in the case of persons such as

> managers or clerks there is continuously both a principal-agent and master-servant relation; that persons who are doing things for others are servants if there is the very close economic relation and control described in this Section; and, that this is true whether or not the persons are primarily engaged to do manual work or make contracts.  Indeed, fully employed but *highly placed employees of a corporation, such as presidents* and general managers, *are not less servants because they are not controlled in their day-to-day work by other human beings.  Their physical activities are controlled by the sense of obligation to devote their time and energies to the interests of the enterprise.*

Restatement of Agency (Second), chap. 7, title B, introductory note (*Restatement usage*) at pp. 478-79 (emphasis added).  Here, likewise, there can be no doubt that even if the President is not controlled in his day-to-day work by other human beings, his physical activities nonetheless are controlled by his sense of obligations to the United States.

Relying on the Westfall Act's legislative history, Plaintiffs also argue that Congress did not intend for the Westfall Act to cover the President because he was already protected by the doctrine of Presidential immunity, and that Congress instead was concerned with the impact of the Supreme Court's decision in *Westfall v. Erwin*, 484 U.S. 292 (1988), on "lower-level" and "rank and file workers."  ECF No. 246 at 20 (citing H.R. Rep. No. 100-700 at 3 (1988)).  As explained, however, the Supreme Court rejected a similar argument in *United States v. Smith*, 499 U.S. at 172-73 (declining to read into the Westfall Act an implied exception excluding from its provisions federal employees who were protected by other previously enacted immunity statutes).

But Plaintiffs' argument based on the Westfall Act's supposedly narrow purpose is unavailing for yet another reason.  While members of Congress no doubt wanted to protect rank-and-file federal employees who had been adversely affected by the Supreme Court's *Westfall* decision, they also explicitly provided that the new statutory immunity conferred by the Westfall

Act extended to members of Congress themselves, even though they already were protected by the doctrine of legislative immunity.

The Westfall Act amended 28 U.S.C. § 2671 to expressly include "the judicial and legislative branches" among the entities that were mentioned in the statute's definition of the term "Federal agency," leaving no doubt that the Westfall Act's immunity provisions extended to them. *See* Pub. Law No. 100-694, § 3, 102 Stat. 4564. Simultaneously, another provision of the FTCA, 28 U.S.C. § 2674, was amended by inserting into it the following new sentence:

> With respect to any claim under this chapter, the United States shall be entitled to assert any defense based upon judicial or legislative immunity which otherwise would have been available to the employee of the United States whose act or omission gave rise to the claim, as well as any other defenses to which the United States is entitled.

*Id.* § 4, 102 Stat. 4564.

It is with respect to the latter provision that the House Report that Plaintiffs themselves have cited explains:

> Section 4 specifically preserves the traditional immunities that have long protected key functions of the legislative branch and judicial branches of the government. The United States may assert the judicial or legislative immunity of judicial or legislative employees in so far as it is recognized in the law . . . . The United States would also be able to continue to assert other functional immunities, *such as Presidential or prosecutorial immunity*, recognized in the constitution and judicial decisions.

H.R. Rep. 100-700 at 5 (emphasis added). The House Report demonstrates that the Westfall Act's drafters were aware that the President already was covered by the FTCA. Indeed, the House would have no reason to mention the continuing availability of Presidential immunity as a defense under section 2674 unless the FTCA covered the President in the first place. *See Operation Rescue Nat'l v. United States*, 147 F.3d 68, 69 (1st Cir. 1998) (in holding that members of Congress were protected by Westfall Act immunity, asking: "Why would

Congressmen vote to exclude themselves from a universal grant of immunity given to all others: to all employees below them [and] to all officers, *up to the president*, above them?") (emphasis added); *accord, e.g.*, *Does 1-10 v. Haaland*, 973 F.3d 591, 598 (6th Cir. 2020); *Carroll v. Trump*, 49 F.4th at 771.

## II.    The Former President Was "Acting within the Scope of his Office or Employment."

As certified, the former President was acting within the scope of his office with regard to the conduct at issue in this litigation. *See* ECF No. 238-1 (Certification of Scope of Employment). "[C]ertification [serves as] 'the Government's proffer of a *prima facie* case that [the defendant] was, in fact, acting within the scope of his employment." *Klayman v. Obama*, 125 F. Supp. 3d 67, 82 (D.D.C. 2015) (quoting *Koch v. United States*, 209 F. Supp. 2d 89, 92 (D.D.C. 2002)). "A plaintiff challenging such a certification has 'the burden of coming forward with specific facts rebutting the certification . . . .'" *Id.* (quoting *Stokes v. Cross*, 327 F.3d 1210, 1214 (D.C. Cir. 2003) (internal quotation marks and citation omitted by district court).

The scope-of-employment inquiry generally is governed by the *respondeat superior* law of the state in which the alleged act or omission occurred. *See Williams v. United States*, 350 U.S. 857 (1955). At the same time, as with the alleged tortfeasor's status as an "employee of the Government," it is federal law that defines the nature and scope of his or her official responsibilities. *See, e.g.*, *Lyons v. Brown*, 158 F.3d 605, 609 (1st Cir. 1998) ("Federal law determines whether a person is a federal employee and defines the nature and scope of [the person's] official responsibilities.") (quoted in *Trump v. Carroll*, 292 A.3d 220, 226 (D.C. 2023) (en banc)).

With regard to the President of the United States, the Supreme Court has emphasized the unique breadth and utmost importance of the President's official responsibilities. *See Nixon v.*

*Fitzgerald*, 457 U.S. 731, 749 (1982) ("The President occupies a unique position in the constitutional scheme."); *id.* at 750 (the vesting by the Constitution in the President of "[t]he executive Power" "establishes the President as the chief constitutional officer of the Executive Branch, entrusted with supervisory and policy responsibilities of utmost discretion and sensitivity"); *id.* (noting that he is responsible for both "the enforcement of federal law" and "management of the Executive Branch"). *See also id.* at 751 ("Because of the singular importance of the President's duties, diversion of his energies by concern with private lawsuits would raise unique risks to the effective functioning of government.").

Turning to the District of Columbia's law of *respondeat superior* (which both sides agree is applicable in this case), D.C. generally adheres to the four-factor test set forth in Restatement (Second) of Agency section 228 for determining when an employee's conduct is within the scope of employment. *See Klayman v. Obama*, 125 F. Supp. 3d at 83; *Trump v. Carroll*, 292 A.3d at 228. Under this test, conduct is within an employee's scope of employment only if (1) it is of the kind the employee is employed to perform, (2) it occurs within authorized time and space limits, (3) it is actuated at least in part by a purpose to serve the employer, and (4) if force is intentionally used by the employee against another, the use of force is not unexpectable by the employer. *Carroll*, 292 A.3d at 228.

## A. Directing law enforcement is the kind of conduct former President Trump was employed to perform.

Although Plaintiffs' brief and SAC includes multiple references to former President Trump's contextual conduct (his tweets, the photo op, etc.), the actual conduct underlying Plaintiffs' claims is their allegation that former President Trump "ordered law enforcement" to clear protesters from Lafayette Square. SAC ¶ 56; *see also id.* ¶ 146 (alleging that former President Trump's "direction to use . . . force" against protestors constituted assault); *id.* ¶ 159

(same for battery); *id.* ¶ 171 (same for intentional infliction of emotional distress); *id.* ¶ 182 (same for claim under D.C. First Amendment Assemblies Act); *id.* ¶ 188 (alleging that former President Trump's "ordering of the suppression" of protests constitutes negligence per se). Directing how law enforcement agencies should respond to large-scale protests that occur in the nation's capital, particularly when they are taking place in close proximity to the White House, falls within the duties of the President of the United States. Thus, the former President's conduct meets the first factor of the Restatement test.

As to this first factor, "the scope of an individual employee's job functions is not so narrowly construed as to cover only the conduct *expressly* authorized." *Trump v. Carroll*, 292 A.3d at 230. An employee's conduct satisfies the first factor of the Restatement test "if that conduct is either 'of the same general nature as' *or* 'incidental to' the conduct authorized so as to be within the scope of employment." *Id.* (emphasis in original).

Plaintiffs argue that the former President's conduct was not "of the same general nature as or incidental to" conduct he was authorized to perform on two grounds. First, they claim that he was acting in his capacity as an "office-seeker" rather than an "office-holder" in allegedly ordering the clearing of Lafayette Square because the purpose of the conduct was allegedly to enable a "photo op in service of [his] political campaign," *see* ECF No. 246 at 30, 31 (citing *Blassingame v. Trump*, 87 F.4th 1, 17 (D.C. Cir. 2023). Second, they argue that the conduct was outside of the scope of employment because the use of force to clear Lafayette Square was unlawful and thus unauthorized. *Id.* at 30-31. Both arguments are flawed for numerous reasons.

**i.** First, Plaintiffs' argument that the former President was acting as an "office-seeker" rather than an "office-holder" because of the alleged purpose of his conduct improperly collapses the first and third factors of the Restatement test into one. The first factor—whether the conduct

was of the kind the employee was employed to perform—focuses on the "nature" of the conduct

and whether there is a "nexus between the tortious conduct and the employee's responsibilities."

*Carroll*, 292 A.3d at 232.  The employee's purpose for taking the action in question relates only

to the third factor of the Restatement test—whether the conduct was actuated, at least in part, by

a purpose to serve the employer.  Here, the alleged conduct by former President Trump is the

"order[ing]" of federal "law enforcement officers" to take certain actions in response to the

protests in Lafayette Square, SAC ¶ 56—conduct that clearly falls within the President's

responsibility over federal law enforcement agencies.  *See Trump v. United States*, 144 S. Ct.

2312, 2335 (2024) (concluding that the President's "discussions with Justice Department

officials" falls within the core of the President's authority).[4]  Plaintiffs' allegations that the

former President's goal in clearing the square was "to facilitate" campaign activity speaks only

to the alleged motivation behind the conduct—not whether the conduct was of the kind he was

employed to perform.

Moreover, while Plaintiffs argue that former President Trump ordered law enforcement

agencies to clear Lafayette Square for a "campaign-style" photo-op, ECF No. 246 at 31, the SAC

tellingly does not allege that he took this action in his capacity as a candidate.  Rather, Plaintiffs

essentially suggest that the former President took the actions in order to improve public opinion

of him, SAC ¶¶ 105-06, which then had benefits for his electoral prospects, ECF No. 246 at 31.

But elected officials routinely take actions within the scope of their employment that are

motivated in part to "bolster [their] own standing" with the public, *id.*, without necessarily

---

[4] Although Plaintiffs do not specifically allege whom former President Trump allegedly ordered to clear Lafayette Square, SAC ¶ 56, they allege that former Attorney General Barr "personally" gave the order to law enforcement personnel to "clear the streets around Lafayette Park," *id.* ¶ 51.

transforming that conduct into conduct taken as an office-seeker.  *See Blassingame*, 87 F.4th at 21 (recognizing that an act is not taken in private capacity simply because it "was subjectively undertaken in some measure to enhance the President's re-election prospects or profile," and that, for example, the State of the Union address is an official act "regardless of whether [the President] may draw themes and make points with an eye on maintaining his public standing in an election year.").

The conduct of former President Trump that forms the basis of each of Plaintiffs' claims (i.e., ordering the clearing of Lafayette Square) is of the same general kind in which the "Federal officers" allegedly engaged, and which the SAC specifically alleges was within each of the "Federal officers" scope of employment.  *See* SAC at ¶ 16.  And notably, the conduct of former President Trump that forms the basis of each of Plaintiffs' claims is the same conduct in which the former Attorney General allegedly engaged (*see* SAC ¶ 4).  The SAC also specifically alleges the former Attorney General was acting within his scope of employment.  *See* SAC ¶ 16.

Plaintiffs rely on *Blassingame*, which arose out of the events of January 6, 2021, to suggest that the former President was acting in a private capacity as a candidate for re-election, but that reliance is entirely misplaced.  There, the conduct in question involved the former President's alleged exhortations—as a candidate at a "privately-funded" political rally—to his political supporters to go to the Capitol and to disrupt the certification of the results of the Presidential election.  *Blassingame*, 87 F.4th at 4, 8.  That conduct is fundamentally different from the alleged issuance of orders by the then-President to federal employees, who indisputably were acting within the scope of their employment.  Moreover, in *Blassingame*, the former President did not contest that his actions were "re-election campaign activity."  *Id.* at 22.

Regardless of the former President's alleged purpose in ordering the clearing of the protesters in Lafayette Square, directing law enforcement to take steps to secure both the area around the White House and the person of the President is indisputably the kind of conduct that federal officers (and the President himself) are employed to perform, and serves the interest of their employer (the United States).  *See Buchanan v. Barr*, 71 F.4th at 1009 (noting the "nation's 'overwhelming . . . interest in protecting the safety of its Chief Executive,'" and holding that "officers surrounding the White House and the President must be able to act without hesitation"), quoting *Watts v. United States*, 394 U.S. 705, 707 (1969) (per curiam); *see also Maintaining Essential Services in the District of Columbia in the Event Appropriations Cease*, 12 O.L.C. Op. 290, 294 (1988) (opining that "the President has the inherent authority to take steps to preserve such order in the District of Columbia as may be necessary to protect the functioning of the federal government"); *see also Payment of Expenses Associated with Travel by the President and Vice President*, 6 O.L.C. Op. 214 (1982) (expense of providing Secret Service protection to President should be paid with appropriated funds regardless of purpose of President's travel); *White House Communications Agency Expenses Incurred on Political or Personal Travel by the President*, 14 O.L.C. Op. 144 (1990) (same).

**ii.**  Second, Plaintiffs' argument that the former President's conduct in ordering law enforcement to clear large-scale protests in the nation's capital was illegal and unconstitutional and thus "different in kind from that authorized," ECF No. 246 at 33, is incorrect as a matter of law.  A federal employee's conduct can still be within the scope of his office or employment even if it is unlawful or unconstitutional.  *See Klayman v. Obama*, 125 F. Supp. 3d at 83 (rejecting argument "that 'illegal or unconstitutional conduct' is never conduct that government employees are authorized to perform" and so is necessarily outside the scope of their

- 19 -

employment).  As *Klayman* explains, there is "no legal support" for such an argument.  *Id.*
Instead, under D.C.'s law of *respondeat superior*, "it is the 'type of act' and 'not the wrongful
character of that act' that is relevant."  *Id.* (quoting *Jacobs v. Vrobel*, 724 F.3d 217, 221 (D.C.
Cir. 2013).

        Thus, applying D.C.'s *respondeat superior* law in a series of Westfall Act cases, the D.C.
Circuit has repeatedly held that allegations of illegal, unconstitutional, and even serious criminal
activity on the part of federal employees does not take their conduct outside the scope of their
employment.  *See*, *e.g.*, *Bin Ali Jaber v. United States*, 861 F.3d 241, 244 (D.C. Cir. 2017)
(affirming dismissal of action brought by estates of Yemeni civilians killed in targeted drone
strike after United States successfully substituted itself for President Obama and other high
ranking officials pursuant to Westfall Act); *Harbury v. Hayden*, 522 F.3d 413, 418 (D.C. Cir.
2008) (Kavanaugh, J.) (rejecting plaintiff's argument that "acts of torture can never fall within
the scope of employment"); *id.* at 422 (upholding Westfall Act certifications with respect to
conduct of federal intelligence officers who allegedly conspired with foreign officials to cause
imprisonment, torture, and execution of plaintiff's husband, and explaining that "seriously
criminal and violent conduct can still fall within the scope of a defendant's employment under
D.C. law"); *Rasul v. Meyers*, 512 F.3d 644, 659-61 (D.C. Cir. 2008) (rejecting argument that
"serious criminality of the defendant's conduct" in overseeing torture of Guantanamo Bay
detainees precluded them from having acted within the scope of their employment), *vacated and
remanded*, 555 U.S. 1083 (2008), *reinstated in relevant part*, 563 F.3d 527, 530 (D.C. Cir.
2009)*; see also Smith v. Clinton*, 886 F.3d 122, 126 (D.C. Cir. 2018) ("Extensive precedent
makes clear that alleging a federal employee violated policy or even laws in the course of her

employment—including specific allegations . . . of potentially criminal activities—does not take conduct out of the scope of employment.").

Here, directing law enforcement how to respond to large-scale protests in our nation's capital, and particularly when those protests were taking place in close proximity to the White House, is the kind of conduct the President is employed to perform—even if Plaintiffs' allegations that the specific conduct at issue here was unconstitutional or unlawful are correct. The first factor of the Restatement test thus is satisfied.

**B. The former President's conduct occurred substantially within the authorized time and space limits of his employment.**

There can be no doubt that the former President's conduct occurred substantially within the authorized time and space limits of his employment.  The conduct at issue occurred in Washington, D.C., on June 1, 2020, during the former President's term in office.  Accordingly, Plaintiffs do not dispute this factor of the test.

**C. The former President's conduct was actuated, at least in part, by a purpose to serve the employer.**

The former President's alleged conduct satisfies the third factor of the Restatement test, which turns on whether the conduct was actuated, at least in part, by a purpose to serve the employer.  The third Restatement factor is satisfied even when the employee acts in part out of personal motives.  *Klayman*, 125 F. Supp. 3d at 84 (citing *Couns. on Am. Islamic Rels. v. Ballenger*, 444 F.3d 659, 665 (D.C. Cir. 2006) ("even a *partial* desire to serve the master is sufficient")) (emphasis in original).  Indeed, "the fact that an agent may be motivated by self-interest, or interests other than those of its principal is not dispositive."  *Id.* at 84 (citing *Ballenger*, 444 F.3d at 665).

- 21 -

In its recent en banc opinion in *Trump v. Carroll*, the D.C. Court of Appeals confirmed D.C. law requires only that "the employee was motivated 'at least in part' to serve the employer's interests." 292 A.3d at 235. Although that standard reflects "a minimum requirement for the quantum of purpose that necessitates at least some discernable purpose to serve the employer," it "does not foreclose that an employee could be concurrently motivated"—or even "predominant[ly]" motivated—"by a personal purpose." *Id.* at 235-36. At the same time, the court explained that "the employee's conduct would be outside of the scope of employment" if it is "too little actuated by" the purpose to serve the employer. *Id.* at 236 (quotation omitted). Although the court declined to "parse out an exact threshold" of "quantum of purpose" required, the court held that the "employee's partial purpose to serve their employer" need only be "more than an insignificant interest." *Id.* at 237.

The court further clarified the proper focus of the purpose analysis, which is "an inquiry into the employee's state of mind to determine whether the employee was, in fact, motivated by a purpose to serve their employer." *Id.* at 234. Although this is a subjective standard, the court explained that both "direct and circumstantial evidence of the employee's state of mind" may be relevant, *id.,* and it identified particular evidence that will often be germane. This evidence includes "whether there was a prior history between the tortfeasor and the victim," which may allow "inferences about whether the tortfeasor-employee, for example, used their employment as a mere opportunity to act on a personal grievance." *Id.* at 234-35. Relevant evidence also includes "whether the tort was the outgrowth of a job-related controversy," which may allow "inferences about whether the employee was in fact responding to an employment-related circumstance." *Id.*

Based on the allegations of the SAC, there is no basis to conclude that the former President's conduct was insufficiently actuated by a purpose to serve the employer. Indeed, it is clear from the SAC that Plaintiffs contend that the former President's actions were motivated, not by a purely personal motive, but at least in part by his views concerning how government officials should respond to individuals he regarded as engaging in "racial unrest" and "unruly protests." *See* SAC ¶¶ 43, 47, 50, 57-58, 61. Unlike in *Carroll*, there is no indication in this case that "there was a prior history between the tortfeasor and the victim" or that the former President acted because of a "personal grievance" against any particular individuals. *Carroll*, 292 A.3d at 234-35. Rather, the conduct alleged was an "outgrowth of a job-related controversy." *Id.*

Plaintiffs' focus on the conduct that occurred outside of St. John's Episcopal Church and the former President's campaign-related messaging thereafter, but this is not the relevant issue. As noted above, this is not the conduct that allegedly caused Plaintiffs' injuries. The conduct that forms the basis for all of Plaintiffs' claims was the clearing of the protestors in Lafayette Square, which indisputably occurred *before* Mr. Trump walked through Lafayette Square so he could engage in the "photo-op" in front of St. John's Episcopal Church. *See* ECF No. 246 at 17 ("At around 7:01pm, *after* the protestors had been violently dispersed and after the citywide curfew went into effect, Trump emerged and walked through the now-cleared Lafayette Park.") (emphasis added). This injury-causing conduct is the same general conduct that the former Attorney General allegedly engaged in, which Plaintiffs themselves allege was within the scope of his employment. *See* SAC ¶ 16. And even if the former President's ordering the clearing of Lafayette Square was motivated in part by the safety of his person while traveling to a political activity, that does not vitiate the national security interests in protecting the President and the area around the White House. *See supra* at 18-19. In sum, Plaintiffs have not carried their

burden to show that former President Trump was too little actuated by a purpose to serve the United States.

**D.  The use of force against third persons was not unexpectable by the employer.**

Plaintiffs neither argue the applicability nor dispute the satisfaction of the fourth factor of the Restatement test.  Plaintiffs do not contend that the former President himself used force against third persons, only that he directed the use of force.  Regardless, there is no basis to conclude that the use of force by federal law enforcement officers in responding to large-scale protests in the nation's capital is unexpectable.

As all factors of the Restatement test have been satisfied, and Plaintiffs have failed to rebut the presumption that the former President's conduct occurred within the scope of his employment, Plaintiffs' Objection to the United States' Westfall Act Substitution should be rejected.

**III.    Plaintiffs' Request for Jurisdictional Discovery Should Be Denied.**

Plaintiffs' request for jurisdictional discovery in order to gather further evidence regarding the former President's subjective motivation for directing the response to the Lafayette Square protests should be denied.  As discussed above, Plaintiffs have failed to rebut the government's *prima facie* case that the former President's conduct occurred within the scope of his employment.  *See Wuterich v. Murtha*, 562 F.3d 375, 382-83 (D.C. Cir. 2009) ("[T]here is no right to even limited discovery in a Westfall Act case unless and until a [movant has made allegations sufficient] to rebut the Government's certification" decision.).  The SAC does not allege the former President's motivation in ordering the clearing of Lafayette Square was purely personal.  Moreover, an inquiry into the subjective motivation of a former President is in considerable tension with decisions of the United States Supreme Court defining the scope of

and rationale for the President's constitutionally-rooted immunity from civil liability for conduct within the outer perimeter of his official responsibilities, and should not be permitted.  *See Nixon v. Fitzgerald*, 457 U.S. at 745 ("It would seriously cripple the proper and effective administration of public affairs as entrusted to the executive branch of the government" if "[i]n exercising the functions of his office," the President was "under an apprehension that the motives that control his official conduct may, at any time, become the subject of inquiry."); *see also Harbury v. Hayden*, 522 F.3d at 421 n.3 (Kavanaugh, J.) (noting that the "political question doctrine counsels strongly against judicial second-guessing of the Attorney General's Westfall Act certification for much the same reason that courts are cautious about entertaining the merits of the tort claims: Doing so would require courts to intrude deeply into the foreign policy and national security decision-making process of the Executive Branch."); *Trump*, 144 S. Ct. at 2334-35 (holding that consultation between the President and the Department of Justice is a core executive function from which the President has absolute immunity, without any "inquir[y] into the President's motives").  Plaintiffs' request for jurisdictional discovery should be denied.

## CONCLUSION

For the reasons stated and upon the authorities cited herein, Plaintiffs' Objection to the United States' Westfall Act Certification and Substitution should be overruled, and Plaintiffs' request for jurisdictional discovery should be denied.

//

//

//

//

//

Dated: November 8, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

MATTHEW M. GRAVES
United States Attorney

JAMES G. TOUHEY, Jr.
Director, Torts Branch


s/ Sarah E. Klein
SARAH E. KLEIN
FL Bar # 119533
Trial Attorney
U.S. Department of Justice
Civil Division, Torts Branch
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20044
Tel: (202) 616-4233
Fax: (202) 616-5200
sarah.e.klein@usdoj.gov
*Counsel for Defendant United States of America*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 8, 2024, the foregoing DEFENDANT UNITED STATES OF AMERICA'S REPLY TO PLAINTIFFS' OBJECTION TO WESTFALL ACT CERTIFICATION AND SUBSTITUTION was filed electronically through ECF/CM.

/s/ Sarah E. Klein
SARAH E. KLEIN
FL Bar # 119533
Trial Attorney
U.S. Department of Justice
Civil Division, Torts Branch
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20044
Tel: (202) 616-4233
Fax: (202) 616-5200
sarah.e.klein@usdoj.gov